# EXHIBIT A

Electronically Filed
Kahalah A. Clay
Circuit Clerk
MYRTLE SHANNON
19L0311
St. Clair County
4/29/2019 10:34 AM
4850714

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

| | | |
|---|---|---|
| MADISYN STAUFFER,<br>on behalf of herself and all others similarly<br>situated,<br><br>       Plaintiff,<br><br>v.<br><br>INNOVATIVE HEIGHTS FAIRVIEW<br>HEIGHTS, LLC<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Cause No. 19L0311<br><br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

PARTIES ........................................................................................................................... 3

JURISDICTION AND VENUE ........................................................................................ 3

JURY DEMAND ............................................................................................................... 4

THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT ................................. 4

FACTUAL ALLEGATOINS REGARDING DEFENDANT'S LIABILITY .................. 6

     Plaintiff's Experience ..................................................................................................... 6

     Innovative Heights' Actions Violated IBIPA .............................................................. 6

CLASS ACTION ALLEGATIONS ................................................................................. 8

COUNT I: INNOVATIVE HEIGHTS' VIOLATION OF 740 ILCS 14/1, *et seq.* ......... 9

PRAYER FOR RELIEF .................................................................................................. 11

i

COMES NOW Plaintiff Madisyn Stauffer, and for her Complaint against Defendant Innovative Heights Fairview Heights, LLC ("Innovative Heights"), alleges upon personal knowledge as to her own acts, and upon information and belief (based on the investigation of counsel) as follows:

## INTRODUCTION

1.      Plaintiff brings this action individually and on behalf of a Class of similarly situated individuals who were employed by Innovative Heights and worked at its Sky Zone facility located at 10850 Lincoln Trail, Fairview Heights, IL 62208 ("Sky Zone Fairview Heights"), and were required to give their fingerprints to Innovative Heights at the commencement of their employment and scan their fingerprints for timekeeping and other purposes as specified below, in violation of the Illinois Biometric Information Privacy Act ("IBIPA"), 740 ILCS 14/1, *et seq.*

2.      Sky Zone Fairview Heights is owned by Innovative Heights. Innovative Heights was the employer of Plaintiff and Class Members during all times that they worked at Sky Zone Fairview Heights.

3.      Sky Zone Fairview Heights is a recreational facility that markets, advertises, and offers certain attractions and programs to the public, including attractions it describes as Freestyle Jump, SkySlam, Ultimate Dodgeball, SkyHoops, SkyJoust, SkyLadder, Warped Wall, FreeClimb, Foam Zone, Ninja Warrior Course, Laser Tag, and Drop Zone.[1]

4.      Sky Zone Fairview Heights holds itself out as a place where members of the public can hold parties and events in Fairview Heights, Illinois.[2]

---

[1] https://www.skyzone.com/fairviewheights/attractions-and-programs (accessed 04/08/2019).
[2] https://www.skyzone.com/fairviewheights/parties-and-events (accessed 04/08/2019).

5.      At the beginning of their employment, employees at Innovative Heights' Sky
Zone Fairview Heights facility are required to provide their private biometric identifiers in the
form of their fingerprints, which they then must scan into Innovative Heights' system any time
that they "clock in" or "clock out" of a shift throughout their employment. Employees must also
scan their fingerprints into Innovative Heights' system at certain times in connection with their
use of the cash registry, in the event it has "timed-out."

6.      Even though it requires its employees to provide and use their fingerprints in
connection with their employment, Innovative Heights fails to comply with the requirements set
forth in IBIPA before collecting, capturing, and otherwise obtaining such fingerprints.

7.      Innovative Heights' failure to comply with IBIPA means that its employees do
not receive the important protections set forth in the statute, which is designed to allow
employees and individuals to make informed decisions in connection with a private entity's
collection, use, and retention of their private biometric identifiers, and to ensure that biometric
identifiers are not obtained or used without the consent of the individual.

8.      By collecting, capturing, or otherwise obtaining Plaintiff's and Class Members'
fingerprints without making publicly available a proper policy; by not informing Plaintiff and
Class Members in writing that their fingerprints were being collected and the purpose therefore
or the length of time that they were being held; and by not receiving a written release from
Plaintiff and Class Members, Innovative Heights has violated IBIPA, specifically 740 ILCS
14/15(a) and (b)(1)-(3).

9.      Based on Innovative Heights' violations of IBIPA, Plaintiff and Class Members
seek to recover statutory and other damages and relief allowed under IBIPA.

## PARTIES

10.     Plaintiff Madisyn Stauffer is a resident of Madison County, Illinois. She was employed by Innovative Heights and worked at the Sky Zone Fairview Heights facility from January of 2018 through May of 2018.

11.     Plaintiff had her fingerprints collected, captured, and otherwise obtained by Innovative Heights at the beginning of her employment with Innovative Heights, and on each occasion that she "clocked in" or "clocked out" throughout her employment. She also had her fingerprints collected, captured, and otherwise obtained by Innovative Heights during certain times that she used the cash registry.

12.     Defendant Innovative Heights is an Illinois Limited Liability Company, with its principal office located at 10850 Lincoln Trail, #12A, Fairview Heights, Illinois 62208. Its registered agent in Illinois is Bron Launsby, 10850 Lincoln Trail, #12A, Fairview Heights, Illinois 62208.

13.     Innovative Heights conducts business in St. Clair County, Illinois, and transactions and conduct giving rise to the claims set forth in this Complaint occurred in St. Clair County, Illinois. Specifically, the location of Sky Zone Fairview Heights where Plaintiff and Class Members worked is in St. Clair County, Illinois.

## JURISDICTION AND VENUE

14.     This is a class action filed pursuant to 735 ILCS 5/2-801.

15.     This Court has jurisdiction over this action pursuant to 735 ILCS 5/2-209(a)(1) and 735 ILCS 5/2-209(b)(4).

16.     This Court has personal jurisdiction over Innovative Heights because it is registered to do business in Illinois and because it regularly conducts business in Illinois.

3

17.     Venue is proper in this Court pursuant to 735 ILCS 5/2-101 and 735 ILCS 5/2-102 because Innovative Heights is doing business in St. Clair County and because the transactions or conduct at issue or some part thereof occurred in St. Clair County.

## JURY DEMAND

18.     For each Count in this Complaint, Plaintiff demands a jury trial to the extent it is allowed by law.

## THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT

19.     The State of Illinois passed IBIPA in 2008 to serve the public welfare, based on concerns, both known and unknown, associated with the growing collection and use of biometrics by companies and other entities. 740 ILCS 14/5.

20.     The Illinois General Assembly found that while the use of biometrics has been growing, "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information" in that unlike social security numbers or other identifiers that can be changed when compromised, biometrics are "biologically unique to the individual; therefore, once compromised, the individual has no recourse…" 740 ILCS 14/5(a)-(c).

21.     Furthermore, the Illinois General Assembly stated that "[t]he full ramifications of biometric technology are not fully known," and that "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(f)-(g).

22.     Under IBIPA, a "biometric identifier" includes an individual's fingerprints, and the term "biometric information" "means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

4

23.     IBIPA provides that a private entity (which includes an LLC such as Innovative Heights) that is in possession of biometric identifiers or biometric information "must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first..." 740 ILCS 14/15(a).

24.     IBIPA also provides that a private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information" unless it first informs that person in writing that such an identifier or information is being collected or stored; informs that person in writing of the "specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used"; and receives a written release executed by the person who is the subject of the biometric identifier or information. 740 ILCS/14/15(b)(1)-(3).

25.     The statute defines "written release" as "informed written consent or, in the context of employment, a release executed by an employee as a condition of employment." 740 ILCS 14/10. As shown by this definition, IBIPA applies to employers and protects employees working in Illinois.

26.     Thus, while IBIPA does not prohibit an Illinois employer from using biometric identifiers of its employees for timekeeping or other purposes, it does require that an employer who wishes to do so must first comply with the safeguards set forth in the statute and obtain its employees' informed consent.

## FACTUAL ALLEGATOINS REGARDING DEFENDANT'S LIABILITY

### Plaintiff's Experience

27.     Plaintiff began her employment with Innovative Heights in January of 2018 and worked for Innovative Heights as a Cashier, Event Host, and Event Planner at its Sky Zone Fairview Heights facility. She continued to work for Innovative Heights at its Sky Zone Fairview Heights facility until May of 2018.

28.     When Plaintiff began her employment with Innovative Heights, she was required to have her fingerprints taken, and she provided her fingerprints to Innovative Heights as required.

29.     Plaintiff's fingerprints were then used in lieu of a more traditional time clock, in that she was required to scan her fingerprints into Innovative Heights's system each time she "clocked in" or "clocked out" of work throughout her employment.

30.     Plaintiff also was required to scan her fingerprints at additional times throughout her employment in connection with her use of the cash register. Specifically, if she had not recently been helping a customer and the cash register had timed out and needed to be "woken up," she had to do so by scanning her fingerprints.

31.     Plaintiff is currently unaware if and when Innovative Heights has destroyed her fingerprints, or how much longer they may be held by Innovative Heights.

### Innovative Heights' Actions Violated IBIPA

32.     Innovative Heights collected, captured, obtained, and possessed Plaintiff's and Class Members' fingerprints at the beginning of their employment with Innovative Heights and each time thereafter when Plaintiff and Class Members scanned their fingerprints to "clock in" or "clock out" or to awaken the cash register, yet Innovative Heights did not make available to the

6

public a written policy establishing a retention schedule and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting such fingerprints has been satisfied.

33.    Its failure to publish such a policy means that when Plaintiff and Class Members leave the employment of Innovative Heights, they are left unaware if and when their biometric identifiers will be destroyed. Furthermore, if Innovative Heights were to be sold or go out of business, Plaintiffs and Class Members would be left unaware as to who is in possession of their highly confidential and private biometric identifiers.

34.    Innovative Heights also failed to notify Plaintiff and Class Members in writing that their fingerprints were being collected, stored, and used, even though their fingerprints were collected and stored by Innovative Heights when they began their employment. Furthermore, Innovative Heights required Plaintiff and Class Members to scan their fingerprints many times during every day that they reported to work at its Sky Zone Fairview Heights facility.

35.    Innovative Heights also collected or captured Plaintiff's and Class Members' fingerprints without informing them in writing for what purpose their fingerprints were being collected, stored, or used, or for how long their fingerprints were being collected, stored, or used.

36.    Innovative Heights also failed to obtain a written release from Plaintiff and Class Members before collecting their fingerprints.

37.    Innovative Heights' actions have prevented Plaintiff and Class Members from giving their informed consent and having access to important information regarding how their sensitive biometric identifiers are stored and kept.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action on her own behalf and as a class action on behalf of all similarly situated employees of Innovative Heights who worked at its Sky Zone Fairview Heights facility and were injured by Innovative Heights' failure to comply with IBIPA.

39.     Specifically, pursuant to 735 ILCS 5/2-801, Plaintiff seeks certification of the following Class, defined as follows:

> All persons from whom Innovative Heights collected, captured, received, or otherwise obtained biometric identifiers or biometric information, including fingerprints, during the applicable statutory period prior to: (1) receiving a written release; and/or (2) providing written information that their biometric identifier or biometric information was being collected or stored and the purpose and length thereof. Excluded from the Class is any person who has or had a controlling interest in Innovative Heights.

40.     **Numerosity.** The exact size of the Class is currently unknown to Plaintiff, but on information and belief the total number of Class Members is in the hundreds, and the Class is so numerous that joinder of all Class Members would be impracticable.

41.     **Commonality.** There is a well-defined community of interest in the questions of law and fact affecting Class Members, and questions of law and fact common to the Class predominate over any questions affecting only individual members. Among the numerous questions of law or fact common to the Class are the following:

> a.  Whether Innovative Heights developed and made available to the public a policy in compliance with 740 ILCS 14/15(a), before it obtained Plaintiff's and Class Members' biometric identifiers;
>
> b.  Whether Innovative Heights collected, captured, or otherwise obtained Plaintiff's and Class Members' biometric identifiers or biometric information;
>
> c.  Whether Innovative Heights informed Plaintiff and Class Members in writing that it was collecting their biometric identifier or biometric information;
>
> d.  Whether Innovative Heights informed Plaintiff and Class Members in writing of the specific purpose and length of term for which it was collecting their biometric identifier or biometric information;

8

e.   Whether Innovative Heights received written releases from Plaintiffs and Class
Members before capturing, collecting, or otherwise obtaining their biometric
identifiers or biometric information;

f.   Whether Innovative Heights used Plaintiff's and Class Members' biometric
identifiers or biometric information to identify them; and

g.   Whether any violations of IBIPA by Innovative Heights were negligent, or rather
were reckless or intentional.

42.   **Typicality.** The claims of Plaintiff are typical of the claims of the members of the

Class. Plaintiff and all members of the Class have had their rights under IBIPA violated based on

Innovative Heights' failure to comply with the provisions of IBIPA.

43.   **Adequacy of Representation.** Plaintiff is an adequate representative of the Class

and has no conflict of interest with other Class Members. Plaintiff's attorneys are experienced in

this type of litigation and will prosecute the action vigorously on behalf of the Class.

44.   **Superiority.** A class action is an appropriate method to adjudicate this

controversy and is superior to any other available methods for the fair and efficient adjudication

of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this

action that would preclude its maintenance as a class action. Furthermore, the prosecution of

separate actions by individual members of the Class would create a risk of inconsistent and

varying adjudications concerning the subject of this action. A class action would conserve the

resources of the courts and litigants and further efficient adjudication of Class Member claims.

## COUNT I: INNOVATIVE HEIGHTS' VIOLATION OF 740 ILCS 14/1, *et seq.*
### (Plaintiff and the Class)

45.   Plaintiff realleges and incorporates by reference all preceding paragraphs of this

Complaint as though fully set forth herein.

46.   By obtaining and possessing Plaintiff's and Class Members' fingerprints without

developing a written policy made available to the public that established a retention schedule and

9

guidelines for the destruction of Plaintiff's and Class Members' biometric identifiers or

biometric information, Innovative Heights violated IBIPA. 740 ILCS 14/15(a).

47.    Innovative Heights also violated Plaintiff's and Class Members' rights under

IBIPA by collecting, capturing, or otherwise obtaining their fingerprints, and not first:

    a.    informing Plaintiff and Class Members in writing that their fingerprints
were being collected or stored;

    b.    informing Plaintiff and Class Members in writing of the specific purpose
and length of term for which their fingerprints were being collected,
stored, and used;

    c.    receiving a written release executed by Plaintiff and Class Members.

740 ILCS 14/15(b)(1)-(3).

48.    Because Plaintiff's and Class Members' biometric identifiers (in the form of their

fingerprints) were used to identify them, they constitute "biometric information." 740 ILCS

14/10.

49.    Plaintiff's and Class Members' rights under IBIPA were violated by Innovative

Height's failure to comply with IBIPA as set forth above, and in so violating IBIPA, Innovative

Heights acted negligently, recklessly and/or intentionally.

50.    Plaintiff and Class Members are "aggrieved" under IBIPA based on Innovative

Heights' violation of their rights under IBIPA, and accordingly are entitled to seek damages and

relief provided for under the statute. *See Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186,

¶ 40.

51.    Plaintiff and Class Members are therefore entitled to damages available under

IBIPA, including liquidated damages of $1,000 for each and every negligent violation, or

alternatively, $5,000 for each and every intentional or reckless violation, or actual damages,

whichever is greater, injunctive relief, and further damages and relief as set forth in the PRAYER FOR RELIEF below. 740 ILCS 14/20(1)-(4).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, pray for judgment against Innovative Heights as follows:

A.   Certifying the Class as requested herein;

B.   Entering an order appointing Law Office of Richard S. Cornfeld, LLC and Goldenberg Heller & Antognoli, P.C. as lead counsel for the Class;

C.   Awarding statutory damages of $1,000 for each and every negligent violation of IBIPA, or alternatively, statutory damages of $5,000 for each and every violation if the Court finds that Innovative Heights' violations were intentional or reckless;

D.   Awarding actual damages to Plaintiff and the members of the Class if greater than liquidated damages, as provided for under IBIPA;

E.   Declaring that Innovative Heights' actions, as set forth above, violate IBIPA;

F.   Awarding injunctive or other equitable relief as required to protect the interests of Plaintiff and Class Members, including an order requiring Innovative Heights to collect, store, use, and destroy biometric identifiers and biometric information in a manner that complies with the requirements set forth in IBIPA;

G.   Awarding pre-judgment and post-judgment interest;

H.   Awarding reasonable attorneys' fees and costs herein;

I.   Awarding such other and further relief as the court deems fit and proper.

11

Dated: April 29, 2019        Respectfully submitted,

**LAW OFFICE OF RICHARD S. CORNFELD, LLC**

By: */s/ Richard S. Cornfeld*
    Richard S. Cornfeld, #0519391
    Daniel S. Levy, #6315524
    1010 Market Street, Suite 1645
    St. Louis, MO 63101
    P. 314-241-5799
    F. 314-241-5788
    rcornfeld@cornfeldlegal.com
    dlevy@cornfeldlegal.com

    And

    Kevin P. Green, #6299905
    GOLDENBERG HELLER & ANTOGNOLI, P.C.
    2227 South State Route 157
    Edwardsville, ILL 62025
    Telephone: (618) 656-5150
    kevin@ghalaw.com

    *Attorneys for Plaintiff*

Electronically Filed
Kahalah A. Clay
Circuit Clerk
MYRTLE SHANNON
19L0311
St. Clair County
4/29/2019 10:34 AM
4850714

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

| | |
|---|---|
| MADISYN STAUFFER,<br>on behalf of herself and all others similarly<br>situated,<br><br>        Plaintiff,<br><br>v.<br><br>INNOVATIVE HEIGHTS FAIRVIEW<br>HEIGHTS, LLC<br><br>        Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) )   Cause No. 19L0311 |

## PLAINTIFF'S PRELIMINARY MOTION FOR CLASS CERTIFICATION

Plaintiff Madisyn Stauffer, individually and on behalf of all others similarly situated, submits her preliminary motion for class certification.[1] In support of this motion, Plaintiff states:

1.  Plaintiff's Class Action Complaint asserts a claim on behalf of herself and similarly situated individuals against Innovative Heights Fairview Heights, LLC ("Innovative Heights") under the Illinois Biometric Information Privacy Act ("IBIPA"), 740 ILCS 14/1, *et seq.*

2.  Plaintiff seeks to represent a class of individuals who were employed by Innovative Heights at its Sky Zone facility located at 10850 Lincoln Trail, Fairview Heights, IL 62208 ("Sky Zone Fairview Heights") and whose fingerprints were obtained by Innovative Heights without Innovative Heights first obtaining their written releases and providing them with

---

[1] Pursuant to *Barber v. Am. Airlines, Inc.*, 241 Ill. 2d 450 (2011), Plaintiff files this preliminary motion for class certification contemporaneously with the filing of her Class Action Complaint. Plaintiff intends to supplement this motion and incorporate a memorandum in support after she has received the benefit of discovery, pursuant to this Court's class certification briefing schedule. Information obtained in discovery will enable Plaintiff to more fully develop and brief this Court on the class certification issue.

required written information about the collection and retention of their biometric identifiers, in violation of IBIPA.

3.      Specifically, Plaintiff seeks to represent the following Class:

>    All persons from whom Innovative Heights collected, captured, received, or otherwise obtained biometric identifiers or biometric information, including fingerprints, during the applicable statutory period prior to: (1) receiving a written release; and/or (2) providing written information that their biometric identifier or biometric information was being collected or stored and the purpose and length thereof. Excluded from the Class is any person who has or had a controlling interest in Innovative Heights.

4.      A class action is an appropriate method for the fair and efficient adjudication of this controversy, and the requirements of 735 ILCS 5/2-801 are satisfied.

5.      Class Members can be readily ascertained based on Innovative Heights' records of its employees who worked at Sky Zone Fairview Heights during the applicable statutory period.

6.      The Class is so numerous that joinder of all members is impracticable. On information and belief, the total number of Class Members is in the hundreds.

7.      There are many questions of fact and law common to the Class, and such common questions predominate over any questions affecting only individual members, including the following common questions:

>    a.   Whether Innovative Heights developed and made available to the public a policy in compliance with 740 ILCS 14/15(a), before it obtained Plaintiff's and Class Members' biometric identifiers;
>
>    b.   Whether Innovative Heights collected, captured, or otherwise obtained Plaintiff's and Class Members' biometric identifiers or biometric information;
>
>    c.   Whether Innovative Heights informed Plaintiff and Class Members in writing that it was collecting their biometric identifier or biometric information;
>
>    d.   Whether Innovative Heights informed Plaintiff and Class Members in writing of the specific purpose and length of term for which it was collecting their

2

biometric identifier or biometric information;

e.  Whether Innovative Heights received written releases from Plaintiffs and Class Members before capturing, collecting, or otherwise obtaining their biometric identifiers or biometric information;

f.  Whether Innovative Heights used Plaintiff's and Class Members' biometric identifiers or biometric information to identify them; and

g.  Whether any violations of IBIPA by Innovative Heights were negligent, or rather were reckless or intentional.

8.      Plaintiff's claims are typical of those of the Class, as Plaintiff and all Class Members have had their rights under IBIPA violated based on Innovative Heights' failure to comply with the requirements set forth in the statute. Specifically, discovery will show that Plaintiff's and Class Members' claims arise from the same course of conduct, including Innovative Heights' failure to develop and make available to the public a policy in compliance with 740 ILCS 14/15(a) before obtaining Plaintiff's and Class Members' fingerprints, Innovative Heights' collection of Plaintiff's and Class Members' fingerprints without first notifying them in writing that their fingerprints were being collected or the purpose or length therefore, and Innovative Heights' failure to obtain written releases from Plaintiff and Class Members before obtaining their fingerprints.

9.      Plaintiff is an adequate representative of the Class because she is a member of the Class, has no conflict of interest with other Class Members, and will fairly and adequately represent and protect the interests of the Class. Plaintiff's attorneys are experienced in this type of litigation and will prosecute the action vigorously on behalf of the Class.

10.      A class action is superior to any other available method for the fair and efficient adjudication of this controversy, and Plaintiff's counsel is not aware of any difficulty to be encountered in the management of this action that would preclude its maintenance as a class

3

action. The prosecution of separate actions by individual Class Members would create a risk of

inconsistent and varying adjudications concerning the subject of this action. Moreover, a class

action would conserve the resources of the courts and litigants and further efficient adjudication

of the claims of Class Members.

11.    Furthermore, in determining whether to certify a proposed class the circuit court

accepts the allegations in the complaint as true and should err in favor of maintaining class

actions. *Clark v. TAP Pharm. Prod., Inc.*, 343 Ill. App. 3d 538, 544–45 (2003).

WHEREFORE, for the foregoing reasons, and for the reasons stated in Plaintiff's

memorandum of law to be filed in accordance with the Court's briefing schedule, Plaintiff

respectfully requests that at an appropriate later date this Court grant this motion and certify the

Class as defined above, appoint the named Plaintiff as class representative of the Class, appoint

the undersigned attorneys as class counsel, and for any other relief the Court deems just and

proper.

Dated: April 29, 2019                    Respectfully submitted,

                                         **LAW OFFICE OF RICHARD S. CORNFELD, LLC**

                                         By: */s/ Richard S. Cornfeld*
                                             Richard S. Cornfeld, #0519391
                                             Daniel S. Levy, #6315524
                                             1010 Market Street, Suite 1645
                                             St. Louis, MO 63101
                                             P. 314-241-5799
                                             F. 314-241-5788
                                             rcornfeld@cornfeldlegal.com
                                             dlevy@cornfeldlegal.com

                                         And

                                         Kevin P. Green, #6299905
                                         GOLDENBERG HELLER & ANTOGNOLI, P.C.
                                         2227 South State Route 157
                                         Edwardsville, ILL 62025

Telephone: (618) 656-5150
kevin@ghalaw.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of April, 2019, the foregoing was filed electronically with the Clerk of Court and served on Defendant by special process server.

_/s/ Richard S. Cornfeld_

6

Electronically Filed
Kahalah A. Clay
Circuit Clerk
Diane Kirksey
19L0311
St. Clair County
7/30/2019 1:38 PM
5973249

**IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS**

| | | |
|---|---|---|
| MADISYN STAUFFER, | ) | |
| on behalf of herself and all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 19L0311 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INNOVATIVE HEIGHTS FAIRVIEW HEIGHTS, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT INNOVATIVE HEIGHTS FAIRVIEW HEIGHTS, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CLASS ACTION COMPLAINT**

Defendant Innovative Heights Fairview Heights, LLC ("Defendant" or "Innovative Heights"), by and through its attorneys, submits the following Answer to Plaintiff's Class Action Complaint.

**INTRODUCTION**

1.     Plaintiff brings this action individually and on behalf of a Class of similarly situated individuals who were employed by Innovative Heights and worked at its Sky Zone facility located at 10850 Lincoln Trail, Fairview Heights, IL 62208 ("Sky Zone Fairview Heights"), and were required to give their fingerprints to Innovative Heights at the commencement of their employment and scan their fingerprints for timekeeping and other purposes as specified below, in violation of the Illinois Biometric Information Privacy Act ("IBIPA"), 740 ILCS 14/1, *et seq.*

**ANSWER:  Defendant admits that Plaintiff purports to bring this action as a class action.  Defendant denies that it required its employees to give their fingerprints to it and further denies that it required employees to scan their fingerprints for timekeeping and other**

purposes.  **Employees were given the option of scanning their fingerprints or using a PIN code for timekeeping purposes.**

2.      Sky Zone Fairview Heights is owned by Innovative Heights. Innovative Heights was the employer of Plaintiff and Class Members during all times that they worked at Sky Zone Fairview Heights.

**ANSWER: Sky Zone Fairview Heights admits it is owned by Innovative Heights.  The remaining allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant denies the allegations.**

3.      Sky Zone Fairview Heights is a recreational facility that markets, advertises, and offers certain attractions and programs to the public, including attractions it describes as Freestyle Jump, SkySlam, Ultimate Dodgeball, SkyHoops, SkyJoust, SkyLadder, Warped Wall, FreeClimb, Foam Zone, Ninja Warrior Course, Laser Tag, and Drop Zone.

**ANSWER: Admitted.**

4.      Sky Zone Fairview Heights holds itself out as a place where members of the public can hold parties and events in Fairview Heights, Illinois.

**ANSWER: Admitted.**

5.      At the beginning of their employment, employees at Innovative Heights' Sky Zone Fairview Heights facility are required to provide their private biometric identifiers in the form of their fingerprints, which they then must scan into Innovative Heights' system any time that they "clock in" or "clock out" of a shift throughout their employment. Employees must also scan their fingerprints into Innovative Heights' system at certain times in connection with their use of the cash registry, in the event it has "timed-out."

2

**ANSWER:  Defendant denies that it required employees to scan their fingerprints for timekeeping and other purposes.  Employees were given the option of scanning their fingerprints or using a PIN code for timekeeping purposes.**

6.      Even though it requires its employees to provide and use their fingerprints in connection with their employment, Innovative Heights fails to comply with the requirements set forth in IBIPA before collecting, capturing, and otherwise obtaining such fingerprints.

**ANSWER:  Defendant denies that it required employees to scan their fingerprints for timekeeping and other purposes.  Employees were given the option of scanning their fingerprints or using a PIN code for timekeeping purposes.  Defendant further answers by stating that the allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the Illinois Biometric Information Privacy Act ("BIPA") speaks for itself. To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Defendant denies that it violated the BIPA.**

7.      Innovative Heights' failure to comply with IBIPA means that its employees do not receive the important protections set forth in the statute, which is designed to allow employees and individuals to make informed decisions in connection with a private entity's collection, use, and retention of their private biometric identifiers, and to ensure that biometric identifiers are not obtained or used without the consent of the individual.

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as**

expressly stated, Defendant denies the allegations in this paragraph. Defendant denies that it violated the BIPA.

8.      By collecting, capturing, or otherwise obtaining Plaintiff's and Class Members' fingerprints without making publicly available a proper policy; by not informing Plaintiff and Class Members in writing that their fingerprints were being collected and the purpose therefore or the length of time that they were being held; and by not receiving a written release from Plaintiff and Class Members, Innovative Heights has violated IBIPA, specifically 740 ILCS 14/15(a) and (b)(1)-(3).

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as expressly stated, Defendant denies the allegations in this paragraph. Defendant denies that it violated the BIPA.**

9.      Based on Innovative Heights' violations of IBIPA, Plaintiff and Class Members seek to recover statutory and other damages and relief allowed under IBIPA.

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as expressly stated, Defendant denies the allegations in this paragraph.  Defendant denies that it violated the BIPA.**

## PARTIES

10.    Plaintiff Madisyn Stauffer is a resident of Madison County, Illinois. She was employed by Innovative Heights and worked at the Sky Zone Fairview Heights facility from January of 2018 through May of 2018.

**ANSWER:  Defendant admits that Plaintiff began working at the Sky Zone Fairview Heights facility on January 25, 2018 and that her last day working was May 25, 2018.  Upon information and belief, Defendant admits that Stauffer is a resident of Madison County.**

11.    Plaintiff had her fingerprints collected, captured, and otherwise obtained by Innovative Heights at the beginning of her employment with Innovative Heights, and on each occasion that she "clocked in" or "clocked out" throughout her employment. She also had her fingerprints collected, captured, and otherwise obtained by Innovative Heights during certain times that she used the cash registry.

**ANSWER:  Defendant denies the allegations of paragraph 11.**

12.    Defendant Innovative Heights is an Illinois Limited Liability Company, with its principal office located at 10850 Lincoln Trail, #12A, Fairview Heights, Illinois 62208. Its registered agent in Illinois is Bron Launsby, 10850 Lincoln Trail, #12A, Fairview Heights, Illinois 62208.

**ANSWER:  Admitted, but Defendant's principal office and registered agent are located at 10850 Lincoln Trail, #12B, Fairview Heights, IL 62208.**

13.    Innovative Heights conducts business in St. Clair County, Illinois, and transactions and conduct giving rise to the claims set forth in this Complaint occurred in St. Clair County, Illinois. Specifically, the location of Sky Zone Fairview Heights where Plaintiff and Class Members worked is in St. Clair County, Illinois.

5

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant. To the extent a response is required, Defendant admits that it transacts business in St. Clair County, Illinois.**

## JURISDICTION AND VENUE

14.     This is a class action filed pursuant to 735 ILCS 5/2-801.

**ANSWER: The allegations in this paragraph call for legal conclusions and do not require a response from Defendant. To the extent a response is required, Defendant admits that Plaintiff has brought this action as a class action.  Defendant denies that this action is properly brought as a class action.**

15.     This Court has jurisdiction over this action pursuant to 735 ILCS 5/2-209(a)(1) and 735 ILCS 5/2-209(b)(4).

**ANSWER: The allegations in this paragraph call for legal conclusions and do not require a response from Defendant. To the extent a response is required, Defendant admits that it transacts business within the state of Illinois.**

16.     This Court has personal jurisdiction over Innovative Heights because it is registered to do business in Illinois and because it regularly conducts business in Illinois.

**ANSWER: The allegations in this paragraph call for legal conclusions and do not require a response from Defendant. To the extent a response is required, Defendant admits that it is registered to do business in Illinois and regularly conducts business in Illinois.**

17.     Venue is proper in this Court pursuant to 735 ILCS 5/2-101 and 735 ILCS 5/2102 because Innovative Heights is doing business in St. Clair County and because the transactions or conduct at issue or some part thereof occurred in St. Clair County.

6

**ANSWER: The allegations in this paragraph call for legal conclusions and do not require a response from Defendant. To the extent a response is required, Defendant admits that it transacts business within St. Clair County.**

## JURY DEMAND

18.    For each Count in this Complaint, Plaintiff demands a jury trial to the extent it is allowed by law.

**ANSWER:  Defendant admits that Plaintiff has requested a jury trial.**

## THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT

19.    The State of Illinois passed IBIPA in 2008 to serve the public welfare, based on concerns, both known and unknown, associated with the growing collection and use of biometrics by companies and other entities. 740 ILCS 14/5.

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as expressly stated, Defendant denies the allegations in this paragraph. Defendant denies that it violated the BIPA.**

20.    The Illinois General Assembly found that while the use of biometrics has been growing, "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information" in that unlike social security numbers or other identifiers that can be changed when compromised, biometrics are "biologically unique to the individual; therefore, once compromised, the individual has no recourse..." 740 ILCS 14/5(a)-(c).

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as expressly stated, Defendant denies the allegations in this paragraph. Defendant denies that it violated the BIPA.**

21.     Furthermore, the Illinois General Assembly stated that "[t]he full ramifications of biometric technology are not fully known," and that "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(f)-(g).

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as expressly stated, Defendant denies the allegations in this paragraph. Defendant denies that it violated the BIPA.**

22.     Under IBIPA, a "biometric identifier" includes an individual's fingerprints, and the term "biometric information" "means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is**

8

inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as expressly stated, Defendant denies the allegations in this paragraph. Defendant denies that it violated the BIPA.

23.     IBIPA provides that a private entity (which includes an LLC such as Innovative Heights) that is in possession of biometric identifiers or biometric information "must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first..." 740 ILCS 14/15(a).

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as expressly stated, Defendant denies the allegations in this paragraph. Defendant denies that it violated the BIPA.**

24.     IBIPA also provides that a private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information" unless it first informs that person in writing that such an identifier or information is being collected or stored; informs that person in writing of the "specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used"; and receives a written release executed by the person who is the subject of the biometric identifier or information. 740 ILCS/14/15(b)(1)-(3).

9

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as expressly stated, Defendant denies the allegations in this paragraph. Defendant denies that it violated the BIPA.**

25.    The statute defines "written release" as "informed written consent or, in the context of employment, a release executed by an employee as a condition of employment." 740 ILCS 14/10. As shown by this definition, IBIPA applies to employers and protects employees working in Illinois.

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as expressly stated, Defendant denies the allegations in this paragraph. Defendant denies that it violated the BIPA.**

26.    Thus, while IBIPA does not prohibit an Illinois employer from using biometric identifiers of its employees for timekeeping or other purposes, it does require that an employer who wishes to do so must first comply with the safeguards set forth in the statute and obtain its employees' informed consent.

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is**

10

inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as expressly stated, Defendant denies the allegations in this paragraph. Defendant denies that it violated the BIPA.

### FACTLIAL ALLEGATOINS REGARDING DEFENDANT'S LIABILITY

27.     Plaintiff began her employment with Innovative Heights in January of 2018 and worked for Innovative Heights as a Cashier, Event Host, and Event Planner at its Sky Zone Fairview Heights facility. She continued to work for Innovative Heights at its Sky Zone Fairview Heights facility until May of 2018.

**ANSWER:  Defendant admits that Plaintiff worked at the Sky Zone Fairview Heights facility from January 25, 2018 until May 25, 2018.  Defendant admits that Plaintiff worked the positions of Cashier, Event Host, and Event Assistant.**

28.     When Plaintiff began her employment with Innovative Heights, she was required to have her fingerprints taken, and she provided her fingerprints to Innovative Heights as required.

**ANSWER:  Defendant denies that it required employees to scan their fingerprints for timekeeping and other purposes.  Employees were given the option of scanning their fingerprints or using a PIN code for timekeeping purposes.**

29.     Plaintiff's fingerprints were then used in lieu of a more traditional time clock, in that she was required to scan her fingerprints into Innovative Heights's system each time she "clocked in" or "clocked out" of work throughout her employment.

**ANSWER:  Defendant denies that it required employees to scan their fingerprints for timekeeping and other purposes.  Employees were given the option of scanning their fingerprints or using a PIN code for timekeeping purposes.**

30.     Plaintiff also was required to scan her fingerprints at additional times throughout her employment in connection with her use of the cash register. Specifically, if she had not recently been helping a customer and the cash register had timed out and needed to be "woken up," she had to do so by scanning her fingerprints.

**ANSWER:  Defendant denies that it required employees to scan their fingerprints for timekeeping and other purposes.   Employees were given the option of scanning their fingerprints or using a PIN code for timekeeping purposes.**

31.     Plaintiff is currently unaware if and when Innovative Heights has destroyed her fingerprints, or how much longer they may be held by Innovative Heights.

**ANSWER:   Defendant destroyed Plaintiff's fingerprint data in May 2019.**

32.     Innovative Heights collected, captured, obtained, and possessed Plaintiff's and Class Members' fingerprints at the beginning of their employment with Innovative Heights and each time thereafter when Plaintiff and Class Members scanned their fingerprints to "clock in" or "clock out" or to awaken the cash register, yet Innovative Heights did not make available to the public a written policy establishing a retention schedule and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting such fingerprints has been satisfied.

**ANSWER:   Defendant denies the allegations of Paragraph 32 and denies that it violated the BIPA.**

33.     Its failure to publish such a policy means that when Plaintiff and Class Members leave the employment of Innovative Heights, they are left unaware if and when their biometric identifiers will be destroyed. Furthermore, if Innovative Heights were to be sold or go out of

business, Plaintiffs and Class Members would be left unaware as to who is in possession of their highly confidential and private biometric identifiers.

**ANSWER:   Defendant denies the allegations of Paragraph 33 and denies that it violated the BIPA.**

34.     Innovative Heights also failed to notify Plaintiff and Class Members in writing that their fingerprints were being collected, stored, and used, even though their fingerprints were collected and stored by Innovative Heights when they began their employment. Furthermore, Innovative Heights required Plaintiff and Class Members to scan their fingerprints many times during every day that they reported to work at its Sky Zone Fairview Heights facility.

**ANSWER:   Defendant denies the allegations of Paragraph 34 and denies that it violated the BIPA.**

35.     Innovative Heights also collected or captured Plaintiff's and Class Members' fingerprints without informing them in writing for what purpose their fingerprints were being collected, stored, or used, or for how long their fingerprints were being collected, stored, or used.

**ANSWER:   Defendant denies the allegations of Paragraph 35 and denies that it violated the BIPA.**

36.     Innovative Heights also failed to obtain a written release from Plaintiff and Class Members before collecting their fingerprints.

**ANSWER:   Defendant denies the allegations of Paragraph 36 and denies that it violated the BIPA.**

37.     Innovative Heights' actions have prevented Plaintiff and Class Members from giving their informed consent and having access to important information regarding how their sensitive biometric identifiers are stored and kept.

**ANSWER:  Defendant denies the allegations of Paragraph 37 and denies that it violated the BIPA.**

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action on her own behalf and as a class action on behalf of all similarly situated employees of Innovative Heights who worked at its Sky Zone Fairview Heights facility and were injured by Innovative Heights' failure to comply with IBIPA.

**ANSWER:  Defendant admits that Plaintiff purports to bring the claims set forth in her Complaint as a class action on behalf of the proposed putative class described in this paragraph, but denies that this action may be maintained as a class action.  Defendant denies liability to Plaintiff or any member of the purported class. Except as expressly admitted, Defendant denies the allegations in this paragraph.**

39.     Specifically, pursuant to 735 ILCS 5/2-801, Plaintiff seeks certification of the following Class, defined as follows:

All persons from whom Innovative Heights collected, captured, received, or otherwise obtained biometric identifiers or biometric information, including fingerprints, during the applicable statutory period prior to: (1) receiving a written release; and/or (2) providing written information that their biometric identifier or biometric information was being collected or stored and the purpose and length thereof. Excluded from the Class is any person who has or had a controlling interest in Innovative Heights.

**ANSWER:  Defendant admits that Plaintiff purports to bring the claims set forth in her Complaint as a class action on behalf of the proposed putative class described in this paragraph, but denies that this action may be maintained as a class action.  Defendant denies**

14

**liability to Plaintiff or any member of the purported class. Except as expressly admitted, Defendant denies the allegations in this paragraph.**

40.     **Numerosity.** The exact size of the Class is currently unknown to Plaintiff, but on information and belief the total number of Class Members is in the hundreds, and the Class is so numerous that joinder of all Class Members would be impracticable.

**<u>ANSWER</u>: The allegations in this paragraph call for legal conclusions and do not require a response from Defendant. To the extent a response is required, Defendant denies that this action may be maintained as a class action, denies liability to Plaintiff or any member of the purported class, and denies the allegations in this paragraph.**

41.     **Commonality.** There is a well-defined community of interest in the questions of law and fact affecting Class Members, and questions of law and fact common to the Class predominate over any questions affecting only individual members. Among the numerous questions of law or fact common to the Class are the following:

a.     Whether Innovative Heights developed and made available to the public a policy in compliance with 740 ILCS 14/15(a), before it obtained Plaintiff's and Class Members' biometric identifiers;

b.     Whether Innovative Heights collected, captured, or otherwise obtained Plaintiff's and Class Members' biometric identifiers or biometric information;

c.     Whether Innovative Heights informed Plaintiff and Class Members in writing that it was collecting their biometric identifier or biometric information;

d.     Whether Innovative Heights informed Plaintiff and Class Members in writing of the specific purpose and length of term for which it was collecting their biometric identifier or biometric information;

e.     Whether Innovative Heights received written releases from Plaintiffs and Class Members before capturing, collecting, or otherwise obtaining their biometric identifiers or biometric information;

f.     Whether Innovative Heights used Plaintiff's and Class Members' biometric identifiers or biometric information to identify them; and

15

g.      Whether any violations of IBIPA by Innovative Heights were negligent, or rather were reckless or intentional.

**ANSWER: The allegations in this paragraph call for legal conclusions and do not require a response from Defendant. To the extent a response is required, Defendant denies that this action may be maintained as a class action, denies liability to Plaintiff or any member of the purported class, and denies the allegations in this paragraph.**

42.      **Typicality.** The claims of Plaintiff are typical of the claims of the members of the Class. Plaintiff and all members of the Class have had their rights under IBIPA violated based on Innovative Heights' failure to comply with the provisions of IBIPA.

**ANSWER: The allegations in this paragraph call for legal conclusions and do not require a response from Defendant. To the extent a response is required, Defendant denies that this action may be maintained as a class action, denies liability to Plaintiff or any member of the purported class, and denies the allegations in this paragraph.**

43.      **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and has no conflict of interest with other Class Members. Plaintiff's attorneys are experienced in this type of litigation and will prosecute the action vigorously on behalf of the Class.

**ANSWER: The allegations in this paragraph call for legal conclusions and do not require a response from Defendant. To the extent a response is required, Defendant denies that this action may be maintained as a class action, denies liability to Plaintiff or any member of the purported class, and denies the allegations in this paragraph.**

44.      **Superiority.** A class action is an appropriate method to adjudicate this controversy and is superior to any other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action

16

that would preclude its maintenance as a class action. Furthermore, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications concerning the subject of this action. A class action would conserve the resources of the courts and litigants and further efficient adjudication of Class Member claims.

**ANSWER: The allegations in this paragraph call for legal conclusions and do not require a response from Defendant. To the extent a response is required, Defendant denies that this action may be maintained as a class action, denies liability to Plaintiff or any member of the purported class, and denies the allegations in this paragraph.**

## COUNT I: INNOVATIVE HEIGHTS VIOLATION OF 740 I L.,CS 1411, et seq
### (Plaintiff and the Class)

45.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

**ANSWER:  Defendant incorporates its responses to paragraphs 1 through 44 of the Complaint as if set forth fully herein.**

46.     By obtaining and possessing Plaintiff's and Class Members' fingerprints without developing a written policy made available to the public that established a retention schedule and guidelines for the destruction of Plaintiff's and Class Members' biometric identifiers or biometric information, Innovative Heights violated IBIPA. 740 ILCS 14/15(a).

**ANSWER:  Defendant denies the allegations of paragraph 46.**

47.     Innovative Heights also violated Plaintiff's and Class Members' rights under IBIPA by collecting, capturing, or otherwise obtaining their fingerprints, and not first:

> a.     informing Plaintiff and Class Members in writing that their fingerprints were being collected or stored;

17

b.     informing Plaintiff and Class Members in writing of the specific purpose and length of term for which their fingerprints were being collected, stored, and used;

c.     receiving a written release executed by Plaintiff and Class Members. 740 ILCS 14/15(b)(1)-(3).

**ANSWER: Defendant denies the allegations of paragraph 47.**

48.     Because Plaintiff's and Class Members' biometric identifiers (in the form of their fingerprints) were used to identify them, they constitute "biometric information." 740 ILCS 14/10.

**ANSWER: Defendant denies the allegations of paragraph 48.**

49.     Plaintiff's and Class Members' rights under IBIPA were violated by Innovative Height's failure to comply with IBIPA as set forth above, and in so violating IBIPA, Innovative Heights acted negligently, recklessly and/or intentionally.

**ANSWER: Defendant denies the allegations of paragraph 49.**

50.     Plaintiff and Class Members are "aggrieved" under IBIPA based on Innovative Heights' violation of their rights under IBIPA, and accordingly are entitled to seek damages and relief provided for under the statute. *See Rosenbach v. Six Flags Entm 't Corp.,* 2019 IL 123186, ¶ 40.

**ANSWER: Defendant denies the allegations of paragraph 50.**

51.     Plaintiff and Class Members are therefore entitled to damages available under IBIPA, including liquidated damages of $1,000 for each and every negligent violation, or alternatively, $5,000 for each and every intentional or reckless violation, or actual damages,whichever is greater, injunctive relief, and further damages and relief as set forth in the

**ANSWER: Defendant denies the allegations of paragraph 51.**

PRAYER FOR RELIEF below. 740 1LCS 14/20(1)-(4).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, pray for judgment against Innovative Heights as follows:

A.      Certifying the Class as requested herein;

B.      Entering an order appointing Law Office of Richard S. Cornfeld, LLC and Goldenberg Heller & Antognoli, P.C. as lead counsel for the Class;

C.      Awarding statutory damages of $1,000 for each and every negligent violation of IBIPA, or alternatively, statutory damages of $5,000 for each and every violation if the Court finds that Innovative Heights' violations were intentional or reckless;

D.      Awarding actual damages to Plaintiff and the members of the Class if greater than liquidated damages, as provided for under IBIPA;

E.      Declaring that Innovative Heights' actions, as set forth above, violate IBIPA;

F.      Awarding injunctive or other equitable relief as required to protect the interests of Plaintiff and Class Members, including an order requiring Innovative Heights to collect, store, use, and destroy biometric identifiers and biometric information in a manner that complies with the requirements set forth in IBIPA;

G.      Awarding pre judgment and post-judgment interest;

H.      Awarding reasonable attorneys' fees and costs herein;

I.      Awarding such other and further relief as the court deems fit and proper.

**ANSWER:  Defendant denies that Plaintiff is entitled to the relief sought in this "Wherefore" paragraph, including all subparts, and denies the allegations in this paragraph.**

## AFFIRMATIVE DEFENSES

Defendant Innovative Heights Fairview Heights, LLC asserts the following affirmative defenses.  Defendant reserves the right to amend its Answer to include any additional affirmative and/or other defenses which may be determined through further fact investigation or discovery in this matter.

### First Affirmative Defense

### (Good Faith and Substantial Compliance)

1.      The Complaint is barred, in whole or in part, because Defendant's substantial compliance with the requirements of the BIPA excuses any alleged procedural or technical violations of the BIPA.

2.      To the extent that the BIPA applies to Defendant's time tracking system or devices, the claims are barred in whole or in part based on Defendant's good faith and reasonable interpretation of the BIPA and substantial compliance therewith.

3.      Defendant utilized its time tracking practices and devices for legitimate business purposes.

4.      No "biometric identifiers" or "biometric information" of Plaintiff or any putative class member has been stored, transmitted or protected in a manner deemed to be unreasonable within the relevant industry or subject to safeguards that are less protective than the manner used to protect Defendant's own confidential or other sensitive information.

5.      To the extent the BIPA applies to Defendant's time tracking devices, the BIPA requirements are satisfied by disclosures regarding Defendant's time tracking system that persons employed by or working for Defendant received at or around the time of their hire or initial assignment to work at one of Defendant's locations.

20

**Second Affirmative Defense**

**(Due Process / Unconstitutional)**

6.     The Complaint is barred, in whole or in part, by the Due Process Clause of the United States Constitution and/or the Constitution of the State of Illinois.

7.     Plaintiff alleges that she and the putative class members she seeks to represent are entitled to recover $1,000 or $5,000 in statutory liquidated damages for each alleged violation of the BIPA.

8.     Assuming Plaintiff's allegations are true, such allegations amount only to a bare procedural or technical violation of the BIPA.

9.     Plaintiff and/or members of the putative class have not suffered any actual injury or other harm as a result of any violation of the BIPA.

10.    No "biometric identifiers" or "biometric information" of Plaintiff or any putative class member has been compromised by a data breach, identity theft, or other unauthorized disclosure.

11.    Nor have any such "biometric identifiers" or "biometric information" been misappropriated, misused, subject to an improper sale, lease, trade, or profit.

12.    No "biometric identifiers" or "biometric information" of Plaintiff or any putative class member has been stored, transmitted or protected in a manner deemed to be unreasonable within the relevant industry or subject to safeguards that are less protective than the manner used to protect Defendant's own confidential or other sensitive information.

13.    Harm that is speculative and/or hypothetical is not a cognizable injury or otherwise actionable under the BIPA, and does not render Plaintiff or any putative class member "aggrieved" by the alleged violation of the BIPA.

14. The statutory liquidated damages potentially available under the BIPA, as applied to Plaintiff's and/or putative class members' claims and allegations, are grossly excessive and disproportionate in light of the absence of any injury or harm to Plaintiff and/or members of the putative class.

15. The statutory liquidated damages potentially available under the BIPA, as applied to Plaintiff's and/or putative class members' claims and allegations, would result in a windfall to Plaintiff and/or putative class members because the BIPA's liquidated damages per-violation on a class-wide basis would be entirely disproportionate to a technical violation of the statute.

16. The BIPA is unconstitutional because the statutory damage potentially available are grossly excessive and disproportionate in light of any actual harm to Plaintiff and the putative class.

17. Any award of statutory liquidated damages to the Plaintiff or putative class members would violate Defendant's due process rights.

## Third Affirmative Defense

## (Unenforceable Liquidated Damages)

18. The Complaint is barred, in whole or in part, because the BIPA's liquidated statutory damages provision is not enforceable.

19. Plaintiff alleges that she and the putative class members she seeks to represent are entitled to recover $1,000 or $5,000 in statutory liquidated damages for each alleged negligent violation of the BIPA.

20. Plaintiff and/or members of the putative class do not even seek to recover actual damages.

22

21.     Assuming *arguendo* that Plaintiff's allegations are true, such allegations amount only to a bare procedural or technical violation of the BIPA.

22.     No "biometric identifiers" or "biometric information" of Plaintiff or any putative class member has been compromised by a data breach, identity theft, or other unauthorized disclosure.

23.     Nor have any such "biometric identifiers" or "biometric information" been misappropriated, misused, subject to an improper sale, lease, trade, or profit.

24.     No "biometric identifiers" or "biometric information" of Plaintiff or any putative class member has been stored, transmitted or protected in a manner deemed to be unreasonable within the relevant industry or subject to safeguards that are less protective than the manner used to protect Defendant's own confidential or other sensitive information.

25.     Harm that is speculative and/or hypothetical is not a cognizable injury or otherwise actionable under the BIPA, and does not render Plaintiff or any putative class member "aggrieved" by the alleged violation of the BIPA.

26.     The statutory liquidated damages potentially available under the BIPA, as applied to Plaintiff's claims and allegations, do not reasonably estimate Plaintiff's and/or putative class members' actual damages, which are zero.

27.     Accordingly, any such recovery would not be a reasonable estimate of actual damages, but instead would be more akin to punitive damages for strict liability— given that Plaintiff and the putative class members have not suffered any injury nor incurred any harm to warrant such relief.

28.     Therefore, Plaintiff and/or members of the putative class should not be permitted to recover statutory liquidated damages where no actual damages have been suffered or alleged.

## Fourth Affirmative Defense

### (Waiver/Authorization/Consent/Ratification/Acquiescence)

29.     The Complaint is barred, in whole or in part, because of Plaintiff's and any putative class members' authorization, consent to, ratification of, and/or acquiescence to Defendant's time tracking practices and use of Defendant's time tracking devices.

30.     Plaintiff and the putative class members actually or constructively consented and agreed, either expressly or impliedly, to the non-invasive use of Defendant's time tracking devices, without threat, coercion or compulsion, as part of the time tracking systems and procedures at their place of work, and continued to voluntarily use Defendant's time tracking devices with knowledge of their operation and without making any inquiry concerning the collection, use, or retention of personal information.

## Fifth Affirmative Defense

### (Estoppel)

31.     The Complaint is barred, in whole or in part, by the doctrine of estoppel.

32.     Plaintiff and the putative class members actually or constructively consented and agreed, either expressly or impliedly, to the non-invasive use of Defendant's time tracking devices, without threat, coercion or compulsion, as part of the time tracking systems and procedures at their place of work, and continued to voluntarily use Defendant's time tracking devices with knowledge of their operation and without making any inquiry concerning the collection, use, or retention of personal information.

## Sixth Affirmative Defense

### (Laches)

33.     The Complaint is barred, in whole or in part, by the doctrine of laches to the extent Plaintiff and the putative class members unreasonably delayed before asserting their purported rights under BIPA and, thereby, cause undue prejudice to Defendant.

34.     Defendant implemented its time tracking system at issue in May 2017.

35.     Plaintiff and each putative Class member knew of Defendant's time tracking system conduct, and even participated in using Defendant's time tracking devices for years.

36.     Neither Plaintiff nor any potential class member ever expressed a concern about Defendant's time tracking system, nor did they request to use the alternative method of clocking in/clocking out that existed.

37.     Yet Plaintiff did not file this lawsuit until April 29, 2019.

## Seventh Affirmative Defense

### (Unclean Hands)

38.     The Complaint is barred, in whole or in part, by the doctrine of unclean hands, due to Plaintiff's and/or putative class members' own acts and/or omissions with respect to the subject matter of the Complaint.

39.     Plaintiff and each putative class member approved and participated in the complained-of conduct by using, and agreeing to use, Defendant's time tracking systems, practices, and devices.

## Eighth Affirmative Defense

## (Last Clear Chance or Avoidance)

40.     The Complaint is barred, in whole or in part, by the doctrines of last clear chance and/or avoidance.

41.     Plaintiff and/or members of the putative class (the existence of which is expressly denied) had the ability and/or the last clear chance to avoid using Defendant's time tracking devices and thus, to avoid any harm or damage they have allegedly suffered.

42.     Plaintiff and the putative class members chose to use Defendant's time tracking devices, without threat, coercion or compulsion, as part of the time tracking systems or procedures at their place of work, and continued to voluntarily use Defendant's time tracking devices with knowledge of their operation and without making any inquiry or objection concerning the collection, use, or retention of any data or information.

## Ninth Affirmative Defense

## (Contributory/Comparative Fault)

43.     Defendant places in issue the negligence, faults, and responsibilities of all persons and entities, including Plaintiff and/or members of the putative class (the existence of which is expressly denied), Plaintiff's employer, the putative class members' employers, and the timeclock technology vendors or software license providers, that have contributed in any degree to the injuries and damages alleged to have been sustained by Plaintiff and/or members of the putative class.

44.     Assuming that 100% represents the total combined negligence or fault, the negligence or fault of parties other than Defendant is more than 50% of the total proximate cause of the alleged damages and, therefore, there is no liability on the part of Defendant.

45.     In the alternative, judgment against Defendant, if any, should be diminished to an amount that represents Defendant's degree of negligence, fault, or responsibility, if any.

46.     If Plaintiff is found to be entitled to recover any alleged damages, Defendant's share thereof must be apportioned or reduced to the extent that such damages are attributable to persons or entities other than Defendant.

47.     Additionally, if Defendant's fault is determined to be less than 25% of the total fault attributable to Plaintiff, Defendant, and any other third parties, Defendant should only be severally liable.

**Tenth Affirmative Defense**

**(Failure to Mitigate Damages)**

48.     The Complaint is barred, in whole or in part, by Plaintiff's and/or putative class members' (the existence of which is expressly denied) failure to mitigate their alleged damages.

49.     Plaintiff and the putative class members voluntarily used Defendant's time tracking devices, without threat, coercion or compulsion, as part of the time tracking systems and procedures at their place of work, and continued to voluntarily use Defendant's time tracking devices with knowledge of their operation and without making any inquiry concerning the collection, use, or retention of personal information.

50.     Strict compliance with the BIPA (including the publication of a written policy with retention schedules and guidelines for permanently destroying biometric identifiers and biometric information, as well as obtaining advance written consent for the collection, storage, and use of such data and/or disclosing the purpose and length of term for same) would not have stopped Plaintiff or any putative class member from voluntarily using Defendant's time tracking devices and, therefore, would not have prevented the collection, storage, and use of any data, or mitigate

27

against risk associated with the prospect of a data breach, identity theft, or other unauthorized disclosure.

51.    Plaintiff failed to complain to Defendant about the alleged time tracking system. Had she raised such concerns, Defendant would have provided Plaintiff the ability to use a different process for clocking in/clocking out.

### Eleventh Affirmative Defense

### (Statute of Limitations)

52.    The Complaint may be barred, in whole or in part, by any applicable statutes of limitations, including, but not limited to, the one-year statute of limitations for publication of matter violating a right of privacy or the two-year statute of limitations for actions involving, among other things, personal injury. *See* 735 ILCS 5/13-201; 735 ILCS 5/13-202.

53.    Defendant implemented its time tracking system at issue in May 2017.

54.    Plaintiff did not file this lawsuit until April 29, 2019.

### Twelfth Affirmative Defense

### (Preemption)

55.    The Complaint is barred, in whole or in part, to the extent that any claim of Plaintiff or any putative class member (the existence of which is expressly denied) is barred or preempted by the Workers' Compensation Act, 820 ILCS 305/1 *et seq*.

### Thirteenth Affirmative Defense

### (Claim or Issue Preclusion)

56.    The Complaint is barred, in whole or in part, to the extent that any claim of Plaintiff or any putative class member (the existence of which is expressly denied) is barred under the doctrines of issue or claim preclusion.

**Fourteenth Affirmative Defense**

**(Release or Accord and Satisfaction)**

57.     The Complaint is barred, in whole or in part, to the extent that any claim of Plaintiff

or any putative class member (the existence of which is expressly denied) is barred under the

doctrines of release and/or accord and satisfaction.

**Fifteenth Affirmative Defense**

**(Extraterritorial Application)**

58.     The Complaint is barred, in whole or in part, to the extent that any claim of Plaintiff

or any putative class member (the existence of which is expressly denied) requires extraterritorial

application of the BIPA.

**PRAYER FOR RELIEF**

WHEREFORE, Innovative Heights Fairview Heights, LLC prays for dismissal of the

Complaint, with prejudice, at Plaintiff's cost, and for such other and further relief as the Court

deems just and proper.

**JURY DEMAND**

Defendant demands a trial by jury on all issues so triable.

By:   */s/ Charles N. Insler*
       Glenn E. Davis #6184597
       Charles N. Insler #6291652
       HEPLER BROOM LLC
       One Metropolitan Square
       211 North Broadway Suite 2700
       St. Louis, MO 63102
       Phone: 314-241-6160
       Fax: 314-241-6116
       cni@heplerbroom.com
       ged@heplerbroom.com

       *Counsel for the Defendant Innovative Heights*
       *Fairview Heights, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically with the Clerk of Court and served upon all counsel of record via the Court's electronic notification system on this 30th day of July 2019 and that a courtesy copy was sent by email to the following counsel of record:

Richard S. Cornfeld
Daniel S. Levy
1010 Market Street, Suite 1645
St. Louis, MO 63101
rcornfeld@cornfeldlegal.com
dlevy@cornfeldlegal.com

Kevin P. Green
Goldenberg Heller & Antognoli, P.C.
2227 South State Route 157
Edwardsville, IL 62025
kevin@ghalaw.com

*Attorneys for Plaintiff Madisyn Stauffer*

*/s/ Charles N. Insler*
Charles N. Insler

Electronically Filed
Kahalah A. Clay
Circuit Clerk
RACHEL MENDEZ
19L0311
St. Clair County
8/20/2019 5:08 PM
6259863

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

MADISYN STAUFFER,                              )
on behalf of herself and all others similarly  )
situated,                                      )
                                               )
            Plaintiff,                         )        Cause No. 19L0311
                                               )
                                               )
v.                                             )
                                               )
INNOVATIVE HEIGHTS FAIRVIEW                     )
HEIGHTS, LLC                                    )
                                               )
            Defendant.                         )

**PLAINTIFF'S REPLY TO DEFENDANT'S AFFIRMATIVE DEFENSES**

Plaintiff Madisyn Stauffer ("Plaintiff") states as follows for her reply to Defendant

Innovative Heights Fairview Heights, LLC's ("Innovative Heights") affirmative defenses to

Plaintiff's Complaint:

**First Affirmative Defense**
**(Good Faith and Substantial Compliance)**

Plaintiff makes no reply to Innovative Heights' first affirmative defense pending ruling

on Plaintiff's Motion to Strike Defendant's Affirmative Defenses, filed contemporaneously with

this reply.

**Second Affirmative Defense**
**(Due Process/Unconstitutional)**

6.      Plaintiff denies the allegations contained in paragraph 6.

7.      Plaintiff admits the allegations contained in paragraph 7.

8.      Plaintiff denies the allegations contained in paragraph 8.

9.      Plaintiff denies the allegations contained in paragraph 9.

1

10.     Plaintiff does not have knowledge sufficient to admit or deny the allegations contained in paragraph 10, and therefore denies same.

11.     Plaintiff does not have knowledge sufficient to admit or deny the allegations contained in paragraph 11, and therefore denies same.

12.     Plaintiff does not have knowledge sufficient to admit or deny the allegations contained in paragraph 12, and therefore denies same.

13.     Plaintiff denies the allegations contained in paragraph 13.

14.     Plaintiff denies the allegations contained in paragraph 14.

15.     Plaintiff denies the allegations contained in paragraph 15.

16.     Plaintiff denies the allegations contained in paragraph 16.

17.     Plaintiff denies the allegations contained in paragraph 17.

### Third Affirmative Defense
### (Unenforceable Liquidated Damages)

Plaintiff makes no reply to Innovative Heights' third affirmative defense pending ruling on Plaintiff's Motion to Strike Defendant's Affirmative Defenses, filed contemporaneously with this reply.

### Fourth Affirmative Defense
### (Waiver/Authorization/Consent/Ratification/Acquiescence)

Plaintiff makes no reply to Innovative Heights' fourth affirmative defense pending ruling on Plaintiff's Motion to Strike Defendant's Affirmative Defenses, filed contemporaneously with this reply.

### Fifth Affirmative Defense
### (Estoppel)

Plaintiff makes no reply to Innovative Heights' fifth affirmative defense pending ruling on Plaintiff's Motion to Strike Defendant's Affirmative Defenses, filed contemporaneously with this reply.

### Sixth Affirmative Defense
### (Laches)

Plaintiff makes no reply to Innovative Heights' sixth affirmative defense pending ruling on Plaintiff's Motion to Strike Defendant's Affirmative Defenses, filed contemporaneously with this reply.

### Seventh Affirmative Defense
### (Unclean Hands)

Plaintiff makes no reply to Innovative Heights' seventh affirmative defense pending ruling on Plaintiff's Motion to Strike Defendant's Affirmative Defenses, filed contemporaneously with this reply.

### Eighth Affirmative Defense
### (Last Clear Chance or Avoidance)

Plaintiff makes no reply to Innovative Heights' eighth affirmative defense pending ruling on Plaintiff's Motion to Strike Defendant's Affirmative Defenses, filed contemporaneously with this reply.

### Ninth Affirmative Defense
### (Contributory/Comparative Fault)

Plaintiff makes no reply to Innovative Heights' ninth affirmative defense pending ruling on Plaintiff's Motion to Strike Defendant's Affirmative Defenses, filed contemporaneously with this reply.

## Tenth Affirmative Defense
### (Failure to Mitigate Damages)

Plaintiff makes no reply to Innovative Heights' tenth affirmative defense pending ruling on Plaintiff's Motion to Strike Defendant's Affirmative Defenses, filed contemporaneously with this reply.

## Eleventh Affirmative Defense
### (Statute of Limitations)

52.    Plaintiff denies the allegations contained in paragraph 52.

53.    Plaintiff does not have knowledge sufficient to admit or deny the allegations contained in paragraph 53, and therefore denies same.

54.    Plaintiff admits the allegations contained in paragraph 54.

## Twelfth Affirmative Defense
### (Preemption)

Plaintiff makes no reply to Innovative Heights' twelfth affirmative defense pending ruling on Plaintiff's Motion to Strike Defendant's Affirmative Defenses, filed contemporaneously with this reply.

## Thirteenth Affirmative Defense
### (Claim or Issue Preclusion)

Plaintiff makes no reply to Innovative Heights' thirteenth affirmative defense pending ruling on Plaintiff's Motion to Strike Defendant's Affirmative Defenses, filed contemporaneously with this reply.

## Fourteenth Affirmative Defense
### (Release or Accord and Satisfaction)

Plaintiff makes no reply to Innovative Heights' fourteenth affirmative defense pending ruling on Plaintiff's Motion to Strike Defendant's Affirmative Defenses, filed contemporaneously with this reply.

**<u>Fifteenth Affirmative Defense</u>**
**<u>(Extraterritorial Application)</u>**

Plaintiff makes no reply to Innovative Heights' fifteenth affirmative defense pending

ruling on Plaintiff's Motion to Strike Defendant's Affirmative Defenses, filed

contemporaneously with this reply.

WHEREFORE, Plaintiff prays for judgment in accordance with the prayer for relief set

forth in her Complaint.

Dated: August 20, 2019                    Respectfully submitted,

                                          **LAW OFFICE OF RICHARD S. CORNFELD, LLC**

                                          By:  */s/ Richard S. Cornfeld*
                                               Richard S. Cornfeld, #0519391
                                               Daniel S. Levy, #6315524
                                               1010 Market Street, Suite 1645
                                               St. Louis, MO 63101
                                               P. 314-241-5799
                                               F. 314-241-5788
                                               rcornfeld@cornfeldlegal.com
                                               dlevy@cornfeldlegal.com

                                               And

                                               Kevin P. Green, #6299905
                                               GOLDENBERG HELLER & ANTOGNOLI, P.C.
                                               2227 South State Route 157
                                               Edwardsville, IL 62025
                                               Telephone: (618) 656-5150
                                               kevin@ghalaw.com

                                               *Attorneys for Plaintiff*

5

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on this 20th day of August that the foregoing

document was filed electronically with the Clerk of Court and served upon all counsel of record

via the Court's electronic notification system.

<u>  */s/ Richard S. Cornfeld*           </u>

Electronically Filed
Kahalah A. Clay
Circuit Clerk
RACHEL MENDEZ
19L0311
St. Clair County
8/20/2019 5:11 PM
6259982

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

|  |  |  |
|---|---|---|
| MADISYN STAUFFER, | ) | |
| on behalf of herself and all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 19L0311 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INNOVATIVE HEIGHTS FAIRVIEW HEIGHTS, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES AND MEMORANDUM IN SUPPORT

Plaintiff Madisyn Stauffer ("Plaintiff"), pursuant to 735 ILCS 5/2-615, moves to strike

Defendant Innovative Heights Fairview Heights, LLC's ("Defendant") affirmative defense Nos.

1, 3-10, and 12-15. In support thereof, Plaintiff states as follows:

## I. INTRODUCTION

Plaintiff alleges in her Class Action Complaint ("Complaint") that Defendant violated the

Illinois Biometric Information Privacy Act ("IBIPA"), 740 ILCS 14/1, *et seq*., by requiring

Plaintiff and other employees of Defendant to provide Defendant with their fingerprints and to

scan them into its system for timekeeping and other purposes, without complying with the

requirements of IBIPA. The Complaint provides that Defendant obtained and captured Plaintiff's

private biometric identifiers as set forth above without first (a) developing and making available

a written policy establishing a schedule and guidelines for the destruction of biometric

information, (b) informing its employees in writing that their biometric information is being

1

collected or stored and the specific purpose and term for which it is collected or stored, and (c) receiving written releases from its employees whose biometric information is being collected or stored.

Defendant filed its Answer and Affirmative Defenses to Plaintiff's Class Action Complaint ("Answer") on July 30, 2019. The Answer includes 15 purported affirmative defenses but almost all either fail to comply with the pleading requirements that affirmative defenses set forth specific facts to meet the elements of the defense or are otherwise legally insufficient. Such affirmative defenses are improper and should be stricken as set forth below.

## II  DEFENDANTS' AFFIRMATIVE DEFENSES THAT ARE LEGALLY INSUFFICIENT SHOULD BE STRICKEN

### A.  A Court Should Strike Affirmative Defenses that are Legally Insufficient.

Affirmative defenses are defenses to a claim "in which the defendant gives color to his opponent's claim but asserts new matter which defeats an apparent right in the plaintiff." *Hartmann Realtors v. Biffar*, 2014 IL App (5th) 130543, ¶ 20 (quoting *Raprager v. Allstate Insurance Co.,* 183 Ill. App. 3d 847, 854 (2d Dist. 1989)). A motion to strike an affirmative defense under 735 ILCS 5/2-615 "challenges the legal sufficiency of the affirmative defense." *Id*. (quoting *Raprager,* 183 Ill. App. 3d at 854). To properly set forth an affirmative defense "sufficient facts must be alleged to satisfy each element of the affirmative defense" and in determining the sufficiency of such a defense "the court will disregard any conclusions of fact or law that are not supported by allegations of specific fact." *Id*. (quoting *Richco Plastic Co. v. IMS Co.,* 288 Ill. App.3d 782, 784-85 (1st Dist. 1997). Facts in an affirmative defense must be set forth with the "same degree of specificity" as required by a plaintiff to establish a cause of action. *Int'l Ins. Co. v. Sargent & Lundy*, 242 Ill. App. 3d 614, 630–31 (1st Dist. 1993). "A motion to strike an affirmative defense admits all well-pleaded facts constituting the defense,

together with all reasonable inferences which may be drawn therefrom, and raises only a question of law as to the sufficiency of the pleading." *Raprager*, 183 Ill. App. 3d at 854 (internal citations omitted).

**B.  Many of Defendant's Affirmative Defenses are Insufficient and Should be Stricken.**

The majority of Defendant's affirmative defenses are conclusory and lack specific facts to support the defense or are otherwise insufficient. Accordingly, Defendant's affirmative defenses should be stricken as follows:

**First Affirmative Defense (Good Faith and Substantial Compliance):**

Defendant includes no specific facts supporting its defense of "substantial compliance" with IBIPA's requirements. Defendant merely sets forth conclusory allegations, such as its storage of biometric identifiers not being "unreasonable within the relevant industry" and subject to the same safeguards "used to protect Defendant's own confidential or other sensitive information." Affirmative Defense ("Aff. Def.") ¶ 4. But Defendant fails to state how such identifiers are stored, what "relevant industry" it is referring to or why this matters, how it protects its own information, or how these unidentified practices substantially comply with the requirements of IBIPA. Defendant also references disclosures that its employees purportedly received without including any facts about any such disclosures, such as what was disclosed or how it was disclosed (if not in writing, the disclosure did not comply with the statute). Aff. Def. ¶ 5. There are no facts showing that Defendant even attempted to comply with IBIPA, let alone came close to meeting IBIPA's requirements that it establish and make available a policy for the destruction of biometric information, inform its employees *in writing* of the collection of their biometric information and the purpose and term thereof, and receive written releases. 740 ILCS 14/15(a) and (b)(1)-(3). Accordingly, this affirmative defense should be stricken.

**Third Affirmative Defense (Unenforceable Liquidated Damages):**

This affirmative defense is legally insufficient pursuant to the Illinois Supreme Court's

decision in *Rosenbach v. Six Flags Entm't Corp.*, ___ N.E. 3d ___, 2019 IL 123186 (opinion not

yet released for publication in permanent law reports). Defendant argues that Plaintiff and

putative class members are not "aggrieved," do not have an actionable injury under IBIPA, and

are unable to recover statutory liquidated damages. Aff. Def. ¶¶ 25-28. This is the argument that

the Illinois Supreme Court rejected in *Rosenbach* because it would require an interpretation of

the statute that is contrary to its plain language and objectives:

> In sum, defendants' contention that redress under the Act should be limited
> to those who can plead and prove that they sustained some actual injury or damage
> beyond infringement of the rights afforded them under the law would require that
> we disregard the commonly understood and accepted meaning of the term
> 'aggrieved,' depart from the plain and, we believe, unambiguous language of the
> law, read into the statute conditions or limitations the legislature did not express,
> and interpret the law in a way that is inconsistent with the objectives and purposes
> the legislature sought to achieve.***
>
> Contrary to the appellate court's view, an individual need not allege some actual
> injury or adverse effect, beyond violation of his or her rights under the Act, in order
> to qualify as an 'aggrieved' person and be entitled to seek liquidated damages and
> injunctive relief pursuant to the Act." Id. at ¶ 38, 40.1

Accordingly, this is not a valid defense to a claim under IBIPA and it should be stricken.

**Fourth Affirmative Defense**
**(Waiver/Authorization/Consent/Ratification/Acquiescence):**

Defendant includes no specific facts supporting its purported affirmative defense of

waiver, which is the "intentional relinquishment of a known right." *Hahn v. Cty. of Kane*, 2013

---

[1]The United States Court of Appeals for the Ninth Circuit recently held in a case involving a
claim that Facebook violated IBIPA based on its facial recognition technology that because the
violations of the procedures of IBIPA "actually harm or pose a material risk of harm" to the
plaintiffs' "concrete privacy interests," the plaintiffs alleged a "concrete and particularized harm,
sufficient to confer Article III standing." *Patel v. Facebook, Inc.*, 2019 WL 3727424, at *6 (9th
Cir. Aug. 8, 2019).

4

IL App (2d) 120660, ¶ 11 (quoting *Ryder v. Bank of Hickory Hills,* 146 Ill. 2d 98, 104 (1991)).

Defendant merely states that Plaintiff and putative class members agreed to use Defendant's

"time tracking devices" or "time keeping practices" without questioning their use. Aff. Def. ¶¶

29-30. But there are no specific facts showing that Plaintiff intended to relinquish any known

rights by her mere use of Defendant's time tracking devices or practices. Nor do Defendant's

claims that Plaintiff and putative class members authorized, consented to, ratified, and/or

acquiesced to Defendant's "time tracking practices" assert any new matter that would defeat an

apparent right in Plaintiff to recover. *Id.* Any such authorization, consent, ratification or

acquiescence to the use of Defendant's undescribed "time tracking practices" has no bearing on

whether Defendant complied with the requirements of IBIPA before obtaining and collecting

Plaintiff's and putative class members' biometric identifiers. The statute does not provide an

exception to its requirements for instances where one acquiesces having his or her biometric

information taken. Nor is it limited to instances where an individual's biometric information is

taken against his or her will. This affirmative defense should therefore be stricken.

**Fifth Affirmative Defense (Estoppel):**

This affirmative defense lacks specific facts that support the defense of estoppel. A party

claiming the defense of equitable estoppel must establish six specific elements:

> "(1) the other person misrepresented or concealed material facts; (2) the other
> person knew at the time he or she made the representations that they were untrue;
> (3) the party claiming estoppel did not know that the representations were untrue
> when they were made and when they were acted upon; (4) the other person intended
> or reasonably expected that the party claiming estoppel would act upon the
> representations; (5) the party claiming estoppel reasonably relied upon the
> representations in good faith to his or her detriment; and (6) the party claiming
> estoppel would be prejudiced by his or her reliance on the representations if the
> other person is permitted to deny the truth thereof." *Geddes v. Mill Creek Country
> Club, Inc.*, 196 Ill. 2d 302, 313–14 (2001).

Defendant does not allege any facts that meet these elements, and this affirmative defense should be stricken.

**Sixth Affirmative Defense (Laches):**

Defendant fails to include specific facts to support the defense of laches. "To prevail on a *laches* affirmative defense, the defendant must satisfy two elements and prove that: (1) the plaintiff failed to exercise due diligence in bringing its suit; and (2) the plaintiff's delay served to prejudice the defendant." *Madigan v. Yballe*, 397 Ill. App. 3d 481, 493 (1st Dist. 2009) (emphasis in original). A "mere lapse in time from the accrual of a cause of action to the filing of a lawsuit is insufficient to support a *laches* defense." *Id*. Furthermore, the defendant must "prove how the plaintiff's delay caused a change in conditions and caused him to pursue a course different from that which he would otherwise have taken." *Negron v. City of Chicago*, 376 Ill. App. 3d 242, 246–47 (1st Dist. 2007). Defendant does not even state that Plaintiff unreasonably delayed bringing her suit, just that the Complaint "is barred, in whole or in part, … *to the extent* Plaintiff … unreasonably delayed before asserting their purported rights under BIPA ***." Aff. Def. ¶ 33 (emphasis added). Furthermore, Defendant includes no facts that go beyond alleging there was a lapse from when the cause of action accrued and when Plaintiff filed her lawsuit, or that set forth why any such delay prejudiced it or caused it to pursue a different course of conduct. Accordingly, this affirmative defense should be stricken.

**Seventh Affirmative Defense (Unclean Hands):**

There are no specific facts that meet the elements of this defense. The defense is "intended to prevent a party from taking advantage of its wrong," and a defendant must plead: "(1) misconduct by the plaintiff that amounts to fraud or bad faith, (2) made toward the defendant, and (3) related to the subject matter of the litigation." *Wells Fargo Bank, N.A. v.*

*Chmielniak*, 2014 IL App (3d) 140110-U, ¶¶ 17-19. Defendant sets forth no facts that support any fraud or bad faith by Plaintiff, and this affirmative defense should be stricken.

### Eighth Affirmative Defense (Last Clear Chance or Avoidance):

The doctrine of "last clear chance" has been abolished in Illinois and is not a valid affirmative defense. *P.A.M. Transp., Inc. v. Builders Transp., Inc.*, 209 Ill. App. 3d 889, 892 (5th Dist. 1991) ("Defendants are correct that the 'last clear chance' doctrine has been abolished ***."). Nor, after an extensive search, is Plaintiff aware of any authority recognizing "avoidance" as a separate affirmative defense. Accordingly, Defendant's Eighth Affirmative Defense should be stricken.

### Ninth Affirmative Defense (Contributory/Comparative Fault):

Defendant states that it "places in issue the negligence, faults, and responsibilities of all persons," but identifies no one but Plaintiff and includes no facts demonstrating that any other individuals or entities (including Plaintiff) have contributed to the damages and injuries alleged in Plaintiff's Complaint. Aff. Def. ¶ 43. Defendant does not allege in even general terms, much less with facts, how any such individuals or entities contributed to the alleged damages and injuries. Defendant sets forth nothing more than bare conclusions. Thus, this affirmative defense should be stricken.

### Tenth Affirmative Defense (Failure to Mitigate Damages):

Defendant completely misses the point with its supposed affirmative defense of failure to mitigate damages. It states that complying with the statute "would not have prevented the collection, storage, and use of any data." Aff. Def. ¶ 50. But the statute is not designed to prevent the collection, storage and use of biometric data, it is designed to require that the collection of such data occur only with procedures such as creation and dissemination of a written policy and the obtaining of a release.

Moreover, Defendant does not allege sufficient facts showing that Plaintiff or putative class members failed to comply with any duty they had to mitigate damages. In *East St. Louis School District No. 189 v. Hayes*, 237 Ill. App. 3d 638, 644 (5th Dist. 1992), the court explained that the defense of mitigation of damages requires negligence, foreseeability, or willfulness by the injured party:

> "If by *negligence* or *willfulness* an injured party allows damages to be enhanced unnecessarily, the increased loss falls upon the injured party.*** Under the theory of mitigation of damages, an injured party is not allowed to recover from a wrongdoer those damages which the party should have foreseen and could have avoided without undue risk, burden, or humiliation." (Emphasis added.) *Id.* at 644.

Defendant includes no facts alleging that Plaintiff or putative class members acted negligently or willfully in allowing their damages to be enhanced, or that they should have foreseen the damages at issue. Accordingly, this affirmative defense should be stricken.

### Twelfth Affirmative Defense (Preemption):

Defendant does not even allege that the Complaint *is* barred because of preemption under the Workers' Compensation Act, just that it is barred "in whole or in part, *to the extent* that any claim *** is barred or preempted ***." (Emphasis added). Aff. Def. ¶ 55. Defendant includes no specific facts supporting why the claims of Plaintiff or putative class members are preempted. This affirmative defense is nothing more than a conclusory allegation that should be stricken.

### Thirteenth Affirmative Defense (Claim or Issue Preclusion):

Defendant does not allege that the Complaint *is* barred because of claim or issue preclusion, merely that the Complaint is barred "in whole or in part, *to the extent* any claim of Plaintiff or any putative class member" is barred under these doctrines. (Emphasis added). Aff. Def. ¶ 56. Defendant provides no specific facts supporting the applicability of claim or issue preclusion, and surely, had Plaintiff or a putative class member previously filed suit over the

claims raised in this Complaint, Defendant would know about it and be able to provide specific facts. Accordingly, this affirmative defense should be stricken.

### Fourteenth Affirmative Defense (Release or Accord and Satisfaction):

There are no facts alleged in support of this affirmative defense, which again, only seeks to bar the Complaint "in whole or in part, *to the extent* that any claim *** is barred" under these doctrines. (Emphasis added). Aff. Def. ¶ 57. Defendant does not state that any claim of Plaintiff or a putative class member *is* barred by these doctrines and includes no specific facts that would support such a determination. Nor do these doctrines have any applicability to this lawsuit. *See State Farm Mut. Auto. Ins. Co. v. Easterling*, 2014 IL App (1st) 133225, ¶ 36 ("An accord and satisfaction is generally defined as an agreement to discharge a debt or claim by some performance other than that which was originally due.*** It is distinguishable from a release in that a release is a relinquishment of a right, which may be given gratuitously or for inadequate consideration."). This affirmative defense should therefore be stricken.

### Fifteenth Affirmative Defense (Extraterritorial Application):

Once again, there are no specific (or other) facts in support of this affirmative defense and it is limited "to the extent that any claim" requires extraterritorial application of IBIPA. Aff. Def. ¶ 58. Because it contains no facts, this affirmative defense should be stricken. Moreover, the Complaint alleges that Defendant violated the statute in Illinois. *Complaint*, ¶¶ 1, 12-13.

WHEREFORE, Plaintiff prays that the Court strike Defendant's affirmative defenses as set forth above.

Dated: August 20, 2019        Respectfully submitted,

**LAW OFFICE OF RICHARD S. CORNFELD, LLC**

By: */s/ Richard S. Cornfeld*
    Richard S. Cornfeld, #0519391

9

Daniel S. Levy, #6315524
1010 Market Street, Suite 1645
St. Louis, MO 63101
P. 314-241-5799
F. 314-241-5788
rcornfeld@cornfeldlegal.com
dlevy@cornfeldlegal.com

And

Kevin P. Green, #6299905
GOLDENBERG HELLER & ANTOGNOLI, P.C.
2227 South State Route 157
Edwardsville, IL 62025
Telephone: (618) 656-5150
kevin@ghalaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 20th day of August the foregoing document

was filed electronically with the Clerk of Court and served upon all counsel of record via the

Court's electronic notification system.

_/s/ Richard S. Cornfeld_____

10

Electronically Filed
Kahalah A. Clay
Circuit Clerk
Nora McDaniel
19L0311
St. Clair County
10/29/2019 11:03 AM
7144872

## CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
## ST. CLAIR COUNTY, ILLINOIS

| | |
|---|---|
| MADISYN STAUFFER, on behalf of herself and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) Cause No. 19L0311 |
| v. | ) ) |
| INNOVATIVE HEIGHTS FAIRVIEW HEIGHTS, LLC | ) ) ) ) |
| Defendant. | ) |

## <u>UNOPPOSED MOTION FOR ENTRY OF A PROTECTIVE ORDER</u>

Defendant Innovative Heights Fairview Heights, LLC ("Innovative Heights") moves for entry of the attached Stipulated [Proposed] Protective Order pursuant to Illinois Supreme Court Rule 201(c)(1) in order to facilitate discovery and protect the confidentiality of the information and documents disclosed in connection with this litigation.  Plaintiff Madisyn Stauffer does not oppose entry of the protective order.

WHEREFORE, Innovative Heights respectfully requests that this Court grant the unopposed motion for entry of a protective order and enter the attached Stipulated [Proposed] Protective Order.

By:   */s/  Charles N. Insler*
       Glenn E. Davis #6184597
       Charles N. Insler #6291652
       HEPLER BROOM LLC
       One Metropolitan Square
       211 North Broadway Suite 2700
       St. Louis, MO 63102
       Phone: 314-241-6160
       Fax: 314-241-6116
       cni@heplerbroom.com
       ged@heplerbroom.com

*Counsel for the Defendant Innovative Heights
Fairview Heights, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was served via email to the following counsel of record on this 28th day of October 2019.


Richard S. Cornfeld
Daniel S. Levy
1010 Market Street, Suite 1645
St. Louis, MO 63101
rcornfeld@cornfeldlegal.com
dlevy@cornfeldlegal.com

Kevin P. Green
Goldenberg Heller & Antognoli, P.C.
2227 South State Route 157
Edwardsville, IL 62025
kevin@ghalaw.com

*Attorneys for Plaintiff Madisyn Stauffer*


 */s/ Charles N. Insler*               
Charles N. Insler

**CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT**
**ST. CLAIR COUNTY, ILLINOIS**

| | | |
|---|---|---|
| MADISYN STAUFFER,<br>on behalf of herself and all others similarly<br>situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 19L0311 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INNOVATIVE HEIGHTS FAIRVIEW<br>HEIGHTS, LLC | ) ) | |
| | ) | |
| Defendant. | ) | |

## [PROPOSED] PROTECTIVE ORDER

To facilitate discovery and protect the confidentiality of and rights to information and documents disclosed in connection with this litigation, the parties hereby enter into this Stipulated Protective Order ("Order" or the "Protective Order").  All parties to this stipulation and anyone who has signed the Consent attached to this Order shall adhere to the following terms.  The parties to this Order hereby stipulate to the following:

1.  ***Applicability of This Protective Order***.  All information, things, and documents filed with the Court or produced by any party or non-party in discovery in this action shall be governed by this Protective Order.

2.  ***Use of Information Produced Pursuant to This Order.***  Information and material produced or exchanged in discovery in this case and designated by a party or non-party as "Confidential" or "Confidential – Attorneys' Eyes Only" pursuant to the terms of this Protective Order (collectively referred to as "Confidential Material") shall not be disclosed to any person or entity except as authorized under this Protective Order.  For purposes of this Protective Order,

"disclose" or "disclosed" means to show, furnish, provide, make available or otherwise communicate the contents or existence of the referenced material or document to anyone, except as provided herein.  Confidential Material shall be used, by the party or parties to whom the information is produced, solely for the purpose of litigating this case, including appeals.  Such information and material shall not be used or disclosed to any other person or entity for any other use or purpose, unless otherwise agreed in writing by the producing party or so ordered by a court.

For purposes of this Protective Order, the party or non-party designating information or material as Confidential Material is defined as the "Designating Party."  Nothing contained in this Protective Order shall affect the right of a Designating Party to disclose or use its own Confidential Material for any purpose.  For purposes of this Protective Order, "Receiving Party" shall refer to any person who receives Confidential Material from a Designating Party.

3.      ***Confidential Information Designation.***  A party or non-party may in good faith designate as "CONFIDENTIAL" any document, material, item, deposition testimony, or information that is filed with the Court or produced in discovery in this action that should be protected from disclosure and use outside the litigation because its disclosure and use is restricted by statute or because it is or contains confidential research, financial information, or commercial information of the Designating Party, which is not publicly available and that could potentially cause harm to the interests of the Designating party or nonparties.

4.      ***Confidential – Attorneys' Eyes Only Designation.***  A party or non-party may designate as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" any document, material, item, deposition testimony, or information that is filed with the Court or produced in discovery in this action, that contains highly sensitive confidential research, development, financial, commercial, or technical information of the Designating Party, which is not publicly available and the

disclosure of which, to persons other than those described in Section 7 below, the Designating Party believes in good faith would be likely to harm the Designating Party's competitive position, including but not limited to client lists and client information, fee arrangements or pricing, and similar information.    All parties will use reasonable care to limit their designations of "CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to those documents that they reasonably believe fall into this category.

5.    ***Designating and Marking Confidential Material***.  Confidential Material shall be designated and marked as follows:

(a)    A document is to be designated as Confidential Material by stamping or writing on it one of the following legends, or an equivalent thereof:  "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY."  Whichever legend is used shall be placed on the first page of the document and on each page that the Designating Party claims to contain Confidential Material.

(b)    Information or material produced in a magnetic or electronic medium (such as floppy diskette, tape, CD, DVD, or removable drives) is to be designated as Confidential Material by marking or labeling the medium container with one of the legends specified in subsection 5(a) above.  If any person or entity who receives such a designated medium prints or otherwise transfers to another medium any of the information contained on the medium, upon creation any resulting document or other medium must be marked by that person or entity as Confidential Material in accordance with subsection 5(a) above or this subsection 5(b).

(c)    A physical exhibit is to be designated as Confidential Material by affixing to it a label with one of the legends specified in section 5(a) above.

(d)    A discovery response is to be designated as Confidential Material by

placing, on the first page of the set of responses and on each page that contains information that the Designating Party claims to be Confidential Material, one of the legends specified in subsection 5(a) above.

(e)     The relevant confidential portions of a deposition transcript (including exhibits) are to be designated as Confidential Material (i) by making a statement to that effect on the record, during the deposition, or (ii) by sending to all other parties, the court reporter for the deposition, and all other persons known to the Designating Party to have received a copy of the deposition transcript, within ten days after counsel for the Designating Party receives the deposition transcript, a letter or other written notice designating the relevant portions of the transcript as "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS EYES ONLY."  The letter or other notice shall identify the appropriate level of confidentiality, and identify the pages and lines, and/or exhibits, to be Confidential Material.  -  Each copy of the transcript, and portions thereof, so designated must be marked, by the person receiving the letter or other notice, with the legend specified in subparagraph 5(a) above indicating the level of confidentiality claimed by the Designating Party and shall be governed by the terms of this Protective Order.

The procedure for challenging the designation of portions of a deposition transcript as "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS EYES ONLY" shall be governed by Paragraph 12 of this Order.

6.     ***Inadvertent Misdesignation.***  A Designating Party that inadvertently fails to mark an item as "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS EYES ONLY" or marks an item with an incorrect designation of confidentiality at the time of the production shall have seven business days after learning of the inadvertent failure or mistake to correct its failure or mistake.

The correction shall be made in writing and shall be accompanied by substitute copies of each item, with its appropriate mark.  Within five business days of receipt of the substitute copies, the receiving party shall return or destroy the previously unmarked, or incorrectly marked, items and all copies thereof.

7.      ***Disclosure of "Confidential – Attorneys' Eyes Only" Materials.***  Information and material designated as "CONFIDENTIAL-ATTORNEYS' EYES ONLY" may be disclosed only to the following persons, unless the Designating Party first otherwise agrees in writing or the Court first otherwise orders:

(a)      Outside counsel for the parties to this litigation, including necessary secretarial, clerical, and litigation support or service personnel assisting such counsel;

(b)      Consultants or expert witnesses performing services in connection with the prosecution or defense of this litigation, provided that each such person is not an officer, director, or employee of any party, and provided that each such person executes a copy of the Consent attached to this Order prior to receipt of any material designated Confidential Material.

(c)      The Court, court personnel, court reporters, any special master appointed by the Court, members of the jury, and any mediator jointly selected by the Parties or appointed by the Court;

(d)      The author or recipient of the document (not including a person who received the document in the course of the litigation); and

(e)      Any potential, anticipated, or actual fact witness and his or her counsel, but only to the extent such confidential documents or information will assist the witness in recalling, relating, or explaining facts or in testifying, provided that each such person executes a copy of the Consent attached to this Order prior to receipt of any material designated Confidential Material.

8.     ***Disclosure   of   Confidential   Materials***.     Materials   designated   as "CONFIDENTIAL" may be revealed to any of the categories of persons designated in section 7 above, as well as:

(a)     the parties, including any employees, agents, and representatives of the parties; and

(b)     one or more corporate officers or employees of a corporate party who are needed to assist trial counsel in the preparation of this case for trial and who execute a copy of the Consent attached to this Order prior to receipt of any material designated as "CONFIDENTIAL."

9.     ***Use of Confidential Material by Designating Party***.   Nothing in this Protective Order limits a party's ability to show materials which that party has designated as "CONFIDENTIAL — ATTORNEYS' EYES ONLY" or "CONFIDENTIAL" to whomever the Designating Party desires.  Further, nothing in this Protective Order limits a party's ability to show materials designated by another party as "CONFIDENTIAL — ATTORNEYS' EYES ONLY" or "CONFIDENTIAL" to the party that designated the materials as "CONFIDENTIAL — ATTORNEYS' EYES ONLY" or "CONFIDENTIAL," including any present officer, director, employee, or representative thereof.

10.     ***Jurisdiction***.  Each person receiving Confidential Material under the terms of this Protective Order hereby agrees to subject himself or herself to the jurisdiction of this Court for purposes of any proceedings relating to the performance under, compliance with, or violation of this Protective Order.

11.     ***Protecting Confidential Materials***.  Each person who receives any Confidential Material shall exercise due and proper care, in connection with the storage, custody, use, and

dissemination of such material, to avoid any intentional or inadvertent disclosure to persons to whom disclosure is not permitted under this Protective Order.

12.     ***Challenging Designation of Materials as Confidential***.  A party may challenge the designation of Confidential Material only as follows:

(a)     If a party believes that material designated by another party as "CONFIDENTIAL" or "CONFIDENTIAL — ATTORNEYS' EYES ONLY" has not been properly so designated or should be reclassified or revealed to an individual not otherwise authorized to have access to such material under the terms of this Protective Order, that party (defined as the "Challenging Party" for purposes of this section) shall provide to the Designating Party written notice of this disagreement.  The parties shall then attempt in good faith to resolve such dispute informally.

(b)     If the parties cannot resolve their dispute informally, the Challenging Party may request appropriate relief from the Court.  The Designating Party bears the burden to establish that the contested material is confidential and is entitled to the level of confidentiality selected by the Designating Party.  The material involved shall be treated according to its original designation during the pendency of the challenge.

13.     ***Submitting Confidential Materials to the Court***.  Unless otherwise ordered by the Court, Confidential Material shall not be made public or become part of the public record of this or any related subsequent litigation. In the event a party seeks to file with the Court any documents or tangible things designated as "CONFIDENTIAL" or "CONFIDENTIAL — ATTORNEYS' EYES ONLY" or any motions or memoranda incorporating Confidential Material that party must take appropriate action to ensure that the document receives proper protection from public disclosure including: (a) filing a redacted document with the consent of the party who designated

the document as confidential; (b) where appropriate (e.g., in relation to discovery and evidentiary motions), submitting the document solely for in camera review; or (c) when the preceding measures are inadequate, because, for instance, the filer desires to have the court review the redacted portions, seeking permission to file the document under seal by filing a motion for leave to file under seal in accordance with applicable rules. Nothing in this Order will be construed as a prior directive to allow any document to be filed under seal. The parties understand that the requested documents may be filed under seal only with the permission of the Court after proper motion.

14. ***Information Protected by Privilege, Work Product, or Other Doctrine***.  The production of any document governed by this Order shall be without prejudice to any claim by the producing party or non-party that any such document, or information contained in such document, is privileged or work product, and no party or non-party shall be held to have waived any of its privilege or work-product rights by such production.  If a disclosing party discovers that privileged or work-product protected materials were inadvertently disclosed, that party must provide timely notice in writing that such materials were inadvertently produced and that the disclosing party is not waiving the privilege or work-product protection on those materials.  Each such receiving party shall then take reasonable and immediate steps to ensure that all copies of those documents are returned promptly to the producing party.  If data or information has been extracted or copied from a document that is thus subsequently returned, that information and/or data shall be expunged and not used.

15. ***Further Orders.***  This Order does not preclude seeking any additional or further protective orders as may be deemed necessary, or any objection to disclosure or production of any information for any reason permitted under the Illinois Rules of Civil Procedure.

8

16.     ***Conclusion of Litigation***.  All provisions of this Protective Order restricting the communication or use of Confidential Material shall continue to be binding after the conclusion of this action, unless otherwise agreed by all the parties or ordered by the Court.  Upon conclusion of the litigation, including the running of any time to appeal or to move for relief, a party in possession of Confidential Material, other than that which is contained in pleadings, correspondence, and deposition transcripts, shall, upon written request of the Designating Party, either (a) return such documents, no later than 90 days after the request, to counsel for the party or non-party who provided such information, or, (b) destroy the documents within that time period and certify in writing within that time period that the documents have been destroyed.  Attorneys shall be entitled to retain, however, a set of all documents filed with the Court and all correspondence generated in connection with the action.  For a period of five years after conclusion of this action, Attorneys for the Designating Party shall retain one copy of all documents that such Party designated as "CONFIDENTIAL" or "CONFIDENTIAL — ATTORNEYS' EYES ONLY."  Upon the Receiving Party's Attorneys' showing of need based on actual or threatened litigation against the Receiving Party's Attorneys relevant to this action, including a malpractice claim, Attorneys for the Designating Party will provide Receiving Party's Attorneys with documents designated "CONFIDENTIAL" or "CONFIDENTIAL — ATTORNEYS' EYES ONLY" relevant to the actual or threatened litigation solely for use with respect to said litigation.

17.     ***Use of Confidential Material During Court Proceedings***.  Nothing in this Order will be construed to affect the use of any document, material, or information at any trial or hearing.  If any Confidential Material is used in any Court pretrial proceeding in this litigation (including, but not limited to, conferences, oral arguments, and hearings), the Confidential Material shall not lose its status as Confidential Material through such use so long as the Circuit Court Judge agrees

on the record.  The parties shall take all steps reasonably necessary to protect the confidentiality of the Confidential Material during any such use, including, but not limited to, requesting *in camera* proceedings.

A party who seeks to introduce protected information, documents, or tangible things at a hearing or during trial or who anticipates that another party may introduce protected information, documents, or tangible things at a hearing or during trial shall so advise the Court.  The Court may thereafter make such orders as are necessary to govern the use of such documents or information at the hearing or trial.

18.     ***Improper Disclosure of Confidential Materials***.  If any Confidential Material is disclosed to any person to whom such disclosure is not authorized by this Protective Order, or other than in a manner authorized by this Protective Order, the party responsible for the disclosure shall, upon discovery of the disclosure, immediately inform the Designating Party of all facts pertinent to the disclosure that, after due diligence and prompt investigation, are known to the party responsible for the disclosure (including the name, address, telephone number, and employer of the person to whom the disclosure was made), shall immediately take all reasonable efforts to prevent further disclosure by each unauthorized person who received such information, and shall immediately require each unauthorized person to return all Confidential Material that was improperly disclosed to that person, all copies made of the improperly disclosed Confidential Material, and all documents containing excerpts from or references to the improperly disclosed Confidential Material.

19.     ***Client Communication.***  Nothing in the Protective Order shall prevent or otherwise restrict counsel from rendering advice to their clients and, in the course of rendering such advice, relying upon the examination of material designated as CONFIDENTIAL or CONFIDENTIAL –

ATTORNEYS EYES' ONLY.  In rendering such advice and otherwise communicating with the client, however, counsel shall not disclose the contents, substance or source of material designated as CONFIDENTIAL – ATTORNEYS EYES' ONLY, except as permitted by this Protective Order.

20.     *No Admissions*.  Compliance with this Protective Order in no way constitutes an admission by any party that any information designated pursuant to this Protective Order is or is not proprietary, confidential, or a trade secret.

21.     *Court's Retention of Jurisdiction*.  The Court retains jurisdiction to make such amendments, modifications and additions to this Protective Order or to enforce this Protective Order as it may, from time to time, deem appropriate.

22.     *Modification of Protective Order*.  Each party reserves the right to request that the Court modify the terms of this Protective Order in the event that the party believes that a modification is necessary.  If such an application is made, all signatories of copies of the Certification, as well as persons described herein, shall remain bound by this Protective Order unless and until it is modified by the Court.


SO ORDERED.                                     _____

                                                The Honorable Stephen P. McGlynn


                                                DATE:_____

11

**CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT**
**ST. CLAIR COUNTY, ILLINOIS**

| | | |
|---|---|---|
| MADISYN STAUFFER, | ) | |
| on behalf of herself and all others similarly | ) | |
| situated, | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 19L0311 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INNOVATIVE HEIGHTS FAIRVIEW | ) | |
| HEIGHTS, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**CONSENT**
**ACKNOWLEDGMENT UNDER PROTECTIVE ORDER**
**OF _____**
**[NAME]**
_____

I, _____, declare:

1.      My address is _____.   My present occupation is _____.

2.      I have received a copy of the Protective Order in this action.  I have carefully read and understand the provisions of the Protective Order.

3.      I will comply with all of the provisions of the Protective Order.  I will hold in confidence, will not disclose to anyone other than those persons specifically authorized by the Protective Order, and will not copy or use, except for purposes of this action, any Confidential Material that I receive in this action.

4.      By executing this acknowledgement, I agree to submit to the jurisdiction of the Circuit Court of St. Clair County, Illinois for purposes of enforcement of the terms of the Protective Order.

Executed  this  ____  day  of,  _____,  _____ at _____.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____

[NAME]

14

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

MADISYN STAUFFER,                              )
on behalf of herself and all others similarly )
situated,                                      )
                                               )
          Plaintiff,                           )        Cause No. 19L0311
                                               )
                                               )
v.                                             )
                                               )
INNOVATIVE HEIGHTS FAIRVIEW                    )
HEIGHTS, LLC                                   )
                                               )
          Defendant.                           )

## <u>MOTION FOR LEAVE TO AMEND COMPLAINT</u>

Plaintiff Madisyn Stauffer ("Plaintiff") moves the Court pursuant to Rule 2-616 of the

Code of Civil Procedure to amend her Complaint in the manner set forth in the proposed

Amended Complaint, submitted as Exhibit A to this motion. In support hereof, Plaintiff states as

follows:

1.      This is an action by Plaintiff, on behalf of herself and a putative class of similarly

situated individuals, to recover against her former employer, Innovative Heights Fairview

Heights, LLC ("Innovative Heights"), for its violations of the Illinois Biometric Information

Privacy Act ("IBIPA"), 740 ILCS 14/1, *et seq*.

2.      During the course of discovery, Plaintiff has determined that she has a cause of

action against a previously unnamed party, namely, Pathfinder Software, LLC, d/b/a CenterEdge

Software, LLC ("CenterEdge").

3.      Adjudicating Plaintiff's claims against CenterEdge in this action will serve the interests of justice by enabling adjudication of all related claims in one action and will not result in any legal prejudice to defendants.

4.      Plaintiff's counsel conferred with counsel for Innovative Heights as to whether Innovative Heights has any objection to the filing of this Amended Complaint, and Innovative Heights has no such objection.

WHEREFORE, Plaintiff prays for leave to amend her Complaint *instanter* in the manner set forth in the proposed Amended Complaint, submitted herewith as Exhibit A, and for such other or further relief as the Court deems just.

Dated: November 19, 2019                 Respectfully submitted,

**LAW OFFICE OF RICHARD S. CORNFELD, LLC**

By:  */s/ Richard S. Cornfeld*
　　　Richard S. Cornfeld, #0519391
　　　Daniel S. Levy, #6315524
　　　1010 Market Street, Suite 1645
　　　St. Louis, MO 63101
　　　P. 314-241-5799
　　　F. 314-241-5788
　　　rcornfeld@cornfeldlegal.com
　　　dlevy@cornfeldlegal.com

　　　And

　　　Kevin P. Green, #6299905
　　　GOLDENBERG HELLER & ANTOGNOLI, P.C.
　　　2227 South State Route 157
　　　Edwardsville, IL 62025
　　　Telephone: (618) 656-5150
　　　kevin@ghalaw.com

　　　***Attorneys for Plaintiff***

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on this 19th day of November the foregoing

document was filed electronically with the Clerk of Court and served upon all counsel of record

via the Court's electronic notification system.


              */s/ Richard S. Cornfeld*

# Exhibit A

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

| | | |
|---|---|---|
| MADISYN STAUFFER,<br>on behalf of herself and all others similarly<br>situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 19L0311 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INNOVATIVE HEIGHTS FAIRVIEW<br>HEIGHTS, LLC | ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| PATHFINDER SOFTWARE, LLC, d/b/a<br>CENTEREDGE SOFTWARE, LLC | ) ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

**<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................ 1

PARTIES ................................................................................................................... 4

JURISDICTION AND VENUE ................................................................................ 5

JURY DEMAND ....................................................................................................... 6

THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT ........................... 6

FACTUAL ALLEGATOINS REGARDING DEFENDANTS' LIABILITY ............ 8

    Plaintiff's Experience.............................................................................................. 8

    Innovative Heights' Actions Violated IBIPA ......................................................... 9

    CenterEdge's Actions Violated IBIPA ................................................................. 10

CLASS ACTION ALLEGATIONS ........................................................................ 11

COUNT I: INNOVATIVE HEIGHTS' VIOLATION OF 740 ILCS 14/1, *et seq.* ...................... 14

COUNT II: CENTEREDGE'S VIOLATION OF 740 ILCS 14/1, *et seq.* ................................. 15

PRAYER FOR RELIEF ........................................................................................ 17

COMES NOW Plaintiff Madisyn Stauffer, and for her First Amended Class Action Complaint ("Amended Complaint") against Defendants Innovative Heights Fairview Heights, LLC ("Innovative Heights") and Pathfinder Software, LLC, d/b/a CenterEdge Software, LLC ("CenterEdge"), alleges upon personal knowledge as to her own acts, and upon information and belief (based on the investigation of counsel) as follows:

## INTRODUCTION

1.     Plaintiff brings this action individually and on behalf of a Class of similarly situated individuals who were employed by Innovative Heights and worked at its Sky Zone facility ("the Innovative Heights Class") located at 10850 Lincoln Trail, Fairview Heights, IL 62208 ("Sky Zone Fairview Heights"), and gave their fingerprints to Innovative Heights at the commencement of their employment and scanned their fingerprints for timekeeping and other purposes as specified below, in violation of the Illinois Biometric Information Privacy Act ("IBIPA"), 740 ILCS 14/1, *et seq*.

2.      Plaintiff also brings this action individually and on behalf of a separate Class of similarly situated individuals who had their fingerprints collected, captured, purchased, received through trade, or obtained by CenterEdge in violation of IBIPA (the "CenterEdge Class").

3.     Sky Zone Fairview Heights is owned by Innovative Heights. Innovative Heights was the employer of Plaintiff and members of the Innovative Heights Class during all times that they worked at Sky Zone Fairview Heights.

4.     Sky Zone Fairview Heights is a recreational facility that markets, advertises, and offers certain attractions and programs to the public, including attractions it describes as

1

Freestyle Jump, SkySlam, Ultimate Dodgeball, SkyHoops, SkyJoust, SkyLadder, Warped Wall, FreeClimb, Foam Zone, Ninja Warrior Course, Laser Tag, and Drop Zone.[1]

5.      Sky Zone Fairview Heights holds itself out as a place where members of the public can hold parties and events in Fairview Heights, Illinois.[2]

6.      At or near the beginning of their employment, at least until the filing of this lawsuit, Plaintiff and other employees at Innovative Heights' Sky Zone Fairview Heights facility scanned their private biometric identifiers in the form of their fingerprints into Innovative Heights' system and thereafter "clocked in" or "clocked out" of a shift throughout their employment by scanning their fingerprints into the system. Employees also scanned their fingerprints into Innovative Heights' system at certain times in connection with their use of the cash registry, in the event it had "timed-out."

7.      Innovative Heights failed to comply with the requirements set forth in IBIPA before collecting, capturing, and otherwise obtaining such fingerprints.

8.      Innovative Heights' failure to comply with IBIPA means that its employees do not receive the important protections set forth in the statute, which is designed to allow employees and individuals to make informed decisions in connection with a private entity's collection, use, and retention of their private biometric identifiers, and to ensure that biometric identifiers are not obtained or used without the consent of the individual.

9.      By collecting, capturing, or otherwise obtaining Plaintiff's and Innovative Heights Class Members' fingerprints without making publicly available a proper policy; by not informing Plaintiff and Innovative Heights Class Members in writing that their fingerprints were being collected and the purpose therefore or the length of time that they were being held; and by not

---

[1] https://www.skyzone.com/fairviewheights/attractions-and-programs (accessed 04/08/2019).
[2] https://www.skyzone.com/fairviewheights/parties-and-events (accessed 04/08/2019).

receiving a written release from Plaintiff and Innovative Heights Class Members, Innovative

Heights has violated IBIPA, specifically 740 ILCS 14/15(a) and (b)(1)-(3).

10.     Based on Innovative Heights' violations of IBIPA, Plaintiff and Innovative

Heights Class Members seek to recover statutory and other damages and relief allowed under

IBIPA.

11.     Initial discovery in this lawsuit has revealed that Innovative Heights is not the

only entity that has collected, captured, purchased, received through trade, or obtained Plaintiff's

fingerprints.

12.     Rather, CenterEdge has also collected, captured, purchased, received through

trade, or obtained Plaintiff's fingerprints in connection with an agreement that it entered into

with Innovative Heights.

13.     As part of the agreement between Innovative Heights and CenterEdge,

CenterEdge provides Innovative Heights with a fingerprint tracking system. It also controls

and/or runs the system and/or database in which Innovative Heights' employees' fingerprints are

stored and/or receives the fingerprints contained therein. Based on its control of the system

and/or database in which the fingerprints are stored and receipt of the fingerprints contained

therein, CenterEdge has therefore collected, captured, received through trade, or obtained

Plaintiff's fingerprints, without complying with the requirements set forth in IBIPA.

14.     Furthermore, upon information and belief, under similar agreements that

CenterEdge has with other companies in Illinois, under which CenterEdge controls and/or runs

the systems and/or databases in which the fingerprints of such companies' employees are stored,

CenterEdge collects, captures, receives through trade, or obtains the fingerprints of such

employees without complying with the requirements set forth in IBIPA.

15.     By collecting, capturing, or otherwise obtaining Plaintiff's and the CenterEdge

Class Members' fingerprints without making publicly available a proper written policy; by not

informing Plaintiff and CenterEdge Class Members in writing that their fingerprints were being

collected and the purpose therefore or the length of time that they were being held; and by not

receiving a written release from Plaintiff and CenterEdge Class Members, CenterEdge has

violated IBIPA, specifically 740 ILCS 14/15(a) and (b)(1)-(3).

16.     As a result of CenterEdge's violations of IBIPA, Plaintiff and CenterEdge Class

Members seek to recover statutory and other damages and relief allowed under IBIPA.

## PARTIES

17.     Plaintiff Madisyn Stauffer is a resident of Madison County, Illinois. She was

employed by Innovative Heights and worked at the Sky Zone Fairview Heights facility from

January of 2018 through May of 2018.

18.     Plaintiff had her fingerprints collected, captured, and otherwise obtained by

Innovative Heights at the beginning of her employment with Innovative Heights, and on each

occasion that she "clocked in" or "clocked out" throughout her employment. She also had her

fingerprints collected, captured, and otherwise obtained by Innovative Heights during certain

times that she used the cash registry. Based on CenterEdge's control of the system and/or

database in which her fingerprints were stored and/or receipt of the fingerprints contained

therein, CenterEdge also collected, captured, received through trade, and otherwise obtained her

fingerprints.

19.     Defendant Innovative Heights is an Illinois Limited Liability Company, with its

principal office located at 10850 Lincoln Trail, #12A, Fairview Heights, Illinois 62208. Its

registered agent in Illinois is Bron Launsby, 10850 Lincoln Trail, #12A, Fairview Heights,

Illinois 62208.

20.     Innovative Heights conducts business in St. Clair County, Illinois, and transactions and conduct giving rise to the claims set forth in this Amended Complaint occurred in St. Clair County, Illinois. Specifically, the location of Sky Zone Fairview Heights where Plaintiff and Innovative Heights Class Members worked is in St. Clair County, Illinois.

21.     Defendant CenterEdge is a North Carolina Limited Liability Company, with its principal office located at 5050 Durham Rd., Roxboro, NC 27574. Its registered agent in North Carolina is Robert E. Levin, 3511 Shannon Rd., Ste 140, Durham, NC 27707.

22.     CenterEdge conducts business in St. Clair County, Illinois, and transactions and conduct giving rise to the claims set forth in this Amended Complaint occurred in St. Clair County, Illinois. Specifically, the location of Sky Zone Fairview Heights, with whom CenterEdge did business at its facility, is in St. Clair County, Illinois.

23.     On its website, CenterEdge describes itself as a "leader in the entertainment software industry," states that in that capacity it "operate[s] as a processor of personal information for our customers, including via the Advantage Access Control App ('the app') and further states: "As a third-party processor, CenterEdge will not collect personal information directly from consumers via the app. Any information collected via the app will be considered as if collected by our customer, and provided to us as a third party processor."[3]

**JURISDICTION AND VENUE**

24.     This is a class action filed pursuant to 735 ILCS 5/2-801.

25.     This Court has jurisdiction over this action pursuant to 735 ILCS 5/2-209(a)(1) and 735 ILCS 5/2-209(b)(4).

---

[3] *See* "Advantage Access Control," available at https://centeredgesoftware.com/advantage-access-control/ (accessed 10/16/19).

26.     This Court has personal jurisdiction over Innovative Heights because it is registered to do business in Illinois and because it regularly conducts business in Illinois.

27.     This Court has personal jurisdiction over CenterEdge because it regularly conducts business in Illinois and this action relates to its business conducted in Illinois.

28.     Venue is proper in this Court pursuant to 735 ILCS 5/2-101 and 735 ILCS 5/2-102 because Innovative Heights and CenterEdge are doing business in St. Clair County and because the transactions or conduct at issue or some part thereof occurred in St. Clair County.

## JURY DEMAND

29.     For each Count in this Complaint, Plaintiff demands a jury trial to the extent it is allowed by law.

## THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT

30.     The State of Illinois passed IBIPA in 2008 to serve the public welfare, based on concerns, both known and unknown, associated with the growing collection and use of biometrics by companies and other entities. 740 ILCS 14/5.

31.     The Illinois General Assembly found that while the use of biometrics has been growing, "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information" in that unlike social security numbers or other identifiers that can be changed when compromised, biometrics are "biologically unique to the individual; therefore, once compromised, the individual has no recourse…" 740 ILCS 14/5(a)-(c).

32.     Furthermore, the Illinois General Assembly stated that "[t]he full ramifications of biometric technology are not fully known," and that "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(f)-(g).

33.     Under IBIPA, a "biometric identifier" includes an individual's fingerprints, and the term "biometric information" "means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

34.     IBIPA provides that a private entity (which includes LLCs such as Innovative Heights and CenterEdge) that is in possession of biometric identifiers or biometric information "must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first…" 740 ILCS 14/15(a).

35.     IBIPA also provides that a private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information" unless it first informs that person in writing that such an identifier or information is being collected or stored; informs that person in writing of the "specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used"; and receives a written release executed by the person who is the subject of the biometric identifier or information. 740 ILCS/14/15(b)(1)-(3).

36.     The statute defines "written release" as "informed written consent or, in the context of employment, a release executed by an employee as a condition of employment." 740 ILCS 14/10. As shown by this definition, IBIPA applies to employers and protects employees working in Illinois.

37.     Thus, while IBIPA does not prohibit an Illinois employer or other entity from using biometric identifiers of employees or other individuals for timekeeping or other purposes, it does require that an employer or entity who wishes to do so must first comply with the safeguards set forth in the statute and obtain the employees' or other individuals' informed consent.

**FACTUAL ALLEGATIONS REGARDING DEFENDANTS' LIABILITY**

**Plaintiff's Experience**

38.     Plaintiff began her employment with Innovative Heights in January of 2018 and worked for Innovative Heights as a Cashier, Event Host, and Event Planner at its Sky Zone Fairview Heights facility. She continued to work for Innovative Heights at its Sky Zone Fairview Heights facility until May of 2018.

39.     When Plaintiff began her employment with Innovative Heights, her fingerprints were taken by Innovative Heights.

40.     Plaintiff's fingerprints were then used in lieu of a more traditional time clock, in that she scanned her fingerprints into Innovative Heights's system each time she "clocked in" or "clocked out" of work throughout her employment.

41.     Plaintiff also scanned her fingerprints at additional times throughout her employment in connection with her use of the cash register. Specifically, if she had not recently been helping a customer and the cash register had timed out and needed to be "woken up," she had to do so by scanning her fingerprints.

42.     Plaintiff or her legally authorized representative was never informed by Innovative Heights or CenterEdge in writing of the specific purpose and the period for which her fingerprints were being collected, stored or used.

8

**Innovative Heights' Actions Violated IBIPA**

43.     Innovative Heights collected, captured, obtained, and possessed Plaintiff's and Innovative Heights Class Members' fingerprints at the beginning of their employment with Innovative Heights and each time thereafter when Plaintiff and Innovative Heights Class Members scanned their fingerprints to "clock in" or "clock out" or to awaken the cash register, yet Innovative Heights did not make available to the public a written policy establishing a retention schedule and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting such fingerprints has been satisfied. Its failure to publish such a policy means that when Plaintiff and Innovative Heights Class Members left or leave the employment of Innovative Heights, they were or are left unaware if and when their biometric identifiers would be destroyed. Furthermore, if Innovative Heights were to be sold or go out of business, Plaintiff and Innovative Heights Class Members would be left unaware as to who is in possession of their highly confidential and private biometric identifiers.

44.     Innovative Heights also failed to notify Plaintiff and Innovative Heights Class Members in writing that their fingerprints were being collected, stored, and used, even though their fingerprints were collected and stored by Innovative Heights when they began their employment. Furthermore, Plaintiff and Innovative Heights Class Members scanned their fingerprints many times during every day that they reported to work at Innovative Heights' Sky Zone Fairview Heights facility.

45.     Innovative Heights also collected or captured Plaintiff's and Innovative Heights Class Members' fingerprints without first informing them in writing of the purpose for which their fingerprints were being collected, stored, or used, or for how long their fingerprints were being collected, stored, or used.

9

46.     Innovative Heights also failed to obtain a written release from Plaintiff and Innovative Heights Class Members before collecting their fingerprints.

47.     Innovative Heights' actions have prevented Plaintiff and Innovative Heights Class Members from giving their informed consent and having access to important and legally required information regarding how their sensitive biometric identifiers are stored and kept.

**CenterEdge's Actions Violated IBIPA**

48.     As initial discovery in this case establishes, CenterEdge not only provides companies (including Innovative Heights) with fingerprint tracking technology for the companies' employees to use, but also runs and/or controls the systems and/or databases in which such employees' fingerprints are stored and/or receives the fingerprints contained therein.

49.     According to Innovative Heights' discovery responses in this case and CenterEdge's representations on its website, CenterEdge collected, captured, received through trade, and/or obtained Plaintiff's and CenterEdge Class Members' fingerprints each time that Plaintiff and CenterEdge Class Members scanned their fingerprints in connection with their employment.

50.     CenterEdge did not make available to the public a written policy establishing a retention schedule and guidelines for permanently destroying any such fingerprints when the initial purpose for collecting such fingerprints has been satisfied.

51.     CenterEdge further failed to notify Plaintiff and CenterEdge Class Members in writing that their fingerprints were being collected, stored, and used, even though it was collecting and storing their fingerprints.

52.     CenterEdge also collected, captured, received through trade, and obtained Plaintiff's and CenterEdge Class Members' fingerprints without first informing them in writing

10

the purpose for which their fingerprints were being collected, stored, or used, or for how long their fingerprints were being collected, stored, or used.

53.     CenterEdge also failed to obtain a written release from Plaintiff and CenterEdge Class Members before collecting, capturing, receiving through trade, and obtaining their fingerprints.

54.     CenterEdge's actions have prevented Plaintiff and CenterEdge Class Members from giving their informed consent and having access to important information regarding how their sensitive biometric identifiers are stored and kept.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action on behalf of a class of similarly situated employees of Innovative Heights who worked at its Sky Zone Fairview Heights facility and whose biometric identifiers and/or biometric information was improperly obtained by Innovative Heights.

56.     Plaintiff also brings this action on behalf of a class of similarly situated individuals whose biometric identifiers and/or biometric information was improperly obtained by CenterEdge.

57.     Specifically, pursuant to 735 ILCS 5/2-801, Plaintiff seeks certification of the following Classes, defined as follows:

> **"Innovative Heights Class"**
>
> All Illinois citizens from whom Innovative Heights collected, captured, received, or otherwise obtained biometric identifiers or biometric information, including fingerprints, during the applicable statutory period prior to: (1) receiving a written release; and/or (2) providing written information that their biometric identifier or biometric information was being collected or stored and the purpose and length thereof. Excluded from the Innovative Heights Class is any person who has or had a controlling interest in Innovative Heights.
>
> **"CenterEdge Class"**

All Illinois citizens from whom CenterEdge collected, captured, received, or otherwise obtained biometric identifiers or biometric information, including fingerprints, during the applicable statutory period prior to: (1) receiving a written release; and/or (2) providing written information that their biometric identifier or biometric information was being collected or stored and the purpose and length thereof. Excluded from the CenterEdge Class is any person who has or had a controlling interest in CenterEdge.

Plaintiff may modify these class definitions based on discovery yet to be taken.

58.     Numerosity. The exact size of the Classes are currently unknown to Plaintiff, but on information and belief the total number of members in the Classes is, at a minimum, in the hundreds, and the Classes are so numerous that joinder of all Class Members would be impracticable.

59.     Commonality. There is a well-defined community of interest in the questions of law and fact affecting the members of the Classes, and questions of law and fact common to the Classes predominate over any questions affecting only individual members. Among the numerous questions of law or fact common to the Innovative Heights Class are the following:

a.  Whether Innovative Heights developed and made available to the public a policy in compliance with 740 ILCS 14/15(a), before it obtained Plaintiff's and Innovative Heights Class Members' biometric identifiers;

b.  Whether Innovative Heights collected, captured, received through trade, or otherwise obtained Plaintiff's and Innovative Heights Class Members' biometric identifiers or biometric information;

c.  Whether Innovative Heights informed Plaintiff and Innovative Heights Class Members in writing that it was collecting their biometric identifier or biometric information;

d.  Whether Innovative Heights informed Plaintiff and Innovative Heights Class Members in writing of the specific purpose and length of term for which it was collecting their biometric identifier or biometric information;

e.  Whether Innovative Heights received written releases from Plaintiff and Innovative Heights Class Members before capturing, collecting, receiving through trade, or otherwise obtaining their biometric identifiers or biometric information;

f.  Whether Innovative Heights used Plaintiff's and Innovative Heights Class

12

Members' biometric identifiers or biometric information to identify them; and

g. Whether any violations of IBIPA by Innovative Heights were negligent, or rather were reckless or intentional.

60. Among the numerous questions of law or fact common to the CenterEdge Class are the following:

a. Whether CenterEdge developed and made available to the public a policy in compliance with 740 ILCS 14/15(a), before it obtained Plaintiff's and CenterEdge Class Members' biometric identifiers;

b. Whether CenterEdge collected, captured, received through trade, or otherwise obtained Plaintiff's and CenterEdge Class Members' biometric identifiers or biometric information;

c. Whether CenterEdge informed Plaintiff and CenterEdge Class Members in writing that it was collecting their biometric identifier or biometric information;

d. Whether CenterEdge informed Plaintiff and CenterEdge Class Members in writing of the specific purpose and length of term for which it was collecting their biometric identifier or biometric information;

e. Whether CenterEdge received written releases from Plaintiff and CenterEdge Class Members before capturing, collecting, receiving through trade, or otherwise obtaining their biometric identifiers or biometric information; and

f. Whether any violations of IBIPA by CenterEdge were negligent, or rather were reckless or intentional.

61. Typicality. The claims of Plaintiff are typical of the claims of the members of the Classes. Plaintiff and all members of the CenterEdge Class have had their rights under IBIPA violated based on CenterEdge's failure to comply with the provisions of IBIPA, and Plaintiff and all members of the Innovative Heights Class have had their rights under IBIPA further violated based on Innovative Heights' failure to comply with the provisions of IBIPA.

62. Adequacy of Representation. Plaintiff is an adequate representative of the Classes and has no conflict of interest with other members of the Classes. Plaintiff's attorneys are

experienced in this type of litigation and will prosecute the action vigorously on behalf of the Classes.

63.     Superiority. A class action is an appropriate method to adjudicate this controversy and is superior to any other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Furthermore, the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent and varying adjudications concerning the subject of this action. A class action would conserve the resources of the courts and litigants and further efficient adjudication of the claims of the members of the Classes.

## <u>COUNT I: INNOVATIVE HEIGHTS' VIOLATION OF 740 ILCS 14/1, *et seq.*</u><br><u>(Plaintiff and the Innovative Heights Class)</u>

64.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this Amended Complaint as though fully set forth herein.

65.     By obtaining and possessing Plaintiff's and Innovative Heights Class Members' fingerprints without developing a written policy made available to the public that established a retention schedule and guidelines for the destruction of Plaintiff's and Innovative Heights Class Members' biometric identifiers or biometric information, Innovative Heights violated IBIPA. 740 ILCS 14/15(a).

66.     Innovative Heights also violated Plaintiff's and Innovative Heights Class Members' rights under IBIPA by collecting, capturing, or otherwise obtaining their fingerprints, and not first:

        a.     informing Plaintiff and Innovative Heights Class Members in writing that their fingerprints were being collected or stored;

14

      b.    informing Plaintiff and Innovative Heights Class Members in writing of the specific purpose and length of term for which their fingerprints were being collected, stored, and used;

      c.    receiving a written release executed by Plaintiff and Innovative Heights Class Members.

740 ILCS 14/15(b)(1)-(3).

67.    Because Plaintiff's and Innovative Heights Class Members' biometric identifiers (in the form of their fingerprints) were used to identify them, they constitute "biometric information." 740 ILCS 14/10.

68.    Plaintiff's and Innovative Heights Class Members' rights under IBIPA were violated by Innovative Height's failure to comply with IBIPA as set forth above, and in so violating IBIPA, Innovative Heights acted negligently, recklessly and/or intentionally.

69.    Plaintiff and Innovative Heights Class Members are "aggrieved" under IBIPA based on Innovative Heights' violation of their rights under IBIPA, and accordingly are entitled to seek damages and relief provided for under the statute. See Rosenbach v. Six Flags Entm't Corp., 2019 IL 123186, ¶ 40.

70.    Plaintiff and Innovative Heights Class Members are therefore entitled to damages available under IBIPA, including liquidated damages of $1,000 for each and every negligent violation, or alternatively, $5,000 for each and every intentional or reckless violation, or actual damages, whichever is greater, injunctive relief, and further damages and relief as set forth in the PRAYER FOR RELIEF below. 740 ILCS 14/20(1)-(4).

### COUNT II: CENTEREDGE'S VIOLATION OF 740 ILCS 14/1, *et seq.*
### (Plaintiff and the CenterEdge Class)

71.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Amended Complaint as though fully set forth herein.

72.     By collecting, capturing, receiving through trade, and obtaining Plaintiff's and CenterEdge Class Members' fingerprints without developing a written policy made available to the public that established a retention schedule and guidelines for the destruction of Plaintiff's and CenterEdge Class Members' biometric identifiers or biometric information, CenterEdge violated IBIPA. 740 ILCS 14/15(a).

73.     CenterEdge also violated Plaintiff's and CenterEdge Class Members' rights under IBIPA by collecting, capturing, receiving through trade, or otherwise obtaining their fingerprints, and not first:

      a.    informing Plaintiff and CenterEdge Class Members in writing that their fingerprints were being collected or stored;

      b.    informing Plaintiff and CenterEdge Class Members in writing of the specific purpose and length of term for which their fingerprints were being collected, stored, and used;

      c.    receiving a written release executed by Plaintiff and CenterEdge Class Members.

740 ILCS 14/15(b)(1)-(3).

74.     Because Plaintiff's and CenterEdge Class Members' biometric identifiers (in the form of their fingerprints) were used to identify them, they constitute "biometric information." 740 ILCS 14/10.

75.     Plaintiff's and CenterEdge Class Members' rights under IBIPA were violated by CenterEdge's failure to comply with IBIPA as set forth above, and in so violating IBIPA, CenterEdge acted negligently, recklessly and/or intentionally.

76.     Plaintiff and CenterEdge Class Members are "aggrieved" under IBIPA based on CenterEdge's violation of their rights under IBIPA, and accordingly are entitled to seek damages and relief provided for under the statute. *See Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 40.

16

77.     Plaintiff and CenterEdge Class Members are therefore entitled to damages available under IBIPA, including liquidated damages of $1,000 for each and every negligent violation, or alternatively, $5,000 for each and every intentional or reckless violation, or actual damages, whichever is greater, injunctive relief, and further damages and relief as set forth in the PRAYER FOR RELIEF below. 740 ILCS 14/20(1)-(4).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Classes, pray for judgment against Innovative Heights and CenterEdge as follows:

A.      Certifying the Innovative Heights Class and CenterEdge Class as requested herein;

B.      Entering an order appointing Law Office of Richard S. Cornfeld, LLC and Goldenberg Heller & Antognoli, P.C. as lead counsel for the Classes;

C.      Awarding statutory damages of $1,000 for each and every negligent violation of IBIPA, or alternatively, statutory damages of $5,000 for each and every violation if the Court finds that Innovative Heights' and/or CenterEdge's violations were intentional or reckless;

D.      Awarding actual damages to Plaintiff and the members of the Classes if greater than liquidated damages, as provided for under IBIPA;

E.      Declaring that Innovative Heights' and CenterEdge's actions, as set forth above, violate IBIPA;

F.      Awarding injunctive or other equitable relief as required to protect the interests of Plaintiff and Members of the Classes, including an order requiring Innovative Heights and CenterEdge to collect, store, use, and destroy biometric identifiers and

17

biometric information in a manner that complies with the requirements set forth in IBIPA;

      G.     Awarding pre-judgment and post-judgment interest;

      H.     Awarding reasonable attorneys' fees and costs herein;

      I.     Awarding such other and further relief as the court deems fit and proper.

Dated: November 19, 2019      Respectfully submitted,

**LAW OFFICE OF RICHARD S. CORNFELD, LLC**

By: */s/ Richard S. Cornfeld*
    Richard S. Cornfeld, #0519391
    Daniel S. Levy, #6315524
    1010 Market Street, Suite 1645
    St. Louis, MO 63101
    P. 314-241-5799
    F. 314-241-5788
    rcornfeld@cornfeldlegal.com
    dlevy@cornfeldlegal.com

    And

    Kevin P. Green, #6299905
    GOLDENBERG HELLER & ANTOGNOLI, P.C.
    2227 South State Route 157
    Edwardsville, ILL 62025
    Telephone: (618) 656-5150
    kevin@ghalaw.com

    ***Attorneys for Plaintiff***

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 19th day of November the foregoing

document was filed electronically with the Clerk of Court and served upon all counsel of record

via the Court's electronic notification system.


       */s/ Richard S. Cornfeld* _____

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

MADISYN STAUFFER,  )
on behalf of herself and all others similarly  )
situated,  )
 )
        Plaintiff,  )    Cause No. 19L0311
 )
 )
v.  )
 )
INNOVATIVE HEIGHTS FAIRVIEW  )
HEIGHTS, LLC  )
 )
        Defendant.  )

## MOTION TO CANCEL OR RESCHEDULE THE HEARING ON PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES

Plaintiff Madisyn Stauffer ("Plaintiff") moves to cancel, or alternatively to reschedule, the hearing scheduled for November 26, 2019 on her Motion to Strike Defendant's Affirmative Defenses and Memorandum in Support ("Motion to Strike"). In support hereof, Plaintiff states as follows:

1.      This is an action by Plaintiff, on behalf of herself and a putative class of similarly situated individuals, to recover against her former employer, Innovative Heights Fairview Heights, LLC ("Innovative Heights"), for its violations of the Illinois Biometric Information Privacy Act ("IBIPA"), 740 ILCS 14/1, *et seq.*

2.      Plaintiff filed her Complaint on April 29, 2019.

3.      Innovative Heights filed its Answer and Affirmative Defenses to Plaintiff's Complaint on July 30, 2019.

4.      On August 20, 2019, Plaintiff filed her Motion to Strike, arguing that many of Innovative Heights' affirmative defenses did not comply with the pleading requirements for affirmative defenses or were otherwise insufficient.

5.      On September 26, 2019, Plaintiff noticed her Motion to Strike for hearing on November 26, 2019, before this Court.

6.      During the course of discovery, Plaintiff has determined that she has a cause of action against a previously unnamed party, namely, Pathfinder Software, LLC, d/b/a CenterEdge Software, LLC ("CenterEdge").

7.      Accordingly, Plaintiff sought leave to file an Amended Complaint on November 19, 2019, in which she adds CenterEdge as a defendant. Innovative Heights did not oppose Plaintiff's motion for leave to file the Amended Complaint.

8.      If the Court grants Plaintiff's motion for leave and accepts the Amended Complaint, Innovative Heights must respond to the Amended Complaint.

9.      Plaintiff's Motion to Strike, which is based on Innovative Heights' affirmative defenses to the original Complaint, will therefore be moot.

10.     As a result, Plaintiff requests that this Court cancel, or alternatively reschedule, the hearing on her Motion to Strike set for November 26, 2019.

11.     Plaintiff's counsel conferred with counsel for Innovative Heights, and Innovative Heights stated that it has no objection to cancelling or rescheduling the hearing set for November 26, 2019.

WHEREFORE, Plaintiff respectfully requests that the Court cancel, or alternatively reschedule, the hearing on her Motion to Strike set for November 26, 2019.

2

Dated: November 19, 2019          Respectfully submitted,

**LAW OFFICE OF RICHARD S. CORNFELD, LLC**

By:  */s/ Richard S. Cornfeld*
    Richard S. Cornfeld, #0519391
    Daniel S. Levy, #6315524
    1010 Market Street, Suite 1645
    St. Louis, MO 63101
    P. 314-241-5799
    F. 314-241-5788
    rcornfeld@cornfeldlegal.com
    dlevy@cornfeldlegal.com

    And

    Kevin P. Green, #6299905
    GOLDENBERG HELLER & ANTOGNOLI, P.C.
    2227 South State Route 157
    Edwardsville, IL 62025
    Telephone: (618) 656-5150
    kevin@ghalaw.com

    ***Attorneys for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 19th day of November the foregoing document was filed electronically with the Clerk of Court and served upon all counsel of record via the Court's electronic notification system.

      */s/ Richard S. Cornfeld*

Electronically Filed
Kahalah A. Clay
Circuit Clerk
Katie Bierman
19L0311
St. Clair County
11/19/2019 2:25 PM
7426490

**IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS**

MADISYN STAUFFER,               )
on behalf of herself and all others similarly  )
situated,                              )
                                    )
         Plaintiff,              )       Cause No. 19L0311
                                    )
                                    )
v.                                  )
                                    )
INNOVATIVE HEIGHTS FAIRVIEW     )
HEIGHTS, LLC                  )
                                    )
         Defendant.           )

**<u>DEFENDANT INNOVATIVE HEIGHTS FAIRVIEW HEIGHTS, LLC'S
RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE
DEFENDANT'S AFFIRMATIVE DEFENSES</u>**

Plaintiff Madisyn Stauffer has moved to strike *thirteen* of Defendant Innovative Heights Fairview Heights, LLC's ("Defendant" or "Innovative Heights") fifteen affirmative defenses. Innovative Heights opposes this motion.

**I.    <u>BACKGROUND</u>**

Stauffer brought this lawsuit individually and on behalf of a class of similarly situated individuals who were employed by Innovative Heights and worked at its Sky Zone facility located at 10850 Lincoln Trail, Fairview Heights, IL 62208 ("Sky Zone Fairview Heights"). Petition at ¶1. Stauffer alleges that she (and other employees) were required to give their fingerprints to Innovative Heights when they started working for Sky Zone Fairview Heights, and throughout their employment, for timekeeping and other purposes. *Id.* Stauffer alleges that this conduct violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*

Innovative Heights answered the allegations of the Petition and asserted fifteen affirmative

defenses as part of its answer.  *See* Answer and Affirmative Defenses to Plaintiff's Class Action Complaint.  Stauffer moved to strike nearly all of these affirmative defenses as legally insufficient under 735 ILCS 5/2-615.  Innovative Heights opposes this motion.

## II.   LEGAL ARGUMENT

### A.   An Affirmative Defense Must Reasonably Inform the Opposite Party of the Nature of the Defense that She is Called Upon to Meet

An "affirmative defense" is one in which the defendant gives color to his opponent's claim, but asserts new matter which defeats the plaintiff's apparent right.  *Raprager v. Allstate Ins. Co.*, 183 Ill. App. 3d 847, 854 (2d Dist. 1989).  As with a motion to dismiss, a motion to strike an affirmative defense admits as true all well-pleaded facts constituting the defense and all reasonable inferences are drawn in the defendant's favor.  *Id.*  "No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet."  *Id.*  When the well-pleaded facts and their supporting inferences raise *the possibility* that the defending party will prevail on a defense, striking that affirmative defense is improper.  *Id.*  After all, pleadings "are not intended to erect barriers to a trial on the merits but instead to remove them and facilitate trial."  *Zeitz v. Vill. of Glenview*, 227 Ill. App. 3d 891, 894 (1st Dist. 1992).  This means that courts "should not view pleadings as technical obstacles but, instead, should construe them liberally to do substantial justice between the parties."  *Munroe-Diamond v. Munroe*, 2019 IL App (1st) 172966, ¶45.  In short, at the pleading stage, a Court should "never exalt[] form over substance."  *Id.*

### B.   Innovative Heights' Affirmative Defenses Are Legally Sufficient

Innovative Heights reasonably informed Stauffer of the nature of its affirmative defenses, which is all that is required under Illinois law.

### 1. First Affirmative Defense: Good Faith and Substantial Compliance

In its first affirmative defense, Innovative Heights alleges that Stauffer's complaint is barred because it substantially complied with BIPA's requirements. In particular, Innovative Heights alleges it utilized its time-tracking practices and devices for legitimate business purposes and that Innovative Heights treated any biometric identifiers or information in a manner that was reasonable in light of industry safeguards. Aff. Defense at ¶¶3-4. These allegations plead sufficient facts to reasonably inform Stauffer of the nature of the defense. *Raprager,* 183 Ill. App. 3d at 854. This is particularly true since Innovative Heights is not "required to set forth [its] evidence." *Zeitz*, 227 Ill. App. 3d at 894. "To the contrary, a pleading is only required to allege ultimate facts and not the evidentiary facts tending to prove such ultimate facts." *Id.* Innovative Heights' first affirmative defense is legally sufficient.

### 2. Second Affirmative Defense: Due Process / Unconstitutional

Stauffer has not moved to strike Innovative Height's second affirmative defense.

### 3. Third Affirmative Defense: Unenforceable Liquidated Damages

In its third affirmative defense, Innovative Heights alleges that Stauffer's complaint is barred because BIPA's liquidated statutory damages provision is not enforceable and because the liquidated damages provision is more akin to punitive damages. Aff. Defense at ¶¶18, 26.

In *Rosenbach,* the Illinois Supreme Court held that "an individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an 'aggrieved' person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶40. The *Rosenbach* decision is, of course, binding on this Court. Innovative Heights merely seeks to preserve this issue in the event of future review by the Illinois Supreme Court.

### 4. Fourth Affirmative Defense: Waiver / Authorization / Consent / Ratification / Acquiescence

In its fourth affirmative defense, Innovative Heights alleges that Stauffer's complaint is barred because Stauffer and any potential class members consented to or authorized the use of Innovative Heights' time-tracking practices.  In particular, Innovative Heights alleges that Stauffer continued to voluntarily use the time tracking device, Aff. Defense at ¶30, all the while knowing that she had the option of using a PIN code (instead of her fingerprint), Answer to ¶28.  Contrary to Stauffer's assertion, Innovative Heights has asserted sufficient, ultimate facts in support of this affirmative defense.

Stauffer argues that consent has no legal bearing on a BIPA action.  Motion to Strike at 5. This is not necessarily true.  In *McCollough,* the U.S. District Court for the Northern District of Illinois dismissed a BIPA lawsuit where the plaintiff complained that her fingerprints had been retained when she went to retrieve her belongings from a fingerprint-operated smart locker.  *See McCollough v. Smarte Carte, Inc.*, No. 16-CV-3777, 2016 WL 4077108, at *3 (N.D. Ill. Aug. 1, 2016).  In dismissing the lawsuit, the *McCollough* Court found that the plaintiff "undoubtedly understood when she first used the system that her fingerprint data would have to be retained until she retrieved her belongings from the locker." *Id.*  While *McCollough* was decided before the Supreme Court's *Rosenbach* decision, there is no indication that *McCollough* is bad law.

### 5. Fifth Affirmative Defense: Estoppel

In its fifth affirmative defense, Innovative Heights alleges that Stauffer's complaint is barred by the doctrine of estoppel.  Aff. Defense ¶31.  Stauffer has moved to strike this defense because Innovative Heights has not alleged any facts to meet the six elements of this defense. Innovative Heights respectfully requests that any order striking this defense be without prejudice

to reasserting this affirmative defense in the event subsequent discovery reveals facts that would meet the elements of this defense.

### 6.   Sixth Affirmative Defense: Laches

In its sixth affirmative defense, Innovative Heights alleges that Stauffer's complaint is barred by the doctrine of laches to the extent Stauffer and the putative class members unreasonably delayed asserting their purported rights under BIPA.  Aff. Defense at ¶33.  In particular, Innovative Heights alleges that Stauffer waited nearly two years to file her lawsuit and that this unreasonable delay "cause[d] undue prejudice to the Defendant."  Aff. Defense at ¶¶33, 37.

Stauffer argues that Innovative Heights "must 'prove how the plaintiff's delay caused a change in condition and caused [it] to pursue'" a different course of action.  Motion to Strike at 6 (quoting *Negron v. City of Chicago,* 376 Ill. App. 3d 242, 246-47 (1st Dist. 2007)).  In *Negron,* the Court was concerned with the application of the doctrine of laches and whether the trial court's ruling on laches was correct.  376 Ill. App. 3d at 246-47.  In other words, the *Negron* Court was not determining whether a defendant had *adequately pled* the defense – the issue currently before this Court.

In this case, Innovative Heights has adequately pled the affirmative defense of laches; Innovative Heights has pled sufficient facts to reasonably inform Stauffer of the nature of the defense.  *Raprager,* 183 Ill. App. 3d at 854.  This is particularly true since Innovative Heights is not "required to set forth [its] evidence," but simply to allege the ultimate facts.  *Zeitz,* 227 Ill. App. 3d at 894.  Innovative Heights' sixth affirmative defense is legally sufficient.

### 7.   Seventh Affirmative Defense: Unclean Hands

In its seventh affirmative defense, Innovative Heights alleges that Stauffer's complaint is barred by the doctrine of unclean hands.  Aff. Defense ¶38.  Stauffer has moved to strike this

defense because Innovative Heights has not alleged any facts to meet the elements of this defense. Innovative Heights respectfully requests that any order striking this defense be without prejudice to reasserting this affirmative defense in the event subsequent discovery reveals facts that would meet the elements of this defense.

### 8.    Eighth Affirmative Defense: Last Clear Chance or Avoidance

In its eighth affirmative defense, Innovative Heights alleges that Stauffer's complaint is barred by the doctrine of last clear chance.  Aff. Defense ¶40.  Stauffer has moved to strike this defense because this doctrine is no longer recognized in Illinois.  Motion to Strike at 7.  Innovative Heights recognizes that "Illinois does not recognize 'last clear chance' as a viable theory in any personal injury case," *Jones v. Beck*, 2014 IL App (1st) 131124, ¶29, and that the doctrine has generally been abolished in favor of comparative fault, *P.A.M. Transp., Inc. v. Builders Transp., Inc.*, 209 Ill. App. 3d 889, 892 (5th Dist. 1991).

### 9.    Ninth Affirmative Defense: Contributory/Comparative Fault

In its ninth affirmative defense, Innovative Heights alleges that other parties may be at fault, thereby reducing the degree of fault that can be attributed to Innovative Heights.  Aff. Defense ¶¶43-47.  Stauffer has moved to strike this defense, arguing that Innovative Heights has not alleged how these entities may have contributed to the alleged damages or injuries.  Motion to Strike at 7.

Innovative Heights has adequately pled this affirmative defense.  Innovative Heights notes that Stauffer herself and some of the timeclock technology vendors or software license providers may bear some fault in this case.  Aff. Defense at ¶43.  Discovery is necessary to determine the specific facts that would prove this affirmative defense.  But at the pleading stage, Innovative

Heights has no obligation to "set forth [its] evidence." *Raprager,* 183 Ill. App. 3d at 854. Innovative Heights' ninth affirmative defense is legally sufficient.

### 10.    Tenth Affirmative Defense: Failure to Mitigate Damages

In its tenth affirmative defense, Innovative Heights asserts that Stauffer and the other putative class members failed to mitigate their alleged damages. Aff. Defense at ¶48. In particular, Innovative Heights alleges that it would have provided Stauffer the ability to use a different process for clocking in and clocking had she raised concerns, Aff. Defense at ¶51, and further alleges that Stauffer actually had the option of using a PIN code (instead of her fingerprint), Answer to ¶28. A jury *could* find that Stauffer's failure to simply ask for a PIN code was either negligent or willful, so as to support the affirmative defense of failure to mitigate. Innovative Heights' tenth affirmative defense is legally sufficient.

### 11.    Eleventh Affirmative Defense: Statute of Limitations

Stauffer has not moved to strike Innovative Heights' eleventh affirmative defense.

### 12.    Twelfth Affirmative Defense: Preemption

In its twelfth affirmative defense, Innovative Heights asserts that Stauffer's Complaint is barred or preempted by the Workers' Compensation Act, 820 ILCS 305/1 *et seq*. Aff. Defense at ¶55. The issue of preemption is not jurisdictional but is in the nature of an affirmative defense. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 539 (1996). Innovative Heights has therefore given the appropriate presentment of the preemption issue. Innovative Heights' twelfth affirmative defense is legally sufficient.

### 13.    Thirteenth Affirmative Defense: Claim or Issue Preclusion

In its thirteenth affirmative defense, Innovative Heights asserts that Stauffer's Complaint is barred under the doctrines of issue or claim preclusion. These are affirmative defenses. *See*

*Curtis v. Lofy*, 394 Ill. App. 3d 170, 188 (4th Dist. 2009) (noting that *res judicata* is an affirmative defense).  Innovative Heights has therefore given the appropriate presentment of the preclusion issue.  Innovative Heights' thirteenth affirmative defense is legally sufficient.

### 14.    Fourteenth Affirmative Defense: Release or Accord and Satisfaction

In its fourteenth affirmative defense, Innovative Heights asserts that Stauffer's Complaint is barred under the doctrines of release and/or accord and satisfaction.  Aff. Defense at ¶57. Stauffer has moved to strike this defense, arguing that it has no application to this lawsuit.  Motion to Strike at 9.  Innovative Heights respectfully requests that any order striking this defense be without prejudice to reasserting this affirmative defense in the event subsequent discovery reveals facts that would meet the elements of this defense.

### 15.    Fifteenth Affirmative Defense: Extraterritorial Application

In its fifteenth affirmative defense, Innovative Heights asserts that Stauffer's Complaint is barred to the extent any claim requires extraterritorial application of BIPA.  Aff. Defense at ¶58. Illinois statutes do not have extraterritorial effect unless the General Assembly expressly intends such an effect.  *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017).  BIPA is one such statute that does not apply beyond Illinois's borders.   *Id.* ("[T]he Illinois Biometric Information Privacy Act does not apply extraterritorially.").  Innovative Heights has therefore given the appropriate presentment of the extraterritorial issue and further "[d]iscovery is needed to determine whether there are legitimate extraterritoriality concerns."  *Id.*  Innovative Heights' fifteenth affirmative defense is legally sufficient.

## III.    <u>CONCLUSION</u>

Stauffer's Motion to Strike Defendant's Affirmative Defenses should be denied as outlined above.  To the extent any affirmative defenses are stricken, they should be stricken without

prejudice to reasserting the affirmative defense in the event subsequent discovery reveals facts that

would meet the elements of the defense.

By:  */s/ Charles N. Insler*
Glenn E. Davis #6184597
Charles N. Insler #6291652
HEPLER BROOM LLC
One Metropolitan Square
211 North Broadway Suite 2700
St. Louis, MO 63102
Phone: 314-241-6160
Fax: 314-241-6116
cni@heplerbroom.com
ged@heplerbroom.com

*Counsel for the Defendant Innovative Heights*
*Fairview Heights, LLC*

9

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically with the Clerk of Court and served upon all counsel of record via the Court's electronic notification system on this 19th day of November 2019 and that a courtesy copy was sent by email to the following counsel of record:

Richard S. Cornfeld
Daniel S. Levy
1010 Market Street, Suite 1645
St. Louis, MO 63101
rcornfeld@cornfeldlegal.com
dlevy@cornfeldlegal.com

Kevin P. Green
Goldenberg Heller & Antognoli, P.C.
2227 South State Route 157
Edwardsville, IL 62025
kevin@ghalaw.com

*Attorneys for Plaintiff Madisyn Stauffer*

/s/ Charles N. Insler
Charles N. Insler

State of Illinois

## IN THE TWENTIETH JUDICIAL CIRCUIT, ST. CLAIR COUNTY, BELLEVILLE, ILLINOIS

PLAINTIFF Stauffer

vs.

No. 19-L-311

Innovative Heights
Fairview Heights, LLC

Defendant

FILED
ST. CLAIR COUNTY
NOV 2 5 2019
Kristin a. Clerk
CIRCUIT CLERK
43

## ORDER

This cause coming before the Court; the Court being fully advised in the premises and having jurisdiction of the subject matter;

The Court finds: ...................................................................................................................................

IT IS THEREFORE ORDERED:

The parties appear for a status conference. Plaintiff has moved to file an amended complaint. The motion is granted. The parties next status conference will be January 13, 2020 at 9:00 A.M.

the motion for entry of a protective order is granted. The hearing on the plaintiff's motion to stay set for Nov. 26, 2019 is cancelled.

Attorneys:

.................................................................
Plaintiff

.................................................................
Defendant

Enter:

.................................................................
Judge

McGLYNN

CC-14-95

FREEBURG PRINTING & PUBLISHING, INC. • 618-539-3320

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

| | | |
|---|---|---|
| MADISYN STAUFFER, | ) | |
| on behalf of herself and all others similarly | ) | |
| situated, | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 19L0311 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INNOVATIVE HEIGHTS FAIRVIEW | ) | |
| HEIGHTS, LLC | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PATHFINDER SOFTWARE, LLC, d/b/a | ) | |
| CENTEREDGE SOFTWARE, LLC | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

**<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................. 1

PARTIES ............................................................................................................... 4

JURISDICTION AND VENUE ............................................................................. 5

JURY DEMAND ................................................................................................... 6

THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT ........................ 6

FACTUAL ALLEGATOINS REGARDING DEFENDANTS' LIABILITY ........... 8

    Plaintiff's Experience........................................................................................ 8

    Innovative Heights' Actions Violated IBIPA ................................................... 9

    CenterEdge's Actions Violated IBIPA ............................................................ 10

CLASS ACTION ALLEGATIONS ..................................................................... 11

COUNT I: INNOVATIVE HEIGHTS' VIOLATION OF 740 ILCS 14/1, *et seq.* ...................... 14

COUNT II: CENTEREDGE'S VIOLATION OF 740 ILCS 14/1, *et seq*. ................................. 15

PRAYER FOR RELIEF ....................................................................................... 17

COMES NOW Plaintiff Madisyn Stauffer, and for her First Amended Class Action Complaint ("Amended Complaint") against Defendants Innovative Heights Fairview Heights, LLC ("Innovative Heights") and Pathfinder Software, LLC, d/b/a CenterEdge Software, LLC ("CenterEdge"), alleges upon personal knowledge as to her own acts, and upon information and belief (based on the investigation of counsel) as follows:

## INTRODUCTION

1.  Plaintiff brings this action individually and on behalf of a Class of similarly situated individuals who were employed by Innovative Heights and worked at its Sky Zone facility ("the Innovative Heights Class") located at 10850 Lincoln Trail, Fairview Heights, IL 62208 ("Sky Zone Fairview Heights"), and gave their fingerprints to Innovative Heights at the commencement of their employment and scanned their fingerprints for timekeeping and other purposes as specified below, in violation of the Illinois Biometric Information Privacy Act ("IBIPA"), 740 ILCS 14/1, *et seq.*

2.  Plaintiff also brings this action individually and on behalf of a separate Class of similarly situated individuals who had their fingerprints collected, captured, purchased, received through trade, or obtained by CenterEdge in violation of IBIPA (the "CenterEdge Class").

3.  Sky Zone Fairview Heights is owned by Innovative Heights. Innovative Heights was the employer of Plaintiff and members of the Innovative Heights Class during all times that they worked at Sky Zone Fairview Heights.

4.  Sky Zone Fairview Heights is a recreational facility that markets, advertises, and offers certain attractions and programs to the public, including attractions it describes as

Freestyle Jump, SkySlam, Ultimate Dodgeball, SkyHoops, SkyJoust, SkyLadder, Warped Wall, FreeClimb, Foam Zone, Ninja Warrior Course, Laser Tag, and Drop Zone.[1]

5.      Sky Zone Fairview Heights holds itself out as a place where members of the public can hold parties and events in Fairview Heights, Illinois.[2]

6.      At or near the beginning of their employment, at least until the filing of this lawsuit, Plaintiff and other employees at Innovative Heights' Sky Zone Fairview Heights facility scanned their private biometric identifiers in the form of their fingerprints into Innovative Heights' system and thereafter "clocked in" or "clocked out" of a shift throughout their employment by scanning their fingerprints into the system. Employees also scanned their fingerprints into Innovative Heights' system at certain times in connection with their use of the cash registry, in the event it had "timed-out."

7.      Innovative Heights failed to comply with the requirements set forth in IBIPA before collecting, capturing, and otherwise obtaining such fingerprints.

8.      Innovative Heights' failure to comply with IBIPA means that its employees do not receive the important protections set forth in the statute, which is designed to allow employees and individuals to make informed decisions in connection with a private entity's collection, use, and retention of their private biometric identifiers, and to ensure that biometric identifiers are not obtained or used without the consent of the individual.

9.      By collecting, capturing, or otherwise obtaining Plaintiff's and Innovative Heights Class Members' fingerprints without making publicly available a proper policy; by not informing Plaintiff and Innovative Heights Class Members in writing that their fingerprints were being collected and the purpose therefore or the length of time that they were being held; and by not

---

[1] https://www.skyzone.com/fairviewheights/attractions-and-programs (accessed 04/08/2019).
[2] https://www.skyzone.com/fairviewheights/parties-and-events (accessed 04/08/2019).

receiving a written release from Plaintiff and Innovative Heights Class Members, Innovative

Heights has violated IBIPA, specifically 740 ILCS 14/15(a) and (b)(1)-(3).

10.     Based on Innovative Heights' violations of IBIPA, Plaintiff and Innovative

Heights Class Members seek to recover statutory and other damages and relief allowed under

IBIPA.

11.     Initial discovery in this lawsuit has revealed that Innovative Heights is not the

only entity that has collected, captured, purchased, received through trade, or obtained Plaintiff's

fingerprints.

12.     Rather, CenterEdge has also collected, captured, purchased, received through

trade, or obtained Plaintiff's fingerprints in connection with an agreement that it entered into

with Innovative Heights.

13.     As part of the agreement between Innovative Heights and CenterEdge,

CenterEdge provides Innovative Heights with a fingerprint tracking system. It also controls

and/or runs the system and/or database in which Innovative Heights' employees' fingerprints are

stored and/or receives the fingerprints contained therein. Based on its control of the system

and/or database in which the fingerprints are stored and receipt of the fingerprints contained

therein, CenterEdge has therefore collected, captured, received through trade, or obtained

Plaintiff's fingerprints, without complying with the requirements set forth in IBIPA.

14.     Furthermore, upon information and belief, under similar agreements that

CenterEdge has with other companies in Illinois, under which CenterEdge controls and/or runs

the systems and/or databases in which the fingerprints of such companies' employees are stored,

CenterEdge collects, captures, receives through trade, or obtains the fingerprints of such

employees without complying with the requirements set forth in IBIPA.

15.     By collecting, capturing, or otherwise obtaining Plaintiff's and the CenterEdge Class Members' fingerprints without making publicly available a proper written policy; by not informing Plaintiff and CenterEdge Class Members in writing that their fingerprints were being collected and the purpose therefore or the length of time that they were being held; and by not receiving a written release from Plaintiff and CenterEdge Class Members, CenterEdge has violated IBIPA, specifically 740 ILCS 14/15(a) and (b)(1)-(3).

16.     As a result of CenterEdge's violations of IBIPA, Plaintiff and CenterEdge Class Members seek to recover statutory and other damages and relief allowed under IBIPA.

## PARTIES

17.     Plaintiff Madisyn Stauffer is a resident of Madison County, Illinois. She was employed by Innovative Heights and worked at the Sky Zone Fairview Heights facility from January of 2018 through May of 2018.

18.     Plaintiff had her fingerprints collected, captured, and otherwise obtained by Innovative Heights at the beginning of her employment with Innovative Heights, and on each occasion that she "clocked in" or "clocked out" throughout her employment. She also had her fingerprints collected, captured, and otherwise obtained by Innovative Heights during certain times that she used the cash registry. Based on CenterEdge's control of the system and/or database in which her fingerprints were stored and/or receipt of the fingerprints contained therein, CenterEdge also collected, captured, received through trade, and otherwise obtained her fingerprints.

19.     Defendant Innovative Heights is an Illinois Limited Liability Company, with its principal office located at 10850 Lincoln Trail, #12A, Fairview Heights, Illinois 62208. Its registered agent in Illinois is Bron Launsby, 10850 Lincoln Trail, #12A, Fairview Heights, Illinois 62208.

4

20.     Innovative Heights conducts business in St. Clair County, Illinois, and transactions and conduct giving rise to the claims set forth in this Amended Complaint occurred in St. Clair County, Illinois. Specifically, the location of Sky Zone Fairview Heights where Plaintiff and Innovative Heights Class Members worked is in St. Clair County, Illinois.

21.     Defendant CenterEdge is a North Carolina Limited Liability Company, with its principal office located at 5050 Durham Rd., Roxboro, NC 27574. Its registered agent in North Carolina is Robert E. Levin, 3511 Shannon Rd., Ste 140, Durham, NC 27707.

22.     CenterEdge conducts business in St. Clair County, Illinois, and transactions and conduct giving rise to the claims set forth in this Amended Complaint occurred in St. Clair County, Illinois. Specifically, the location of Sky Zone Fairview Heights, with whom CenterEdge did business at its facility, is in St. Clair County, Illinois.

23.     On its website, CenterEdge describes itself as a "leader in the entertainment software industry," states that in that capacity it "operate[s] as a processor of personal information for our customers, including via the Advantage Access Control App ('the app') and further states: "As a third-party processor, CenterEdge will not collect personal information directly from consumers via the app. Any information collected via the app will be considered as if collected by our customer, and provided to us as a third party processor."[3]

## JURISDICTION AND VENUE

24.     This is a class action filed pursuant to 735 ILCS 5/2-801.

25.     This Court has jurisdiction over this action pursuant to 735 ILCS 5/2-209(a)(1) and 735 ILCS 5/2-209(b)(4).

---

[3] *See* "Advantage Access Control," available at https://centeredgesoftware.com/advantage-access-control/ (accessed 10/16/19).

5

26.     This Court has personal jurisdiction over Innovative Heights because it is registered to do business in Illinois and because it regularly conducts business in Illinois.

27.     This Court has personal jurisdiction over CenterEdge because it regularly conducts business in Illinois and this action relates to its business conducted in Illinois.

28.     Venue is proper in this Court pursuant to 735 ILCS 5/2-101 and 735 ILCS 5/2-102 because Innovative Heights and CenterEdge are doing business in St. Clair County and because the transactions or conduct at issue or some part thereof occurred in St. Clair County.

## JURY DEMAND

29.     For each Count in this Complaint, Plaintiff demands a jury trial to the extent it is allowed by law.

## THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT

30.     The State of Illinois passed IBIPA in 2008 to serve the public welfare, based on concerns, both known and unknown, associated with the growing collection and use of biometrics by companies and other entities. 740 ILCS 14/5.

31.     The Illinois General Assembly found that while the use of biometrics has been growing, "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information" in that unlike social security numbers or other identifiers that can be changed when compromised, biometrics are "biologically unique to the individual; therefore, once compromised, the individual has no recourse…" 740 ILCS 14/5(a)-(c).

32.     Furthermore, the Illinois General Assembly stated that "[t]he full ramifications of biometric technology are not fully known," and that "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(f)-(g).

33.     Under IBIPA, a "biometric identifier" includes an individual's fingerprints, and the term "biometric information" "means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

34.     IBIPA provides that a private entity (which includes LLCs such as Innovative Heights and CenterEdge) that is in possession of biometric identifiers or biometric information "must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first…" 740 ILCS 14/15(a).

35.     IBIPA also provides that a private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information" unless it first informs that person in writing that such an identifier or information is being collected or stored; informs that person in writing of the "specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used"; and receives a written release executed by the person who is the subject of the biometric identifier or information. 740 ILCS/14/15(b)(1)-(3).

36.     The statute defines "written release" as "informed written consent or, in the context of employment, a release executed by an employee as a condition of employment." 740 ILCS 14/10. As shown by this definition, IBIPA applies to employers and protects employees working in Illinois.

37.     Thus, while IBIPA does not prohibit an Illinois employer or other entity from using biometric identifiers of employees or other individuals for timekeeping or other purposes, it does require that an employer or entity who wishes to do so must first comply with the safeguards set forth in the statute and obtain the employees' or other individuals' informed consent.

## FACTUAL ALLEGATIONS REGARDING DEFENDANTS' LIABILITY

### Plaintiff's Experience

38.     Plaintiff began her employment with Innovative Heights in January of 2018 and worked for Innovative Heights as a Cashier, Event Host, and Event Planner at its Sky Zone Fairview Heights facility. She continued to work for Innovative Heights at its Sky Zone Fairview Heights facility until May of 2018.

39.     When Plaintiff began her employment with Innovative Heights, her fingerprints were taken by Innovative Heights.

40.     Plaintiff's fingerprints were then used in lieu of a more traditional time clock, in that she scanned her fingerprints into Innovative Heights's system each time she "clocked in" or "clocked out" of work throughout her employment.

41.     Plaintiff also scanned her fingerprints at additional times throughout her employment in connection with her use of the cash register. Specifically, if she had not recently been helping a customer and the cash register had timed out and needed to be "woken up," she had to do so by scanning her fingerprints.

42.     Plaintiff or her legally authorized representative was never informed by Innovative Heights or CenterEdge in writing of the specific purpose and the period for which her fingerprints were being collected, stored or used.

8

**Innovative Heights' Actions Violated IBIPA**

43.     Innovative Heights collected, captured, obtained, and possessed Plaintiff's and Innovative Heights Class Members' fingerprints at the beginning of their employment with Innovative Heights and each time thereafter when Plaintiff and Innovative Heights Class Members scanned their fingerprints to "clock in" or "clock out" or to awaken the cash register, yet Innovative Heights did not make available to the public a written policy establishing a retention schedule and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting such fingerprints has been satisfied. Its failure to publish such a policy means that when Plaintiff and Innovative Heights Class Members left or leave the employment of Innovative Heights, they were or are left unaware if and when their biometric identifiers would be destroyed. Furthermore, if Innovative Heights were to be sold or go out of business, Plaintiff and Innovative Heights Class Members would be left unaware as to who is in possession of their highly confidential and private biometric identifiers.

44.     Innovative Heights also failed to notify Plaintiff and Innovative Heights Class Members in writing that their fingerprints were being collected, stored, and used, even though their fingerprints were collected and stored by Innovative Heights when they began their employment. Furthermore, Plaintiff and Innovative Heights Class Members scanned their fingerprints many times during every day that they reported to work at Innovative Heights' Sky Zone Fairview Heights facility.

45.     Innovative Heights also collected or captured Plaintiff's and Innovative Heights Class Members' fingerprints without first informing them in writing of the purpose for which their fingerprints were being collected, stored, or used, or for how long their fingerprints were being collected, stored, or used.

46.     Innovative Heights also failed to obtain a written release from Plaintiff and Innovative Heights Class Members before collecting their fingerprints.

47.     Innovative Heights' actions have prevented Plaintiff and Innovative Heights Class Members from giving their informed consent and having access to important and legally required information regarding how their sensitive biometric identifiers are stored and kept.

**CenterEdge's Actions Violated IBIPA**

48.     As initial discovery in this case establishes, CenterEdge not only provides companies (including Innovative Heights) with fingerprint tracking technology for the companies' employees to use, but also runs and/or controls the systems and/or databases in which such employees' fingerprints are stored and/or receives the fingerprints contained therein.

49.     According to Innovative Heights' discovery responses in this case and CenterEdge's representations on its website, CenterEdge collected, captured, received through trade, and/or obtained Plaintiff's and CenterEdge Class Members' fingerprints each time that Plaintiff and CenterEdge Class Members scanned their fingerprints in connection with their employment.

50.     CenterEdge did not make available to the public a written policy establishing a retention schedule and guidelines for permanently destroying any such fingerprints when the initial purpose for collecting such fingerprints has been satisfied.

51.     CenterEdge further failed to notify Plaintiff and CenterEdge Class Members in writing that their fingerprints were being collected, stored, and used, even though it was collecting and storing their fingerprints.

52.     CenterEdge also collected, captured, received through trade, and obtained Plaintiff's and CenterEdge Class Members' fingerprints without first informing them in writing

10

the purpose for which their fingerprints were being collected, stored, or used, or for how long their fingerprints were being collected, stored, or used.

53.     CenterEdge also failed to obtain a written release from Plaintiff and CenterEdge Class Members before collecting, capturing, receiving through trade, and obtaining their fingerprints.

54.     CenterEdge's actions have prevented Plaintiff and CenterEdge Class Members from giving their informed consent and having access to important information regarding how their sensitive biometric identifiers are stored and kept.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action on behalf of a class of similarly situated employees of Innovative Heights who worked at its Sky Zone Fairview Heights facility and whose biometric identifiers and/or biometric information was improperly obtained by Innovative Heights.

56.     Plaintiff also brings this action on behalf of a class of similarly situated individuals whose biometric identifiers and/or biometric information was improperly obtained by CenterEdge.

57.     Specifically, pursuant to 735 ILCS 5/2-801, Plaintiff seeks certification of the following Classes, defined as follows:

**"Innovative Heights Class"**

All Illinois citizens from whom Innovative Heights collected, captured, received, or otherwise obtained biometric identifiers or biometric information, including fingerprints, during the applicable statutory period prior to: (1) receiving a written release; and/or (2) providing written information that their biometric identifier or biometric information was being collected or stored and the purpose and length thereof. Excluded from the Innovative Heights Class is any person who has or had a controlling interest in Innovative Heights.

**"CenterEdge Class"**

All Illinois citizens from whom CenterEdge collected, captured, received, or otherwise obtained biometric identifiers or biometric information, including fingerprints, during the applicable statutory period prior to: (1) receiving a written release; and/or (2) providing written information that their biometric identifier or biometric information was being collected or stored and the purpose and length thereof. Excluded from the CenterEdge Class is any person who has or had a controlling interest in CenterEdge.

Plaintiff may modify these class definitions based on discovery yet to be taken.

58.     Numerosity. The exact size of the Classes are currently unknown to Plaintiff, but on information and belief the total number of members in the Classes is, at a minimum, in the hundreds, and the Classes are so numerous that joinder of all Class Members would be impracticable.

59.     Commonality. There is a well-defined community of interest in the questions of law and fact affecting the members of the Classes, and questions of law and fact common to the Classes predominate over any questions affecting only individual members. Among the numerous questions of law or fact common to the Innovative Heights Class are the following:

a.   Whether Innovative Heights developed and made available to the public a policy in compliance with 740 ILCS 14/15(a), before it obtained Plaintiff's and Innovative Heights Class Members' biometric identifiers;

b.   Whether Innovative Heights collected, captured, received through trade, or otherwise obtained Plaintiff's and Innovative Heights Class Members' biometric identifiers or biometric information;

c.   Whether Innovative Heights informed Plaintiff and Innovative Heights Class Members in writing that it was collecting their biometric identifier or biometric information;

d.   Whether Innovative Heights informed Plaintiff and Innovative Heights Class Members in writing of the specific purpose and length of term for which it was collecting their biometric identifier or biometric information;

e.   Whether Innovative Heights received written releases from Plaintiff and Innovative Heights Class Members before capturing, collecting, receiving through trade, or otherwise obtaining their biometric identifiers or biometric information;

f.   Whether Innovative Heights used Plaintiff's and Innovative Heights Class

12

Members' biometric identifiers or biometric information to identify them; and

g. Whether any violations of IBIPA by Innovative Heights were negligent, or rather were reckless or intentional.

60.     Among the numerous questions of law or fact common to the CenterEdge Class are the following:

a. Whether CenterEdge developed and made available to the public a policy in compliance with 740 ILCS 14/15(a), before it obtained Plaintiff's and CenterEdge Class Members' biometric identifiers;

b. Whether CenterEdge collected, captured, received through trade, or otherwise obtained Plaintiff's and CenterEdge Class Members' biometric identifiers or biometric information;

c. Whether CenterEdge informed Plaintiff and CenterEdge Class Members in writing that it was collecting their biometric identifier or biometric information;

d. Whether CenterEdge informed Plaintiff and CenterEdge Class Members in writing of the specific purpose and length of term for which it was collecting their biometric identifier or biometric information;

e. Whether CenterEdge received written releases from Plaintiff and CenterEdge Class Members before capturing, collecting, receiving through trade, or otherwise obtaining their biometric identifiers or biometric information; and

f. Whether any violations of IBIPA by CenterEdge were negligent, or rather were reckless or intentional.

61.     Typicality. The claims of Plaintiff are typical of the claims of the members of the Classes. Plaintiff and all members of the CenterEdge Class have had their rights under IBIPA violated based on CenterEdge's failure to comply with the provisions of IBIPA, and Plaintiff and all members of the Innovative Heights Class have had their rights under IBIPA further violated based on Innovative Heights' failure to comply with the provisions of IBIPA.

62.     Adequacy of Representation. Plaintiff is an adequate representative of the Classes and has no conflict of interest with other members of the Classes. Plaintiff's attorneys are

13

experienced in this type of litigation and will prosecute the action vigorously on behalf of the Classes.

63.     Superiority. A class action is an appropriate method to adjudicate this controversy and is superior to any other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Furthermore, the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent and varying adjudications concerning the subject of this action. A class action would conserve the resources of the courts and litigants and further efficient adjudication of the claims of the members of the Classes.

## COUNT I: INNOVATIVE HEIGHTS' VIOLATION OF 740 ILCS 14/1, *et seq.* (Plaintiff and the Innovative Heights Class)

64.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this Amended Complaint as though fully set forth herein.

65.     By obtaining and possessing Plaintiff's and Innovative Heights Class Members' fingerprints without developing a written policy made available to the public that established a retention schedule and guidelines for the destruction of Plaintiff's and Innovative Heights Class Members' biometric identifiers or biometric information, Innovative Heights violated IBIPA. 740 ILCS 14/15(a).

66.     Innovative Heights also violated Plaintiff's and Innovative Heights Class Members' rights under IBIPA by collecting, capturing, or otherwise obtaining their fingerprints, and not first:

> a.     informing Plaintiff and Innovative Heights Class Members in writing that their fingerprints were being collected or stored;

14

      b.      informing Plaintiff and Innovative Heights Class Members in writing of the specific purpose and length of term for which their fingerprints were being collected, stored, and used;

      c.      receiving a written release executed by Plaintiff and Innovative Heights Class Members.

740 ILCS 14/15(b)(1)-(3).

67.     Because Plaintiff's and Innovative Heights Class Members' biometric identifiers (in the form of their fingerprints) were used to identify them, they constitute "biometric information." 740 ILCS 14/10.

68.     Plaintiff's and Innovative Heights Class Members' rights under IBIPA were violated by Innovative Height's failure to comply with IBIPA as set forth above, and in so violating IBIPA, Innovative Heights acted negligently, recklessly and/or intentionally.

69.     Plaintiff and Innovative Heights Class Members are "aggrieved" under IBIPA based on Innovative Heights' violation of their rights under IBIPA, and accordingly are entitled to seek damages and relief provided for under the statute. See Rosenbach v. Six Flags Entm't Corp., 2019 IL 123186, ¶ 40.

70.     Plaintiff and Innovative Heights Class Members are therefore entitled to damages available under IBIPA, including liquidated damages of $1,000 for each and every negligent violation, or alternatively, $5,000 for each and every intentional or reckless violation, or actual damages, whichever is greater, injunctive relief, and further damages and relief as set forth in the PRAYER FOR RELIEF below. 740 ILCS 14/20(1)-(4).

### COUNT II: CENTEREDGE'S VIOLATION OF 740 ILCS 14/1, *et seq.*<br>(Plaintiff and the CenterEdge Class)

71.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this Amended Complaint as though fully set forth herein.

15

72.     By collecting, capturing, receiving through trade, and obtaining Plaintiff's and CenterEdge Class Members' fingerprints without developing a written policy made available to the public that established a retention schedule and guidelines for the destruction of Plaintiff's and CenterEdge Class Members' biometric identifiers or biometric information, CenterEdge violated IBIPA. 740 ILCS 14/15(a).

73.     CenterEdge also violated Plaintiff's and CenterEdge Class Members' rights under IBIPA by collecting, capturing, receiving through trade, or otherwise obtaining their fingerprints, and not first:

a.      informing Plaintiff and CenterEdge Class Members in writing that their fingerprints were being collected or stored;

b.      informing Plaintiff and CenterEdge Class Members in writing of the specific purpose and length of term for which their fingerprints were being collected, stored, and used;

c.      receiving a written release executed by Plaintiff and CenterEdge Class Members.

740 ILCS 14/15(b)(1)-(3).

74.     Because Plaintiff's and CenterEdge Class Members' biometric identifiers (in the form of their fingerprints) were used to identify them, they constitute "biometric information." 740 ILCS 14/10.

75.     Plaintiff's and CenterEdge Class Members' rights under IBIPA were violated by CenterEdge's failure to comply with IBIPA as set forth above, and in so violating IBIPA, CenterEdge acted negligently, recklessly and/or intentionally.

76.     Plaintiff and CenterEdge Class Members are "aggrieved" under IBIPA based on CenterEdge's violation of their rights under IBIPA, and accordingly are entitled to seek damages and relief provided for under the statute. *See Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 40.

16

77. Plaintiff and CenterEdge Class Members are therefore entitled to damages available under IBIPA, including liquidated damages of $1,000 for each and every negligent violation, or alternatively, $5,000 for each and every intentional or reckless violation, or actual damages, whichever is greater, injunctive relief, and further damages and relief as set forth in the PRAYER FOR RELIEF below. 740 ILCS 14/20(1)-(4).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Classes, pray for judgment against Innovative Heights and CenterEdge as follows:

A.      Certifying the Innovative Heights Class and CenterEdge Class as requested herein;

B.      Entering an order appointing Law Office of Richard S. Cornfeld, LLC and Goldenberg Heller & Antognoli, P.C. as lead counsel for the Classes;

C.      Awarding statutory damages of $1,000 for each and every negligent violation of IBIPA, or alternatively, statutory damages of $5,000 for each and every violation if the Court finds that Innovative Heights' and/or CenterEdge's violations were intentional or reckless;

D.      Awarding actual damages to Plaintiff and the members of the Classes if greater than liquidated damages, as provided for under IBIPA;

E.      Declaring that Innovative Heights' and CenterEdge's actions, as set forth above, violate IBIPA;

F.      Awarding injunctive or other equitable relief as required to protect the interests of Plaintiff and Members of the Classes, including an order requiring Innovative Heights and CenterEdge to collect, store, use, and destroy biometric identifiers and

biometric information in a manner that complies with the requirements set forth in

IBIPA;

      G.     Awarding pre-judgment and post-judgment interest;

      H.     Awarding reasonable attorneys' fees and costs herein;

      I.     Awarding such other and further relief as the court deems fit and proper.


Dated: November 27, 2019      Respectfully submitted,

**LAW OFFICE OF RICHARD S. CORNFELD, LLC**

By: */s/ Richard S. Cornfeld*
    Richard S. Cornfeld, #0519391
    Daniel S. Levy, #6315524
    1010 Market Street, Suite 1645
    St. Louis, MO 63101
    P. 314-241-5799
    F. 314-241-5788
    rcornfeld@cornfeldlegal.com
    dlevy@cornfeldlegal.com

    And

    Kevin P. Green, #6299905
    GOLDENBERG HELLER & ANTOGNOLI, P.C.
    2227 South State Route 157
    Edwardsville, ILL 62025
    Telephone: (618) 656-5150
    kevin@ghalaw.com

    ***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 27th day of November the foregoing

document was filed electronically with the Clerk of Court and served upon all counsel of record

via the Court's electronic notification system.


_/s/ Richard S. Cornfeld_

Electronically Filed
Kahalah A. Clay
Circuit Clerk
Diane Kirksey
19L0311
St. Clair County
12/5/2019 2:40 PM
7616977

**IN THE CIRCUIT COURT**
**TWENTIETH JUDICIAL CIRCUIT**
**ST. CLAIR COUNTY, ILLINOIS**

|  |  |  |
|---|---|---|
| MADISYN STAUFFER, on behalf of herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Cause No. 19L0311 |
| vs. | ) ) ) | |
| INNOVATIVE HEIGHTS FAIRVIEW HEIGHTS, LLC | ) ) ) | |
| and | ) ) | **JURY TRIAL DEMANDED** |
| PATHFINDER SOFTWARE, LLC d/b/a CENTEREDGE SOFTWARE, LLC, | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT INNOVATIVE HEIGHTS FAIRVIEW HEIGHTS, LLC'S**
**ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S**
**FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant Innovative Heights Fairview Heights, LLC ("Defendant" or "Innovative Heights"), by and through its attorneys, submits the following Answer to Plaintiff's First Amended Class Action Complaint.

**INTRODUCTION**

1.      Plaintiff brings this action individually and on behalf of a Class of similarly situated individuals who were employed by Innovative Heights and worked at its Sky Zone facility ("the Innovative Heights Class") located at 10850 Lincoln Trail, Fairview Heights, IL 62208 ("Sky Zone Fairview Heights"), and gave their fingerprints to Innovative Heights at the commencement of their employment and scanned their fingerprints for timekeeping and other purposes as specified below, in violation of the Illinois Biometric Information Privacy Act ("IBIPA"), 740 ILCS 14/1,

*et seq.*

**ANSWER:  Defendant admits that Plaintiff purports to bring this action as a class action.  Defendant denies that it required its employees to give their fingerprints to it and further denies that it required employees to scan their fingerprints for timekeeping and other purposes.  Employees were given the option of scanning their fingerprints or using a PIN code for timekeeping purposes.**

2.      Plaintiff also brings this action individually and on behalf of a separate Class of similarly situated individuals who had their fingerprints collected, captured, purchased, received through trade, or obtained by CenterEdge in violation of IBIPA (the "CenterEdge Class").

**ANSWER:  The allegations of Paragraph 2 are not directed at Defendant and do not require a response from Defendant.**

3.      Sky Zone Fairview Heights is owned by Innovative Heights. Innovative Heights was the employer of Plaintiff and members of the Innovative Heights Class during all times that they worked at Sky Zone Fairview Heights.

**ANSWER: Sky Zone Fairview Heights admits it is owned by Innovative Heights.  The remaining allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant denies the allegations.**

4.      Sky Zone Fairview Heights is a recreational facility that markets, advertises, and offers certain attractions and programs to the public, including attractions it describes as Freestyle Jump, SkySlam, Ultimate Dodgeball, SkyHoops, SkyJoust, SkyLadder, Warped Wall, FreeClimb, Foam Zone, Ninja Warrior Course, Laser Tag, and Drop Zone.

**ANSWER: Admitted.**

5.     Sky Zone Fairview Heights holds itself out as a place where members of the public can hold parties and events in Fairview Heights, Illinois.

**ANSWER: Admitted.**

6.     At or near the beginning of their employment, at least until the filing of this lawsuit, Plaintiff and other employees at Innovative Heights' Sky Zone Fairview Heights facility scanned their private biometric identifiers in the form of their fingerprints into Innovative Heights' system and thereafter "clocked in" or "clocked out" of a shift throughout their employment by scanning their fingerprints into the system.  Employees also scanned their fingerprints into Innovative Heights' system at certain times in connection with their use of the cash registry, in the event it had "timed-out."

**ANSWER:   Defendant admits that some employees scanned their fingerprints timekeeping purposes, but denies that it required employees to scan their fingerprints for timekeeping and other purposes.  Employees were given the option of scanning their fingerprints or using a PIN code for timekeeping purposes.**

7.     Innovative Heights failed to comply with the requirements set forth in IBIPA before collecting, capturing, and otherwise obtaining such fingerprints.

**ANSWER:   Denied.**

8.     Innovative Heights' failure to comply with IBIPA means that its employees do not receive the important protections set forth in the statute, which is designed to allow employees and individuals to make informed decisions in connection with a private entity's collection, use, and retention of their private biometric identifiers, and to ensure that biometric identifiers are not obtained or used without the consent of the individual.

**ANSWER:   Defendant did not require employees to scan their fingerprints for**

timekeeping and other purposes.  **Employees were given the option of scanning their fingerprints or using a PIN code for timekeeping purposes.  Defendant further answers by stating that the allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the Illinois Biometric Information Privacy Act ("BIPA") speaks for itself. To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Defendant denies that it violated the BIPA.**

9.      By collecting, capturing, or otherwise obtaining Plaintiff's and Innovative Heights Class Members' fingerprints without making publicly available a proper policy; by not informing Plaintiff and Innovative Heights Class Members in writing that their fingerprints were being collected and the purpose therefore or the length of time that they were being held; and by not receiving a written release from Plaintiff and Innovative Heights Class Members, Innovative Heights has violated IBIPA, specifically 740 ILCS 14/15(a) and (b)(1)-(3).

**<u>ANSWER</u>:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as expressly stated, Defendant denies the allegations in this paragraph. Defendant denies that it violated the BIPA.**

10.     Based on Innovative Heights' violations of IBIPA, Plaintiff and Innovative Heights Class Members seek to recover statutory and other damages and relief allowed under IBIPA.

**<u>ANSWER</u>:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states**

4

that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as expressly stated, Defendant denies the allegations in this paragraph.  Defendant denies that it violated the BIPA.

11.     Initial discovery in this lawsuit has revealed that Innovative Heights is not the only entity that has collected, captured, purchased, received through trade, or obtained Plaintiff's fingerprints.

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  Defendant denies that it violated the BIPA.**

12.     Rather, CenterEdge has also collected, captured, purchased, received through trade, or obtained Plaintiff's fingerprints in connection with an agreement that it entered into with Innovative Heights.

**ANSWER:  The allegations of Paragraph 12 are not directed at Defendant and do not require a response from Defendant.  To the extent Paragraph 12 suggests that CenterEdge has violated BIPA as a result of an agreement that it entered into with Defendant, Defendant denies those allegations.**

13.     As part of the agreement between Innovative Heights and CenterEdge, CenterEdge provides Innovative Heights with a fingerprint tracking system. It also controls and/or runs the system and/or database in which Innovative Heights' employees' fingerprints are stored and/or receives the fingerprints contained therein. Based on its control of the system and/or database in which the fingerprints are stored and receipt of the fingerprints contained therein, CenterEdge has therefore collected, captured, received through trade, or obtained Plaintiff's fingerprints, without complying with the requirements set forth in IBIPA.

**ANSWER:  The allegations of Paragraph 13 are not directed at Defendant and do not require a response from Defendant.  To the extent Paragraph 13 suggests that CenterEdge has violated BIPA as a result of an agreement that it entered into with Defendant, Defendant denies those allegations.**

14.     Furthermore, upon information and belief, under similar agreements that CenterEdge has with other companies in Illinois, under which CenterEdge controls and/or runs the systems and/or databases in which the fingerprints of such companies' employees are stored, CenterEdge collects, captures, receives through trade, or obtains the fingerprints of such employees without complying with the requirements set forth in IBIPA.

**ANSWER:  The allegations of Paragraph 14 are not directed at Defendant and do not require a response from Defendant.  To the extent Paragraph 14 suggests that CenterEdge has violated BIPA as a result of an agreement that it entered into with Defendant, Defendant denies those allegations.**

15.     By collecting, capturing, or otherwise obtaining Plaintiff's and the CenterEdge Class Members' fingerprints without making publicly available a proper written policy; by not informing Plaintiff and CenterEdge Class Members in writing that their fingerprints were being collected and the purpose therefore or the length of time that they were being held; and by not receiving a written release from Plaintiff and CenterEdge Class Members, CenterEdge has violated IBIPA, specifically 740 ILCS 14/15(a) and (b)(1)-(3).

**ANSWER:  The allegations of Paragraph 15 are not directed at Defendant and do not require a response from Defendant.  To the extent Paragraph 15 suggests that CenterEdge has violated BIPA as a result of an agreement that it entered into with Defendant, Defendant denies those allegations.**

6

16.     As a result of CenterEdge's violations of IBIPA, Plaintiff and CenterEdge Class Members seek to recover statutory and other damages and relief allowed under IBIPA.

**ANSWER:  The allegations of Paragraph 16 are not directed at Defendant and do not require a response from Defendant.  To the extent Paragraph 16 suggests that CenterEdge has violated BIPA as a result of an agreement that it entered into with Defendant, Defendant denies those allegations.**

## PARTIES

17.     Plaintiff Madisyn Stauffer is a resident of Madison County, Illinois. She was employed by Innovative Heights and worked at the Sky Zone Fairview Heights facility from January of 2018 through May of 2018.

**ANSWER:  Defendant admits that Plaintiff began working at the Sky Zone Fairview Heights facility on January 25, 2018 and that her last day working was May 25, 2018.  Upon information and belief, Defendant admits that Stauffer is a resident of Madison County.**

18.     Plaintiff had her fingerprints collected, captured, and otherwise obtained by Innovative Heights at the beginning of her employment with Innovative Heights, and on each occasion that she "clocked in" or "clocked out" throughout her employment. She also had her fingerprints collected, captured, and otherwise obtained by Innovative Heights during certain times that she used the cash registry.  Based on CenterEdge's control of the system and/or database in which her fingerprints were stored and/or receipt of the fingerprints contained therein.  CenterEdge also collected, captured, received through trade, and otherwise obtained her fingerprints.

**ANSWER:  Defendant denies the allegations of paragraph 18.**

19.     Defendant Innovative Heights is an Illinois Limited Liability Company, with its principal office located at 10850 Lincoln Trail, #12A, Fairview Heights, Illinois 62208. Its

registered agent in Illinois is Bron Launsby, 10850 Lincoln Trail, #12A, Fairview Heights, Illinois 62208.

**ANSWER:  Admitted, but Defendant's principal office and registered agent are located at 10850 Lincoln Trail, #12B, Fairview Heights, IL 62208.**

20.     Innovative Heights conducts business in St. Clair County, Illinois, and transactions and conduct giving rise to the claims set forth in this Amended Complaint occurred in St. Clair County, Illinois. Specifically, the location of Sky Zone Fairview Heights where Plaintiff and Innovative Heights Class Members worked is in St. Clair County, Illinois.

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant. To the extent a response is required, Defendant admits that it transacts business in St. Clair County, Illinois.**

21.     Defendant CenterEdge is a North Carolina Limited Liability Company, with its principal office located at 5050 Durham Rd., Roxboro, NC 27574. Its registered agent in North Carolina is Robert E. Levin, 3511 Shannon Rd., Ste 140, Durham, NC 27707.

**ANSWER:  The allegations of Paragraph 21 are not directed at Defendant and do not require a response from Defendant.**

22.     CenterEdge conducts business in St. Clair County, Illinois, and transactions and conduct giving rise to the claims set forth in this Amended Complaint occurred in St. Clair County, Illinois. Specifically, the location of Sky Zone Fairview Heights, with whom CenterEdge did business at its facility, is in St. Clair County, Illinois.

**ANSWER:  The allegations of Paragraph 22 are not directed at Defendant and do not require a response from Defendant.**

23.     On its website, CenterEdge describes itself as a "leader in the entertainment software industry," states that in that capacity it "operate[s] as a processor of personal information for our customers, including via the Advantage Access Control App ('the app') and further states: "As a third-party processor, CenterEdge will not collect personal information directly from consumers via the app. Any information collected via the app will be considered as if collected by our customer, and provided to us as a third party processor."

**ANSWER:  The allegations of Paragraph 23 are not directed at Defendant and do not require a response from Defendant.**

## JURISDICTION AND VENUE

24.     This is a class action filed pursuant to 735 ILCS 5/2-801.

**ANSWER: The allegations in this paragraph call for legal conclusions and do not require a response from Defendant. To the extent a response is required, Defendant admits that Plaintiff has brought this action as a class action.  Defendant denies that this action is properly brought as a class action.**

25.     This Court has jurisdiction over this action pursuant to 735 ILCS 5/2-209(a)(1) and 735 ILCS 5/2-209(b)(4).

**ANSWER: The allegations in this paragraph call for legal conclusions and do not require a response from Defendant. To the extent a response is required, Defendant admits that it transacts business within the state of Illinois.**

26.     This Court has personal jurisdiction over Innovative Heights because it is registered to do business in Illinois and because it regularly conducts business in Illinois.

**ANSWER: The allegations in this paragraph call for legal conclusions and do not require a response from Defendant. To the extent a response is required, Defendant admits that it is registered to do business in Illinois and regularly conducts business in Illinois.**

27.    This Court has personal jurisdiction over CenterEdge because it regularly conducts business in Illinois and this action related to its business conducted in Illinois.

**ANSWER:    The allegations of Paragraph 27 are not directed at Defendant and do not require a response from Defendant.**

28.    Venue is proper in this Court pursuant to 735 ILCS 5/2-101 and 735 ILCS 5/2102 because Innovative Heights and CenterEdge are doing business in St. Clair County and because the transactions or conduct at issue or some part thereof occurred in St. Clair County.

**ANSWER:    The allegations in this paragraph call for legal conclusions and do not require a response from Defendant. To the extent a response is required, Defendant admits that it transacts business within St. Clair County.**

## JURY DEMAND

29.    For each Count in this Complaint, Plaintiff demands a jury trial to the extent it is allowed by law.

**ANSWER:  Defendant admits that Plaintiff has requested a jury trial.**

## THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT

30.    The State of Illinois passed IBIPA in 2008 to serve the public welfare, based on concerns, both known and unknown, associated with the growing collection and use of biometrics by companies and other entities. 740 ILCS 14/5.

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states**

that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as expressly stated, Defendant denies the allegations in this paragraph. Defendant denies that it violated the BIPA.

31.     The Illinois General Assembly found that while the use of biometrics has been growing, "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information" in that unlike social security numbers or other identifiers that can be changed when compromised, biometrics are "biologically unique to the individual; therefore, once compromised, the individual has no recourse..." 740 ILCS 14/5(a)-(c).

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as expressly stated, Defendant denies the allegations in this paragraph. Defendant denies that it violated the BIPA.**

32.     Furthermore, the Illinois General Assembly stated that "[t]he full ramifications of biometric technology are not fully known," and that "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(f)-(g).

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as**

**expressly stated, Defendant denies the allegations in this paragraph. Defendant denies that it violated the BIPA.**

33.     Under IBIPA, a "biometric identifier" includes an individual's fingerprints, and the term "biometric information" "means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as expressly stated, Defendant denies the allegations in this paragraph. Defendant denies that it violated the BIPA.**

34.     IBIPA provides that a private entity (which includes LLCs such as Innovative Heights and CenterEdge) that is in possession of biometric identifiers or biometric information "must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first..." 740 ILCS 14/15(a).

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as**

expressly stated, Defendant denies the allegations in this paragraph. Defendant denies that it violated the BIPA.**

35.     IBIPA also provides that a private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information" unless it first informs that person in writing that such an identifier or information is being collected or stored; informs that person in writing of the "specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used"; and receives a written release executed by the person who is the subject of the biometric identifier or information. 740 ILCS/14/15(b)(1)-(3).

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as expressly stated, Defendant denies the allegations in this paragraph. Defendant denies that it violated the BIPA.**

36.     The statute defines "written release" as "informed written consent or, in the context of employment, a release executed by an employee as a condition of employment." 740 ILCS 14/10. As shown by this definition, IBIPA applies to employers and protects employees working in Illinois.

**ANSWER:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as**

**expressly stated, Defendant denies the allegations in this paragraph. Defendant denies that it violated the BIPA.**

37.     Thus, while IBIPA does not prohibit an Illinois employer or other entity from using biometric identifiers of employees or other individuals for timekeeping or other purposes, it does require that an employer or entity who wishes to do so must first comply with the safeguards set forth in the statute and obtain the employees' or other individuals' informed consent.

**<u>ANSWER</u>:  The allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the BIPA speaks for itself.  To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Except as expressly stated, Defendant denies the allegations in this paragraph. Defendant denies that it violated the BIPA.**

### <u>FACTLIAL ALLEGATOINS REGARDING DEFENDANT'S LIABILITY</u>

38.     Plaintiff began her employment with Innovative Heights in January of 2018 and worked for Innovative Heights as a Cashier, Event Host, and Event Planner at its Sky Zone Fairview Heights facility. She continued to work for Innovative Heights at its Sky Zone Fairview Heights facility until May of 2018.

**<u>ANSWER</u>:  Defendant admits that Plaintiff worked at the Sky Zone Fairview Heights facility from January 25, 2018 until May 25, 2018.  Defendant admits that Plaintiff worked the positions of Cashier, Event Host, and Event Assistant.**

39.     When Plaintiff began her employment with Innovative Heights, her fingerprints were taken by Innovative Heights.

**ANSWER:  Defendant admits that some employees scanned their fingerprints for timekeeping purposes, but denies that it required employees to scan their fingerprints for timekeeping and other purposes.  Employees were given the option of scanning their fingerprints or using a PIN code for timekeeping purposes.  Answering further, Defendant does not understand the phrase "her fingerprints were taken."**

40.     Plaintiff's fingerprints were then used in lieu of a more traditional time clock, in that she scanned her fingerprints into Innovative Heights's system each time she "clocked in" or "clocked out" of work throughout her employment.

**ANSWER:  Defendant admits that some employees scanned their fingerprints for timekeeping purposes, but denies that it required employees to scan their fingerprints for timekeeping and other purposes.  Employees were given the option of scanning their fingerprints or using a PIN code for timekeeping purposes.**

41.     Plaintiff also scanned her fingerprints at additional times throughout her employment in connection with her use of the cash register. Specifically, if she had not recently been helping a customer and the cash register had timed out and needed to be "woken up," she had to do so by scanning her fingerprints.

**ANSWER:  Defendant admits that some employees scanned their fingerprints for timekeeping purposes, but denies that it required employees to scan their fingerprints for timekeeping and other purposes.  Employees were given the option of scanning their fingerprints or using a PIN code for timekeeping purposes.**

42.     Plaintiff or her legally authorized representative was never informed by Innovative Heights or CenterEdge in writing of the specific purpose and the period for which her fingerprints were being collected, stored or used.

**ANSWER**:  Defendant did not require employees to scan their fingerprints for timekeeping and other purposes.  Employees were given the option of scanning their fingerprints or using a PIN code for timekeeping purposes.  Defendant further answers by stating that the allegations in this paragraph call for legal conclusions and do not require a response from Defendant.  To the extent a response is required, Defendant states that the Illinois Biometric Information Privacy Act ("BIPA") speaks for itself. To the extent that Plaintiff's characterization of the BIPA is inaccurate or incomplete, Defendant denies the allegations in this paragraph.  Defendant denies that it violated the BIPA.

**Innovative Heights' Actions Violated IBIPA**

43.     Innovative Heights collected, captured, obtained, and possessed Plaintiff's and Innovative Heights Class Members' fingerprints at the beginning of their employment with Innovative Heights and each time thereafter when Plaintiff and Innovative Heights Class Members scanned their fingerprints to "clock in" or "clock out" or to awaken the cash register, yet Innovative Heights did not make available to the public a written policy establishing a retention schedule and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting such fingerprints has been satisfied.  Its failure to publish such a policy means that when Plaintiff and Innovative Heights Class Members left of leave the employment of Innovative Heights, they were or are left unaware if and when their biometric identifiers would be destroyed. Furthermore, if Innovative Heights were to be sold or go out of business, Plaintiffs and Innovative Heights Class Members would be left unaware as to who is in possession of their highly confidential and private biometric identifiers.

**ANSWER**:  Defendant denies the allegations of Paragraph 43 and denies that it violated the BIPA.

44.     Innovative Heights also failed to notify Plaintiff and Innovative Heights Class Members in writing that their fingerprints were being collected, stored, and used, even though their fingerprints were collected and stored by Innovative Heights when they began their employment. Furthermore, Plaintiff and Innovative Heights Class Members scanned their fingerprints many times during every day that they reported to work at Innovative Heights' Sky Zone Fairview Heights facility.

**ANSWER:  Defendant denies the allegations of Paragraph 44 and denies that it violated the BIPA.**

45.     Innovative Heights also collected or captured Plaintiff's and Innovative Heights Class Members' fingerprints without first informing them in writing of the purpose for which their fingerprints were being collected, stored, or used, or for how long their fingerprints were being collected, stored, or used.

**ANSWER:  Defendant denies the allegations of Paragraph 45 and denies that it violated the BIPA.**

46.     Innovative Heights also failed to obtain a written release from Plaintiff and Innovative Heights Class Members before collecting their fingerprints.

**ANSWER:  Defendant denies the allegations of Paragraph 46 and denies that it violated the BIPA.**

47.     Innovative Heights' actions have prevented Plaintiff and Innovative Heights Class Members from giving their informed consent and having access to important and legally required information regarding how their sensitive biometric identifiers are stored and kept.

**ANSWER:  Defendant denies the allegations of Paragraph 47 and denies that it violated the BIPA.**

**CenterEdge's Actions Violated IBIPA**

48.    As initial discovery in this case establishes, CenterEdge not only provides companies (including Innovative Heights) with fingerprint tracking technology for the companies' employees to use, but also runs and/or controls the systems and/or databases in which such employees' fingerprints are stored and/or receives the fingerprints contained therein.

**ANSWER:**    **The allegations of this Paragraph are not directed at Defendant and do not require a response from Defendant.**

49.    According to Innovative Heights' discovery responses in this case and CenterEdge's representations on its website, CenterEdge collected, captured, received through trade, and/or obtained Plaintiff's and CenterEdge Class Members' fingerprints each time that Plaintiff and CenterEdge Class Members scanned their fingerprints in connection with their employment.

**ANSWER:  The allegations of this Paragraph are not directed at Defendant and do not require a response from Defendant.**

50.    CenterEdge did not make available to the public a written policy establishing a retention schedule and guidelines for permanently destroying any such fingerprints when the initial purpose for collecting such fingerprints has been satisfied.

**ANSWER:  The allegations of this Paragraph are not directed at Defendant and do not require a response from Defendant.**

51.    CenterEdge further failed to notify Plaintiff and CenterEdge Class Members in writing that their fingerprints were being collected, stored, and used, even though it was collecting and storing their fingerprints.

**ANSWER:  The allegations of this Paragraph are not directed at Defendant and do not require a response from Defendant.**

52.     CenterEdge also collected, captured, received through trade, and obtained Plaintiff's and CenterEdge Class Members' fingerprints without first informing them in writing the purpose for which their fingerprints were being collected, stored, or used, or for how long their fingerprints were being collected, stored, or used.

**ANSWER:  The allegations of this Paragraph are not directed at Defendant and do not require a response from Defendant.**

53.     CenterEdge also failed to obtain a written release from Plaintiff and CenterEdge Class Members before collecting, capturing, receiving through trade, and obtaining their fingerprints.

**ANSWER:  The allegations of this Paragraph are not directed at Defendant and do not require a response from Defendant.**

54.     CenterEdge's actions have prevented Plaintiff and CenterEdge Class Members from giving their informed consent and having access to important information regarding how their sensitive biometric identifiers are stored and kept.

**ANSWER:  The allegations of this Paragraph are not directed at Defendant and do not require a response from Defendant.**

## CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action on behalf of a class of similarly situated employees of Innovative Heights who worked at its Sky Zone Fairview Heights facility and whose biometric identifiers and/or biometric information was improperly obtained by Innovative Heights.

**ANSWER:  Defendant admits that Plaintiff purports to bring the claims set forth in her First Amended Complaint as a class action on behalf of the proposed putative class described in this paragraph, but denies that this action may be maintained as a class action. Defendant denies liability to Plaintiff or any member of the purported class. Except as expressly admitted, Defendant denies the allegations in this paragraph.**

56.     Plaintiff also brings this action on behalf of a class of similarly situated individuals whose biometric identifiers and/or biometric information was improperly obtained by CenterEdge.

**ANSWER:  The allegations of this Paragraph are not directed at Defendant and do not require a response from Defendant.**

57.     Specifically, pursuant to 735 ILCS 5/2-801, Plaintiff seeks certification of the following Classes, defined as follows:

**"Innovative Heights Class"**

All Illinois citizens from whom Innovative Heights collected, captured, received, or otherwise obtained biometric identifiers or biometric information, including fingerprints, during the applicable statutory period prior to: (1) receiving a written release; and/or (2) providing written information that their biometric identifier or biometric information was being collected or stored and the purpose and length thereof. Excluded from the Innovative Heights Class is any person who has or had a controlling interest in Innovative Heights.

**"CenterEdge Class"**

All Illinois citizens from whom CenterEdge collected, captured, received, or otherwise obtained biometric identifiers or biometric information, including fingerprints, during the applicable statutory period prior to: (1) receiving a written release; and/or (2) providing written information that their biometric identifier or biometric information was being collected or stored and the purpose and length thereof. Excluded from the CenterEdge Class is any person who has or had a controlling interest in CenterEdge.

Plaintiff may modify these class definitions based on discovery yet to be taken.

**ANSWER:  Defendant admits that Plaintiff purports to bring the claims set forth in her First Amended Complaint as a class action on behalf of the proposed putative class described in this paragraph, but denies that this action may be maintained as a class action. Defendant denies liability to Plaintiff or any member of the purported class. Except as expressly admitted, Defendant denies the allegations in this paragraph.**

58.     Numerosity. The exact size of the Classes are currently unknown to Plaintiff, but on information and belief the total number of members in the Classes is, at a minimum , in the hundreds, and the Class is so numerous that joinder of all Class Members would be impracticable.

**ANSWER: The allegations in this paragraph call for legal conclusions and do not require a response from Defendant. To the extent a response is required, Defendant denies that this action may be maintained as a class action, denies liability to Plaintiff or any member of the purported class, and denies the allegations in this paragraph.**

59.     Commonality. There is a well-defined community of interest in the questions of law and fact affecting the members of the Classes, and questions of law and fact common to the Class predominate over any questions affecting only individual members. Among the numerous questions of law or fact common to the Innovative Heights Class are the following:

a.      Whether Innovative Heights developed and made available to the public a policy in compliance with 740 ILCS 14/15(a), before it obtained Plaintiff's and Innovative Heights Class Members' biometric identifiers;

b.      Whether Innovative Heights collected, captured, received through trade, or otherwise obtained Plaintiff's and Innovative Heights Class Members' biometric identifiers or biometric information;

c.      Whether Innovative Heights informed Plaintiff and Innovative Heights Class Members in writing that it was collecting their biometric identifier or biometric information;

d.   Whether Innovative Heights informed Plaintiff and Innovative Heights Class Members in writing of the specific purpose and length of term for which it was collecting their biometric identifier or biometric information;

e.   Whether Innovative Heights received written releases from Plaintiff and Innovative Heights Class Members before capturing, collecting, receiving through trade, or otherwise obtaining their biometric identifiers or biometric information;

f.   Whether Innovative Heights used Plaintiff's and Innovative Heights Class Members' biometric identifiers or biometric information  to identify them; and

g.   Whether any violations of IBIPA by Innovative Heights were negligent, or rather were reckless or intentional.

**ANSWER: The allegations in this paragraph call for legal conclusions and do not require a response from Defendant. To the extent a response is required, Defendant denies that this action may be maintained as a class action, denies liability to Plaintiff or any member of the purported class, and denies the allegations in this paragraph.**

60.   Among the numerous questions of law or fact common to the CenterEdge Class are the following:

a.   Whether CenterEdge developed and made available to the public a policy in compliance with 740 ILCS 14/15(a), before it obtained Plaintiff's and CenterEdge Class Members' biometric identifiers;

b.   Whether CenterEdge collected, captured, received through trade, or otherwise obtained Plaintiff's and CenterEdge Class Members' biometric identifiers or biometric information;

c.   Whether CenterEdge informed Plaintiff and CenterEdge Class Members in writing that it was collecting their biometric identifier or biometric information;

d.   Whether CenterEdge informed Plaintiff and CenterEdge Class Members in writing of the specific purpose and length of term for which it was collecting their biometric identifier or biometric information;

e.   Whether CenterEdge received written releases from Plaintiff and CenterEdge Class Members before capturing, collecting, receiving through trade, or otherwise obtaining their biometric identifiers or biometric information; and

      f.   Whether any violations of IBIPA by CenterEdge were negligent, or rather were reckless or intentional.

**ANSWER:  The allegations of this Paragraph are not directed at Defendant and do not require a response from Defendant.**

61.    Typicality. The claims of Plaintiff are typical of the claims of the members of the Class. Plaintiff and all members of the CenterEdge Class have had their rights under IBIPA violated based on CenterEdge's failure to comply with the provisions of IBIPA, and Plaintiff and all members of the Innovative Heights Class have had their rights under IBIPA further violated based on Innovative Heights' failure to comply with the provisions of IBIPA.

**ANSWER: The allegations in this paragraph call for legal conclusions and do not require a response from Defendant. To the extent a response is required, Defendant denies that this action may be maintained as a class action, denies liability to Plaintiff or any member of the purported class, and denies the allegations in this paragraph.**

62.    Adequacy of Representation. Plaintiff is an adequate representative of the Classes and has no conflict of interest with other members of the Classes. Plaintiff's attorneys are experienced in this type of litigation and will prosecute the action vigorously on behalf of the Classes.

**ANSWER: The allegations in this paragraph call for legal conclusions and do not require a response from Defendant. To the extent a response is required, Defendant denies that this action may be maintained as a class action, denies liability to Plaintiff or any member of the purported class, and denies the allegations in this paragraph.**

63.    Superiority. A class action is an appropriate method to adjudicate this controversy and is superior to any other available methods for the fair and efficient adjudication of this

controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Furthermore, the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent and varying adjudications concerning the subject of this action. A class action would conserve the resources of the courts and litigants and further efficient adjudication of the claims of the members of the Classes.

**ANSWER: The allegations in this paragraph call for legal conclusions and do not require a response from Defendant. To the extent a response is required, Defendant denies that this action may be maintained as a class action, denies liability to Plaintiff or any member of the purported class, and denies the allegations in this paragraph.**

**COUNT I: INNOVATIVE HEIGHTS' VIOLATION OF 740 I L.CS 14/1, et seq
(Plaintiff and the Innovative Heights Class)**

64.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this Amended Complaint as though fully set forth herein.

**ANSWER:  Defendant incorporates its responses to paragraphs 1 through 63 of the First Amended Complaint as if set forth fully herein.**

65.     By obtaining and possessing Plaintiff's and Innovative Heights Class Members' fingerprints without developing a written policy made available to the public that established a retention schedule and guidelines for the destruction of Plaintiff's and Innovative Heights Class Members' biometric identifiers or biometric information, Innovative Heights violated IBIPA. 740 ILCS 14/15(a).

**ANSWER:  Defendant denies the allegations of paragraph 65.**

66.     Innovative Heights also violated Plaintiff's and Innovative Heights Class Members' rights under IBIPA by collecting, capturing, or otherwise obtaining their fingerprints, and not first:

> a.     informing Plaintiff and Innovative Heights Class Members in writing that their fingerprints were being collected or stored;
>
> b.     informing Plaintiff and Innovative Heights Class Members in writing of the specific purpose and length of term for which their fingerprints were being collected, stored, and used;
>
> c.     receiving a written release executed by Plaintiff and Innovative Heights.

740 ILCS 14/15(b)(1)-(3).

**ANSWER:  Defendant denies the allegations of paragraph 66.**

67.     Because Plaintiff's and Innovative Heights Class Members' biometric identifiers (in the form of their fingerprints) were used to identify them, they constitute "biometric information." 740 ILCS 14/10.

**ANSWER:  Defendant denies the allegations of paragraph 67.**

68.     Plaintiff's and Innovative Heights Class Members' rights under IBIPA were violated by Innovative Height's failure to comply with IBIPA as set forth above, and in so violating IBIPA, Innovative Heights acted negligently, recklessly and/or intentionally.

**ANSWER:  Defendant denies the allegations of paragraph 68.**

69.     Plaintiff and Innovative Heights Class Members are "aggrieved" under IBIPA based on Innovative Heights' violation of their rights under IBIPA, and accordingly are entitled to seek damages and relief provided for under the statute. *See Rosenbach v. Six Flags Entm 't Corp.,* 2019 IL 123186, ¶ 40.

**ANSWER:  Defendant denies the allegations of paragraph 69.**

70.     Plaintiff and Class Members are therefore entitled to damages available under IBIPA, including liquidated damages of $1,000 for each and every negligent violation, or alternatively, $5,000 for each and every intentional or reckless violation, or actual damages, whichever is greater, injunctive relief, and further damages and relief as set forth in the PRAYER FOR RELIEF below. 740 1LCS 14/20(1)-(4).

**ANSWER:  Defendant denies the allegations of paragraph 70.**

**COUNT II: CENTEREDGE'S VIOLATION OF 740 ILCS 14/1, *et seq*.**
**(Plaintiff and the CenterEdge Class)**

71.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this Amended Complaint as though fully set forth herein.

**ANSWER:  Defendant incorporates its responses to paragraphs 1 through 70 of the First Amended Complaint as if set forth fully herein.**

72.     By collecting, capturing, receiving through trade, and obtaining Plaintiff's and CenterEdge Class Members' fingerprints without developing a written policy made available to the public that established a retention schedule and guidelines for the destruction of Plaintiff's and CenterEdge Class Members' biometric identifiers or biometric information, CenterEdge violated IBIPA. 740 ILCS 14/15(a).

**ANSWER:  The allegations of this Paragraph are not directed at Defendant and do not require a response from Defendant.**

73.     CenterEdge also violated Plaintiff's and CenterEdge Class Members' rights under IBIPA by collecting, capturing, receiving through trade, or otherwise obtaining their fingerprints, and not first:

        a.      informing Plaintiff and CenterEdge Class Members in writing that their fingerprints were being collected or stored;

26

b.      informing Plaintiff and CenterEdge Class Members in writing of the specific purpose and length of term for which their fingerprints were being collected, stored, and used;

c.      receiving a written release executed by Plaintiff and CenterEdge Class Members.

740 ILCS 14/15(b)(1)-(3).

**ANSWER:  The allegations of this Paragraph are not directed at Defendant and do not require a response from Defendant.**

74.    Because Plaintiff's and CenterEdge Class Members' biometric identifiers (in the form of their fingerprints) were used to identify them, they constitute "biometric information." 740 ILCS 14/10.

**ANSWER:  The allegations of this Paragraph are not directed at Defendant and do not require a response from Defendant.**

75.    Plaintiff's and CenterEdge Class Members' rights under IBIPA were violated by CenterEdge's failure to comply with IBIPA as set forth above, and in so violating IBIPA, CenterEdge acted negligently, recklessly and/or intentionally.

**ANSWER:  The allegations of this Paragraph are not directed at Defendant and do not require a response from Defendant.**

76.    Plaintiff and CenterEdge Class Members are "aggrieved" under IBIPA based on CenterEdge's violation of their rights under IBIPA, and accordingly are entitled to seek damages and relief provided for under the statute. *See Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 40.

**ANSWER:  The allegations of this Paragraph are not directed at Defendant and do not require a response from Defendant.**

77.    Plaintiff and CenterEdge Class Members are therefore entitled to damages available

under IBIPA, including liquidated damages of $1,000 for each and every negligent violation, or alternatively, $5,000 for each and every intentional or reckless violation, or actual damages, whichever is greater, injunctive relief, and further damages and relief as set forth in the PRAYER FOR RELIEF below. 740 ILCS 14/20(1)-(4).

**ANSWER:  The allegations of this Paragraph are not directed at Defendant and do not require a response from Defendant.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Classes, pray for judgment against Innovative Heights and CenterEdge as follows:

A.      Certifying the Innovative Heights and CenterEdge Class as requested herein;

B.      Entering an order appointing Law Office of Richard S. Cornfeld, LLC and Goldenberg Heller & Antognoli, P.C. as lead counsel for the Classes;

C.      Awarding statutory damages of $1,000 for each and every negligent violation of IBIPA, or alternatively, statutory damages of $5,000 for each and every violation if the Court finds that Innovative Heights' and/or CenterEdge's violations were intentional or reckless;

D.      Awarding actual damages to Plaintiff and the members of the Classes if greater than liquidated damages, as provided for under IBIPA;

E.      Declaring that Innovative Heights' and CenterEdge's actions, as set forth above, violate IBIPA;

F.      Awarding injunctive or other equitable relief as required to protect the interests of Plaintiff and Members of the Classes, including an order requiring Innovative Heights and CenterEdge to collect, store, use, and destroy biometric identifiers and biometric information in a manner that complies with the requirements set forth in IBIPA;

G.      Awarding pre judgment and post-judgment interest;

H.      Awarding reasonable attorneys' fees and costs herein;

I.      Awarding such other and further relief as the court deems fit and proper.

**ANSWER:  Defendant denies that Plaintiff is entitled to the relief sought in this "Wherefore" paragraph, including all subparts, and denies the allegations in this paragraph.**

## AFFIRMATIVE DEFENSES

Defendant Innovative Heights Fairview Heights, LLC asserts the following affirmative defenses.  Defendant reserves the right to amend its Answer to include any additional affirmative and/or other defenses which may be determined through further fact investigation or discovery in this matter.

## First Affirmative Defense

## (Good Faith and Substantial Compliance)

1.      The First Amended Complaint ("Complaint") is barred, in whole or in part, because Defendant's substantial compliance with the requirements of the BIPA excuses any alleged procedural or technical violations of the BIPA.

2.      To the extent that the BIPA applies to Defendant's time tracking system or devices, the claims are barred in whole or in part based on Defendant's good faith and reasonable interpretation of the BIPA and substantial compliance therewith.

3.      Defendant utilized its time tracking practices and devices for legitimate business purposes.

4.      No "biometric identifiers" or "biometric information" of Plaintiff or any putative class member has been stored, transmitted or protected in a manner deemed to be unreasonable

within the relevant industry or subject to safeguards that are less protective than the manner used to protect Defendant's own confidential or other sensitive information.

5.     To the extent the BIPA applies to Defendant's time tracking devices, the BIPA requirements are satisfied by disclosures regarding Defendant's time tracking system that persons employed by or working for Defendant received at or around the time of their hire or initial assignment to work at one of Defendant's locations.

## Second Affirmative Defense

## (Due Process / Unconstitutional)

6.     The Complaint is barred, in whole or in part, by the Due Process Clause of the United States Constitution and/or the Constitution of the State of Illinois.

7.     Plaintiff alleges that she and the putative class members she seeks to represent are entitled to recover $1,000 or $5,000 in statutory liquidated damages for each alleged violation of the BIPA.

8.     Assuming Plaintiff's allegations are true, such allegations amount only to a bare procedural or technical violation of the BIPA.

9.     Plaintiff and/or members of the putative class have not suffered any actual injury or other harm as a result of any violation of the BIPA.

10.    No "biometric identifiers" or "biometric information" of Plaintiff or any putative class member has been compromised by a data breach, identity theft, or other unauthorized disclosure.

11.    Nor have any such "biometric identifiers" or "biometric information" been misappropriated, misused, subject to an improper sale, lease, trade, or profit.

12.     No "biometric identifiers" or "biometric information" of Plaintiff or any putative class member has been stored, transmitted or protected in a manner deemed to be unreasonable within the relevant industry or subject to safeguards that are less protective than the manner used to protect Defendant's own confidential or other sensitive information.

13.     Harm that is speculative and/or hypothetical is not a cognizable injury or otherwise actionable under the BIPA, and does not render Plaintiff or any putative class member "aggrieved" by the alleged violation of the BIPA.

14.     The statutory liquidated damages potentially available under the BIPA, as applied to Plaintiff's and/or putative class members' claims and allegations, are grossly excessive and disproportionate in light of the absence of any injury or harm to Plaintiff and/or members of the putative class.

15.     The statutory liquidated damages potentially available under the BIPA, as applied to Plaintiff's and/or putative class members' claims and allegations, would result in a windfall to Plaintiff and/or putative class members because the BIPA's liquidated damages per-violation on a class-wide basis would be entirely disproportionate to a technical violation of the statute.

16.     The BIPA is unconstitutional because the statutory damage potentially available are grossly excessive and disproportionate in light of any actual harm to Plaintiff and the putative class.

17.     Any award of statutory liquidated damages to the Plaintiff or putative class members would violate Defendant's due process rights.

### Third Affirmative Defense

### (Unenforceable Liquidated Damages)

18.     The Complaint is barred, in whole or in part, because the BIPA's liquidated statutory damages provision is not enforceable.

19.     Plaintiff alleges that she and the putative class members she seeks to represent are entitled to recover $1,000 or $5,000 in statutory liquidated damages for each alleged negligent violation of the BIPA.

20.     Plaintiff and/or members of the putative class do not even seek to recover actual damages.

21.     Assuming *arguendo* that Plaintiff's allegations are true, such allegations amount only to a bare procedural or technical violation of the BIPA.

22.     No "biometric identifiers" or "biometric information" of Plaintiff or any putative class member has been compromised by a data breach, identity theft, or other unauthorized disclosure.

23.     Nor have any such "biometric identifiers" or "biometric information" been misappropriated, misused, subject to an improper sale, lease, trade, or profit.

24.     No "biometric identifiers" or "biometric information" of Plaintiff or any putative class member has been stored, transmitted or protected in a manner deemed to be unreasonable within the relevant industry or subject to safeguards that are less protective than the manner used to protect Defendant's own confidential or other sensitive information.

25.     Harm that is speculative and/or hypothetical is not a cognizable injury or otherwise actionable under the BIPA, and does not render Plaintiff or any putative class member "aggrieved" by the alleged violation of the BIPA.

26.     The statutory liquidated damages potentially available under the BIPA, as applied to Plaintiff's claims and allegations, do not reasonably estimate Plaintiff's and/or putative class members' actual damages, which are zero.

27.     Accordingly, any such recovery would not be a reasonable estimate of actual damages, but instead would be more akin to punitive damages for strict liability— given that Plaintiff and the putative class members have not suffered any injury nor incurred any harm to warrant such relief.

28.     Therefore, Plaintiff and/or members of the putative class should not be permitted to recover statutory liquidated damages where no actual damages have been suffered or alleged.

## Fourth Affirmative Defense

### (Waiver/Authorization/Consent/Ratification/Acquiescence)

29.     The Complaint is barred, in whole or in part, because of Plaintiff's and any putative class members' authorization, consent to, ratification of, and/or acquiescence to Defendant's time tracking practices and use of Defendant's time tracking devices.

30.     Plaintiff and the putative class members actually or constructively consented and agreed, either expressly or impliedly, to the non-invasive use of Defendant's time tracking devices, without threat, coercion or compulsion, as part of the time tracking systems and procedures at their place of work, and continued to voluntarily use Defendant's time tracking devices with knowledge of their operation and without making any inquiry concerning the collection, use, or retention of personal information.

## Fifth Affirmative Defense

### (Estoppel)

31.     The Complaint is barred, in whole or in part, by the doctrine of estoppel.

32.     Plaintiff and the putative class members actually or constructively consented and agreed, either expressly or impliedly, to the non-invasive use of Defendant's time tracking devices, without threat, coercion or compulsion, as part of the time tracking systems and procedures at their place of work, and continued to voluntarily use Defendant's time tracking devices with knowledge of their operation and without making any inquiry concerning the collection, use, or retention of personal information.

<u>**Sixth Affirmative Defense**</u>

<u>**(Laches)**</u>

33.     The Complaint is barred, in whole or in part, by the doctrine of laches to the extent Plaintiff and the putative class members unreasonably delayed before asserting their purported rights under BIPA and, thereby, cause undue prejudice to Defendant.

34.     Defendant implemented its time tracking system at issue in May 2017.

35.     Plaintiff and each putative Class member knew of Defendant's time tracking system conduct, and even participated in using Defendant's time tracking devices for years.

36.     Neither Plaintiff nor any potential class member ever expressed a concern about Defendant's time tracking system, nor did they request to use the alternative method of clocking in/clocking out that existed.

37.     Yet Plaintiff did not file this lawsuit until April 29, 2019.

<u>**Seventh Affirmative Defense**</u>

<u>**(Unclean Hands)**</u>

38.     The Complaint is barred, in whole or in part, by the doctrine of unclean hands, due to Plaintiff's and/or putative class members' own acts and/or omissions with respect to the subject matter of the Complaint.

39.     Plaintiff and each putative class member approved and participated in the complained-of conduct by using, and agreeing to use, Defendant's time tracking systems, practices, and devices.

## Eighth Affirmative Defense

## (Contributory/Comparative Fault)

40.     Defendant places in issue the negligence, faults, and responsibilities of all persons and entities, including Plaintiff and/or members of the putative class (the existence of which is expressly denied), Plaintiff's employer, the putative class members' employers, and the timeclock technology vendors or software license providers, that have contributed in any degree to the injuries and damages alleged to have been sustained by Plaintiff and/or members of the putative class.

41.     Assuming that 100% represents the total combined negligence or fault, the negligence or fault of parties other than Defendant is more than 50% of the total proximate cause of the alleged damages and, therefore, there is no liability on the part of Defendant.

42.     In the alternative, judgment against Defendant, if any, should be diminished to an amount that represents Defendant's degree of negligence, fault, or responsibility, if any.

43.     If Plaintiff is found to be entitled to recover any alleged damages, Defendant's share thereof must be apportioned or reduced to the extent that such damages are attributable to persons or entities other than Defendant.

44.     Additionally, if Defendant's fault is determined to be less than 25% of the total fault attributable to Plaintiff, Defendant, and any other third parties, Defendant should only be severally liable.

## Ninth Affirmative Defense

**(Failure to Mitigate Damages)**

45.     The Complaint is barred, in whole or in part, by Plaintiff's and/or putative class members' (the existence of which is expressly denied) failure to mitigate their alleged damages.

46.     Plaintiff and the putative class members voluntarily used Defendant's time tracking devices, without threat, coercion or compulsion, as part of the time tracking systems and procedures at their place of work, and continued to voluntarily use Defendant's time tracking devices with knowledge of their operation and without making any inquiry concerning the collection, use, or retention of personal information.

47.     Strict compliance with the BIPA (including the publication of a written policy with retention schedules and guidelines for permanently destroying biometric identifiers and biometric information, as well as obtaining advance written consent for the collection, storage, and use of such data and/or disclosing the purpose and length of term for same) would not have stopped Plaintiff or any putative class member from voluntarily using Defendant's time tracking devices and, therefore, would not have prevented the collection, storage, and use of any data, or mitigate against risk associated with the prospect of a data breach, identity theft, or other unauthorized disclosure.

48.     Plaintiff failed to complain to Defendant about the alleged time tracking system. Had she raised such concerns, Defendant would have provided Plaintiff the ability to use a different process for clocking in/clocking out.

**Tenth Affirmative Defense**

**(Statute of Limitations)**

49.     The Complaint may be barred, in whole or in part, by any applicable statutes of limitations, including, but not limited to, the one-year statute of limitations for publication of

matter violating a right of privacy or the two-year statute of limitations for actions involving, among other things, personal injury. *See* 735 ILCS 5/13-201; 735 ILCS 5/13-202.

50.     Defendant implemented its time tracking system at issue in May 2017.

51.     Plaintiff did not file this lawsuit until April 29, 2019.

## Eleventh Affirmative Defense

## (Preemption)

52.     The Complaint is barred, in whole or in part, to the extent that any claim of Plaintiff or any putative class member (the existence of which is expressly denied) is barred or preempted by the Workers' Compensation Act, 820 ILCS 305/1 *et seq*.

## Twelfth Affirmative Defense

## (Claim or Issue Preclusion)

53.     The Complaint is barred, in whole or in part, to the extent that any claim of Plaintiff or any putative class member (the existence of which is expressly denied) is barred under the doctrines of issue or claim preclusion.

## Thirteenth Affirmative Defense

## (Release or Accord and Satisfaction)

54.     The Complaint is barred, in whole or in part, to the extent that any claim of Plaintiff or any putative class member (the existence of which is expressly denied) is barred under the doctrines of release and/or accord and satisfaction.

## Fourteenth Affirmative Defense

## (Extraterritorial Application)

55.     The Complaint is barred, in whole or in part, to the extent that any claim of Plaintiff or any putative class member (the existence of which is expressly denied) requires extraterritorial application of the BIPA.

## **PRAYER FOR RELIEF**

WHEREFORE, Innovative Heights Fairview Heights, LLC prays for dismissal of the First Amended Complaint, with prejudice, at Plaintiff's cost, and for such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Defendant demands a trial by jury on all issues so triable.


By:   */s/  Charles N. Insler*
        Glenn E. Davis #6184597
        Charles N. Insler #6291652
        HEPLER BROOM LLC
        One Metropolitan Square
        211 North Broadway Suite 2700
        St. Louis, MO 63102
        Phone: 314-241-6160
        Fax: 314-241-6116
        cni@heplerbroom.com
        ged@heplerbroom.com

        *Counsel for the Defendant Innovative Heights*
        *Fairview Heights, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically with the Clerk of Court and served upon all counsel of record via the Court's electronic notification system on this 5th day of December 2019 and that a courtesy copy was sent by email to the following counsel of record:

Richard S. Cornfeld
Daniel S. Levy
1010 Market Street, Suite 1645
St. Louis, MO 63101
rcornfeld@cornfeldlegal.com
dlevy@cornfeldlegal.com

Kevin P. Green
Goldenberg Heller & Antognoli, P.C.
2227 South State Route 157
Edwardsville, IL 62025
kevin@ghalaw.com

*Attorneys for Plaintiff Madisyn Stauffer*

*/s/ Charles N. Insler*
Charles N. Insler