**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | |
|---|---|
| MADISYN STAUFFER, <br> on behalf of herself and all others similarly <br> situated, <br><br>        Plaintiff, <br><br>    v. <br><br> INNOVATIVE HEIGHTS FAIRVIEW <br> HEIGHTS, LLC <br><br> and <br><br> PATHFINDER SOFTWARE, LLC, d/b/a <br> CENTEREDGE SOFTWARE, <br><br>        Defendants. | ) <br> ) <br> ) <br> ) <br> )  Case No. 3:20-CV-00046 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT PATHFINDER SOFTWARE, LLC'S MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant PATHFINDER SOFTWARE, LLC d/b/a CENTEREDGE SOFTWARE, ("CenterEdge"), presents its Motion to Dismiss Plaintiff's First Amended Class Action Complaint ("Complaint") under Federal Rule of Civil Procedure 12(b)(6). In support of its motion, Defendant states as follows:

## I.      INTRODUCTION

This case arises from alleged violations of the Biometric Information Privacy Act, an Illinois statute. Plaintiff, Madisyn Stauffer ("Plaintiff" or "Stauffer"), who asserts no actual injury or damages, seeks statutory liquidated damages for each of several alleged technical violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.* ("BIPA" or the "Act"). BIPA was

enacted in 2008 to regulate the collection, storage and use of a person's "biometric identifier" or "biometric information" as defined under the Act. 740 ILCS 14/5.

## II.      BACKFROUND FACTS

Stauffer filed her initial complaint on April 29, 2019. In December of 2019, Stauffer filed her First Amended Class Action Complaint, individually, and on behalf of those similarly situated individuals, who were employed by Innovative Heights Fairview Heights, LLC ("Innovative Heights") and worked at its Skyzone facility at 10850 Lincoln Trail, Fairview Heights, IL 62208 ("Fairview Skyzone"). (Complaint at ¶1). Stauffer worked at the Fairview Skyzone from January of 2018 through May of 2018. (*Id.* at ¶17). Stauffer and other employees scanned their fingerprints into Innovative Heights' system to "clock in" or "clock out" of their shifts, and scanned their fingerprints in connection with using the cash register, when it "timed-out." (*Id*. at ¶6).

Stauffer alleges that Pathfinder unlawfully collected, stored, received through trade, and/or obtained Innovative Heights employees' biometric data in violation of BIPA. (*Id*. at ¶49). Stauffer claims that Pathfinder provided fingerprint tracking technology to Innovative Heights, and controlled systems and databases in which Innovative Heights employees' fingerprints are stored. (*Id.* at ¶48). Stauffer further alleges that Pathfinder violated BIPA by failing to (1) provide a publicly available biometric retention and destruction policy; (2) inform employees in writing of the purpose for which the data was collected, stored, or used, and the duration of time for which the data was collected, stored, or used; and (3) obtain a written release from employees before collecting, capturing, receiving through trade, and obtaining their fingerprints. (*Id.* at ¶¶50-54).

First, BIPA constitutes special legislation in violation of the Illinois Constitution. Under Illinois law, "[t]he special legislation clause expressly prohibits the General Assembly from conferring a special benefit or exclusive privilege on a person or a group of persons to the exclusion of others similarly

situated." *Best v. Taylor Mach. Works*, 179 Ill. 2d 367, 391 (1997). Yet, BIPA confers a special benefit on certain entities, including financial institutions and state and local governments and their contractors and agents. These entities are permitted to use—and, in fact, do use—biometric authentication and verification equipment without the requirement to conform with the consent and disclosure framework put in place by the BIPA. BIPA is unconstitutional special legislation and should be struck down accordingly.

Second, even assuming BIPA is constitutional legislation, Pathfinder is exempt from the Act under the financial institution exception. 740 ILCS 14/25(c). Point-of-sale ("POS") providers fall within the scope of a financial institution under the Act. Pathfinder provides its POS system and software system to Innovative Heights. Pathfinder's activities are financial in nature, and thus Pathfinder is exempt as a financial institution under BIPA.

Third, the applicable statute of limitations bars Stauffer's claims because she did not initiate this action within one year of when her privacy rights were allegedly invaded.

Fourth, Stauffer voluntarily provided her fingerprints to use the POS systems at issue, but never complained about having to do so. As such, she waived her right to file this action and is estopped from making such allegations. Her Complaint should be dismissed under the doctrine of waiver.

Fifth, Stauffer has failed to plead sufficient facts to support her claims, and the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6). Stauffer's Complaint merely recites various sections of the statute and alleges that Pathfinder failed to comply with those provisions. The conclusory allegations are not supported by any allegations of specific facts sufficient to demonstrate Stauffer's alleged negligence. Such allegations are insufficient; BIPA and the Federal Rules of Civil Procedure require more. As such, Stauffer's Complaint should be dismissed with prejudice.

### III.    LEGAL STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A complaint must be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint must contain factual allegations demonstrating that the plaintiff is entitled to relief, and those allegations must raise the right to relief above the speculative level to avoid dismissal under Fed. R. Civ. P. 12(b)(6). *Bell Atl. Corp. v. Twombly*, 590 U.S. 544, 555 (2007). To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim to relief that is "plausible on its face." *Id*. at 570. A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint cannot withstand a motion to dismiss where the factual allegations are insufficient to plausibly suggest a right to relief. *Id*.

### IV.    ARGUMENT

#### A. BIPA Is Unconstitutional Special Legislation.

Stauffer's Complaint should be dismissed because BIPA is impermissible special legislation and thus constitutionally defective. The Illinois Constitution states that "[t]he General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination. Ill. Const. Art. IV, § 13. This clause "specifically limits the lawmaking power of the General Assembly." *Best*, 179 Ill. 2d 367, 391 (1997). In short, "the purpose of the special legislation clause is to prevent arbitrary legislative classifications that discriminate in favor of a select group without a sound, reasonable basis." *Id.* The analysis conducted in evaluating a special legislation challenge is essentially the same as an equal protection challenge. *See id.*

The two concepts are flip sides of the same coin. *See Cty. of Bureau v. Thompson*, 139 Ill. 2d 323, 337 (1990).

In evaluating a special legislation challenge, courts engage in a two-step inquiry: (i) "first whether the statutory amendments discriminate in favor of a select group and," (ii) second, "if so, whether the classification created by the statutory amendments is arbitrary." *Allen v. Woodfield Chevrolet, Inc.*, 208 Ill. 2d 12, 33 (2003). The critical inquiry can be summarized as follows:

> Are the classifications created by the statute reasonable because these classifications are rationally related to achievement of the statute's legitimate goals in that the particular condition or attribute upon which the classifications are based constitutes a plausible distinction between the classes in view of the statute's legitimate goals?.... If the classes created by the statute are in fact similar in all respects relevant to the statute's purposes, however, the statute is unconstitutional because either it violates equal protection by denying to one class a benefit accorded those similarly situated, or it violates the bar on special legislation by granting a benefit to one class denied those similarly situated, or it violates both concepts.

*Thompson*, 139 Ill. 2d at 337. If a law is impermissible special legislation, this Court must hold that it is void. *See Allen*, 208 Ill. 2d at 33.

BIPA explicitly exempts at least two broad sectors of employers from complying with its requirements: (1) the financial sector (735 ILCS 14/25(c)) and (2) state and local government contractors (735 ILCS 14/25(e)). BIPA imposes strict compliance requirements on many employers, but also relieves two seemingly arbitrary sectors of employers from compliance with no rational reason for doing so. *See Allen*, 208 Ill. 2d at 22.

Excluding nearly the entire financial industry is particularly irrational because a fundamental purpose articulated by the legislature in passing BIPA was to protect consumers hesitant to have biometrics connected to financial information. *See* 740 ILCS § 5(b), (d), (e). Furthermore, a vast number of employers qualify as a "financial institution" and arbitrarily fall into BIPA's exclusion. BIPA excepts "financial institutions" from complying with the law as that term is defined by Title V of the GLBA. 740 ILCS §

25(c) ("[n]othing in this Act shall be deemed to apply *in any manner* to a financial institution or an affiliate of a financial institution") (emphasis added). In addition, the FTC has determined "financial institution" to encompass: retailers that issue credit to consumers; personal property and real estate appraisers; car dealerships that lease vehicles; career counselors that provide services to persons transitioning into or out of a financial organization; a business that prints or sells checks; a business that regularly wires money to consumers; a check-cashing business; a travel agency in connection with financial services; an accountant or tax preparation service business; a company providing real estate settlement services; mortgage brokers; investment advisory or credit counseling services. 16 C.F.R. § 313.3(k)(2). These businesses are in addition to the collection agencies, payday lenders, etc. that are "financial institutions." 16 C.F.R. § 313.1.

In addition to financial institutions, BIPA exempts all "contractor[s], subcontractor[s], or agent[s] of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25(e); *see also* 740 ILCS 14/10. Thus, by BIPA's construction, an employer working for privately held businesses and also the government may simultaneously be violating BIPA and enjoy exemption from liability depending on which customer the employer is servicing. For example, a cleaning services company that sends staff to a private business and also sends staff to clean the Illinois Department of Motor Vehicles—on the same day in offices within the same building—may on one hand be in violation of BIPA but enjoy exemption from the Act on the other.

Creating these special classifications for financial institutions, the government and its contractors violates the rational-basis test as it is in no way connected or related to the goal sought to be achieved by BIPA. *See Best*, 179 Ill. 2d at 394 ("[W]e must determine whether the classifications created by Section 2-1115.1 are based upon reasonable differences in kind or situation, and whether the basis for the classifications is sufficiently related to the evil to be obviated by the statute."). Here, excluding financial institutions and government entities run completely counter to the primary motivator in passing BIPA,

protecting consumer biometric data used by financial institutions after the demise and bankruptcy of Pay by Touch and nothing suggests that local governments and contractors are any more adept at protecting consumer data than a privately held employer.[1]

These special classifications in BIPA are identical to the precise kind of "arbitrary application to similarly situated individuals without adequate justification or connection to the purpose of the statute that the Illinois Supreme Court has historically struck down. *Id.* at 396. There is no rational basis to treat financial institutions, the government or government contractors differently under BIPA. If BIPA were genuinely enacted to protect Illinoisans' biometric data, there can be no arbitrary carve-out for these large employers in Illinois. The arbitrariness of these carve-outs should not be permitted to stand, and there is no legitimate reason to exclude them from compliance with the statute. *See Allen*, 208 Ill. 2d at 33 ("[r]ather than protecting consumers from unethical business practices of vehicle dealers, the amendments protect vehicle dealers from legitimate claims that the consumers of their products may possess."). BIPA is unconstitutional special legislation and should be struck down accordingly.

### B.   BIPA Does Not Apply to Pathfinder, a Financial Institution

In addition to the arguments above, Pathfinder is a financial institution under BIPA, and therefore BIPA does not apply it. Financial institutions, as described *supra*, are exempt from BIPA: "[n]othing in this Act shall be deemed to apply *in any manner* to a financial institution or financial affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder." 740 ILCS 14/25(c). 740 ILCS 14/25(c) relies on the federal Gramm-Leach-Bliley Act of 1999 ("GLBA") to define the term "financial institution." The GLBA defines

---

[1]*See e.g.* https://www2.illinois.gov/ides/lmi/Pages/CES.aspx *"Not Seasonally Adjusted Reports"* (~800,000 employees employed by local and state government in Illinois)*;* Data Guardian, Top 10 Biggest Government Data Breaches of All Time in the U.S., September 12, 2018, *available at* https://digitalguardian.com/blog/top-10-biggest-us-government-data-breaches-all-time.

"financial institution" as "any institution the business of which is engaging in financial activities as described in section 4(k) of the Bank Holding Company Act of 1956." 15 U.S.C.S. § 6809.

Turning to the Bank Holding Company Act of 1956 ("BHCA"), §4(k)(4) vastly defines activities that are financial in nature. 12 U.S.C.S § 1843. For example, "[l]ending, exchanging, transferring, investing for others, or safeguarding money or securities" are all defined as financial activities. *Id*. Additionally, providing financial services is also defined as a financial activity under the BHCA. *Id*.

Courts have construed the term "financial institution" in the GLBA and BHCA broadly. *See FTC v. AmeriDebt, Inc.*, 343 F.Supp 2d 451, 461-62 (D. Md. 2004) (where a credit card counseling service contended that the GLBA did not apply to it because it was not a financial institution under the GLBA's definition, which incorporated the BHCA, the court held that the BHCA was sufficiently broad to include counseling service activities); *see also* 16 C.F.R. § 313.3 (k)(1-2) (interpreting the BHCA and providing examples of financial institutions under the BHCA). *But see ABA v. FTC*, 430 F.3d 457, 470 (D.C. Cir. 2005) (attorneys and law firms do not qualify as financial institutions under the GLBA); *Goldman v. Brannon*, No. 5:11-CT-3051-FL, 2013 U.S. LEXIS 132815, at *14 (E.D. N.C. Sep. 17, 2013) (hotel defendants are not financial institutions under the GLBA).

POS provider activities are within the scope of §4(k) of the BHCA, and therefore within the scope of BIPA's financial institution exception. POS providers process credit and debit card payments, communicate with banks, and serve as a transactional link between businesses and consumers. These activities are exchanges, transfers, or safeguards of money or securities, and fall within the scope of financial services under the BHCA. 12 U.S.C.S § 1843. Thus, POS providers are

exempt from BIPA regulation because POS providers are financial institutions – *i.e.*, businesses that engage in financial activities as defined in the GLBA and BHCA.

Here, Pathfinder provided the POS system, hardware, and software for Innovative Heights during the time of Stauffer's employment at the Fairview Skyzone, as an employee of Innovative Heights, and as recently as January of 2018. Exhibit 1 at ¶¶ 4-5 (*see also* Complaint at ¶ 13). Pathfinder routinely uses its POS system hardware and software to process credit and debit card payments, communicate with banks, and link banks and other financial institutions to Innovative Heights. Exhibit 1 at ¶ 3. Furthermore, Innovative Heights used the POS system, hardware, and software provided by Pathfinder for financial transactions, credit and debit card payments, communication with banks, and money transfers. Exhibit 1 at ¶ 5. Pathfinder is a financial institution under BIPA, and thus BIPA does not apply to Pathfinder. Pathfinder requests the First Amended Complaint be dismissed with prejudice as a result.

### C. Stauffer's Complaint is Time-Barred by the Applicable Statute of Limitations

Stauffer failed to bring her action within the statute of limitations ("SOL") under Illinois law. BIPA does not provide a SOL. As such, the Court would have to make a legal determination as to what the proper SOL is under Illinois law. In these situations, Illinois courts review existing statute of limitations and apply the most specifically applicable one. *See Hernon v. E.W. Corrigan Constr. Co.*, 149 Ill.2d 190 (Ill. 1992) (holding that a specific statute of limitation applies over a general statute of limitations).

While some other courts in non-binding decisions have found that BIPA provides for a five year SOL, the better argument is that a one year SOL applies. Traditional invasion of privacy claims have a one year SOL from the date the privacy right is invaded. 735 ILCS 5/13-201; *see also Blair v. Nevada Landing P'ship*, 859 N.E.2d 1188, 1192 (Ill. App. Ct. 2006) (A plaintiff's cause of action "accrues at the time his or her interest is invaded"). A one year SOL applies to BIPA because the Illinois Supreme Court in

*Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186 signaled that BIPA is fundamentally a privacy statute. 2019 IL 123186, ¶33. Indeed, the Court stated, "our General Assembly has codified that individuals possess a right of privacy in and control over their biometric identifiers and biometric information." *Id*. at ¶33. In concluding that actual damages are unnecessary under BIPA, the Court reiterated, if this statute is violated, "the right of the individual to maintain [his or] her biometric privacy vanishes into thin air." *Id*. at ¶34. It is abundantly clear, based on the Supreme Court's language, that a violation of BIPA would be limited to a one year SOL. Moreover, Illinois' Right of Publicity Act, 765 ILCS 1075, like BIPA, does not provide for a limitations period, and it has been interpreted as providing for a one year SOL. *Blair v. Nevada Landing P'ship*, 859 N.E.2d 1188, 1192 (Ill. App. 2d Dist. 2006).

Accordingly, Stauffer's Complaint fails because she began using the POS system at Fairview Skyzone in January of 2018 (Compl. at ¶17), and did not file her initial complaint until April 29, 2019 when her privacy was allegedly invaded. The entire Complaint should be dismissed as a result. *See Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 185 (2005) (A class action fails if the named representative does not have a viable individual cause of action against the defendant).

**D.   Stauffer Voluntarily Waived Her Alleged Right to Sue Pathfinder for Alleged Violations of BIPA.**

Furthermore, Stauffer waived her right to sue Pathfinder. Waiver is the voluntary and intentional relinquishment of a known right inconsistent with an intent to enforce that right. *In re Nitz,* 317 Ill. App. 3d 119, 130 (2000). Waiver can arise either expressly or by conduct inconsistent with an intent to enforce that right. *Id.* In order to determine the applicability of waiver, one must focus on the conduct of the non-breaching party. *Id.* The doctrine of equitable estoppel prevents a party from asserting a right. *Hubble v. O'Connor*, 291 Ill. App. 3d 974, 986 (Ill. App., 1997). Estoppel may arise from silence as well as words. *Geddes v. Mill Creek Country Club, Inc*., 196 Ill. 2d 302, 303 (2001). It may arise where there is a duty to speak and the party on whom the duty rests has an opportunity to speak, and, knowing the circumstances,

keeps silent. *Id.* It is the duty of a person having a right, and seeing another about to commit an act infringing upon it, to assert his right. She cannot by her silence induce or encourage the commission of the act and then be heard to complain. *Id.* The question of estoppel depends on the facts of each case. *Id*

Even without a consent form, courts have held that implied notice and consent can preclude BIPA liability, dismissing BIPA cases involving employees or consumers who voluntarily submit their fingerprints exactly as Plaintiff did here. For example, in *Aguilar v. Rexnord LLC*, the plaintiff alleged that his employer violated BIPA by failing to provide formal notice and receive consent prior to collecting biometric information. 2018 U.S. Dist. LEXIS 110765 at *7. The court held that even without formal notice nor give formal consent, he knew his fingerprints were being collected because he scanned them each time he clocked in and out at work, and it was clear that the fingerprints were stored because they were used for authentication purposes. *Id.* at *8. Further, the court explained, "proper compliance with BIPA's disclosure and written authorization requirements would only have made explicit what should have already been obvious." *Id.* This has also been the conclusion of courts that have considered the question in the context of an employer's biometric system. *See, e.g., Howe v. Speedway LLC*, No. 17-cv-07303, 2018 U.S. Dist. LEXIS 90342 (N.D. Ill. May 31, 2018). The conclusion of the Court in the instant case should be the same, especially because Stauffer expressly consented to the use of Pathfinder's system.

Significantly, in *Howe*, the court considered other cases where the plaintiffs were actually unaware or did not consent to biometric information being taken such as *Patel v. Facebook, Monroy v. Shutterfly, Rivera v. Google,* and *Norberg v. Shutterfly*. The court distinguished those cases because, as is in the instant case, Howe voluntary submitted to the scan when he was hired and scanned his fingers at the start and end of each day to identify himself. *Howe* at *17. The court held that under these circumstances "any reasonable person should have known that his biometric data was being collected." *Id.*

Here, the same applies. Plaintiff implicitly consented to her collection of fingerprints and knew the purpose of collection was to "clock in" and "clock out" of work, and in connection with the cash registry when it "timed out." Clearly Stauffer voluntarily consented to the collection. Stauffer admits that she knew her finger was being scanned and certain characteristic points were being collected because she scanned her finger (i) when she began her employment at the Fairview Skyzone (Complaint at ¶ 38-39), (ii) when she clocked in and out (*Id*. at ¶40) and (iii) when the cash registry needed to be "woken up." (*Id*. at ¶ 41).

As in *Howe*, she knew that the information was being stored because the scan was compared to a stored set of characteristics in order to authenticate her identity. Yet, Stauffer does not allege she ever complained about this or initiated a grievance process. Rather, Stauffer remained silent, and continued to use the system throughout the course of her employment at the Fairview Skyzone. Stauffer's conduct demonstrates that she voluntarily relinquished a known right. Stauffer's conduct of continuing to use the system was clearly inconsistent with the intent to enforce her rights under BIPA, and thus constitute a waiver.

### E. Stauffer Has Not Pled Facts to Support the Assertion That Pathfinder Negligently, Recklessly, or Intentionally Violated BIPA.

Stauffer's Complaint should be dismissed because she has not, and cannot, plead sufficient facts to support her cause of action. The plain language of BIPA states that a plaintiff is only able to recover liquidated damages for negligent, reckless, or intentional violations of the statute. 740 ILCS 14/20(1). Stauffer's conclusory allegations fail under Fed. R. Civ. P 12(b)(6) pleading standards. *Ashcroft*, 556 U.S. at 678.

Nowhere in Stauffer's Complaint does she allege facts stating *how* Pathfinder collected her fingerprints or that such an act was negligently done. Aside from Stauffer's acknowledgement of a system in the workplace (*See e.g.* Compl. at ¶6), Stauffer does not sufficiently describe the method or tool Pathfinder used to scan these prints. Stauffer fails to provide any facts supporting or indicating how

Pathfinder negligently violated the statute. If there is no negligent, reckless or intentional violation, all of which have well settled legal definitions, there can be no recovery under BIPA. 740 ILCS 14/20(1). Stauffer's conclusory allegations do not meet the pleading standard under the Federal Rules of Civil Procedure, and the Complaint should be dismissed.

Additionally, Stauffer cites to *Rosenbach* to argue that a mere violation gives rise to a private right of action for Plaintiff class members "aggrieved" under BIPA, and Plaintiff class members are entitled to seek damages and relief under BIPA. (Compl. at ¶¶ 69, 76). 2019 IL 123186, ¶40. However, this narrow reading of BIPA and *Rosenbach* ignores the plain language of the statute, which requires negligent violations of the statute. In construing a statute, the primary objective is to ascertain the legislature's intent, and the best indicator of that intent "is the statutory language itself, which must be given its plain and ordinary meaning." *Gurba v. Cmty. High Sch. Dist. No. 155*, 2015 IL 118332, ¶ 10. The words of the statute "cannot be read in a fashion that would render words or phrases meaningless, redundant or superfluous." *Kraft, Inc. v. Edgar,* 138 Ill. 2d 178, 189 (1990).

In fact, *Rosenbach* did not address the requirement in Section 20(1) that a plaintiff plead and prove a negligent or other violation of the statute to recover damages. Instead, *Rosenbach* rendered only on two certified questions, which was limited to a holding that an individual whose biometric identifiers or biometric information were collected, retained or used in violation of Section 15 is "aggrieved" and "entitled to *seek* recovery" under BIPA Section 20. *Rosenbach*, 2019 IL 123186, ¶ 33 (emphasis added). However, the ability to *seek* liquidated damages is a far cry from being automatically entitled to *recover* liquidated damages, nor is it a free pass when it comes to complying with pleading requirements. Indeed, such a construction would be directly contrary to the express language of the statute and impermissibly render the word "negligently" or "willfully" meaningless, redundant and superfluous. *Kraft,* 138 Ill. 2d at 189.

Accordingly, Stauffer's allegations do not support any claim that Pathfinder negligently, recklessly or intentionally violated BIPA, and Pathfinder respectfully requests the Complaint be dismissed with prejudice.

## V.     CONCLUSION

WHEREFORE, Defendant, PATHFINDER SOFTWARE, LLC. doing business as CENTEREDGE SOFTWARE prays this Honorable Court dismiss Plaintiff's First Amended Class Action Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6)  and for any other relief deemed just and proper.

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH**

By:   _/s/ **Josh M. Kantrow**_____
        One of the Defendant's Attorneys

Kendall Canfield, Kendall.Canfield@lewisbrisbois.com
Lewis Brisbois Bisgaard & Smith LLP
103 W. Vandalia Street, Suite 300
Edwardsville, IL  62025
P: (618) 307-7290
F: (618) 692-6099

Josh M. Kantrow, Josh.Kantrow@lewisbrisbois.com *Admitted Pro Hac Vice*
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West Adams Street, Suite 300
Chicago, Illinois 60661
P: 312.345.1718
F: 312.345.1778
*Attorneys for Pathfinder Software, LLC*
*doing business as CenterEdge Software, LLC*

14

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 5th day of February, 2020 a copy of the foregoing has  been electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system to all counsel of record.

/s/Josh M. Kantrow_____