UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MADISYN STAUFFER, | ) | |
| on behalf of herself and all others similarly | ) | |
| situated, | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 3:20-cv-00046 |
| | ) | |
| v. | ) | |
| | ) | |
| INNOVATIVE HEIGHTS FAIRVIEW | ) | |
| HEIGHTS, LLC | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PATHFINDER SOFTWARE, LLC d/b/a | ) | |
| PATHFINDER SOFTWARE, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT PATHFINDER SOFTWARE, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   LEGAL STANDARD ...........................................................................................2

III.  ARGUMENT .......................................................................................................2

A.    BIPA Is Not Unconstitutional Special Legislation ...........................................2

B.    Pathfinder Is Not an Exempt Financial Institution ..........................................8

C.    Plaintiff's Claims Are Timely .........................................................................11

D.    Plaintiff's Claims Are Not Barred by Waiver or Equitable Estoppel..........................15

E.    BIPA Does Not Require Pleading of Negligent, Reckless, or Intentional Conduct..18

IV.   CONCLUSION ...................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ABA v. FTC*
  430 F.3d 457 (D.C. Cir. 2005) ............................................................................ 10

*Aguilar v. Rexnord LLC*,
  2018 WL 3239715 (N.D. Ill. July 3, 2018) ................................................... 17, 18

*Alexander v. United States*,
  721 F.3d 418 (7th Cir. 2013) .............................................................................. 20

*Allen v. Woodfield Chevrolet, Inc.*,
  208 Ill. 2d 12 (2003) ............................................................................................ 8

*Bartlow v. Costigan*,
  2014 IL 115152 .................................................................................................... 3

*Benitez v. KFC Nat. Mgmt. Co.*,
  305 Ill. App. 3d 1027 (2nd Dist. 1999) .............................................................. 13

*Berg v. Jensen*,
  1997 WL 308857 (N.D. Ill. June 3, 1997) ............................................................ 4

*Bernier v. Burris*,
  113 Ill. 2d 219 (1986) ........................................................................................... 4

*Blair v. Nevada Landing Partnership*,
  369 Ill. App. 3d 318 (2nd Dist. 2006) ................................................................ 14

*Bullar v. Archway Skydiving Ctr., Inc.*,
  2012 WL 1565641 (S.D. Ill. May 2, 2012) ........................................................... 9

*Carrasco v. Freudenberg Household Prods., LP*,
  No. 19 L 279 (Cir. Ct. Kane Cty. Nov. 15, 2019) .............................................. 12

*Chavez v. Temperature Equip. Corp*,
  No. 2019 CH 2538 (Cir. Ct. Cook Cty., Ill. Sep. 11, 2019) ........................... 12, 14

*Cortez v. Headly Mfg. Co.*,
  No. 19 CH 4935 (Cir. Ct. Cook Cty. Nov. 20, 2019) ...................................... 12, 14

*Cty. of Bureau v. Thompson*,
  139 Ill. 2d. 323 (1990) .......................................................................................... 7

*Cty. of Knox ex rel. Masterson v. Highlands, L.L.C.*,
   188 Ill. 2d 546 (1999) .............................................................................. 20

*Davis v. Chicago Hous. Auth.*,
   136 Ill. 2d 296 (1990) ................................................................................. 6

*Dawson v. Bureaus, Inc.*,
   2004 WL 2921871 (N.D. Ill. Dec. 14, 2004) ........................................... 13

*Friends of the Parks v. Chicago Park Dist.*,
   160 F. Supp. 3d 1060 (N.D. Ill. 2016) ....................................................... 3

*FTC v. AmeriDebt, Inc.*,
   343 F. Supp. 2d 451 (D. Md. 2004) .......................................................... 10

*Geddes v. Mill Creek Country Club, Inc.*,
   196 Ill. 2d 302 (2001) ........................................................................... 16, 17

*Gibson v. City of Chicago*,
   910 F.2d 1510 (7th Cir. 1990) .................................................................... 2

*Goldman v. Brannon*,
   2013 U.S. LEXIS 132815 (E.D. N.C. Sep. 17, 2013) .............................. 10

*Gurba v. Cmty. High Sch. Dist. No. 155*,
   2015 IL 118332 ......................................................................................... 18

*Hahn v. Cty. of Kane*,
   2013 IL App (2d) 120660, ¶ 11 ...................................................... 15, 16, 17

*Hartmann Realtors v. Biffar*,
   2014 IL App (5th) 130543, ¶ 20 ............................................................... 17

*Holzer v. Prudential Equity Grp. LLC*,
   458 F. Supp. 2d 587 (N.D. Ill. 2006) ....................................................... 17

*Howe v. Speedway LLC*,
   2018 WL 2445541 (N.D. Ill. May 31, 2018) ......................................17-18

*In re Nitz*,
   317 Ill. App. 3d 119 (2nd Dist. 2000) ...................................................... 15

*Liberty Mut. Fire Ins. Co. v. Statewide Ins. Co.*,
   352 F.3d 1098 (7th Cir. 2003) .................................................................. 13

*Matthews v. Lamb,*
  2019 WL 4635573 (N.D. Ill. Sept. 24, 2019).................................................................. 2

*McDonald's Corp. v. Levine,*
  108 Ill. App. 3d 732 (2nd Dist. 1982) ....................................................................... 13

*People ex rel. Lumpkin v. Cassidy,*
  184 Ill. 2d 117 (1998).......................................................................................... 3, 4, 5

*People v. Patterson,*
  2014 IL 115102 .......................................................................................................2-3

*Petition of Vill. of Vernon Hills,*
  168 Ill. 2d 117 (1995)................................................................................................ 3

*Piccioli v. Bd. of Trustees of Teachers' Ret. Sys.,*
  2019 IL 122905 .................................................................................................. 3, 4, 7

*Protect Our Parks, Inc. v. Chicago Park Dist.,*
  385 F. Supp. 3d 662 (N.D. Ill. 2019) ......................................................................... 3

*R & B Kapital Dev., LLC v. N. Shore Cmty. Bank & Tr. Co.,*
  358 Ill. App. 3d 912 (2nd Dist. 2005) .................................................................. 15, 16

*Railey v. Sunset Food Mart,*
  2019 CH 2122 (Cir. Ct. Cook Cty., Ill. 2019) ........................................................ 19

*Raprager v. Allstate Ins. Co.,*
  183 Ill. App. 3d 847 (2nd Dist. 1989) ....................................................................... 17

*Roach v. Wal-Mart,*
  No. 2019 CH 1107 (Cir. Ct. Cook Cty. Oct. 25, 2019) ............................................ 12

*Robertson v. Hostmark Hospitality Group, Inc.,*
  No. 18 CH 5194 (Cir. Ct. Cook Cty. July 31, 2019) .......................................... 12, 13

*Rogers v. BNSF Railway Co.,*
  2019 WL 5635180 (N.D. Ill. Oct. 31, 2019)............................................................. 20

*Rosenbach v. Six Flags Entm't Corp.,*
  2019 IL 123186 .................................................................................................11-12, 19

*Ryder v. Bank of Hickory Hills,*
  146 Ill. 2d 98 (1991)................................................................................................. 15

*Shempf v. Chaviano*,
  2019 IL App (1st) 173146 ................................................................. 6

*Soltysik v. Parsec, Inc.*,
  No. 19 L 136 (Cir. Ct. DuPage Cty. Oct. 17, 2019) ................................ 14

*Taylor v. Board of Education of City of Chicago*,
  2014 IL App (1st) 123744 ................................................................ 14

*Tims v. Black Horse Carriers, Inc.*,
  No. 2019 CH 03522 (Cir. Ct. Cook Cty. Sep. 23, 2019) ......................... 12

*Travelers Cas. & Sur. Co. v. Bowman*,
  229 Ill. 2d 461 (2008) ..................................................................... 11

*Troop v. Parco, Ltd.*,
  No. 19-L-81 (Cir. Ct. Peoria County, Nov. 6, 2019) ....................... 12, 14

*Virnich v. Vorwald*,
  664 F.3d 206 (7th Cir. 2012) .............................................................. 2

*Woodard v. Dylan's Candybar LLC*,
  No. 19 CH 05158 (Cir. Ct. Cook Cty. Nov. 20, 2019) ..................... 13, 14

**Statutes**

12 U.S.C. § 1843 ............................................................................... 8

12 U.S.C. § 1843(k) ............................................................................ 8

12 U.S.C. § 1843(k)(4)(A) ............................................................... 8, 10

15 U.S.C. § 6802 ............................................................................... 4

15 U.S.C. § 6803(a) ........................................................................... 4

15 U.S.C. § 6807(a) ........................................................................... 5

15 U.S.C. § 6809(3)(A) ....................................................................... 8

15 U.S.C. § 6809(4)(A) ....................................................................... 4

735 ILCS 5/13-201 ............................................................. 11, 12, 13, 15

735 ILCS 5/13-202 ........................................................................... 13

735 ILCS 5/13-205 .................................................................................................. 11, 12

740 ILCS 14/1 ................................................................................................................ 1

740 ILCS 14/5(b) ....................................................................................................... 1, 7

740 ILCS 14/15 ............................................................................................................. 5

740 ILCS 14/20 ........................................................................................................... 19

740 ILCS 14/25(c) .................................................................................................. 4, 5, 8

740 ILCS 14/25(e) ........................................................................................................ 4

765 ILCS 1075 ............................................................................................................ 14

765 ILCS 1075/30 ....................................................................................................... 14

765 ILCS 1075/60 ....................................................................................................... 14

**Rules**

Fed. R. Civ. P. 8 ......................................................................................................... 20

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 2

**Regulations**

16 C.F.R. §313.3(a) ...................................................................................................... 9

16 C.F.R. § 313.3(k) ..................................................................................................... 9

16 C.F.R. §313.3(k)(1) .................................................................................................. 8

16 C.F.R. § 313.3(k)(2)(i) ............................................................................................. 9

16 C.F.R. § 313.3(k)(2)(xii) ........................................................................................ 10

16 C.F.R. §313.3(k)(3)(iv) ............................................................................................ 8

16 C.F.R. § 313.3(k)(4)(ii) ...................................................................................... 9, 10

**Other Authorities**

Illinois House Transcript, 2008 Reg. Sess. No. 276 ................................................. 5, 6

## I. __INTRODUCTION__

Plaintiff Madisyn Stauffer ("Plaintiff") alleges that Defendants Innovative Heights Fairview Heights, LLC ("Innovative Heights") and Pathfinder Software, LLC, d/b/a CenterEdge Software ("Pathfinder") violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*, in connection with the collection of her fingerprints during her employment with Innovative Heights. *See* Amended Complaint ("Am. Compl."), Doc. # 1-1, at 124. Specifically, she alleges that she gave her fingerprints to Innovative Heights at the beginning of her employment and scanned them throughout her employment for timekeeping and other purposes. Am. Compl., ¶ 1. She further alleges that Pathfinder entered into an agreement with Innovative Heights under which it controlled the database in which her fingerprints were stored, and therefore obtained her fingerprints. Am. Compl., ¶ 13. Plaintiff alleges that Defendants violated the requirements that a private entity not obtain an individual's biometric information, such as fingerprints, without first informing that person in writing that it is collecting or storing such information and the "specific purpose and length of term" for which it is being collected, stored, or used, and by not receiving a written release (*see* 740 ILCS/14/15(b)(1)-(3)).

Pathfinder's Motion to Dismiss, Doc. #21, ("Motion") relies on arguments that—though it doesn't admit it—have been universally rejected by courts interpreting this statute. It offers nothing warranting a different result. It incorrectly asserts that BIPA is unconstitutional special legislation even though the exclusion of certain governmental and federally regulated entities under BIPA is far from arbitrary. Pathfinder's claim to be an exempt financial institution also lacks merit and, furthermore, is improper for a motion to dismiss. Its reliance on a one-year statute of limitations related to publication of private information asks this Court to reject the numerous decisions applying Illinois' five-year catch-all limitations period to BIPA, which has

no element involving publication. Its waiver argument both fails on the merits and constitutes an

affirmative defense that does not belong in a motion to dismiss. Finally, Pathfinder misconstrues

BIPA's plain language in arguing that Plaintiff must plead negligence, recklessness, or intent to

state a claim. Accordingly, Plaintiff has stated a plausible claim for relief against Pathfinder, and

its Motion to Dismiss should be denied in its entirety.

## II.    <u>LEGAL STANDARD</u>

In deciding a motion under Fed. R. Civ. P. 12(b)(6), "the court must construe all of the

plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's

favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2012). A Rule 12(b)(6) motion

"challenges the sufficiency of the complaint, not its merits." *See Matthews v. Lamb*, 2019 WL

4635573, at *2 (N.D. Ill. Sept. 24, 2019) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520

(7th Cir. 1990)). Dismissal is proper "only if the plaintiff has failed to allege any set of facts

upon which relief may be granted." *Gibson*, 910 F.2d at 1520-21 (internal citation omitted).

## III.    <u>ARGUMENT</u>

### A.  BIPA Is Not Unconstitutional Special Legislation

Pathfinder's argument that BIPA constitutes special legislation in violation of the Illinois

Constitution because it exempts certain entities is unavailing. Despite the large number of BIPA

cases litigated in Illinois state and federal courts over the last several years, Pathfinder cites no

case, and Plaintiff is aware of none, in which a court has declared BIPA unconstitutional on this

(or any other) basis. There are simply no grounds for such a ruling.

A state constitutional challenge to an Illinois statute carries the "heavy burden of successfully

rebutting the strong judicial presumption that statutes are constitutional." *People v. Patterson*,

2014 IL 115102, ¶ 90. Furthermore, "courts have a duty to uphold the constitutionality of a

statute whenever reasonably possible, resolving any doubts in favor of its validity." *Id*.; see also *Bartlow v. Costigan*, 2014 IL 115152, ¶ 18 (same). In *Bartlow*, the court stated that "this burden is particularly heavy when, as here, a facial constitutional challenge is presented." *See Bartlow*, 2014 IL 115152, ¶ 18 (referring to a challenge that a statute is unconstitutional in all circumstances, *Id*. at n.2). Because Pathfinder is raising a facial challenge, it has a particularly heavy burden of rebutting the strong presumption that BIPA is constitutional.

Pathfinder has not met that burden. Illinois' special legislation clause "does not prohibit all classifications; rather, its purpose is to prevent arbitrary legislative classifications.... If any set of facts can be reasonably conceived that justifies distinguishing the class to which the statute applies . . . then the General Assembly may constitutionally classify persons and objects . . . and may enact laws applicable only to those persons or objects." *Friends of the Parks v. Chicago Park Dist.*, 160 F. Supp. 3d 1060, 1066 (N.D. Ill. 2016) (quoting *Petition of Vill. of Vernon Hills*, 168 Ill. 2d 117, 122 (1995)) (first ellipsis in original).

A two-part test determines whether a law constitutes impermissible special legislation: "(1) whether the statutory classification at issue discriminates in favor of a select group and against a similarly situated group; and (2) if the classification does so discriminate, whether the classification is arbitrary." *Protect Our Parks, Inc. v. Chicago Park Dist.*, 385 F. Supp. 3d 662, 692 (N.D. Ill. 2019). Illinois courts use the rational basis test to determine arbitrariness, asking "whether the statutory classification is rationally related to a legitimate state interest." *Piccioli v. Bd. of Trustees of Teachers' Ret. Sys.*, 2019 IL 122905, ¶ 20. The classification "does not need to be supported by evidence or empirical data" and "a court does not engage in 'courtroom fact finding.'" *Id*. (quoting *People ex rel. Lumpkin v. Cassidy*, 184 Ill. 2d 117, 124 (1998)). Additionally, "*the court may hypothesize reasons for the legislation, even if the reasoning*

*advanced did not motivate the legislative action*" and if there is "any conceivable basis for finding a rational relationship, the law will be upheld." *Id*. (quoting *Cassidy*, 184 Ill. 2d at 124) (emphasis by *Piccioli*). Even if a law "may be ill-conceived" that "does not create a constitutional problem for the courts to fix." *Piccioli*, 2019 IL 122905, ¶ 20. "A legislative classification will be deemed rational ... as long as its basis is 'at least debatable.' *Berg v. Jensen*, 1997 WL 308857, at *8 (N.D. Ill. June 3, 1997) (quoting *Bernier v. Burris,* 113 Ill. 2d 219, 229 (1986)).

Here, neither portion of the two-part test is satisfied. First, BIPA does not allow for different treatment in favor of similarly situated groups. BIPA excludes from its scope all government agents and contractors and all financial institutions subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 ("GLBA"). 740 ILCS 14/25 (c), (e). These GLBA entities are already subject to the GLBA's rigorous data protection standards.[1] Thus, they are not similarly situated with non-federally regulated financial institutions, who are not subject to stringent federal data protection requirements. Nor, as addressed below, are government agents and contractors similarly-situated with private entities. Accordingly, BIPA does not satisfy the first prong of the two-part test because it does not allow for the discriminatory treatment in favor of or against some similarly situated groups.

Second, BIPA's exclusion of government agencies and their contractors and financial institutions subject to the GLBA easily satisfies the rational basis test. Pathfinder overlooks legitimate interests that the legislature had (or may have had) and improperly bases its argument on why (in its opinion) it would have been rational to include such entities.

---

[1] *See, e.g.*, 15 U.S.C. § 6802 (prohibiting financial institutions from disclosing "any nonpublic personal information," defined in 15 U.S.C. § 6809(4)(A) as information "(i) provided by a consumer to a financial institution; (ii) resulting from any transaction with the consumer or any service performed for the consumer; or (iii) otherwise obtained by the financial institution."); see also § 6803(a) (GLBA provision relating to disclosure of the institution's security policies).

4

Pathfinder's argument that it is irrational to exclude "nearly the entire financial industry" in light of the statute's purpose "to protect consumers hesitant to have biometrics connected to financial information" (Motion 5), is unfounded. As an initial matter—despite Pathfinder's reliance on the Federal Trade Commission's broad definition of financial institution (Motion 6)—the exception is limited to financial institutions and affiliates that are "subject to Title V of the federal Gramm-Leach-Bliley Act of 1999." 740 ILCS 14/25(c). The legislature had rational reasons for excluding such institutions because they are *already* subject to a separate set of standards under the GLBA designed to safeguard information. *See* Ex. A, "Transcription Debate," Illinois House Tr., 2008 Reg. Sess. No. 276 (noting the exemption for "banks that are covered under Federal Law"). That such entities are already subject to the GLBA's rigorous data protection standards is a legitimate reason for their exclusion. Moreover, inconsistent state statutes are superseded by the GLBA. *See* 15 U.S.C. § 6807(a). Thus, the legislature may also have rationally concluded that failing to exclude those financial institutions risked federal preemption of BIPA. Therefore, this exclusion was not arbitrary.

Pathfinder's argument to the contrary (Motion 5,6) flips the proper analysis. Courts do not determine arbitrariness of a classification based on whether it goes against the statute's purpose; they analyze whether it is rationally related to a legitimate state interest. If it is even conceivably so related, as it is here, the statute is upheld. *People ex rel. Lumpkin,* 184 Ill. 2d at 124.

BIPA's exemptions of the government and its contractors also easily survives rational basis scrutiny. Because the very purpose of BIPA is to regulate *private entities* in possession of biometric information (*see* 740 ILCS 14/15), this exclusion is not arbitrary but, rather, in line with BIPA's very purpose. The legislature conceivably believed that there was a greater concern with how biometric information is handled in the private sector, particularly given that BIPA's

passage was prompted in part by the bankruptcy of a private company named Pay by Touch. *See* Ex. A, Illinois House Tr., 2008 Reg. Sess. No. 276. It likely determined that because the government's purpose is to protect the public, it is less likely to abuse biometric information or leave it vulnerable. Furthermore, BIPA's exemption of government agencies is also rationally related to the legislature's presumed interest in maintaining sovereign immunity, which generally bars claims for money damages against the State unless it has clearly waived sovereign immunity. *Shempf v. Chaviano*, 2019 IL App (1st) 173146, ¶ 54. Illinois courts have previously upheld classifications differentiating between the government and private entities.[2]

Another legitimate reason for the government's exclusion is its law enforcement function and the public safety concerns that were likely deemed to outweigh potential abuses relating to biometric information. The legislature likely concluded that it did not make sense for police departments to obtain written consent before obtaining fingerprints or using facial recognition scans for investigative or security purposes. This same rationale applies to contractors working on behalf of the government; the legislature likely realized that the government often contracts with private entities to assist with its security functions. *See* Ex. A, Illinois House Tr., 2008 Reg. Sess. No. 276 (noting the exemption for fingerprint vendors "working with State Police doing background checks"). Additionally, another conceivable and legitimate reason for this exclusion is to prevent the government from being found vicariously liable for violations by such contractors. Thus, the exemption of the government and contractors working on its behalf is rationally related to legitimate state interests.

Pathfinder's argument that "excluding ... government entities run [*sic*] completely counter to the primary motivator in passing BIPA ... and nothing suggests that local governments and

---

[2] *See Davis v. Chicago Hous. Auth.*, 136 Ill. 2d 296, 302 (1990) ("This court held: 'Statutory and common law provisions which differentiate between municipal and private corporations as to tort liability have been held reasonable and valid classifications under the ... special legislation clause[].'") (internal citations omitted).

contractors are any more adept at protecting consumer data than a privately held employer" (Motion 6-7) again flips the analysis. Pathfinder improperly focuses on whether inclusion of the government would have furthered (what it claims to be) the purpose of BIPA, not whether the legislature had legitimate reasons for the exclusion. Even if Pathfinder is correct that the government is no better at protecting consumer data than private entities, what matters is whether the legislature could conceivably have thought otherwise because the classification "does not need to be supported by evidence or empirical data." *See Piccioli*, 2019 IL 122905, ¶ 20. Furthermore, Pathfinder's claim that an employer working for both the government and a private entity may be both violating BIPA and exempt depending on the entity they are servicing (Motion 6), has no bearing on the many legitimate reasons supporting the exclusion and amounts to nothing more than a complaint about compliance with BIPA. That is not a basis to find it unconstitutional. *See Piccioli*, 2019 IL 122905, ¶ 20.

Pathfinder is also wrong in arguing that the legislature's "primary motivator" for enacting BIPA was protecting biometric data "used by financial institutions." Motion 6-7. BIPA's section relating to legislative findings and intent refers to applications of "biometric-facilitated financial *transactions*" (emphasis added), not financial institutions, and gives as examples "finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Those entities may use fingerprints to enter into a financial transaction (a purchase), but they are not regulated by GLBA and are therefore not exempt from BIPA.

Pathfinder's reliance on its principal cases is also misguided. *Cty. of Bureau v. Thompson*, 139 Ill. 2d. 323, 337 (1990), (Motion 6) recognized that a statute may be unconstitutional when "the classes created by the statute are in fact similar in all respects relevant to the statute's purposes . . .," but as set forth above federally regulated financial institutions and government

agencies/contractors are not similar in all respects to non-exempt entities relevant to the statute's purposes. Pathfinder's reliance on *Allen v. Woodfield Chevrolet, Inc.*, 208 Ill. 2d 12 (2003), is also misguided, That case found that amendments to Illinois' Consumer Fraud and Deceptive Business Practices Act making it more difficult to bring claims only against car dealers, for instance by requiring a public injury, bore no relationship to the amendment's stated purpose of curbing a perceived problem of abuse by the plaintiff's bar. Unlike those cases, BIPA's exemptions are related to many legitimate state interests.

Accordingly, BIPA's exemptions are not arbitrary, as they are related to many legitimate state interests, and Pathfinder's constitutional challenge to BIPA must fail.

## B.  Pathfinder Is Not an Exempt Financial Institution

Pathfinder's argument that it is an exempt "financial institution" has no merit because it improperly relies on matters outside of the pleadings and misconstrues what a financial institution is under the statute. As addressed above, BIPA exempts financial institutions or their affiliates that are subject to Title V of the GLBA. 740 ILCS 14/25(c). Under, 15 U.S.C. § 6809(3)(A) of the GLBA, a "financial institution" is "any institution the business of which is engaging in financial activities as described in section 1843(k) of Title 12," known as the Bank Holding Company Act of 1956 ("BHCA") (cited by Pathfinder as "12 U.S.C.S § 1843" [Motion 8]). Financial Activities under Section 1843(k) include: "Lending, exchanging, transferring, investing for others, or safeguarding money or securities." 12 U.S.C. § 1843(k)(4)(A). According to the BHCA's interpreting regulations, a financial institution must be "*significantly* engaged in financial activities." 16 C.F.R. §313.3(k)(1) (emphasis added). See also 16 C.F.R. §313.3(k)(3)(iv) (financial institution does not include: "Entities that engage in financial activities but that are not significantly engaged in those financial activities.").

Initially, Pathfinder improperly relies on matters outside of the pleadings, a Declaration of an employee (Declaration of Grey Burnett, Doc. #21-1). Nothing in the Amended Complaint supports a finding that it is a financial institution, and Pathfinder's reliance on this evidence is inappropriate for a Rule 12(b)(6) motion to dismiss. *See Bullar v. Archway Skydiving Ctr., Inc.*, 2012 WL 1565641, at *2 (S.D. Ill. May 2, 2012) (court prohibited from viewing materials outside pleadings in assessing a motion to dismiss under Rule 12(b)(6)). Under Rule 12(d), if such materials are considered, the motion must be treated as one for summary judgment, with the parties given an opportunity to brief the motion in such a way. *Bullar*, 2012 WL 1565641, at *2. By submitting evidence, Pathfinder shows that whether it is a financial institution is a question of fact improper for a motion to dismiss.

But even on its own terms, Pathfinder's argument fails because it is contradicted by the regulations on which it claims to rely. Motion 8 (citing 16 C.F.R. § 313.3(k)). According to the examples provided by that regulation, a retailer that issues its own credit card directly to consumers is a financial institution, but "[a] retailer is not a financial institution merely because it accepts payment in the form of cash, checks, or credit cards *that it did not issue*." 16 C.F.R. §§ 313.3(k)(2)(i), (k)(4)(ii) (emphasis added). If a retailer that is actually accepting, receiving, and transferring payments for credit cards that it did not issue is not a financial institution, then the point-of-sale software provider or operator used by that retailer cannot be—unless it is an "affiliate" of a financial institution (*i.e.*, a company "that controls, is controlled by, or is under common control with" it; 16 C.F.R. §313.3(a)). But Pathfinder does not claim to be an affiliate. Thus, even accepting Pathfinder's outside facts, it fails to show that it is a financial institution.

Its argument that it is "within the scope of BIPA's financial institution exception" because "POS providers process credit and debit card payments, communicate with banks, and serve as a

transactional link between businesses and consumers" (Motion 8) is of no help. As set forth above, processing credit payments does not make a company a financial institution. 16 C.F.R. § 313.3(k)(4)(ii). Similarly, Pathfinder's empty statements that POS providers "communicate with banks" and "serve as a transactional link between businesses and consumers" (Motion 8) are irrelevant. Pathfinder provides no support as to *why* these activities, in which it purportedly engages, constitute "exchanges, transfers, or safeguards of money or securities" under 12 U.S.C. § 1843(k)(4)(A). Motion 8. Nor does it provide support for its argument that its use of software to "link banks and other financial institutions to Innovative Heights" and Innovative Heights' use of its system for "financial transactions, credit and debit card payments, communication with banks, and money transfers" (Motion 9) render it a financial institution.

Moreover, the only case that it cites in which the court found a company to be a financial institution, *FTC v. AmeriDebt, Inc.*, 343 F. Supp. 2d 451 (D. Md. 2004), is not on point. There the court found the BHCA can "include counseling service activities" (Motion 8), but Pathfinder does not claim to engage in such activities. Moreover, *AmeriDebt* relied on the explicit inclusion of "credit counseling service" as an example of a financial institution in the regulation. *Id*. at 457; 16 C.F.R. § 313.3(k)(2)(xii). The regulation has no explicit mention of a POS provider.[3]

Additionally, Plaintiff's allegations further contradict Pathfinder's argument. Rather than following the consumer protections of the FTC required for financial institutions, Pathfinder expressly adopted and delegated privacy policies and procedures to Innovative Heights and its other customers. *See* Am. Compl. ¶ 23 ("Any information collected via the app will be considered as if collected by our customer . . . .") (quoting Pathfinder's website, available at https://Pathfindersoftware.com/advantage-access-control/). This page of Pathfinder's website

---

[3] Pathfinder's other two cases, *ABA v. FTC*, 430 F.3d 457, 470 (D.C. Cir. 2005), and *Goldman v. Brannon*, 2013 U.S. LEXIS 132815, at *14 (E.D. N.C. Sep. 17, 2013), found law firms and hotels, respectively, not to be financial institutions under the BHCA or GLBA, as Pathfinder acknowledges. Motion 8.

also states that the personally identifiable information "is handled compliant to PCI guidelines," which is a non-governmental standard created by credit card companies.[4] Pathfinder's website also suggests Pathfinder does not actually process payments, but instead, provides a software that is used by third party payment processors.[5] Accordingly, there is no basis to dismiss Pathfinder based on its unsupported argument that it is an exempt financial institution.

### C.  Plaintiff's Claims Are Timely

Pathfinder incorrectly argues that Plaintiff's BIPA claims are subject to the one-year statute of limitations in 735 ILCS 5/13-201 and that her lawsuit is untimely because she did not file her original Complaint within one year of when she "began using the POS system" at Innovative Heights. Motion 10. Contrary to that argument, as every court considering the issue has found, BIPA claims are subject to the five-year catch-all statute of limitations in 735 ILCS 5/13-205, applicable to "all civil actions not otherwise provided for." 735 ILCS 5/13-205. Moreover, the statute of limitations for Plaintiff's BIPA claims did not accrue until at least the last day of her employment, when the last violation occurred. With the same facts available to it, Innovative Heights did not even move to dismiss based on the statute of limitations.

Where, as here, a statute does not specify the statute of limitations, "it is the nature of the plaintiff's injury rather than the nature of the facts from which the claim arises which should determine what limitations period should apply." *Travelers Cas. & Sur. Co. v. Bowman*, 229 Ill. 2d 461, 466-67 (2008) (citation omitted). Put another way, "[t]he focus of the inquiry is on the nature of the liability and not on the nature of the relief sought." *Id.*, 229 Ill. 2d at 467 (citation omitted). Thus, despite Pathfinder's attempt to rely on *Rosenbach v. Six Flags Entm't Corp.*,

---

[4] *See* https://www.pcicomplianceguide.org/faq/#2, question 26 ("PCI is not, in itself, a law. The standard was created by the major card brands . . . .")

[5] *See* https://Pathfindersoftware.com/company/technical-partners-integrations/ (setting forth a list of "Technical Partners & Integrations" identifying three "Payment Processor" companies: Data Cap Systems, Inc., Intercard, and WorldPay).

2019 IL 123186, to argue that claims under BIPA are akin to claims for invasion of privacy and that the one-year statute of limitations in Section 5/13-201 should apply (Motion 9-10), courts (including post-*Rosenbach* decisions) consistently reject this argument because of the nature of the injury and liability under BIPA.

The basis of these decisions is that Section 5/13-201 has a publication requirement absent from BIPA. Section 5/13-201 states: "Actions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued." 735 ILCS 5/13-201. In *Robertson v. Hostmark Hospitality Group, Inc.*, No. 18 CH 5194, at 2-3 (Cir. Ct. Cook Cty. July 31, 2019) (attached as Ex. B), a post-*Rosenbach* decision, the court rejected the argument that Section 5/13-201 applied to BIPA because it "applies only to privacy claims involving a publication element." *Id*. at 4. That the plaintiff alleged his privacy rights were violated did "not change the fact that the true nature of any potential liability stems from alleged violations of the BIPA statute." Thus, the court stated it was not dealing with an action for "slander, libel, or for the publication of matter violating the right to privacy." *Id*. It noted that, by its plain language, Section 5/13-201 applies to actions for "*publication* of matter violating the right of privacy," but publication is not an element under BIPA. *Id*. (emphasis in original). The court therefore held that the five-year catch-all limitations period from Section 13-205 applied. *Id*. at 5. At least six other courts have reached the same determination after *Rosenbach*.[6]

---

[6] See the following post-*Rosenbach* decisions: *Carrasco v. Freudenberg Household Prods., LP*, No. 19 L 279, at 10-14 (Cir. Ct. Kane Cty. Nov. 15, 2019) (attached as Ex. C); *Chavez v. Temperature Equip. Corp*, No. 2019 CH 2538, at 6-10 (Cir. Ct. Cook Cty., Ill. Sep. 11, 2019) (attached as Ex. D); *Tims v. Black Horse Carriers, Inc.*, No. 2019 CH 03522, at 2-3 (Cir. Ct. Cook Cty. Sep. 23, 2019) (attached as Ex. E); *Roach v. Wal-Mart*, No. 2019 CH 1107, at 4 (Cir. Ct. Cook Cty. Oct. 25, 2019) (attached as Ex. F); *Troop v. Parco, Ltd*., No. 19-L-81, at 28-30 (Cir. Ct. Peoria County, Nov. 6, 2019) (attached as Ex. G); *Cortez v. Headly Mfg. Co.*, No. 19 CH 4935, at 2-7 (Cir. Ct. Cook Cty. Nov. 20, 2019) (attached as Ex. H).

Pathfinder rejects the unanimous interpretation of these seven courts, calling them "some other courts in non-binding decisions." Motion 9. But these state trial court cases can constitute persuasive authority in this diversity lawsuit, where the court is to apply "the law of Illinois as [it] believe[s] the Illinois Supreme Court would apply it." *Liberty Mut. Fire Ins. Co. v. Statewide Ins. Co.*, 352 F.3d 1098, 1100 (7th Cir. 2003); *Dawson v. Bureaus, Inc.*, 2004 WL 2921871, at *3 (N.D. Ill. Dec. 14, 2004) (in predicting how the state's highest court would decide federal courts "may consider the decisions of lower state courts ..., giving each authority weight commensurate with its place within the appropriate hierarchy and with the force of its persuasive value, as none of the decisions will be directly binding." To accept Pathfinder's argument would mean that every court considering this issue got it wrong.

Moreover, outside of BIPA, courts also don't apply Section 13-201's limitation period to privacy-related claims where publication is not an element, and here we have Illinois' appellate courts as authorities. *See Benitez v. KFC Nat. Mgmt. Co.*, 305 Ill. App. 3d 1027, 1034 (2nd Dist. 1999) (declining to apply Section 13-201 to an intrusion upon seclusion claim because publication was not an element, and citing *McDonald's Corp. v. Levine,* 108 Ill. App. 3d 732, 737 (2nd Dist. 1982), where the court found that even if an eavesdropping claim was actually a claim for intrusion upon seclusion, the one-year statute of limitations in what is now Section 13-201 would not apply because intrusion upon seclusion does not require publication).

Here, as in the cases cited above, Plaintiff need not allege any "publication" element. Her claim relates to how Defendants collected and stored her private biometric information, not its publication. Therefore, Section 13-201 does not apply.[7]

---

[7] Because Pathfinder has only argued that Plaintiff's claims are subject to this one-year statute of limitation, Plaintiff will not address the analysis raised in other BIPA cases regarding the applicability of the two-year statute of limitations period under 735 ILCS 5/13-202, other than to note that courts have similarly rejected this argument in finding that the five-year catch-all limitations period under Section 5/13-205 applies. *See Robertson*, No. 18 CH 5194, at 4 (Cir. Ct. Cook Cty. July 31, 2019); *Woodard v. Dylan's Candybar LLC*, No. 19 CH 05158, at 10-15 (Cir.

Furthermore, Pathfinder's reliance on *Blair v. Nevada Landing Partnership*, 369 Ill. App. 3d
318, 322-23 (2nd Dist. 2006), and the Illinois Right of Publicity Act, 765 ILCS 1075, ("IRPA"),
analyzed therein is misplaced, because IRPA has a publication requirement. IRPA provides in
part: "(a) A person may not use an individual's identity for commercial purposes . . ." and
"commercial purpose" requires "the public use or holding out of an individual's identity." 765
ILCS 1075/30; 765 ILCS 1075/60. Thus, the court's analysis of IRPA in *Blair* is not instructive
on BIPA.

Finally, even if a one-year statute applied, this action would be timely. Pathfinder argues that
Plaintiff's claim is time-barred because she first began using the POS system more than a year
before filing her original Complaint. Motion 10. But Pathfinder provides no support for starting
the clock at that point. Courts have found the ongoing collection of a plaintiff's fingerprints to be
part of a continuing violation for which the cause of action accrues on the plaintiff's *last* day of
employment. As the court ruled in *Taylor v. Board of Education of City of Chicago*, 2014 IL App
(1st) 123744, ¶ 46, where a claim "involves continuous or repeated injurious behavior, by the
same actor and of a similar nature, the limitations period is held in abeyance and the plaintiff's
cause of action does not accrue until the date the final injury occurs or the tortuous acts cease."
Courts have applied that principle to BIPA. *Woodard v. Dylan's Candybar LLC*, No. 19 CH
05158, at 14-15 (Cir. Ct. Cook Cty. Nov. 20, 2019); *Cortez v. Headly Mfg. Co.*, No. 19 CH 4935,
at 2-7 (Cir. Ct. Cook Cty. Nov. 20, 2019); *Soltysik v. Parsec, Inc.*, No. 19 L 136, at 34-35 (Cir.
Ct. DuPage Cty. Oct. 17, 2019) (attached as Ex. J). Here, Plaintiff alleges that she worked at
Innovative Heights through May of 2018 (Am. Compl., ¶ 17), and she filed her original
Complaint April 29, 2019 (*see* Doc. #1-1 at 2, 129), making her action timely.

---

Ct. Cook Cty. Nov. 20, 2019) (attached as Ex. I); *Chavez*, No. 2019 CH 2538, at 8 (Cir. Ct. Cook Cty., Ill. Sep. 11,
2019); *Troop*, No. 19-L-81, at 29-30 (Peoria County).

Accordingly, because Pathfinder incorrectly argues that the one-year statute of limitations in Section 5/13-201 applies to Plaintiff's BIPA claims and errs in its analysis of when the statute of limitations accrues, its motion to dismiss on this ground must be denied.

### D.  Plaintiff's Claims Are Not Barred by Waiver or Equitable Estoppel

Pathfinder's argument that Plaintiff waived or is estopped from bringing her BIPA claims is both incorrect and improper for a motion to dismiss. Pathfinder cites no case in which a court ruled that a plaintiff waived or was estopped from bringing a BIPA claim and errs in arguing that Plaintiff's continued use of the fingerprint system constitutes waiver.

Although Pathfinder primarily argues waiver it also refers to equitable estoppel, and these are "different defenses with different elements of proof." *Hahn v. Cty. of Kane*, 2013 IL App (2d) 120660, ¶ 11. "Waiver is commonly defined as 'the intentional relinquishment of a known right.'" *Id*. (quoting *Ryder v. Bank of Hickory Hills,* 146 Ill. 2d 98, 104 (1991)). It "may be made by an express agreement or it may be implied from the conduct of the party who is alleged to have waived his right." *Id*. A party claiming implied waiver "has the burden of proving a clear, unequivocal, and decisive act of its opponent manifesting an intention to waive its rights." *R & B Kapital Dev., LLC v. N. Shore Cmty. Bank & Tr. Co.*, 358 Ill. App. 3d 912, 922 (2nd Dist. 2005) (quoting *In re Nitz,* 317 Ill. App. 3d 119, 130 (2nd Dist. 2000)). "An implied waiver may arise where the party against whom waiver is asserted pursues a course of action or acts in such a way that demonstrates his intention to waive a right, or his actions are inconsistent with any intention other than waiving the right." *Hahn*, 2013 IL App (2d) 120660, ¶ 11.

Equitable estoppel is "the effect of a person's conduct 'whereby the person is barred from asserting rights that might otherwise have existed against the other party who, in good faith, relied upon such conduct and has been thereby led to change his or her position for the worse.'"

*Hahn*, 2013 IL App (2d) 120660, ¶ 11 (quoting *Geddes v. Mill Creek Country Club, Inc.,* 196 Ill.

2d 302, 313 (2001)). It has six distinct elements:

> (1) the other person misrepresented or concealed material facts; (2) the other person
> knew at the time he or she made the representations that they were untrue; (3) the
> party claiming estoppel did not know that the representations were untrue when
> they were made and when they were acted upon; (4) the other person intended or
> reasonably expected that the party claiming estoppel would act upon the
> representations; (5) the party claiming estoppel reasonably relied upon the
> representations in good faith to his or her detriment; and (6) the party claiming
> estoppel would be prejudiced by his or her reliance on the representations if the
> other person is permitted to deny the truth thereof.

*Geddes*, 196 Ill. 2d at 313-14.

With respect to waiver, Pathfinder merely argues that Plaintiff's continued scanning of her

fingerprints without complaining constitutes a waiver of her BIPA claim. Motion 12. This

argument fails for many reasons. As an initial matter, Pathfinder has not pointed to a "clear,

unequivocal, and decisive act" by Plaintiff establishing that she intentionally relinquished her

right to bring a BIPA claim against Pathfinder. *See R & B Kapital Dev., LLC*, 358 Ill. App. 3d. at

922. Despite its burden, Pathfinder does not argue that Plaintiff's conduct demonstrates she

intentionally relinquished a *known* right under BIPA, or even that Plaintiff knew *Pathfinder*, as

opposed to her employer Innovative Heights, was collecting or storing her biometric information.

Plaintiff alleges that she learned from initial discovery in this case that Pathfinder "collected,

captured, purchased, received through trade, or obtained Plaintiff's fingerprints." That *followed*

her original Complaint against Innovative Heights and was *after* her employment with

Innovative Heights had ended. *See* Am. Comp., ¶¶ 11-12. Thus, Pathfinder cannot establish that

Plaintiff waived her BIPA claim *against Pathfinder* by using the fingerprint scanning system.

Furthermore, Pathfinder's claim that Plaintiff's use of the fingerprint scanning system

without complaining "was clearly inconsistent with the intent to enforce her rights under BIPA,"

(Motion 12), misconstrues the proper inquiry; it is whether the person's actions "are inconsistent

with *any intention other than waiving the right*." *Hahn*, 2013 IL App (2d) 120660, ¶ 11 (emphasis added). Here, Plaintiff's use of the system was simply part of doing her job (*see* Am. Compl., ¶¶ 39-41), and was not "inconsistent with any intention other than waiving the right." *Id*.

Nor would any such "implied notice and consent" (Motion 11)—even if it existed—be a defense because it has no bearing on whether Pathfinder complied with BIPA's requirements before collecting and storing her fingerprints. BIPA provides no exception to its requirements where someone consents to the use of a fingerprint scanning system. Thus, nothing Pathfinder asserts to support waiver would defeat Plaintiff's right to recover. *See Hartmann Realtors v. Biffar*, 2014 IL App (5th) 130543, ¶ 20 (quoting *Raprager v. Allstate Ins. Co.,* 183 Ill. App. 3d 847, 854 (2nd Dist. 1989) ("An 'affirmative defense' is one in which the defendant gives color to his opponent's claim but asserts new matter which defeats an apparent right in the plaintiff.").

In regard to equitable estoppel, Pathfinder does not even attempt to meet the elements of this defense, as set forth in *Geddes*, 196 Ill. 2d at 313-14. Because Pathfinder sets forth no facts that would allow it to establish any of these elements, its defense of equitable estoppel must fail.

Although Pathfinder's defenses of waiver and equitable estoppel fail regardless of the procedural posture in which they are raised, they are particularly improper for Pathfinder's Motion. As the court stated in *Holzer v. Prudential Equity Grp. LLC*, 458 F. Supp. 2d 587 (N.D. Ill. 2006), "[a]ffirmative defenses such as estoppel normally cannot form the basis of a motion to dismiss unless the plaintiff's complaint, on its face, proves all elements of the estoppel defense." *Id*. at 593. As set forth above, Pathfinder has not come close to showing that the elements for these defenses are met, let alone that they are proven based on Plaintiff's Amended Complaint.

Perhaps most puzzling of all is Pathfinder's reliance on *Aguilar v. Rexnord LLC*, 2018 WL 3239715 (N.D. Ill. July 3, 2018), and *Howe v. Speedway LLC*, 2018 WL 2445541 (N.D. Ill. May

17

31, 2018), for the proposition that "courts have held that implied notice and consent can preclude BIPA liability, dismissing BIPA cases involving employees . . . who voluntarily submit their fingerprints exactly as Plaintiff did here." Motion 11. Neither case even mentioned waiver or estoppel, and neither dismissed the claims. To the contrary, they were decisions to remand. The courts' analyses of the plaintiffs' knowledge that their biometric information was being collected didn't relate to whether they had waived anything; it involved whether there was subject matter jurisdiction based on "an injury in fact sufficient to satisfy Article III standing requirements." *Aguilar*, 2018 WL 3239715, at *4; *Howe*, 2018 WL 2445541, at *7 (Because "those procedural violations did not cause him an injury-in-fact . . . Howe does not have standing to have his claim heard in federal court and the action must be remanded to state court."). If there are cases in which courts have dismissed BIPA claims on waiver or estoppel grounds, Pathfinder has not cited them, and Plaintiff is unaware of them. Pathfinder has not come close to meeting its burden to prove these defenses and they have no place in its motion to dismiss.

### E.  BIPA Does Not Require Pleading of Negligent, Reckless, or Intentional Conduct

Pathfinder argues that the "best indicator of [the legislature's] intent 'is the statutory language itself, which must be given its plain and ordinary meaning.'" Motion 13 (citing *Gurba v. Cmty. High Sch. Dist. No. 155*, 2015 IL 118332, ¶ 10). Yet Pathfinder actually never quotes language that it contends requires that Plaintiff allege negligence, recklessness or intent. Instead, it resorts to paraphrases that misconstrue BIPA's plain language in arguing that Plaintiff must plead and prove a negligent, reckless, or intentional violation. Put simply, Pathfinder fails to recognize the difference between BIPA's substantive requirements giving rise to a cause of action and its provisions regarding the measure of damages awarded to a prevailing party.

18

Here's the language that allows this cause of action: "Any person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party." 740 ILCS 14/20; *see Rosenbach*, 2019 IL 123186, ¶ 33 (a person who is "aggrieved" by an entity's failure to comply with BIPA is "entitled to seek recovery" under Section 14/20). Furthermore, "[t]he violation, in itself, is sufficient to support the individual's ... statutory cause of action." *Rosenbach*, 2019 IL 123186, ¶ 33.

Plaintiff alleges that Pathfinder violated BIPA by collecting, capturing, purchasing, receiving, or obtaining her fingerprints without complying with BIPA's requirements (Am. Compl., ¶¶ 12, 15), and that is all she must do to state a claim. The references to negligent, reckless, and intentional violations only relate to what a prevailing party may recover for each violation (740 ILCS 14/20), and at this stage of the proceedings there is no prevailing party. Accordingly, these varying degrees of culpability are not elements of a BIPA claim but are simply part of the measure of damages if Plaintiff becomes a prevailing party. *See Railey v. Sunset Food Mart,* 2019 CH 2122, at 5-9, 12 (Cir. Ct. Cook Cty., Ill. 2019) (attached as Ex. K) (relying on *Rosenbach* and denying the defendant's motion based on the alleged failure to plead negligence, recklessness or intent, because those words are not part of the pleading requirement).

Moreover, Pathfinder's argument that the words of the statute "cannot be read in a fashion that would render words or phrases meaningless, redundant or superfluous" (Motion 13) is misguided as applied here. Because these degrees of culpability only address damages awarded to a prevailing party, it does not render them superfluous to consider them where they belong— as part of the damages analysis—as opposed to construing them to alter BIPA's plain language that aggrieved persons are provided with a "right of action." 740 ILCS 14/20. Pathfinder's argument would add these levels of culpability into BIPA's substantive requirements, and thus

19

alter BIPA's plain language and the legislature's intent. *See Cty. of Knox ex rel. Masterson v. Highlands, L.L.C.*, 188 Ill. 2d 546, 556 (1999) (a statute's language is the "best indication of the legislative intent" and "it is never proper for a court to depart from plain language by reading into a statute exceptions, limitations, or conditions which conflict with the clearly expressed legislative intent."). To make these levels of culpability part of a plaintiff's right of action would be to read into BIPA an exception, limitation, or condition that conflicts with its plain language.

Moreover, although Plaintiff need not plead these levels of culpability, she has sufficiently done so. Plaintiff alleges Pathfinder acted through its control of Innovative Heights' system and/or database without complying with any of BIPA's requirements, despite BIPA's existence since 2008. Am. Compl., ¶¶ 12-15, 30, 48-54. As the court stated in *Rogers v. BNSF Railway Co.*, 2019 WL 5635180 (N.D. Ill. Oct. 31, 2019), such allegations under BIPA are "certainly enough, at the pleading stage, to make a claim of negligence or recklessness plausible." *Id.* at 5. Thus, even if Plaintiff had to plead negligence or recklessness, her allegations would be sufficient to state a claim.

Finally, Pathfinder's argument that Plaintiff does not specify how it collected her fingerprints or "describe the method or tool" it used would be unfounded, even if negligence or recklessness were required. *See Rogers v. BNSF Ry. Co.*, 2019 WL 5635180, at *5 (quoting *Alexander v. United States*, 721 F.3d 418, 424 (7th Cir. 2013) (Fed. R. Civ. P. 8 "does [not] demand that a plaintiff come to court ready to plead facts … that he has no way of knowing prior to discovery."). Plaintiff is not required to plead a "method or tool," and Pathfinder cites nothing holding that it is.

## IV.    CONCLUSION

This motion should be denied in its entirety.

Dated: March 6, 2020                     Respectfully submitted,

                                         LAW OFFICE OF RICHARD S. CORNFELD, LLC

                                         By:*/s/  Richard S. Cornfeld*
                                             Richard S. Cornfeld
                                             Daniel S. Levy
                                             1010 Market Street, Suite 1645
                                             St. Louis, Missouri 63101
                                             Tel: (314) 241-5799
                                             Fax: (314) 241-5788
                                             rcornfeld@cornfeldlegal.com
                                             dlevy@cornfeldlegal.com

                                             GOLDENBERG HELLER & ANTOGNOLI, P.C.
                                             Kevin P. Green
                                             2227 South State Route 157
                                             Edwardsville, IL 62025
                                             Tel: (618) 656-5150
                                             Fax: (618) 656-6230
                                             kevin@ghalaw.com

                                             *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of March, 2020, the foregoing was served by operation of the Court's electronic filing system on all counsel of record in this matter.


 */s/ Richard S. Cornfeld*