UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MADISYN STAUFFER, | ) | |
| on behalf of herself and all others similarly | ) | |
| situated, | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 3:20-cv-00046-MAB |
| | ) | |
| v. | ) | |
| | ) | |
| INNOVATIVE HEIGHTS FAIRVIEW | ) | |
| HEIGHTS, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

**GOLDENBERG HELLER
& ANTOGNOLI, P.C.**

Kevin P. Green, #6299905
Richard S. Cornfeld, #0519391
Daniel S. Levy, #6315524
Thomas C. Horscroft, #06327049
2227 South State Route 157
Edwardsville, IL 62025
Telephone: (618) 656-5150
kevin@ghalaw.com
rick@ghalaw.com
daniel@ghalaw.com
thorscroft@ghalaw.com

***Attorneys for Plaintiff***

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 2

      A.      Plaintiff's Claims Against CenterEdge ................................................... 2

      B.      The Course of This Litigation ................................................................ 4

            1.      Procedural history ....................................................................... 4

            2.      Discovery ..................................................................................... 6

            3.      Mediation .................................................................................... 6

III.    THE SETTLEMENT AGREEMENT ................................................................ 6

      A.      The Settlement Class and Relief ............................................................ 7

      B.      Releases................................................................................................... 8

      C.      The Notice Program ................................................................................ 9

      D.      Settlement Administration ...................................................................... 9

      E.      Attorneys' Fees and Costs and Class Representative Service Awards ................. 9

IV.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
      PURPOSES OF SETTLEMENT ...................................................................... 10

      A.      Objective Class Definition ..................................................................... 10

      B.      Numerosity............................................................................................. 11

      C.      Commonality and predominance ........................................................... 11

      D.      Typicality ............................................................................................... 12

      E.      Adequacy ............................................................................................... 13

      F.      Superiority.............................................................................................. 14

V.      COUNSEL FOR PLAINTIFF SHOULD BE APPOINTED AS CLASS
      COUNSEL ....................................................................................................... 15

VI.     THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ........... 16

     A.     The Class Representative and Class Counsel have adequately represented the Settlement Class ........................................................................................ 17

     B.     The Settlement was negotiated at arm's length under the supervision of an experienced mediator .......................................................................................... 19

     C.     The relief provided to Settlement Class Members is adequate ............................ 20

          1.     The costs, risks, and delay of trial and appeal ........................................ 20

          2.     The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims ........ 24

          3.     The terms of any proposed award of attorney's fees, including timing of payment .................................................................................... 26

          4.     No agreements required to be identified under Rule 23(e)(3) ................. 27

     D.     The proposed Settlement treats class members equitably relative to each other ...................................................................................................................... 27

VII.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTIFICATION ............................................................................... 29

VIII.   CONCLUSION ................................................................................................... 31

# TABLE OF AUTHORITIES

**Cases**                                                                    Page(s)

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) .......................................................................................... 12, 14

*Armstrong v. Bd. of Sch. Dirs.,*
   616 F.2d 305 (7th Cir. 1980) ................................................................................ 16

*Arwa Chiropractic, P.C. v. Med.-Care Diabetic & Med. Supplies, Inc.,*
   322 F.R.D. 458 (N.D. Ill. 2017) ....................................................................... 12, 13

*Bell v. PNC Bank, Nat'l Ass'n,*
   800 F.3d 360 (7th Cir. 2015) ................................................................................ 11

*Bernal v. NRA Grp., LLC,*
   318 F.R.D. 64 (N.D. Ill. 2016) .............................................................................. 14

*Bhattacharya v. Capgemini N. Am., Inc.,*
   324 F.R.D. 353 (N.D. Ill. 2018) ............................................................................ 14

*Boundas v. Abercrombie & Fitch Stores, Inc.,*
   280 F.R.D. 408 (N.D. Ill. 2012) ............................................................................ 10

*Breslow v. Prudential-Bache Props.,*
   1995 U.S. Dist. LEXIS 13617 (N.D. Ill. Sep. 13, 1995) ....................................... 29

*Butler v. Am. Cable & Tel., LLC,*
   2011 U.S. Dist. LEXIS 115506 (N.D. Ill. Oct. 6, 2011) ....................................... 16

*Chambers v. Together Credit Union,*
   2021 U.S. Dist. LEXIS 92150 (S.D. Ill. May 14, 2021) ............................. 17, 25, 26

*Charvat v. Valente,*
   2019 U.S. Dist. LEXIS 187225 (N.D. Ill. Oct. 28, 2019) ...................................... 23

*Cothron v. White Castle Sys.,*
   2023 IL 128004 (Feb. 17, 2023) ............................................................................ 24

*Fox v. Dakkota Integrated Systems, LLC,*
   980 F.3d 1146 (7th Cir. 2020) ................................................................................. 5

*George v. Kraft Foods Global, Inc.,*
   2012 U.S. Dist. LEXIS 166816 (N.D. Ill. June 26, 2012) ..................................... 26

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018) .......................... 18, 22, 23, 25, 27, 28

*In re Tiktok, Inc., Consumer Privacy Litig.*,
  565 F. Supp. 3d 1076 (N.D. Ill. 2021) ............................................................................ 10, 11

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ............................................................................................... 17

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir. 1998) ............................................................................................... 13

*Kleen Prods. LLC v. Int'l Paper Co.*,
  831 F.3d 919 (7th Cir. 2016) .................................................................................... 11, 12, 25

*McCabe v. Crawford & Co.*,
  210 F.R.D. 631 (N.D. Ill. 2002) ......................................................................................... 11

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ............................................................................................... 12

*Mullins v. Direct Dig., LLC*,
  795 F.3d 654 (7th Cir. 2015) ......................................................................................... 10, 30

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ............................................................................................................. 27

*Osada v. Experian Info. Sols., Inc.*,
  290 F.R.D. 485 (N.D. Ill. 2012) ......................................................................................... 13

*Quiroz v. Revenue Prod. Mgmt., Inc.*,
  252 F.R.D. 438 (N.D. Ill. 2008) ......................................................................................... 13

*Retired Chi. Police Ass'n v. City of Chi.*,
  7 F.3d 584 (7th Cir. 1993) ................................................................................................... 13

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ............................................................................................. 13

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) .................................................................................. 22

*Snyder v. Ocwen Loan Servicing, LLC*,
  2018 U.S. Dist. LEXIS 167471 (N.D. Ill. Sep. 28, 2018) .............................................. 19, 20

iv

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) ........................................................................... 11

*Swift v. Direct Buy, Inc.*,
  2013 U.S. Dist. LEXIS 152618 (N.D. Ind. Oct. 24, 2013) ..................................... 23

*T.K. v. Bytedance Tech. Co., Ltd.*,
  2022 U.S. Dist. LEXIS 65322 (N.D. Ill. Mar. 25, 2022) ................................ 27, 28

*Van Lith v. iHeartMedia + Entm't, Inc.*,
  2017 U.S. Dist. LEXIS 162838 (E.D. Cal. Sept. 29, 2017) ................................23-24

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ....................................................................................... 11

*Wong v. Accretive Health, Inc.*,
  773 F.3d 859  (7th Cir. 2014) ................................................................ 1, 19, 20

*Wright v. Nationstar Mortg. LLC*,
  2016 U.S. Dist. LEXIS 115729 (N.D. Ill. Aug. 29, 2016) ..................................... 20

*Young v. Rolling in the Dough, Inc.*,
  2020 U.S. Dist. LEXIS 35941 (N.D. Ill. Feb. 26, 2020) ....................................... 20

## Statutes & Rules

740 ILCS 14/1, *et seq.*............................................................................... 1, 2

740 ILCS 14/15(a) ................................................................................. *passim*

740 ILCS 14/15(b) ................................................................................. *passim*

Fed. R. Civ. P. 23 .................................................................................. *passim*

Fed. R. Civ. P. 23(a) ........................................................................ 10, 11, 12, 13

Fed. R. Civ. P. 23(b) ........................................................................ 10, 11, 14, 29

Fed. R. Civ. P. 23(c) ..................................................................................... 29

Fed. R. Civ. P. 23(e) .............................................................................. *passim*

Fed. R. Civ. P. 23(g) ..................................................................................... 15

**Other Authorities**

Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment .............................. 17, 18

Manual for Complex Litig. (4th ed. 2004).................................................................................. 16

Newberg on Class Actions (5th ed.) ...............................................................................14-15, 30

I.      **INTRODUCTION**

Plaintiff Madisyn Stauffer brought this action against Defendant Pathfinder Software, LLC, d/b/a CenterEdge Software, LLC ("CenterEdge") in 2019, alleging that CenterEdge violated her rights under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. On behalf of herself and the proposed Settlement Class, Plaintiff respectfully submits this Motion and Memorandum in Support for Preliminary Approval of Class Action Settlement. As set forth herein, the proposed class Settlement Agreement ("Settlement Agreement" or "Agreement") with CenterEdge, attached hereto as Exhibit 1, is fair, reasonable, and adequate, and preliminary approval is warranted.[1]

This Agreement is the result of extensive, contentious litigation and arm's length negotiations between counsel for Plaintiff ("Class Counsel") and CenterEdge's counsel, with the assistance of a respected third-party mediator, the Honorable James Epstein (Ret.), a former justice of the Illinois Appellate Court and former judge in the Chancery Division of the Circuit Court of Cook County, who has experience mediating numerous cases, including cases brought under BIPA. The Settlement, if approved, will provide substantial monetary relief to CenterEdge Class Members, based on a common, non-reversionary, settlement fund in the amount of $1,175,000.00, while avoiding the inherent risks, delay, and expenses associated with continued litigation. It therefore satisfies all applicable criteria for preliminary approval. *See* Fed. R. Civ. P. 23(e); *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864-65 (7th Cir. 2014). The settlement provides for a no-claim, automatic payment to 2,177 known settlement class members (unless they opt-out), and payment to another 1,331 potential settlement class members who submit a simple claim form verifying they qualify as members of the settlement class. Further, the estimated per-person

---

[1] Unless otherwise defined, capitalized terms used herein have the same meaning as in the Agreement.

recovery is an amount that is in-line with other BIPA cases against suppliers/vendors of fingerprint scanning equipment and also recognizes the limited financial resources and insurance coverage of CenterEdge. Moreover, along with the monetary relief, this Settlement Agreement includes injunctive relief and preserves all claims that members of the Settlement Class may have under BIPA against other Defendants or non-parties. Finally, all requirements under Fed. R. Civ. P. 23 are met for this Court to provisionally certify the Settlement Class for purposes of this Settlement, as required for this Court to be able to grant preliminary approval.

Accordingly, this Settlement Agreement is well within the range of possible approval, and Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement, directs notice to the Class, and schedules a final Fairness Hearing to determine whether to grant final approval of the Settlement.

## II.     BACKGROUND

### A.     Plaintiff's Claims Against CenterEdge

Plaintiff brought this Action against CenterEdge based on its alleged violations of BIPA, an Illinois statute that regulates companies' collection, use, safeguarding, handling, storage, retention, and destruction of biometric data, including fingerprints. 740 ILCS 14/1 *et seq*. She alleges that CenterEdge violated multiple provisions of BIPA, specifically BIPA §§ 15(a), 15(b)(1), 15(b)(2), and 15(b)(3).

Pursuant to BIPA § 15(a), each "private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a). Additionally, ". . . a private entity in possession of biometric

identifiers or biometric information must comply with its established retention schedule and destruction guidelines." *Id.*

BIPA § 15(b) provides that a private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information" unless it first (1) informs that person in writing that such an identifier or information is being collected or stored; (2) informs that person in writing of the "specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used"; and (3) "receives a written release" executed by the person who is the subject of the biometric identifier or information. 740 ILCS 14/15(b)(1)-(3).

Plaintiff alleges that she was employed by Defendant Innovative Heights Fairview Heights, LLC ("Innovative Heights"), a franchisee of Defendant Sky Zone Franchise Group, LLC ("SZFG"). Doc. No. 153, Third Am. Compl. ("TAC"), ¶¶ 2,14, 39, 42, 46, 100. SZFG required franchisees to use a computer system provided by CenterEdge that included a fingerprint scanner. *Id.* at ¶¶ 14-18, 100-110. To clock in and out of work during her employment with Innovative Heights, Plaintiff scanned her fingerprints into the CenterEdge computer system required by SZFG. *Id.* at ¶¶ 66-72.

When a person scans a fingerprint using CenterEdge's computer system, a digital image of the fingerprint is captured and stored, along with additional data of unique characteristics (sometimes called "fingerprint minutiae data") used to identify the individual. Subsequent fingerprint scans repeat the process, then match the fingerprint data with the stored fingerprint data to identify the individual. Plaintiff alleges SZFG required use of the CenterEdge system that was capable of capturing biometric data; retained complete control over and access to all information in the system (including biometric data); could delete the data; periodically inspected the data in

the system; accessed the biometric data remotely and in-person; and owned all the data in the system, including the biometric data. *Id.* at ¶¶ 15-33, 100-140. Plaintiff also alleges CenterEdge has access to the databases used by SZFG and CenterEdge's other Illinois clients to store the fingerprint images and related data. *Id.* at ¶¶ 35, 89-90.

Thus, Plaintiff alleges CenterEdge violated BIPA §§ 15(a) and (b) by possessing, collecting, capturing, receiving through trade, and/or otherwise obtaining the biometric data of her and the CenterEdge Class Members without: 1) developing and complying with the required written policy made available to the public establishing a retention schedule and guidelines for permanently destroying the biometric data; 2) informing her and the other CenterEdge Class Members that their biometric data was being collected or stored; 3) informing her and the other CenterEdge Class Members of the specific purpose and length of term for which the biometric data was being collected or stored; and 4) obtaining a written release from Plaintiff and the other CenterEdge Class Members. *Id.* at ¶¶ 34-37, 168-179.

### B.     The Course of This Litigation

#### 1.     Procedural history

Plaintiff initially filed this Lawsuit in the Circuit Court for St. Clair County, Illinois, in April 2019 against Defendant Innovative Heights. She filed an amended state court complaint in November 2019, in which she added Defendant CenterEdge based on information learned during discovery. CenterEdge removed the amended complaint to this Court, pursuant to the Class Action Fairness Act. Doc. No. 1. Plaintiff subsequently moved to remand on the ground that she did not allege injury in fact to support Article III standing because she only alleged procedural violations of BIPA for failure to develop a publicly available retention/destruction policy. Doc. No. 27. In August 2020, this Court issued its Memorandum and Order, in which it retained jurisdiction over Plaintiff's § 15(b) claims but remanded her § 15(a) claims to state court. *See* Doc. No. 43, p. 14

("Plaintiff has not included additional facts about how Defendant Pathfinder's alleged violation of Section 15(a) injured her. . . . Her allegations seem to mirror the sparse allegations in *Bryant*; therefore, Plaintiff has not articulated an additional injury, beyond a violation of the statute, to satisfy the requirements for Article III standing of her Section 15(a) claims."). In that same Order, the Court denied CenterEdge's motion to dismiss, which sought dismissal on several different grounds, including the statute of limitations and waiver. *Id.* at 17-31. In October 2020, the state court denied CenterEdge's motion to dismiss the § 15(a) claim, in which CenterEdge argued that Plaintiff lacked standing. In June 2021, this Court denied CenterEdge's motion to strike class allegations. Doc. No. 75.

CenterEdge thereafter filed a second notice of removal, in which it argued that the previously remanded § 15(a) claims belong in federal court in light of *Fox v. Dakkota Integrated Systems, LLC*, 980 F.3d 1146 (7th Cir. 2020), which it argued supported the existence of Article III standing. Doc. No. 8 (Case No. 3:20-CV-01332). This Court disagreed and remanded the § 15(a) claims. Doc. No. 44 (Case No. 3:20-CV-01332). CenterEdge filed a Petition for Permission to Appeal in the United States Court of Appeals for the Seventh Circuit, which was denied in August 2021. Doc. No. 48 (Case No. 3:20-CV-01332)

Plaintiff filed a second amended complaint in both state and federal court in September 2021, adding Defendant SZFG as a party. *See* Doc. No. 99. She thereafter voluntarily dismissed her state court action and filed a third amended complaint in federal court. The Third Amended Complaint adds allegations relating to CenterEdge based on information obtained during discovery, alleges Defendants violated BIPA § 15(b), and, for the first time, includes allegations that SZFG and CenterEdge violated BIPA § 15(a) by failing to comply with a retention/destruction

policy (thereby conferring Article III standing that was previously lacking under Seventh Circuit precedent). Doc. No. 144.

### 2.    Discovery

In addition to the extensive motion practice set forth above, the parties have engaged in substantial discovery. Plaintiff propounded extensive written discovery to CenterEdge, and the parties engaged in multiple meet and confer correspondence and conferences and produced/reviewed thousands of pages of documents. In addition, Plaintiff's counsel spent substantial time engaged in non-party discovery involving CenterEdge's Illinois clients to determine the existence, identities, and addresses of CenterEdge Class Members—including by serving subpoenas, numerous meet and confer conferences, and, when required, engaging in necessary enforcement mechanisms in various federal courts.

### 3.    Mediation

This Settlement is the result of a voluntary mediation between Plaintiff and CenterEdge that took place on January 23, 2023, before the Honorable James Epstein (Ret.) through JAMS. Prior to that mediation, counsel for Plaintiff and CenterEdge corresponded and agreed that a mediation might be productive. Judge Epstein is a former justice of the Illinois Appellate Court and former judge in the Chancery Division of the Circuit Court of Cook County. He has more than 40 years of legal experience, including more than 15 years of judicial service, and has experience mediating numerous complex cases, including class action cases involving BIPA. After nearly a full day of mediation, Plaintiff and CenterEdge reached an agreement, as set forth herein and in the formal settlement agreement that they thereafter drafted and executed.

## III.    THE SETTLEMENT AGREEMENT

Plaintiff attaches a true and accurate copy of the Settlement Agreement as Exhibit 1, and provides the following summary of the Settlement's material terms:

6

### A.      The Settlement Class and Relief

The Settlement Class consists of individuals who are either known to have, or certify to have, scanned a fingerprint into a computer system provided by CenterEdge System in Illinois from April 29, 2014, through the Preliminary Approval Date. The 2,177 individuals who are known to have scanned a fingerprint will not be required to file any claim and will automatically receive a settlement payment, unless they opt out. Other individuals who have been identified as working at a location with a fingerprint scanner provided by CenterEdge who verify with a simple claim form that they in fact scanned their fingerprint into the system during the relevant period will also receive a settlement payment.

Specifically, the first group, who will not have to file claims, is labeled the "No-Claim Class," defined as "the 2,177 persons specifically identified in the No-Claim Class List who have been identified by name and contact information during discovery as having scanned one or more fingers into a CenterEdge system in Illinois at any time from April 29, 2014, through the Preliminary Approval Date." Agreement, § A.29. The second group, who will have to file claims, is labeled the "Claims-Made Class," defined as "all persons who are on the Claims-Made Class List and who, at any time from April 29, 2014, through the Preliminary Approval Date, scanned one or more fingers into a CenterEdge system at any of the following locations: Sky Zone in Aurora, IL; Sky Zone in Joliet, IL; Sky Zone in Elmhurst, IL." *Id.* at § A.8; § G (describing claim process). The "CenterEdge Class" "means all persons in the No-Claim Class and the Claims-Made Class." *Id*. at § A.6. Every CenterEdge Class member has the right to opt-out of, or object to, the Agreement within 60 days after the Notice is sent. *Id.* at §§ A.35, H, I.

The "Settlement Class" is "all persons in the CenterEdge Class who do not timely and properly opt out of this Agreement pursuant to the procedures set forth herein." *Id.* at § A.46.

Each No-Claim Class member who does not opt-out and each Claims-Made Class member who submits a timely claim will be an "Award Recipient." *Id.* at § A.4. CenterEdge will pay the Settlement Amount of $1,175,000.00, into a non-reversionary common fund, which shall be used to pay the Awards to Award Recipients, any Fee Award to Class Counsel, any Service Award to the named Plaintiff, and the Settlement Administration Expense. Agreement, §§ C.2, A.45. The Net Settlement Fund means the Settlement Amount less any Fee Award, Service Award, and Settlement Administration Expenses. *Id*. at A.28. This specific amount should be known by the time of Final Approval. The Award Recipients will receive a *pro rata* amount of the Net Settlement Fund. *Id*. at C.2.

The Settlement also provides for Injunctive Relief, designed to prevent further alleged BIPA violations occur in connection with the CenterEdge System. *Id*. at § C.1. This relief includes upgrading software to CenterEdge's clients' locations in Illinois who have both an active license agreement with CenterEdge and whose servers are online and accessible to CenterEdge, such that those locations will be prevented from enrolling new employees in the finger scanning device on the CenterEdge System and any existing fingerprints in such clients' live database (other than data associated with the remaining defendants) will be overridden. *Id*.

### B.    Releases

Settlement Class Members will release CenterEdge from any claims that "were or could have been asserted in this Action, or are based on or in any way related to CenterEdge's conduct as alleged in the Action, or arising in any way from CenterEdge's collection, storage, possession, disclosure, or use of fingerprints or data derived from fingerprints by CenterEdge between April 29, 2014 and the Preliminary Approval Date." *Id.* at § K. Settlement Class Members are not releasing any claims against Innovative Heights, SZFG, or any other third-party using a CenterEdge product. *Id*.

8

### C.      The Notice Program

All CenterEdge Class Members will receive notice of the Settlement by mail.  Notice will also be provided by email and/or text to those CenterEdge Class Members for whom emails and/or phone numbers have been obtained. Claims-Made Class Members for whom the Settlement Administrator has email addresses and/or phone numbers will also receive a follow-up email and/or text message notice prior to the claims deadline. The notice provisions are found in Section F of the Settlement Agreement and described more fully below in Sections VI.C.2 and VII.

### D.      Settlement Administration

The parties propose that Atticus Administration, LLC be appointed by the Court as the Settlement Administrator. Pursuant to the Settlement Agreement, the Settlement Administrator will administer the Notice plan set forth in the Settlement; the Opt-Out and Objection process; the Claims Process; and the receipt and distribution of payments required by the Settlement Agreement. Agreement, § D.

### E.      Attorneys' Fees and Costs and Class Representative Service Awards

Plaintiff will file a separate Fee Application within sixty days after the Preliminary Approval Date, which is before the Opt-Out/Objection Deadline. The Settlement Agreement provides that Class Counsel will limit its request for attorneys' fees to one-third of the Settlement Amount, plus their litigation expenses, to be paid from the Settlement Amount. Agreement, § J.3. The Settlement Agreement also provides that Class Counsel will seek a Service Award of up to $5,000 for the Class Representative, to be paid from the Settlement Amount. *Id*. at § J.4.  The Settlement Agreement leaves the amount of fees and costs to the Court and does not contain a "clear-sailing agreement" restricting CenterEdge's ability to challenge the amount requested. *Id.*

**IV.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR PURPOSES OF SETTLEMENT**

For this Court to be able to preliminarily approve this proposed Settlement and direct notice of the Settlement to the CenterEdge Class Members, it must find that the Court "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). Accordingly, Plaintiff requests provisional certification of the Settlement Class, as defined *supra* III.A, for purposes of this Settlement.

Here, the Settlement Class is "defined clearly" with "objective criteria." *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 657 (7th Cir. 2015). The Settlement Class also satisfies the elements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a); *see also In re Tiktok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1084 (N.D. Ill. 2021). Furthermore, pursuant to Rule 23(b)(3), questions of law or fact common among class members predominate over questions affecting only individual members ("predominance"), and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ("superiority"). Fed. R. Civ. P. 23(a); *In re Tiktok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d at 1086. Thus, provisional certification is proper.

**A.     Objective Class Definition**

Membership in the Settlement Class is defined clearly and based on objective, rather than subjective, criteria—namely, whether a person's fingerprints were scanned into a computer provided by CenterEdge during a specific period of time. That is all that is required for a class definition. *See Mullins*, 795 F.3d at 657.  Moreover, a class definition that requires some members to identify themselves through affidavits or claim forms is not improper.  *See Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 418 (N.D. Ill. 2012).

**B.      Numerosity**

To satisfy the numerosity requirement, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)." *In re Tiktok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d at 1085 (quoting *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002)). Here, the No Claims Class List alone contains 2,177 persons and the Claims-Made Class List contains over 1,300 additional potential Award Recipients. *See* Agreement Exs. 3 & 4. Accordingly, the numerosity requirement is easily satisfied.

**C.      Commonality and predominance**

Under Rule 23(a)'s commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a). Because the Class is seeking monetary relief, Rule 23(b)(3) also applies, which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The requirements of commonality and predominance may overlap, thus Plaintiff addresses them together herein. *See Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015).

As for commonality, although there need only be one "common question of law or fact[,]" the claims of the class "must depend upon a common contention that is capable of classwide resolution." *Bell*, 800 F.3d at 374. The "class-wide resolution means that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Id*. Furthermore, "[w]hat matters to class certification ... [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). The predominance inquiry of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Kleen Prods. LLC v. Int'l Paper*

*Co.*, 831 F.3d 919, 925 (7th Cir. 2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "Predominance is satisfied when 'common questions represent a significant aspect of a case and . . . can be resolved for all members of a class in a single adjudication.'" *Kleen Prods. LLC*, 831 F.3d at 925 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012)).

Common issues of law and fact undoubtedly predominate here. The core factual and legal questions at issue in this Lawsuit—whether CenterEdge possessed, collected, captured, received through trade, or otherwise obtained CenterEdge Class Members' biometric data through the CenterEdge System and whether it complied with the requirements of BIPA §§ 15(a) and (b)(1)-(3)—are common to the CenterEdge Class and predominate over any individual questions. As set forth above, CenterEdge is alleged to have engaged in the same course of conduct with respect to all CenterEdge Class Members as to how such Class Members' fingerprints were captured, collected, stored, and retained. Determining whether CenterEdge possessed, collected, captured, received through trade, and/ or otherwise obtained CenterEdge Class Members' biometric data within the meaning of BIPA through the CenterEdge System therefore depends upon a common contention capable of classwide resolution. And the resolution of this question will generate a common answer and resolve a central issue to the validity of the claims of each CenterEdge Class Member. Furthermore, CenterEdge's alleged failure to comply with the notice and consent provisions of BIPA §§ 15(a) and (b)(1)-(3) is also alleged to be common as to all CenterEdge Class Members. Commonality and predominance are therefore satisfied here.

### D.    Typicality

The typicality requirement of Rule 23(a) "requires that the named plaintiffs' claims 'arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members' and 'are based on the same legal theory.'" *Arwa Chiropractic, P.C. v. Med.-Care*

*Diabetic & Med. Supplies, Inc.*, 322 F.R.D. 458, 464 (N.D. Ill. 2017) (quoting *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998)). Typicality is therefore satisfied where "the named representatives' claims have the same essential characteristics as the claims of the class at large." *Id.* (quoting *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 597 (7th Cir. 1993)). That is certainly true here. Plaintiff's claims and the claims of all Settlement Class Members arise out of the same course of conduct—the scanning of fingerprints into computer systems provided by CenterEdge in the face of the alleged absence of BIPA disclosures and retention/destruction policies. There is nothing that separates Plaintiff's claim from those of other Settlement Class Members, and typicality is satisfied.

### E.      Adequacy

The "adequacy" requirement of Rule 23(a)(4) looks to whether the Class Representative and Class Counsel will "fairly and adequately protect the interests of the class." It "comprises two parts: 'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members.'" *Arwa Chiropractic, P.C.*, 322 F.R.D. at 465 (quoting *Retired Chi. Police Ass'n*, 7 F.3d at 598). "[A] class is not . . . adequately represented if class members have antagonistic or conflicting claims." *Id.* (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Courts also look to whether the named plaintiff "has a sufficient interest in the outcome of the case to ensure vigorous advocacy" and that counsel is "competent, qualified, experienced and able to vigorously conduct the litigation." *Osada v. Experian Info. Sols., Inc.*, 290 F.R.D. 485, 490 (N.D. Ill. 2012) (quoting *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008)).

Here, Plaintiff and Class Counsel have and will fairly and adequately protect the interests of the Settlement Class. As set forth above, Plaintiff and all Settlement Class Members suffered

the same alleged injury, thus there are no conflicting claims at issue. Accordingly, Plaintiff is an adequate representative of the Settlement Class Members.

Furthermore, Class Counsel have extensive experience representing plaintiffs in class action and complex litigation and are well qualified to represent the Settlement Class Members.[2] Accordingly, Class Counsel possess the ability, resources, commitment and experience necessary to adequately represent the Settlement Class Members.

### F.     Superiority

Rule 23(b)(3)'s second prong is whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). It looks at: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id*.

These factors weigh in favor of certification here. There is no other known litigation pending against CenterEdge regarding the subject of this Lawsuit, thus there is not a "reason for concern about class members having an individual interest in controlling the prosecution or defense of these matters through a separate action." *Bhattacharya v. Capgemini N. Am., Inc.*, 324 F.R.D. 353, 366 (N.D. Ill. 2018). It is also desirable to concentrate the litigation of the claims in this forum, as the case concerns a proposed class of individuals who scanned their fingerprints working for employers throughout Illinois and the Court is familiar with the claims at issue. *See* Newberg on Class Actions § 4:71 (5th ed.) (a class action is particularly appropriate in a particular

---

[2] A resume of Plaintiff's law firm is attached as Exhibit 2.

forum where that court has already issued preliminary rulings). Moreover, "[p]arallel litigation for each class member here would entail the same discovery and require multiple courts to weigh the same factual and legal bases for recovery. That would make no sense." *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 76 (N.D. Ill. 2016). Finally, there should be no management issues here due to the predominance of common issues, "readily available identity" of class members, and "the relative ease of administering the claims process." *Id.   See also Amchem Prods.,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

Accordingly, all of the requirements of Rule 23 are satisfied here, and the Court should certify the CenterEdge Class for settlement purposes.

## V.       COUNSEL FOR PLAINTIFF SHOULD BE APPOINTED AS CLASS COUNSEL

Pursuant to Rule 23, a court certifying a class "must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In doing so, the Court must consider the following factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Here, Class Counsel have thoroughly investigated and identified the claims at issue in the Lawsuit. As set forth above, Class Counsel have extensive experience handling class actions and complex litigation, including other matters under BIPA. Class Counsel also possess the requisite knowledge and resources to adequately represent the CenterEdge Class in connection with this Settlement. The Court should therefore appoint Kevin Green, Richard Cornfeld, Daniel Levy, and Thomas Horscroft of Goldenberg Heller & Antognoli, P.C., as Class Counsel.

15

## VI.        THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

Federal Rule of Civil Procedure 23(e) governs the Court's preliminary review of a class action settlement. Preliminary approval "is the first step in a two-step process to determine whether a proposed Rule 23 settlement is fair, adequate, reasonable, and not a product of collusion." *Butler v. Am. Cable & Tel., LLC*, 2011 U.S. Dist. LEXIS 115506, *28 (N.D. Ill. Oct. 6, 2011). The Seventh Circuit describes this preliminary approval process as follows:

> The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.' This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. If the district court finds a settlement proposal 'within the range of possible approval,' it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.

*Armstrong v. Bd. of Sch. Dirs.,* 616 F.2d 305, 314 (7th Cir. 1980); *see also* Manual for Complex Litig. § 21.632 (4th ed. 2004) (noting that at preliminary approval stage, the first task before the court is to make a preliminary determination as to the fairness, reasonableness, and adequacy of the settlement terms).

Rule 23(e) requires that a court make two findings before granting preliminary approval of a proposed class action settlement:

> (B) *Grounds for a Decision to Give Notice*. The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:
>
> (i) approve the proposal under Rule 23(e)(2); and
>
> (ii) certify the class for purposes of judgment on the proposal.

Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii).

In determining whether a proposed class action settlement may be approved under Rule 23(e)(2), the Court must consider whether: (A) the class representatives and class counsel have

adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D).

"In considering these factors, a court must bear in mind that '[f]ederal courts naturally favor the settlement of class action litigation.'" *Chambers v. Together Credit Union*, 2021 U.S. Dist. LEXIS 92150, *5 (S.D. Ill. May 14, 2021) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)).

Here, as set forth above, Plaintiff has shown that the Court will likely be able to certify the Class for purposes of judgment on the proposal. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). Moreover, because Plaintiff and Class Counsel have adequately represented the Settlement Class, the Settlement Agreement was negotiated at arm's-length with the guidance of an experienced mediator, it provides substantial monetary relief and avoids the risks associated with continued litigation, and treats Settlement Class Members equitably relative to each other, the Rule 23(e)(2) factors are met. Accordingly, preliminary approval of the Settlement Agreement is warranted.

## A.    The Class Representative and Class Counsel have adequately represented the Settlement Class

As set forth above, Plaintiff and Class Counsel have adequately represented the Settlement Class and thus satisfy Rule 23(e)(2)(A). The "focus at this point is on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. Courts "may consider a number of factors when evaluating the adequacy

of representation, including the 'nature and amount of discovery,' which 'may indicate whether counsel negotiating on behalf of the class had an adequate information base.'" Fed. R. Civ. P. 23(e)(2)(A) Advisory Committee's Notes to 2018 amendment. In *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018), in finding that adequacy of representation under Rule 23(e)(2)(A) favored approval, the court relied on the "significant time and resources in this litigation" that class counsel invested, that they "litigated this case intensively," and their extensive experience in class action litigation. *Id*. at *13.

Here, the performance of the Class Representative and Class Counsel have been more than adequate, and the extensive time and resources they have invested, including relating to discovery, has ensured that Class Counsel had an "adequate information base" in negotiating this Settlement. *See* Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. Plaintiff, as the Class Representative, has stayed involved in nearly every aspect of the case, including by helping her attorneys investigate the BIPA claims, searching for and providing documents, assisting in responding to written discovery, conferring with counsel throughout the litigation, participating in the mediation, and reviewing and approving the Settlement Agreement before signing it. At each step, Plaintiff has continued to act in the best interests of the Settlement Class and has adequately represented them.

Furthermore, as addressed above, Class Counsel has engaged in extensive discovery as to CenterEdge, serving multiple sets of interrogatories and requests for production of documents. The parties exchanged multiple meet and confer correspondence and Class Counsel engaged in additional meet and confer conferences with CenterEdge counsel, as well as received and analyzed thousands of pages of documents from CenterEdge, which they relied upon in negotiating the Settlement. Additionally, Class Counsel expended significant time and resources serving over 45

subpoenas on CenterEdge's Illinois clients relating to the existence, identities, and contact information for potential CenterEdge Class Members, and engaging in numerous meet and confer conferences and, when needed, enforcement actions in various federal courts to obtain information about the identities of and contact information for the Settlement Class to, *inter alia*, reduce the need for a claims process for the majority of Settlement Class Members.

Thus, Plaintiff and Class Counsel have worked diligently to obtain the required information base to negotiate this settlement. The significant work they put into discovery to obtain this information base, along with their extensive experience in class actions, supports a finding that adequacy of representation under Rule 23(e)(2)(A) is satisfied.

### B. The Settlement was negotiated at arm's length under the supervision of an experienced mediator

Initially, the fact that the settlement was reached with the assistance of a respected and experienced third-party mediator, the Honorable James Epstein (Ret.), supports a finding that the settlement was negotiated at arm's length and that there was nothing improper in connection with the negotiations. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (relying on fact that "settlement was proposed by an experienced third-party mediator after an arm's-length negotiation"); *Snyder v. Ocwen Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 167471, *12 (N.D. Ill. Sep. 28, 2018) (relying on the parties' use of independent mediators and "no indication of any side deals"). Here, the parties agreed in principle to the terms of a settlement proposed by Judge Epstein that were subsequently memorialized in the written Settlement Agreement, with no side deals. After the mediation concluded, in addition to drafting the Settlement Agreement, Class Counsel continued working with the non-party subpoena recipients to finalize the identities and contact information for the Class List.

Courts also look to whether the settlement came about after the parties have vigorously litigated the case, including through discovery and motion practice. *See Wong*, 773 F.3d at 864 ("the parties contentiously litigated a motion to dismiss"); *Wright v. Nationstar Mortg. LLC*, 2016 U.S. Dist. LEXIS 115729, *42 (N.D. Ill. Aug. 29, 2016) (parties "vigorously defended their positions throughout the litigation . . . and engaged in discovery"); *Young v. Rolling in the Dough, Inc.*, 2020 U.S. Dist. LEXIS 35941, *9 (N.D. Ill. Feb. 26, 2020) (settlement agreed to after extensive discovery). That is certainly the case here. As set forth above, the parties engaged in significant discovery and extensive motion practice, including motions to dismiss in both state and federal court and a motion to strike class allegations. Additionally, there is no evidence of (nor was there any) collusion or unfairness that would support a finding that this factor is not satisfied. *See Wright*, 2016 U.S. Dist. LEXIS 115729 at *42 (relying on the fact that nothing in the record showed any sort of unfairness or collusion). Furthermore, the Settlement does not provide for the reversion of unclaimed amounts. *See Snyder*, 2018 U.S. Dist. LEXIS 167471 at *12 (relying on the lack of any provision in which unclaimed amounts revert back to the defendant in finding this factor satisfied).

Accordingly, the Settlement was the result of arms-length negotiations between the parties, and Rule 23(e)(2)(B) supports granting preliminary approval.

### C.     The relief provided to Settlement Class Members is adequate

Each of the Rule 23(e)(2)(C) subfactors supports a finding that the relief provided to the Settlement Class is adequate.

#### 1.     The costs, risks, and delay of trial and appeal

The relief provided to the Settlement Class Members, taking into account the costs, risks, and delay of trial and appeal, supports the granting of preliminary approval. *See* Rule 23(e)(2)(C)(i). Based on the Settlement Amount of $1,175,000.00, this Settlement provides

significant immediate relief for the Settlement Class. Under this Settlement, even after deducting for expected fees, costs, and service award, each Settlement Class Member is expected to receive a payment ranging from approximately $230-$330. This amount exceeds or is in-line with other BIPA settlements between employees and the vendor of the fingerprinting equipment, and, in contrast to many, provides an automatic payment to a majority of the Settlement Class rather than requiring a claims-process for all. *See, e.g.*, *Bryant v. Compass Grp. USA, Inc.*, No. 19-cv-06622 (N.D. Ill.), ECF Dkt. No. 123 at 1, 9 ($6.8 million fund for 66,159 class members, amounting to approximately $69 per class member after deducting for fees, costs, and service award; actual payment of $413.75 after "impressive" 16.97% claims rate); *Neals v. Partech, Inc.* No. 1:19-cv-05660 (N.D. Ill.), ECF Dkt. No. 136 at 1, 7, 8 ($790,000 fund for 3,560 class members, amounting to approximately $143 per class member after deducting for 35% fees and $5,000 Service Award; actual payment of $650 after receiving a "remarkable 20.5% claims rate"); *Figueroa v. Kronos Inc.*, No. 19-cv-01306 (N.D. Ill.), ECF Dkt. No. 377 at 1, 7, 8 ($15,276,227 fund for 81,910 class members, amounting to approximately $124 per class member after deducting for fees and service award; actual payment of $445 after receiving "excellent" claims rate of 26.78%); *Prelipceanu v. Jumio* (Cook County) (settlement fund of $7 million for 260,000 class members, amounting to approximately $27 per class member; actual payment of $275 per class member after claims process)[3]; Here, there are 2,177 people who qualify for relief without the need to file a claim, and an additional 1,331 people who may qualify for relief by filing a simple claim. Compared to these other BIPA cases against vendors, it is as though the class here is starting with a 62.09% claims rate, which will only increase with every claim made.

---

[3] *See* https://topclassactions.com/lawsuit-settlements/closed-settlements/illinois-jumio-biometric-class-action-settlement/.

Moreover, the Settlement "allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation," which would likely have included a contested class certification proceeding "followed by an inevitable appeal" under Rule 23(f) and a motion for summary judgment. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). Furthermore, an appeal would likely have followed any trial in the case.

Although Plaintiff feels strongly about her ability to successfully litigate her case absent a settlement, as this Court is aware from having adjudicated this case for several years and its rulings on several substantive motions, there are several contested issues on which Plaintiff would have to prevail were litigation to continue. Throughout discovery Pathfinder has denied that it possessed, collected, captured, and/or otherwise obtained biometric data of any CenterEdge Class members, and has argued that any such data is possessed by others. CenterEdge has also asserted fourteen affirmative defenses. *See* Doc. No. 158, pp. 50-58. Thus, as the court stated in *Hale* when addressing the vigorous defenses that the defendant had raised throughout the case, "[r]egardless of the outcome of these proceedings, there can be no question that they would have added significant costs and delay . . . . Moreover, absent this proposed resolution, and considering the strong likelihood of post-trial motions and appeals, the parties were unlikely to achieve a final disposition any time soon." 2018 U.S. Dist. LEXIS 210368 at *17. It therefore found that this factor "strongly favor[ed] final approval of the Settlement." *Id*.

Furthermore, were litigation to continue, it is expected that CenterEdge would oppose Plaintiff's motion for class certification. CenterEdge initially filed a motion to strike class allegations in the case. Though that was denied, the issues raised therein were not finally adjudicated, and, as expressed in its Answer to the Third Amended Complaint, CenterEdge continually "denies that this action may be maintained as a class action." Doc. No. 158, pp. 41-46.

Although Plaintiff believes this case is well positioned for class certification based on the uniform conduct as to all CenterEdge Class members, proceeding with a contested motion for class certification is certainly not without its risks.

Further supporting the adequacy of this Settlement is the size of the Settlement Fund in relation to CenterEdge's size and financial condition. The Settlement Fund significantly exceeds the amount of CenterEdge's available insurance, which would have only been further depleted if used to pay CenterEdge's counsel to continue to litigate the case. That insurance was exceeded, along with CenterEdge's representation of its limited financial resources, can be considered by this Court. *See Swift v. Direct Buy, Inc.*, 2013 U.S. Dist. LEXIS 152618, *26-27 (N.D. Ind. Oct. 24, 2013) ("The financial condition of the defendant in class action settlement is a legitimate—if not entirely pragmatic—consideration, as the Eighth Circuit has held."). Although Plaintiff could potentially litigate the case for several more years and secure a higher judgment following trial, that is unlikely to leave Settlement Class Members in a better position, given the likelihood insurance would be depleted and that CenterEdge may be unable to pay such a judgment. *See also* Doc. No. 158 (asserting affirmative defense related to due process).

Nor must a settlement "provide the class with the maximum possible damages in order to be reasonable." *Charvat v. Valente*, 2019 U.S. Dist. LEXIS 187225, *19-21 (N.D. Ill. Oct. 28, 2019) (approving settlement despite payout to individual class members not being near the statutory maximum under the TCPA; "the inability to pay every injured plaintiff the absolute statutory maximum does not reflect a failure of the settlement itself"); *see also Hale*, 2018 U.S. Dist. LEXIS 210368 at *18-19 ("It is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.") (quoting *Van Lith v. iHeartMedia + Entm't, Inc.*, 2017

U.S. Dist. LEXIS 162838, *12 (E.D. Cal. Sept. 29, 2017)) (citations omitted). Thus, that the Settlement does not provide for a recovery in which each CenterEdge Class Member can obtain the maximum statutory recovery certainly does not mean the Settlement is not adequate.[4]

Accordingly, based on the substantial and immediate relief available to Settlement Class Members under this Settlement compared to the costs, risks, and delay of further litigation, preliminary approval is appropriate.

### 2.      The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims

The method of distributing relief to the class provided by the Settlement, including its method of processing class-member claims also supports granting preliminary approval. *See* Rule 23(e)(2)(C)(ii). As set forth above, the Settlement provides for both a "No-Claim Class" and a "Claims-Made Class." The No-Claim Class is a specific group of 2,177 people who have been identified by name and contact information during discovery as having scanned one or more fingers into a computer system provided by CenterEdge in Illinois during the relevant period. These individuals have no need to do extra work to identify themselves as entitled to the Settlement Payment and, therefore, do not need to file a claim to receive their Award.

On the other hand, people who scanned their fingerprints into a computer provided by CenterEdge at the Sky Zone locations in Aurora, Joliet, and Elmhurst, Illinois will need to self-identify because neither CenterEdge nor these Sky Zone employers could confirm which of their employees scanned a fingerprint and which did not. Thus, the notice will be provided to all the

---

[4] Plaintiff notes that the parties reached their agreement prior to the Illinois Supreme Court's decision in *Cothron v. White Castle Sys.*, 2023 IL 128004 (Feb. 17, 2023), in which the Court held that a party violates Section 15(b) of BIPA when it "collects, captures, or otherwise obtains a person's biometric information without prior informed consent" not only the "first time an entity scans a fingerprint or otherwise collects biometric information" but also "with each subsequent scan or collection." *Id*. ¶ 24. A petition for rehearing is currently pending in that case.

employees at these locations, who can verify membership in the Settlement Class by submitting a simple claim form that requests contact information and asks the person to certify that he/she scanned a finger during the relevant period at one of the specified locations. Agreement, §§ A.7, G.1, and Ex. 12. Claim forms may be delivered to the Settlement Administrator by mail or e-mail or completed on the Settlement Website. *Id.* § G.1. Moreover, a follow-up notice will be sent by email and/or text message prior to the Claims Deadline to every person on the Claims-Made List who has not yet filed a claim for whom there is such contact information available. *Id.* § F.5(e).

Direct payment without the need to submit a claim, which is what the majority of Settlement Class members here will receive, has been deemed the "best and most effective method of ensuring Class members receive the funds they are due." *See Chambers*, 2021 U.S. Dist. LEXIS 92150 at *6-7 ("The method of distributing the Net Settlement Fund is by direct payment, which is the best and most effective method of ensuring Class members receive the funds they are due and requires no claims to be submitted. Fed. R. Civ. P. 23(e)(2)(C)(ii)."). Direct payments after a simple claim process for the remainder of the Settlement Class members is also proper and should be approved. *See Hale*, 2018 U.S. Dist. LEXIS 210368 at *19-20 ("Under the terms of the proposed Settlement, settlement funds will be distributed automatically, with no need for a claim form, to the approximately 1.43 million class members whose contact information is known to the parties. The remainder of the class has only to submit a relatively simple claim form with basic questions about class membership. This procedure is claimant-friendly, efficient, cost-effective, proportional and reasonable under the particular circumstances of this case."); *Kleen Prods. LLC*, 2017 U.S. Dist. LEXIS 183015 at *15-16 (approving proposed claim forms where they were "relatively simple for Class Members to complete" and enabled class members to provide proof of the relevant purchase documentation or, if applicable, confirm pre-populated data).

Finally, the Settlement Administrator will mail Award Recipients prepaid plastic cards that can be used like a debit card. Agreement § J.1.(c). Upon receipt, the recipient need only dial the phone number on the card or visit a website provided on the card to activate it. *Id*. Unlike a check, the funds on the cards will not expire after 180 days and will benefit any recipients who do not use or have access to traditional financial services without any detriment to those who do. Accordingly, the method of distributing relief to the CenterEdge Class is as simple and effective as possible. This factor therefore also supports preliminary approval.

### 3.     The terms of any proposed award of attorney's fees, including timing of payment

This factor analyzes the adequacy of the relief taking into account "the terms of any proposed award of attorney's fees, including timing of payment." *See* Rule 23(e)(2)(C)(ii). If this Court grants preliminary approval of the Settlement, undersigned counsel intends to petition the Court for a reasonable award of attorney fees in the amount of one-third of the Settlement Amount, plus their litigation expenses. Agreement § J.1.3. As will be set forth further in Plaintiff's petition for attorney fees, one-third of a common fund as an attorney's fee award in a class settlement is reasonable and does not undermine the adequacy of the relief. *See Chambers*, 2021 U.S. Dist. LEXIS 92151 at *4 (finding attorney's fees of one-third of the settlement fund reasonable; "As numerous courts have recognized, '[t]he normal rate of compensation in the market [is] 33.33% of the common fund recovered' because the class action market commands contingency fee agreements and the class counsel accepts a substantial risk of nonpayment.") (quoting *George v. Kraft Foods Global, Inc.*, 2012 U.S. Dist. LEXIS 166816, *8 (N.D. Ill. June 26, 2012)). Moreover, "[t]his District is no exception and commonly awards a one-third fee in class action cases." *Chambers*, 2021 U.S. Dist. LEXIS 92151 at *4 (collecting cases). Thus, the attorneys' fee award in the Settlement supports preliminary approval.

### 4.      No agreements required to be identified under Rule 23(e)(3)

There are no agreements besides the Settlement Agreement made in connection with this proposed settlement. This factor is thus neutral. *See Hale*, 2018 U.S. Dist. LEXIS 210368 at *20.

Accordingly, the Rule 23(e)(2)(C) factors support a finding that the relief provided to the Settlement Class through this proposed Settlement is adequate.

### D.      The proposed Settlement treats class members equitably relative to each other

The claims of the CenterEdge Class Members are nearly identical, as CenterEdge allegedly violated BIPA in the same manner as to all such Class Members. Under the Settlement Agreement, the Award Recipients will all "receive a distribution in the amount of a *pro rata* share of the Net Settlement Fund." Agreement § J.1.(a). In *T.K. v. Bytedance Tech. Co., Ltd.*, 2022 U.S. Dist. LEXIS 65322 (N.D. Ill. Mar. 25, 2022), the court stated that "[g]enerally, a settlement that provides for pro rata shares to each class member" will meet the standard of treating class members equitably relative to each other. *Id*. at *42. That is true here. *See also Ortiz v. Fibreboard Corp*., 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "characteristically assured by straightforward pro rata distribution of the limited fund"). The Settlement also provides for identical prospective injunctive relief by which CenterEdge will, *inter alia*, stop providing the ability for Illinois customers to enroll new fingerprints going forward. Agreement, § C.2. Further, each Class Member will release the same BIPA claims against CenterEdge, and all will retain their claims against the remaining Defendants and non-parties. *Id.* § K.

While the Settlement requires some Settlement Class members to file a claim and others not to, that treatment is still equitable. The only Settlement Class members who are required to file claims are those people who are known to have worked at three Illinois locations with CenterEdge fingerprint scanners during the relevant period, but neither CenterEdge nor their employer could

confirm or deny they scanned a fingerprint. If they did scan a fingerprint, they will simply have to verify this fact by "checking a box"—which is what is required in most BIPA settlements. *See supra,* pp. 21-22. In this case, however, it would be *inequitable* to make the 2,177 people, who through discovery are known to have scanned a fingerprint, file a claim to receive their Settlement payment just because there are others who are not yet known. Similarly, it would be *inequitable* to exclude from the Settlement those people who can easily self-verify that they scanned a fingerprint when it is known they worked at a location with a fingerprint scanner provided by CenterEdge during the relevant period. And ultimately, each Award Recipient will receive the same *pro rata* payment. *See also Hale*, 2018 U.S. Dist. LEXIS 210368 at *19-20 (approving settlement with mixed automatic payment for many and claims-process for some).

Finally, this subfactor may also involve a review of a service award to class representatives. In *Bytedance*, the court recognized that "[b]ecause class representatives do more work and take more risks than the average class member, service awards to named class members will generally not 'raise a red flag.'" 2022 U.S. Dist. LEXIS 65322 at *42 (internal quotation omitted). The court added "[w]ithout the involvement of the named Plaintiffs, the other class members would gain nothing," and thus the "gap between the proposed service awards and the average distribution" to class members did not "render treatment of class members inequitable." *Id*. at *43. Here, as set forth above, Plaintiff's active involvement and work on the case helped lead to the Settlement, and the provision of the requested $5,000 service award to Plaintiff appropriately reflects that work and is consistent with the equitable treatment of class members.

Accordingly, the Settlement treats each member of the Settlement Class equitably, and Rule 23(e)(2)(D) supports granting preliminary approval.

**VII.     THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTIFICATION**

Under Rule 23, for any "class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule further provides that such "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*. Additionally, the notice must, in plain language, state the nature of the action; the class definition; the class claims, issues, or defenses; that class members may enter an appearance through an attorney; that the court will exclude class members who so request; the time and manner for requesting exclusion; and the binding effect of a class judgment on the class members. *Id*. Moreover, Rule 23(e)(1)(B) provides that the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." And "[d]ue process requires that the method of providing notice be reasonably calculated to reach interested parties" although it "does not require that each class member actually receive notice." *Breslow v. Prudential-Bache Props.*, 1995 U.S. Dist. LEXIS 13617, *1 (N.D. Ill. Sep. 13, 1995).

Here, the proposed notice is comprehensive, provides the best notice practicable under the circumstances, and complies with all requirements of Rule 23 and Due Process. Within twenty-one days after the Preliminary Approval Date, the Settlement Administrator will send notice by U.S. mail, postage prepaid, to every person on the Class List. *Id*. § F.5(b). Through information obtained from the parties and non-parties in discovery, the parties have obtained mailing addresses for every person on the Class Lists, plus email and/or telephone numbers for many people on the Class List. Prior to mailing the notice, the Settlement Administrator will process the address of every person identified on the Class List through the U.S. Postal Service's National Change of

Address database. *Id*. The notice will be mailed to the last known address as reflected in the Class List or to any updated address listed in this address database. *Id*. Additionally, the Settlement Administrator will re-mail notice via standard U.S. Mail, postage prepaid, for up to thirty-five days following the Settlement Notice date to any updated addresses to the extent it receives an address change notification from the U.S. Postal service, or pursuant to a request from a person on the Class List. *Id*. Such mailed notice satisfies Rule 23 and Due Process. *See Mullins*, 795 F.3d at 665 ("When class members' names and addresses are known or knowable with reasonable effort, notice can be accomplished by first-class mail.").

In addition to mailed notice, the Settlement takes extra steps to notify Class Members. Each person on the Class List for whom the parties have an email and/or phone number will also receive notice by email and/or text message. *Id*. § F.5(c).

Accordingly, the notice is the best practicable notice under the circumstances. *See also* Newberg on Class Actions § 22:91 ("The notice of the Proposed Settlement . . . need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections. . . . Courts have consistently recognized that due process does not require that every class member receive actual notice so long as the court reasonably selected a means likely to apprize interested parties.").

Furthermore, the notice documents are written in plain, easily-understood language that satisfies the requirements of Rule 23. To the extent the Court disagrees, it may modify the language in its discretion.

Because members of the Claims-Made Class must file a claim to receive their Award and members of the No-Claim Class do not, the form of the notice to both groups will be substantially the same, but the notice to the Claims-Made Class will also include information and material that

30

the No-Claim Class does not need, including a paper Claim Form, a link to the Claim Form on the Settlement Website and a QR Code that will link to the Settlement Website, a description of the Claim Period and Claim Process, and an explanation that the failure to file a Claim Form will result in no Award. Agreement, § F.4. Additionally, to help promote the filing of claims by qualifying Class Members, each person on the Claims-Made Class List for whom the parties have an email address and/or phone number and who has not filed a claim after 45 days of the Settlement Notice Date will be sent a follow-up email and/or text message reminding them of the Claims Deadline, again with links to the Settlement Website. *Id*. § F.5(e).

Finally, to ensure comprehensive notice, each mailed, emailed, and texted notice will direct Class Members to a Settlement Website containing links to the Settlement Notice, the Settlement Agreement, the Fee Application, the Claim Form, a page for completing and submitting the Claim Form online, contact information for Class Counsel and the Settlement Administrator, applicable deadlines, and orders of the Court pertaining to the settlement. *Id.* § F.5(a). The mailed notice sent to everyone also provides email addresses and phone numbers for both Class Counsel and the Settlement Administrator from whom Class Members may send inquiries or receive additional information.

The proposed Notice Plan provides direct notice in the best practicable manner and fully apprises Class Members of their rights, thereby complying with Rule 23 and Due Process. Thus, the Court should approve the proposed Notice Plan.

## VIII.      CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval and enter the proposed Preliminary Approval Order directing notice to Class Members and scheduling a final Fairness Hearing, and for such further relief as the Court deems just and proper.

Dated: June 21, 2023                    Respectfully submitted,

                                       **GOLDENBERG HELLER
                                       & ANTOGNOLI, P.C.**

By: */s/ Kevin P. Green*
      Kevin P. Green, #6299905
      Richard S. Cornfeld, #0519391
      Daniel S. Levy, #6315524
      Thomas C. Horscroft, #06327049
      2227 South State Route 157
      Edwardsville, IL 62025
      Telephone: (618) 656-5150
      kevin@ghalaw.com
      rick@ghalaw.com
      daniel@ghalaw.com
      thorscroft@ghalaw.com

      *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 21, 2023, the foregoing document was filed electronically with the Clerk of Court and served upon all counsel of record via the Court's electronic notification system.

                                      By: */s/ Kevin P. Green*