UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MADISYN STAUFFER, on behalf of herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Cause No. 3:20-cv-00046-MAB |
| v. | ) ) | |
| INNOVATIVE HEIGHTS FAIRVIEW HEIGHTS, LLC, et al. | ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT INNOVATIVE HEIGHTS FAIRVIEW HEIGHTS, LLC AND MEMORANDUM IN SUPPORT**

**GOLDENBERG HELLER & ANTOGNOLI, P.C.**

Kevin P. Green, #6299905
Richard S. Cornfeld, #0519391
Daniel S. Levy, #6315524
Thomas C. Horscroft, #06327049
2227 South State Route 157
Edwardsville, IL 62025
Telephone: (618) 656-5150
kevin@ghalaw.com
rick@ghalaw.com
daniel@ghalaw.com
thorscroft@ghalaw.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 2

        A.      Plaintiff's Claims Against Innovative Heights ..................................... 2

        B.      The Course of This Litigation .............................................................. 4

                1.      Procedural history ..................................................................... 4

                2.      Discovery .................................................................................. 6

                3.      Mediation .................................................................................. 6

III.    THE SETTLEMENT AGREEMENT ................................................................. 6

        A.      The Settlement Class and Relief .......................................................... 6

        B.      Releases ................................................................................................ 7

        C.      The Notice Program .............................................................................. 8

        D.      Settlement Administration .................................................................... 8

        E.      Attorneys' Fees and Costs and Class Representative Service Awards .................. 8

IV.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED
        FOR PURPOSES OF SETTLEMENT ............................................................... 9

        A.      Objective Class Definition ................................................................... 9

        B.      Numerosity ............................................................................................ 9

        C.      Commonality and predominance ........................................................ 10

        D.      Typicality ............................................................................................ 11

        E.      Adequacy ............................................................................................. 12

        F.      Superiority ........................................................................................... 13

V.      COUNSEL FOR PLAINTIFF SHOULD BE APPOINTED AS CLASS
        COUNSEL ......................................................................................................... 14

VI.    THE    COURT    SHOULD    PRELIMINARILY    APPROVE    THE
       SETTLEMENT ................................................................................................. 15

       A.    The Class Representative and Class Counsel have adequately represented
             the Settlement Class ............................................................................... 16

       B.    The Settlement was negotiated at arm's length with the assistance of an
             experienced mediator ............................................................................... 18

       C.    The relief provided to Settlement Class Members is adequate ............................ 19

             1.    The costs, risks, and delay of trial and appeal ........................................... 19

             2.    The effectiveness of any proposed method of distributing relief to
                   the class, including the method of processing class-member claims ........ 23

             3.    The terms of any proposed award of attorney's fees, including
                   timing of payment ...................................................................................... 24

             4.    No agreements required to be identified under Rule 23(e)(3) ................. 25

       D.    The proposed Settlement treats class members equitably relative to each
             other ....................................................................................................... 25

VII.   THE  COURT  SHOULD  APPROVE  THE  PROPOSED  FORM  AND
       METHOD OF CLASS NOTIFICATION ........................................................ 26

VIII.  CONCLUSION ............................................................................................... 28

# TABLE OF AUTHORITIES

**Cases**                                                                  Page(s)

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................ 10, 14

*Armstrong v. Bd. of Sch. Dirs.*,
   616 F.2d 305 (7th Cir. 1980) ............................................................................... 15

*Arwa Chiropractic, P.C. v. Med.-Care Diabetic & Med. Supplies, Inc.*,
   322 F.R.D. 458 (N.D. Ill. 2017) ...................................................................... 11, 12

*Atlantic Mut. Ins. Co. v. C.I.R.*,
   523 U.S. 382 (1998) ............................................................................................... 22

*Bell v. PNC Bank, Nat'l Ass'n*,
   800 F.3d 360 (7th Cir. 2015) ............................................................................... 10

*Bernal v. NRA Grp., LLC*,
   318 F.R.D. 64 (N.D. Ill. 2016) ........................................................................... 14

*Bhattacharya v. Capgemini N. Am., Inc.*,
   324 F.R.D. 353 (N.D. Ill. 2018) ......................................................................... 13

*Breslow v. Prudential-Bache Props.*,
   1995 U.S. Dist. LEXIS 13617 (N.D. Ill. 1995) ...................................................... 27

*Bryant v. Compass Grp. USA, Inc.*,
   No. 19-cv-06622 (N.D. Ill. 2020) ......................................................................... 20

*Burlinski et al. v. Topgolf USA Inc. et al.*,
   No. 1:19-cv-06700 (N.D. Ill. 2021) ...................................................................... 19

*Butler v. Am. Cable & Tel., LLC*,
   2011 U.S. Dist. LEXIS 115506 (N.D. Ill. 2011) .................................................... 15

*Chambers v. Together Credit Union*,
   2021 U.S. Dist. LEXIS 92150 (S.D. Ill. 2021) ..................................... 16, 23, 24, 25

*Charvat v. Valente*,
   2019 U.S. Dist. LEXIS 187225 (N.D. Ill. 2019) .................................................... 22

*Cothron v. White Castle Sys.*,
   2023 IL 128004 (Feb. 17, 2023) ........................................................................... 23

*Figueroa v. Kronos Inc.*,
   No. 19-cv-01306 (N.D. Ill. 2022) ......................................................................... 20

*Fox v. Dakkota Integrated Systems, LLC*,
  980 F.3d 1146 (7th Cir. 2020) ................................................................. 4

*Genesys Cloud Servs., Inc. v. Strahan*,
  2022 U.S. Dist. LEXIS 241447 (S.D. Ind. 2022) ................................... 22

*George v. Kraft Foods Global, Inc.*,
  2012 U.S. Dist. LEXIS 166816 (N.D. Ill. 2012) ................................... 24

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  2018 U.S. Dist. LEXIS 210368 (S.D. Ill. 2018), ........................... passim

*Holm v. Presence Health Network et al.*,
  No. 2017-L-12793 (Cook County) ........................................................ 20

*In re Tiktok, Inc., Consumer Privacy Litig.*,
  565 F. Supp. 3d 1076 (N.D. Ill. 2021) .............................................. 9, 10

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ................................................................ 16

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir. 1998) ................................................................ 12

*Kleen Prods. LLC v. Int'l Paper Co.*,
  831 F.3d 919 (7th Cir. 2016) .......................................................... 10, 11

*Martinez v. Nando's Restaurant Group Inc.*,
  No. 1:19-cv-07012 (N.D. Ill. 2020) ...................................................... 19

*McCabe v. Crawford & Co.*,
  210 F.R.D. 631 (N.D. Ill. 2002) ........................................................... 10

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ................................................................ 11

*Mullins v. Direct Dig., LLC*,
  795 F.3d 654 (7th Cir. 2015) ........................................................... 9, 27

*Neals v. Partech, Inc.*,
  No. 1:19-cv-05660 (N.D. Ill. 2021) ...................................................... 20

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ............................................................................. 25

*Osada v. Experian Info. Sols., Inc.*,
  290 F.R.D. 485 (N.D. Ill. 2012) ........................................................... 12

iv

*Prelipceanu v. Jumio*,
  No. 2018-CH-15883 (Cook County) ..................................................... 20

*Quarles v. Pret a Manger (USA) Ltd.*,
  No. 1:20-cv-07179 (N.D. Ill. 2022) ..................................................... 20

*Quiroz v. Revenue Prod. Mgmt., Inc.*,
  252 F.R.D. 438 (N.D. Ill. 2008) ......................................................... 12

*Retired Chi. Police Ass'n v. City of Chi.*,
  7 F.3d 584 (7th Cir. 1993) ................................................................. 12

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ............................................................ 12

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) .................................................. 21

*Snyder v. Ocwen Loan Servicing, LLC*,
  2018 U.S. Dist. LEXIS 167471 (N.D. Ill. 2018) .......................... 18, 19

*Starts v. Little Caesar Enterprises Inc.*,
  No. 1:19-cv-01575 (N.D. Ill. 2023) ................................................... 20

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) ............................................................. 10

*T.K. v. Bytedance Tech. Co., Ltd.*,
  2022 U.S. Dist. LEXIS 65322 (N.D. Ill. 2022) .................................. 26

*Van Lith v. iHeartMedia + Entm't, Inc.*,
  2017 U.S. Dist. LEXIS 162838 (E.D. Cal. 2017) ............................... 22

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .......................................................................... 10

*Wong v. Accretive Health, Inc.*,
  773 F.3d 859 (7th Cir. 2014) .......................................................... 1, 18

*Wright v. Nationstar Mortg. LLC*,
  2016 U.S. Dist. LEXIS 115729 (N.D. Ill. 2016) .......................... 18, 19

*Young v. Rolling in the Dough, Inc.*,
  2020 U.S. Dist. LEXIS 35941 (N.D. Ill. 2020) ................................. 18

**Rules and Statutes**

740 ILCS 14/1................................................................................... 1, 2

740 ILCS 14/15(a) ................................................................................ 2, 4, 5

740 ILCS 14/15(b) .................................................................................. passim

740 ILCS 14/15(b)(1) .......................................................................... 2, 3, 11

740 ILCS 14/15(b)(2) .......................................................................... 2, 3, 11

740 ILCS 14/15(b)(3) ............................................................................. 2, 11

Fed. R. Civ. P. 23 ................................................................................... passim

Fed. R. Civ. P. 23(a) .................................................................... 9, 10, 11, 12

Fed. R. Civ. P. 23(a)(4) ................................................................................ 12

Fed. R. Civ. P. 23(b)(3) ............................................................... 9, 10, 13, 26

Fed. R. Civ. P. 23(b)(3)(D) .......................................................................... 14

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................... 26

Fed. R. Civ. P. 23(e) ................................................................................ passim

Fed. R. Civ. P. 23(e)(1)(B) .......................................................................... 26

Fed. R. Civ. P. 23(e)(1)(B)(i) ....................................................................... 15

Fed. R. Civ. P. 23(e)(1)(B)(ii) ........................................................... 9, 15, 16

Fed. R. Civ. P. 23(e)(2) ......................................................................... 15, 16

Fed. R. Civ. P. 23(e)(2)(A) .............................................................. 16, 17, 18

Fed. R. Civ. P. 23(e)(2)(B) ..................................................................... 16, 19

Fed. R. Civ. P. 23(e)(2)(C) ............................................................... 16, 19, 25

Fed. R. Civ. P. 23(e)(2)(C)(i) ....................................................................... 19

Fed. R. Civ. P. 23(e)(2)(C)(ii) ............................................................... 23, 24

Fed. R. Civ. P. 23(e)(2)(D) ..................................................................... 16, 26

Fed. R. Civ. P. 23(e)(3) ......................................................................... 16, 25

Fed. R. Civ. P. 23(f) ................................................................................................. 21, 22

Fed. R. Civ. P. 23(g)(1) .................................................................................................. 14

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) ................................................................................. 14

**Other Authorities**

Fed R. Civ. P. 23(e), Advisory Committee's Notes to 2018 amendment ...................................... 17

Manual for Complex Litig. § 21.632 (4th ed. 2004) ...................................................... 15

Newberg on Class Actions § 22:91(4th ed.) ................................................................. 27

Newberg on Class Actions § 4:71 (5th ed.) .................................................................. 13

I.      **INTRODUCTION**

Plaintiff Madisyn Stauffer alleges that Defendant Innovative Heights Fairview Heights, LLC ("Innovative Heights") violated her rights under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. On behalf of herself and the proposed Settlement Class, Plaintiff respectfully submits this Motion and Memorandum in Support for Preliminary Approval of Class Action Settlement. As set forth herein, the proposed class Settlement Agreement ("Settlement Agreement" or "Agreement") with Innovative Heights, attached hereto as Exhibit 1, is fair, reasonable, and adequate, and preliminary approval is warranted.[1]

This Agreement is the result of extensive, contentious litigation and arm's length negotiations between counsel for Plaintiff ("Class Counsel") and Innovative Height's counsel, with the assistance of a respected third-party mediator, Mr. Frank Neuner, an approved mediator under the Court's Mediation Plan, and who has experience mediating numerous cases, including cases brought under BIPA. The Settlement, if approved, will provide substantial monetary relief to Innovative Heights Class Members, based on a common, non-reversionary, settlement fund in the amount of $285,000 while avoiding the inherent risks, delay, and expenses associated with continued litigation. It therefore satisfies all applicable criteria for preliminary approval. *See* Fed. R. Civ. P. 23(e); *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864-65 (7th Cir. 2014). The settlement provides for a no-claim, automatic payment to the 244 Innovative Heights Class Members (unless they opt-out). Further, the estimated per-person recovery is an amount that is in-line with, and will potentially exceed, other BIPA cases involving fingerprint scanning by employers. Moreover, all requirements under Fed. Civ. P. 23 are met for this Court to

---

[1] Innovative Heights consents to the filing of this Motion and relief requested herein for settlement purposes only, and otherwise reserves all rights. Unless otherwise defined, capitalized terms used herein have the same meaning as in the Agreement.

provisionally certify the Settlement Class for purposes of this Settlement, as required for this Court to be able to grant preliminary approval.

Accordingly, this Settlement Agreement is well within the range of possible approval, and Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement, directs notice to the Class, and schedules a final Fairness Hearing to determine whether to grant final approval of the Settlement.

## II.    <u>BACKGROUND</u>

### A.    **Plaintiff's Claims Against Innovative Heights**

Plaintiff brought this Action against Innovative Heights based on its alleged violations of BIPA, an Illinois statute that regulates companies' collection, use, safeguarding, handling, storage, retention, and destruction of biometric data, including fingerprints. 740 ILCS 14/1 *et seq*.

Pursuant to BIPA § 15(a), each "private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a). Additionally, ". . . a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines." *Id.*

BIPA § 15(b) provides that a private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information" unless it first (1) informs that person in writing that such an identifier or information is being collected or stored; (2) informs that person in writing of the "specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and

used"; and (3) "receives a written release" executed by the person who is the subject of the biometric identifier or information. 740 ILCS 14/15(b)(1)-(3).

Plaintiff alleges that: (1) she was employed by Innovative Heights, a franchisee of Defendant Sky Zone Franchise Group, LLC ("Sky Zone") (Doc. No. 153, Third Am. Compl. ("TAC"), ¶¶ 2, 14, 39, 42, 46, 100); (2) Sky Zone required franchisees to use a computer system provided by Defendant Pathfinder Software, LLC d/b/a CenterEdge ("CenterEdge"), which included a fingerprint scanner (*Id*. at ¶¶ 14-18, 100-110); and (3) to clock in and out of work during her employment with Innovative Heights, Plaintiff scanned her fingerprints into the CenterEdge computer system (*Id*. at ¶¶ 66-72).

Plaintiff further alleges that, when a person scans a fingerprint using the CenterEdge computer system, a digital image of the fingerprint is captured and stored, along with additional data of unique characteristics (sometimes called "fingerprint minutiae data") used to identify the individual. *Id*. at ¶¶ 74-76. Subsequent fingerprint scans repeat the process, then match the fingerprint data with the stored fingerprint data to identify the individual. All of this fingerprint data was stored in the servers located at the Innovative Heights location in Fairview Heights. *Id*. ¶¶ 143-149.

Plaintiff alleges Innovative Heights violated BIPA § 15(b) by collecting, capturing, receiving through trade, and/or otherwise obtaining the biometric data of her and the Innovative Heights Class Members without: (1) informing her and the other Innovative Heights Class Members that their biometric data was being collected or stored; (2) informing her and the other Innovative Heights Class Members of the specific purpose and length of term for which the biometric data was being collected or stored; and (3) obtaining a written release from Plaintiff and the other Innovative Heights Class Members. *Id.* at ¶¶ 143-149; 160-167.

### B.     The Course of This Litigation

#### 1.     Procedural history

Plaintiff initially filed this Lawsuit in the Circuit Court for St. Clair County, Illinois, in April 2019 against Defendant Innovative Heights, alleging violations of both BIPA § 15(a) and (b). She filed an amended state court complaint in November 2019, in which she added Defendant CenterEdge based on information learned during discovery. CenterEdge removed the amended complaint to this Court, pursuant to the Class Action Fairness Act. Doc. No. 1. Plaintiff subsequently moved to remand on the ground that she did not allege injury in fact to support Article III standing because she only alleged procedural violations of BIPA. Doc. No. 27. In August 2020, this Court issued its Memorandum and Order, in which it retained jurisdiction over Plaintiff's § 15(b) claims but remanded her § 15(a) claims to state court. *See* Doc. No. 43, p. 14 ("Plaintiff has not included additional facts about how Defendant Pathfinder's alleged violation of Section 15(a) injured her. . . . Her allegations seem to mirror the sparse allegations in *Bryant*; therefore, Plaintiff has not articulated an additional injury, beyond a violation of the statute, to satisfy the requirements for Article III standing of her Section 15(a) claims."). In that same Order, the Court denied CenterEdge's motion to dismiss, which sought dismissal on several different grounds, including the statute of limitations and waiver. *Id.* at 17-31. In October 2020, the state court denied CenterEdge's motion to dismiss the § 15(a) claim, in which CenterEdge argued that Plaintiff lacked standing. In June 2021, this Court denied CenterEdge's motion to strike class allegations. Doc. No. 75.

CenterEdge thereafter filed a second notice of removal, in which it argued that the previously remanded § 15(a) claims belong in federal court in light of *Fox v. Dakkota Integrated Systems, LLC*, 980 F.3d 1146 (7th Cir. 2020), which it argued supported the existence of Article III standing. Doc. No. 8 (Case No. 3:20-CV-01332). This Court disagreed and remanded the §

15(a) claims. Doc. No. 44 (Case No. 3:20-CV-01332). CenterEdge filed a Petition for Permission to Appeal in the United States Court of Appeals for the Seventh Circuit, Plaintiff filed an Answer to the Petition, and the Court of Appeals denied the Petition in August. Doc. No. 48 (Case No. 3:20-CV-01332).

Plaintiff filed a second amended complaint in both state and federal court in September 2021, adding Defendant Sky Zone as a party. *See* Doc. No. 99. On December 22, 2021, Sky Zone moved to dismiss the claims against Sky Zone in both courts. On July 22, 2022, Judge William Stiehl of the Circuit Court of St. Clair County, Illinois entered an order granting Sky Zone's motion to dismiss Plaintiff's section 15(a) claim against Sky Zone (without prejudice). *See* Doc. 140-1. On August 5, 2022, this Court also granted Sky Zone's motion to dismiss Plaintiff's section 15(b) claim against Sky Zone (also without prejudice). Doc. 142. Prior to the deadline to file an amended pleading in the state court action, Plaintiff voluntarily dismissed her state court action in its entirety and filed a third amended complaint in federal court. Doc. 144. The Third Amended Complaint, which added allegations relating to Sky Zone based on information obtained during discovery, alleged Defendants violated BIPA § 15(b), and, for the first time, included allegations that Sky Zone and CenterEdge violated BIPA § 15(a) by failing to comply with a retention/destruction policy. Plaintiff contended that these new §15(a) allegations conferred Article III standing that was previously lacking under Seventh Circuit precedent. Doc. No. 144. The Third Amended Complaint did not include a claim against Defendant Innovative Heights for violation of BIPA § 15(a).

On July 5, 2023, following Sky Zone's motion to dismiss the Third Amended Complaint, this Court dismissed Plaintiff's §15(a) claim against Sky Zone, this time with prejudice, for lack of subject matter jurisdiction. Doc. 187. This Court denied Sky Zone's motion to dismiss Plaintiff's §15(b) claim against Sky Zone in the Third Amended Complaint. *Id.*

2.      **Discovery**

In addition to the extensive motion practice set forth above, the parties have engaged in substantial discovery. Plaintiff propounded extensive written discovery to Innovative Heights, CenterEdge, and Sky Zone, including several sets of written discovery to Innovative Heights. Plaintiff's counsel and Innovative Height's counsel engaged in meet and confer correspondence and produced/reviewed thousands of pages of documents.

3.      **Mediation**

This Settlement is the result of a voluntary mediation and continued negotiations between Plaintiff and Innovative Heights. The parties' mediation took place on November 21, 2023, before Mr. Frank Neuner, an approved mediator under the Court's Mediation Plan. Mr. Neuner has experience mediating numerous complex cases, including class action cases involving BIPA. Although the parties were not able to reach an agreement during the mediation on November 21, 2023, they continued to engage in settlement negotiations, including with Mr. Neuner, and reached an agreement on the material terms of a settlement on December 20, 2023.

**III.      THE SETTLEMENT AGREEMENT**

Plaintiff attaches a true and accurate copy of the Settlement Agreement as Exhibit 1, and provides the following summary of the Settlement's material terms:

A.      **The Settlement Class and Relief**

The Settlement Class consists of individuals who are known to have scanned a fingerprint into a computer system at Innovative Heights at any time from April 29, 2014, through the Preliminary Approval Date. These 244 individuals, specifically identified in the Innovative Heights Class List, will not be required to file any claim and will automatically receive a settlement payment, unless they opt out.

Specifically, the Innovative Heights Class is defined as "the 244 persons specifically identified in the Innovative Heights Class List who have been identified by name and contact information during discovery as having scanned one or more fingers into a computer system at Innovative Heights at any time from April 29, 2014, through the Preliminary Approval Date." Agreement, § A.16. Excluded from the Innovative Heights Class are the Court and staff to whom this case is assigned, and any immediate family members of the Court or its staff. *Id.* at § A.16, Every Innovative Heights Class member has the right to opt-out of, or object to, the Agreement within 60 days after the Notice is sent. *Id.* at §§ A.21-22, G, H.

The "Settlement Class" is "all persons in the Innovative Heights Class who do not timely and properly opt out of this Agreement pursuant to the procedures set forth herein." *Id.* at § A.33.

Innovative Heights will pay the Settlement Amount of $285,000.00, into a non-reversionary common fund, which shall be used to pay the Awards to Innovative Heights Class members, any Fee Award to Class Counsel, any Service Award to the named Plaintiff, the Settlement Administration Expense, and taxes associated with the Settlement Escrow. *Id.* at §§ A.31, C, E. The Net Settlement Fund means the Settlement Amount less any Fee Award, Service Award, Settlement Administration Expenses, and taxes associated with the Settlement Escrow. *Id.* at § A.20. This specific amount should be known by the time of Final Approval. The Settlement Class will receive a *pro rata* amount of the Net Settlement Fund. *Id.* at § C.

**B.     Releases**

Settlement Class Members will release "the Released Parties from any and all claims for relief, causes of action, suits, petitions, demands in law or equity, or any allegations of liability whether liquidated or unliquidated, whether known or unknown, that were or could have been asserted in the Action, or are based on or in any way related to Innovative Heights' conduct as alleged in the Action, and arising in any way from Innovative Heights' collection, retention,

7

storage, possession, disclosure, use or destruction of fingerprints or data derived from fingerprints between April 29, 2014 and the Preliminary Approval Date. *Id.* at § J. In this Settlement Agreement, Settlement Class Members are not releasing any claims against Sky Zone Franchise Group, LLC or CenterEdge. *Id.*

### C.    The Notice Program

All Innovative Heights Class Members will receive notice of the Settlement by mail. Notice will also be provided by email and/or text to those Innovative Heights Class Members for whom emails and/or phone numbers are identified on the Innovative Heights Class List Contact Information. The notice provisions are found in Section F of the Settlement Agreement and described more fully below in Sections VI.C.2 and VII.

### D.    Settlement Administration

The parties propose that Atticus Administration, LLC ("Atticus") be appointed by the Court as the Settlement Administrator. A declaration of Christopher Longley, the Chief Executive Officer of Atticus, is attached hereto as Exhibit 2 and incorporated by reference. Pursuant to the Settlement Agreement, the Settlement Administrator will administer the Notice plan set forth in the Settlement; the Opt-Out and Objection process; and the receipt and distribution of payments required by the Settlement Agreement. Agreement, § D.

### E.    Attorneys' Fees and Costs and Class Representative Service Awards

Plaintiff will file a separate Fee Application within sixty days after the Preliminary Approval Date, which is before the Opt-Out/Objection Deadline. Agreement, § I.3. The Settlement Agreement also provides that Class Counsel will seek a Service Award for the Class Representative, to be paid from the Settlement Amount. *Id.* at § I.4. The Settlement Agreement leaves the amount of fees, costs, and Service Award to the Court and does not contain a "clear-sailing agreement" restricting Innovative Heights' ability to challenge the amount requested. *Id.*

**IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR PURPOSES OF SETTLEMENT**

For this Court to be able to preliminarily approve this proposed Settlement and direct notice of the Settlement to the Innovative Heights Class Members, it must find that the Court "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). Accordingly, Plaintiff requests provisional certification of the Settlement Class, as defined in Section III.A above, for purposes of this Settlement.

Here, the Settlement Class is "defined clearly" with "objective criteria." *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 657 (7th Cir. 2015). The Settlement Class also satisfies the elements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a); *see also In re Tiktok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1084 (N.D. Ill. 2021). Furthermore, pursuant to Rule 23(b)(3), questions of law or fact common among class members predominate over questions affecting only individual members ("predominance"), and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ("superiority"). Fed. R. Civ. P. 23(a); *In re Tiktok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d at 1086. Thus, provisional certification is proper.

**A.    Objective Class Definition**

Membership in the Settlement Class is defined clearly and based on objective, rather than subjective, criteria—namely, whether a person's fingerprints were scanned into a computer at Innovative Heights during a specific period of time. That is all that is required for a class definition. *See Mullins*, 795 F.3d at 657.

**B.    Numerosity**

To satisfy the numerosity requirement, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). "Although there is no 'bright line' test for

numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)." *In re Tiktok, Inc.,*
*Consumer Privacy Litig.*, 565 F. Supp. 3d at 1085 (quoting *McCabe v. Crawford & Co.*, 210 F.R.D.
631, 643 (N.D. Ill. 2002)). Here, the Innovative Heights Class List contains 244 persons. *See*
Agreement Ex. 3. Accordingly, the numerosity requirement is easily satisfied.

> ### C.     Commonality and predominance

Under Rule 23(a)'s commonality requirement, there must be "questions of law or fact
common to the class." Fed. R. Civ. P. 23(a). Because the Class is seeking monetary relief, Rule
23(b)(3) also applies, which requires that "questions of law or fact common to class members
predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The
requirements of commonality and predominance may overlap, thus Plaintiff addresses them
together herein. *See Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015).

As for commonality, although there need only be one "common question of law or fact[,]"
the claims of the class "must depend upon a common contention that is capable of classwide
resolution." *Bell*, 800 F.3d at 374. The "class-wide resolution means that determining the truth or
falsity of the common contention will resolve an issue that is central to the validity of each claim."
*Id*. Furthermore, "[w]hat matters to class certification ... [is] the capacity of a classwide proceeding
to generate common answers apt to drive the resolution of the litigation." *Suchanek v. Sturm*
*Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.
338, 350 (2011)). The predominance inquiry of Rule 23(b)(3) "tests whether proposed classes are
sufficiently cohesive to warrant adjudication by representation." *Kleen Prods. LLC v. Int'l Paper*
*Co.*, 831 F.3d 919, 925 (7th Cir. 2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,
623 (1997)). "Predominance is satisfied when 'common questions represent a significant aspect of
a case and . . . can be resolved for all members of a class in a single adjudication.'" *Kleen Prods.*

*LLC*, 831 F.3d at 925 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012)).

Common issues of law and fact undoubtedly predominate here. The core factual and legal questions at issue in this Lawsuit—whether Innovative Heights collected, captured, received through trade, or otherwise obtained Innovative Heights Class Members' biometric data and whether it complied with the requirements of BIPA §§ (b)(1)-(3)—are common to the Innovative Heights Class and predominate over any individual questions. As set forth above, Innovative Heights is alleged to have engaged in the same course of conduct with respect to all Innovative Heights Class Members as to how such Class Members' fingerprints were captured, collected, stored, and retained and not provided the disclosures or received the consents required by §15(b). The main question that would remain throughout the case is whether Innovative Heights "collected," "captured," "received through trade," and/ or "otherwise obtained" Innovative Heights Class Members' biometric data within the meaning of BIPA such that it is liable for failing to provide disclosures and obtain consent under § 15(b). Answering that question involves an examination of Innovative Heights' uniform conduct in light of a legal analysis regarding the meaning of the operative terms in the statute. And the resolution of this question will generate a common answer and resolve a central issue to the validity of the claims of each Innovative Heights Class Member. Thus, there is a common contention capable of classwide resolution that predominates. Commonality and predominance are therefore satisfied here.

### D.    Typicality

The typicality requirement of Rule 23(a) "requires that the named plaintiffs' claims 'arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members' and 'are based on the same legal theory.'" *Arwa Chiropractic, P.C. v. Med.-Care Diabetic & Med. Supplies, Inc.*, 322 F.R.D. 458, 464 (N.D. Ill. 2017) (quoting *Keele v. Wexler*,

149 F.3d 589, 595 (7th Cir. 1998)). Typicality is therefore satisfied where "the named representatives' claims have the same essential characteristics as the claims of the class at large." *Id.* (quoting *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 597 (7th Cir. 1993)). That is certainly true here. Plaintiff's claims and the claims of all Settlement Class Members arise out of the same course of conduct—the scanning of fingerprints at Innovative Heights in the face of the alleged absence of BIPA disclosures. There is nothing that separates Plaintiff's claim from those of other Settlement Class Members, and typicality is satisfied.

### E. Adequacy

The "adequacy" requirement of Rule 23(a)(4) looks to whether the Class Representative and Class Counsel will "fairly and adequately protect the interests of the class." It "comprises two parts: 'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members.'" *Arwa Chiropractic, P.C.*, 322 F.R.D. at 465 (quoting *Retired Chi. Police Ass'n*, 7 F.3d at 598). "[A] class is not . . . adequately represented if class members have antagonistic or conflicting claims." *Id.* (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Courts also look to whether the named plaintiff "has a sufficient interest in the outcome of the case to ensure vigorous advocacy" and that counsel is "competent, qualified, experienced and able to vigorously conduct the litigation." *Osada v. Experian Info. Sols., Inc.*, 290 F.R.D. 485, 490 (N.D. Ill. 2012) (quoting *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008)).

Here, Plaintiff and Class Counsel have and will fairly and adequately protect the interests of the Settlement Class. As set forth above, Plaintiff and all Settlement Class Members suffered the same alleged injury, thus there are no conflicting claims at issue. Accordingly, Plaintiff is an adequate representative of the Settlement Class Members.

Furthermore, Class Counsel have extensive experience representing plaintiffs in class action and complex litigation and are well qualified to represent the Settlement Class Members.[2] Accordingly, Class Counsel possess the ability, resources, commitment and experience necessary to adequately represent the Settlement Class Members.

### F.      Superiority

Rule 23(b)(3)'s second prong is whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). It looks at: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

These factors weigh in favor of certification here. There is no other known litigation pending against Innovative Heights regarding the subject of this Lawsuit, thus there is not a "reason for concern about class members having an individual interest in controlling the prosecution or defense of these matters through a separate action." *Bhattacharya v. Capgemini N. Am., Inc.*, 324 F.R.D. 353, 366 (N.D. Ill. 2018). It is also desirable to concentrate the litigation of the claims in this forum, as the case concerns a proposed class of individuals who scanned their fingerprints at Innovative Heights in Fairview Heights, IL, and the Court is familiar with the claims at issue. *See* Newberg on Class Actions § 4:71 (5th ed.) (a class action is particularly appropriate in a particular forum where that court has already issued preliminary rulings). Moreover, "[p]arallel litigation for each class member here would entail the same discovery and require multiple courts to weigh the

---

[2] A resume of Plaintiff's law firm is attached as Exhibit 3.

same factual and legal bases for recovery. That would make no sense." *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 76 (N.D. Ill. 2016). Finally, there should be no management issues here due to the predominance of common issues, "readily available identity" of class members, and "the relative ease of administering the claims process." *Id.   See also Amchem Prods.,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

Accordingly, all of the requirements of Rule 23 are satisfied here, and the Court should certify the Innovative Heights Class for settlement purposes.

## V.       COUNSEL FOR PLAINTIFF SHOULD BE APPOINTED AS CLASS COUNSEL

Pursuant to Rule 23, a court certifying a class "must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In doing so, the Court must consider the following factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Here, Class Counsel have thoroughly investigated and identified the claims at issue in the Lawsuit. As set forth above, Class Counsel have extensive experience handling class actions and complex litigation, including other matters under BIPA. Class Counsel also possess the requisite knowledge and resources to adequately represent the Innovative Heights Class in connection with this Settlement. The Court should therefore appoint Kevin Green, Richard Cornfeld, Daniel Levy, and Thomas Horscroft of Goldenberg Heller & Antognoli, P.C., as Class Counsel.

## VI.     THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

Federal Rule of Civil Procedure 23(e) governs the Court's preliminary review of a class action settlement. Preliminary approval "is the first step in a two-step process to determine whether a proposed Rule 23 settlement is fair, adequate, reasonable, and not a product of collusion." *Butler v. Am. Cable & Tel., LLC*, 2011 U.S. Dist. LEXIS 115506, *28 (N.D. Ill. Oct. 6, 2011). The Seventh Circuit describes this preliminary approval process as follows:

> The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.' This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. If the district court finds a settlement proposal 'within the range of possible approval,' it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.

*Armstrong v. Bd. of Sch. Dirs.,* 616 F.2d 305, 314 (7th Cir. 1980); *see also* Manual for Complex Litig. § 21.632 (4th ed. 2004) (noting that at preliminary approval stage, the first task before the court is to make a preliminary determination as to the fairness, reasonableness, and adequacy of the settlement terms).

Rule 23(e) requires that a court make two findings before granting preliminary approval of a proposed class action settlement:

> (B) *Grounds for a Decision to Give Notice*. The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:
>
> (i) approve the proposal under Rule 23(e)(2); and
>
> (ii) certify the class for purposes of judgment on the proposal.

Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii).

In determining whether a proposed class action settlement may be approved under Rule 23(e)(2), the Court must consider whether: (A) the class representatives and class counsel have

adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D).

"In considering these factors, a court must bear in mind that '[f]ederal courts naturally favor the settlement of class action litigation.'" *Chambers v. Together Credit Union*, 2021 U.S. Dist. LEXIS 92150, *5 (S.D. Ill. May 14, 2021) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)).

Here, as set forth above, Plaintiff has shown that the Court will likely be able to certify the Class for purposes of judgment on the proposal. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). Moreover, because Plaintiff and Class Counsel have adequately represented the Settlement Class, and because the Settlement Agreement was negotiated at arm's-length with the guidance of an experienced mediator, provides substantial monetary relief and avoids the risks associated with continued litigation, and treats Settlement Class Members equitably relative to each other, the Rule 23(e)(2) factors are met. Accordingly, preliminary approval of the Settlement Agreement is warranted.

### A.   The Class Representative and Class Counsel have adequately represented the Settlement Class

As set forth above, Plaintiff and Class Counsel have adequately represented the Settlement Class and thus satisfy Rule 23(e)(2)(A). The "focus at this point is on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. Courts "may consider a number of factors when evaluating the adequacy

of representation, including the 'nature and amount of discovery,' which 'may indicate whether counsel negotiating on behalf of the class had an adequate information base.'" Fed. R. Civ. P. 23(e)(2)(A) Advisory Committee's Notes to 2018 amendment. In *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018), the court found that adequacy of representation under Rule 23(e)(2)(A) favored approval, relying on the "significant time and resources in this litigation" that class counsel invested, that they "litigated this case intensively," and their extensive experience in class action litigation. *Id*. at *13.

Here, the performance of Plaintiff and Class Counsel has been more than adequate, and the extensive time and resources they have invested, including relating to discovery, has ensured that Class Counsel had an "adequate information base" in negotiating this Settlement. *See* Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. Plaintiff, as the Class Representative, has stayed involved in nearly every aspect of the case, including by helping her attorneys investigate the BIPA claims, searching for and providing documents, assisting in responding to written discovery, conferring with counsel throughout the litigation, participating in the mediation, and reviewing and approving the Settlement Agreement before signing it. At each step, Plaintiff has continued to act in the best interests of the Settlement Class and has adequately represented it.

Furthermore, as addressed above, Class Counsel has engaged in extensive investigation, litigation, and discovery as to Innovative Heights, serving multiple sets of interrogatories and requests for production of documents. The parties engaged in meet and confer correspondence and Class Counsel received and analyzed thousands of pages of documents from Innovative Heights, which they relied upon in negotiating the Settlement. Class Counsel has also diligently followed emerging trends and new case law in the rapidly-evolving area of BIPA litigation, which assisted Class Counsel in directing discovery in a focused and efficient way.

17

Thus, Plaintiff and Class Counsel have worked diligently to obtain the required information base to negotiate this settlement. The significant work they put into discovery to obtain this information base, along with their extensive experience in class actions, supports a finding that adequacy of representation under Rule 23(e)(2)(A) is satisfied.

**B.      The Settlement was negotiated at arm's length with the assistance of an experienced mediator**

This settlement was reached with the assistance of a respected and experienced third-party mediator, Mr. Frank Neuner, which supports a finding that the settlement was negotiated at arm's length and that there was nothing improper in connection with the negotiations. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (relying on fact that "settlement was proposed by an experienced third-party mediator after an arm's-length negotiation"); *Snyder v. Ocwen Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 167471, *12 (N.D. Ill. Sep. 28, 2018) (relying on the parties' use of independent mediators and "no indication of any side deals"). Here, the parties worked toward a resolution with the assistance of Mr. Neuner during their mediation, and although they did reach an agreement during the mediation, continued their negotiations following the mediation, reached an agreement, and subsequently memorialized their agreement in the written Settlement Agreement, with no side deals. Class Counsel wrote first drafts of the Settlement Agreement, notices, and other exhibits and worked diligently with Innovative Height's counsel to reach final drafts.

Courts also look to whether the settlement came about after the parties have vigorously litigated the case, including through discovery. *See Wright v. Nationstar Mortg. LLC*, 2016 U.S. Dist. LEXIS 115729, *42 (N.D. Ill. Aug. 29, 2016) (parties "vigorously defended their positions throughout the litigation . . . and engaged in discovery"); *Young v. Rolling in the Dough, Inc.*, 2020 U.S. Dist. LEXIS 35941, *9 (N.D. Ill. Feb. 26, 2020) (settlement agreed to after extensive

discovery). That is certainly the case here. As set forth above, the parties engaged in significant discovery and litigation that spanned several years and courthouses.

Additionally, there is no evidence of (nor was there any) collusion or unfairness that would support a finding that this factor is not satisfied. *See Wright*, 2016 U.S. Dist. LEXIS 115729 at *42 (relying on the fact that nothing in the record showed any sort of unfairness or collusion). Furthermore, the Settlement does not provide for the reversion of unclaimed amounts. *See Snyder*, 2018 U.S. Dist. LEXIS 167471 at *12 (relying on the lack of any provision in which unclaimed amounts revert back to the defendant in finding this factor satisfied).

Accordingly, the Settlement was the result of arms-length negotiations between the parties, and Rule 23(e)(2)(B) supports granting preliminary approval.

### C.      The relief provided to Settlement Class Members is adequate

Each of the Rule 23(e)(2)(C) subfactors supports a finding that the relief provided to the Settlement Class is fair, reasonable, and adequate.

#### 1.      The costs, risks, and delay of trial and appeal

The relief provided to the Settlement Class members, taking into account the costs, risks, and delay of trial and appeal, supports the granting of preliminary approval. *See* Rule 23(e)(2)(C)(i). Based on the Settlement Amount of $285,000.00, this Settlement provides significant immediate relief for the Settlement Class. Under this Settlement, even after deducting for expected fees, costs, and a service award, each Settlement Class Member is expected to receive a payment of at least $723. This amount is in-line with, and will potentially exceed, other BIPA cases involving fingerprint scanning by employers. *See, e.g.*, *Martinez v. Nando's Restaurant Grp. Inc.*, No. 1:19-cv-07012 (N.D. Ill. 2020), ECF Dkt. 50-1 at 1-3 ($1,787,000 fund for 1,787 class members, amounting to approximately $652 for class members after deductions for fees and service award); *Burlinski et al. v. Topgolf USA Inc. et al.*, No. 1:19-cv-06700 (N.D. Ill. 2021), ECF

Dkt. 94 at 1, 4, 11 ($2,633,400 fund for 2,600 class members, amounting to approximately $630 for class members after deducting for fees, service awards, and settlement administrator costs); *Starts v. Little Caesar Enters. Inc.*, No. 1:19-cv-01575 (N.D. Ill. 2023), ECF Dkt. 112 at 1, 4 ($6,997,810 fund for over 8,400 class members, amounting to approximately $545 for class members after deducting for fees, settlement administrator costs, and service award); *Quarles v. Pret a Manger (USA) Ltd.*, No. 1:20-cv-07179 (N.D. Ill. 2022), ECF Dkt. 44 at 1, 14 ($677,450 fund for approximately 800 class members, amounting to approximately $518 for class members after deducting for fees, settlement administrator costs, and service awards); and *Holm v. Presence Health Network et al.*, No. 2017-L-12793 (Cook County) ($2.6 million fund for approximately 3,150 class members, amounting to approximately $490 for class members after fees, service award, and settlement expenses).

Furthermore, in contrast to many BIPA settlements, this one provides an automatic payment to the Settlement Class members rather than requiring a claims-process. *See, e.g.*, *Bryant v. Compass Grp. USA, Inc.*, No. 19-cv-06622 (N.D. Ill. 2020), ECF Dkt. No. 123 at 1, 9 (actual payment of $413.75 after "impressive" 16.97% claims rate); *Neals v. Partech, Inc.* No. 1:19-cv-05660 (N.D. Ill. 2021), ECF Dkt. No. 136 at 1, 7, 8 (actual payment of $650 after receiving a "remarkable 20.5% claims rate"); *Figueroa v. Kronos Inc.*, No. 19-cv-01306 (N.D. Ill. 2022), ECF Dkt. No. 377 at 1, 7, 8 (actual payment of $445 after receiving "excellent" claims rate of 26.78%); *Prelipceanu v. Jumio*, No. 2018-CH-15883 (Cook County) (actual payment of $275 per class member after claims process).[3] Here, the 244 Innovative Heights Class members qualify for significant relief without the need to file a claim.

---

[3] *See* https://topclassactions.com/lawsuit-settlements/closed-settlements/illinois-jumio-biometric-class-action-settlement/.

Moreover, the Settlement "allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation," which would likely have included a contested class certification proceeding "followed by an inevitable appeal" under Rule 23(f) and a motion for summary judgment. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). Furthermore, an appeal would likely have followed any trial in the case given the multiple legal issues raised throughout the litigation and in Innovative Height's affirmative defenses.

Although Plaintiff feels strongly about her ability to successfully litigate her case absent a settlement, there are several contested issues on which Plaintiff would have to prevail were litigation to continue. Throughout discovery and its responsive pleadings Innovative Heights has denied that it collected, captured, and/or otherwise obtained biometric data of any Innovative Heights Class members. Innovative Heights has also asserted fifteen affirmative defenses. *See* Doc. No. 149, pp. 59-68. Thus, as the court stated in *Hale* when addressing the vigorous defenses that the defendant had raised throughout the case, "[r]egardless of the outcome of these proceedings, there can be no question that they would have added significant costs and delay . . . . Moreover, absent this proposed resolution, and considering the strong likelihood of post-trial motions and appeals, the parties were unlikely to achieve a final disposition any time soon." 2018 U.S. Dist. LEXIS 210368 at *17. It therefore found that this factor "strongly favor[ed] final approval of the Settlement." *Id*.

Furthermore, were litigation to continue, it is expected that Innovative Heights would oppose Plaintiff's motion for class certification. As expressed in its Answer to the Third Amended Complaint, Innovative Heights "denies that this action may be maintained as a class action." Doc. No. 149, p. 44. Although Plaintiff believes this case is well positioned for class certification based on the uniform conduct as to all Innovative Heights Class members, proceeding with a contested

motion for class certification is certainly not without its risks, and the Court's ruling would be subject to immediate appeal under Rule 23(f), adding further delay.

Moreover, the risks on the merits are made evident by the numerous affirmative defenses set forth by Innovative Heights in its Answer to Plaintiff's Third Amended Complaint.  Although Plaintiff could potentially litigate the case for several more years and secure judgment following trial that exceeds the per-person settlement recovery, it is also possible that a judgment could be entered for Innovative Heights following trial or that an appellate court overturn any legal rulings that would result in a judgment for Innovative Heights. Thus, even though it is conceivable the Class could recover more in several years following trial and appeals, "[a]s the Supreme Court has recognized, the 'time value of money' is 'the fact that [a] dollar today is worth more than a dollar tomorrow.'" *Genesys Cloud Servs., Inc. v. Strahan*, No. 1:19-cv-00695-TWP-DML, 2022 U.S. Dist. LEXIS 241447, at *41-42 (S.D. Ind. Sep. 29, 2022) (quoting *Atlantic Mut. Ins. Co. v. C.I.R.*, 523 U.S. 382, 384 (1998) (internal citations and quotations omitted).

Nor must a settlement "provide the class with the maximum possible damages in order to be reasonable." *Charvat v. Valente*, 2019 U.S. Dist. LEXIS 187225, *19-21 (N.D. Ill. Oct. 28, 2019) (approving settlement despite payout to individual class members not being near the statutory maximum under the TCPA; "the inability to pay every injured plaintiff the absolute statutory maximum does not reflect a failure of the settlement itself"); *see also Hale*, 2018 U.S. Dist. LEXIS 210368 at *18-19 ("It is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.") (quoting *Van Lith v. iHeartMedia + Entm't, Inc.*, 2017 U.S. Dist. LEXIS 162838, *12 (E.D. Cal. Sept. 29, 2017)) (citations omitted). Thus, that the

Settlement does not provide for a recovery in which each Innovative Heights Class member can obtain the maximum statutory recovery certainly does not mean the Settlement is not adequate.[4]

Accordingly, based on the substantial and immediate relief available to Settlement Class Members under this Settlement compared to the costs, risks, and delay of further litigation, preliminary approval is appropriate.

### 2. The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims

The method of distributing relief to the class provided by the Settlement, including its method of processing class-member claims also supports granting preliminary approval. *See* Rule 23(e)(2)(C)(ii). As set forth above, the Innovative Heights Class is a specific group of 244 people who have been identified by name and contact information during discovery as having scanned a fingerprint into a computer system at Innovative Heights during the relevant period. Accordingly, they do not need to file a claim to receive their Award. Agreement, §§ A.16, C.

Direct payment without the need to submit a claim, which is what the Settlement Class members here will receive, has been deemed the "best and most effective method of ensuring Class members receive the funds they are due." *See Chambers*, 2021 U.S. Dist. LEXIS 92150 at *6-7 ("The method of distributing the Net Settlement Fund is by direct payment, which is the best and most effective method of ensuring Class members receive the funds they are due and requires no claims to be submitted. Fed. R. Civ. P. 23(e)(2)(C)(ii).").

---

[4] There also remains uncertainty about what the maximum statutory recovery means in light of the Illinois Supreme Court's decision in *Cothron v. White Castle Sys.*, 2023 IL 128004 (Feb. 17, 2023). There, the Court held that a party violates Section 15(b) of BIPA when it "collects, captures, or otherwise obtains a person's biometric information without prior informed consent" not only the "first time an entity scans a fingerprint or otherwise collects biometric information" but also "with each subsequent scan or collection." *Id*. ¶ 24. The Court also stated in *dicta*, however, that the statutory damages are not intended to "result in the financial destruction of a business." *Id.* ¶ 42.

Finally, the Settlement Administrator will mail Settlement Class members prepaid plastic cards that can be used like a debit card. Agreement § I.1.(c). Upon receipt, the recipient need only dial the phone number on the card or visit a website provided on the card to activate it. *Id*. Unlike a check, the funds on the cards will not expire after 180 days and will benefit any recipients who do not use or have access to traditional financial services without any detriment to those who do. Accordingly, the method of distributing relief to the Settlement Class is as simple and effective as possible. This factor therefore also supports preliminary approval.

### 3.    The terms of any proposed award of attorney's fees, including timing of payment

This factor analyzes the adequacy of the relief taking into account "the terms of any proposed award of attorney's fees, including timing of payment." *See* Rule 23(e)(2)(C)(ii). If this Court grants preliminary approval of the Settlement, undersigned counsel intends to petition the Court for a reasonable award of attorney fees plus their litigation expenses. Agreement § I.3. While Plaintiff expects to request an amount of one-third of the Settlement Amount for attorney's fees, the amount is subject to Court approval. As will be set forth further in Plaintiff's petition for attorney's fees, one-third of a common fund as an attorney's fee award in a class settlement is reasonable and does not undermine the adequacy of the relief. *See Chambers*, 2021 U.S. Dist. LEXIS 92151 at *4 (finding attorney's fees of one-third of the settlement fund reasonable; "As numerous courts have recognized, '[t]he normal rate of compensation in the market [is] 33.33% of the common fund recovered' because the class action market commands contingency fee agreements and the class counsel accepts a substantial risk of nonpayment.'") (quoting *George v. Kraft Foods Global, Inc.*, 2012 U.S. Dist. LEXIS 166816, *8 (N.D. Ill. June 26, 2012)). Moreover, "[t]his District is no exception and commonly awards a one-third fee in class action cases."

*Chambers*, 2021 U.S. Dist. LEXIS 92151 at *4 (collecting cases). Thus, the attorney's fee award in the Settlement supports preliminary approval.

### 4.    No agreements required to be identified under Rule 23(e)(3)

There are no agreements besides the Settlement Agreement made in connection with this proposed settlement. This factor is thus neutral. *See Hale*, 2018 U.S. Dist. LEXIS 210368 at *20.

Accordingly, the Rule 23(e)(2)(C) factors support a finding that the relief provided to the Settlement Class through this proposed Settlement is adequate.

### D.    The proposed Settlement treats class members equitably relative to each other

The claims of the Innovative Heights Class members are nearly identical, as Innovative Heights allegedly violated BIPA in the same manner as to all such Class members. Under the Settlement Agreement, the Settlement Class will all "receive a distribution in the amount of a *pro rata* share of the Net Settlement Fund." Agreement § I.1.(a). In *T.K. v. Bytedance Tech. Co., Ltd.*, 2022 U.S. Dist. LEXIS 65322 (N.D. Ill. Mar. 25, 2022), the court stated that "[g]enerally, a settlement that provides for pro rata shares to each class member" will meet the standard of treating class members equitably relative to each other. *Id.* at *42. That is true here. *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "characteristically assured by straightforward pro rata distribution of the limited fund"). Further, each Class Member will release the same BIPA claims against Innovative Heights, and all will retain their claims against the remaining Defendants and non-parties. *Id.* § J.[5]

Finally, this subfactor may also involve a review of a service award to class representatives. In *Bytedance*, the court recognized that "[b]ecause class representatives do more work and take

---

[5] While settlements have been reached with all three Defendants, each settlement has yet to receive preliminary and final approval from the Court.

more risks than the average class member, service awards to named class members will generally not 'raise a red flag.'" 2022 U.S. Dist. LEXIS 65322 at *42 (internal quotation omitted). The court added "[w]ithout the involvement of the named Plaintiffs, the other class members would gain nothing," and thus the "gap between the proposed service awards and the average distribution" to class members did not "render treatment of class members inequitable." *Id*. at *43. Here, as set forth above, Plaintiff's active involvement in the case helped lead to the Settlement, and the provision of a service award to Plaintiff is consistent with equitable treatment of class members.

Accordingly, the Settlement treats each member of the Settlement Class equitably, and Rule 23(e)(2)(D) supports granting preliminary approval.

## VII.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTIFICATION

Under Rule 23, for any "class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule further provides that such "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*. Additionally, the notice must, in plain language, state the nature of the action; the class definition; the class claims, issues, or defenses; that class members may enter an appearance through an attorney; that the court will exclude class members who so request; the time and manner for requesting exclusion; and the binding effect of a class judgment on the class members. *Id*. Moreover, Rule 23(e)(1)(B) provides that the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." And "[d]ue process requires that the method of providing notice be reasonably calculated to reach interested parties" although it "does not require that each class member actually receive notice." *Breslow v. Prudential-Bache Props.*,

1995 U.S. Dist. LEXIS 13617, *1 (N.D. Ill. Sep. 13, 1995).

Here, the proposed notice is comprehensive, provides the best notice practicable under the circumstances, and complies with all requirements of Rule 23 and Due Process. Within twenty-one days after the Preliminary Approval Date, the Settlement Administrator will send notice by U.S. mail, postage prepaid, to every person on the Innovative Heights Class List. *Id*. § F.4(b). Through information obtained from the parties in discovery, the parties have obtained mailing addresses for every person on the Innovative Heights Class List, plus email and/or telephone numbers for many people on the Innovative Heights Class List. Prior to mailing the notice, the Settlement Administrator will process the address of every person identified on the Innovative Heights Class List through the U.S. Postal Service's National Change of Address database. *Id*. The notice will be mailed to the last known address as reflected in the Innovative Heights Class List or to any updated address listed in this address database. *Id*. Additionally, the Settlement Administrator will re-mail notice via standard U.S. Mail, postage prepaid, for up to thirty-five days following the Settlement Notice date to any updated addresses to the extent it receives an address change notification from the U.S. Postal service, or pursuant to a request from a person on the Class List. *Id*. Such mailed notice satisfies Rule 23 and Due Process. *See Mullins*, 795 F.3d at 665 ("When class members' names and addresses are known or knowable with reasonable effort, notice can be accomplished by first-class mail.").

In addition to mailed notice, the Settlement takes extra steps to notify Class members. Each person on the Class List for whom the parties have an email and/or phone number will also receive notice by email and/or text message. *Id*. § F.5(c), (d).

Accordingly, the notice is the best practicable notice under the circumstances. *See also* Newberg on Class Actions § 22:91 ("The notice of the Proposed Settlement . . . need only be

reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections. . . . Courts have consistently recognized that due process does not require that every class member receive actual notice so long as the court reasonably selected a means likely to apprize interested parties.").

Furthermore, the notice documents are written in plain, easily-understood language that satisfies the requirements of Rule 23, though the Court may modify the language in its discretion.

Finally, to ensure comprehensive notice, each mailed, emailed, and texted notice will direct Class members to a Settlement Website containing links to the Settlement Notice, the Settlement Agreement, the Fee Application, contact information for Class Counsel and the Settlement Administrator, applicable deadlines, and orders of the Court pertaining to the settlement. *Id.* § F.4(a). The mailed notice sent to everyone also provides contact information for both Class Counsel and the Settlement Administrator from whom Class Members may send inquiries or receive additional information.

The proposed Notice Plan provides direct notice in the best practicable manner and fully apprises Class Members of their rights, thereby complying with Rule 23 and Due Process. Thus, the Court should approve the proposed Notice Plan.[6]

**VIII.      CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval and enter the proposed Preliminary Approval Order directing notice to Class Members and scheduling a final Fairness Hearing, and for further relief as the Court deems just and proper.

---

[6] Although three defendants have reached settlements at this time, the parties have opted for separate notices related to each settlement to avoid delays if one of the settlements does not receive preliminary approval and to make clear that a person who may be a part of two or three of the settlements can opt-out of, or object to, some but not all of the settlements.

Dated: March 12, 2024        Respectfully submitted,

**GOLDENBERG HELLER
& ANTOGNOLI, P.C.**

By: */s/ Kevin P. Green*
     Kevin P. Green, #6299905
     Richard S. Cornfeld, #0519391
     Daniel S. Levy, #6315524
     Thomas C. Horscroft, #06327049
     2227 South State Route 157
     Edwardsville, IL 62025
     Telephone: (618) 656-5150
     kevin@ghalaw.com
     rick@ghalaw.com
     daniel@ghalaw.com
     thorscroft@ghalaw.com

     ***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 12, 2024, the foregoing document was filed electronically with the Clerk of Court and served upon all counsel of record via the Court's electronic notification system.

By: */s/ Kevin P. Green*