UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

MADISYN STAUFFER,                          )
on behalf of herself and all others similarly )
situated,                                  )
                                           )
            Plaintiff,                     )        Cause No. 3:20-cv-00046-MAB
                                           )
v.                                         )
                                           )
INNOVATIVE HEIGHTS FAIRVIEW                )
HEIGHTS, LLC, et al.                       )
                                           )
            Defendants.                    )

**<u>PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT WITH DEFENDANT SKY ZONE FRANCHISE GROUP, LLC
AND MEMORANDUM IN SUPPORT</u>**

**GOLDENBERG HELLER
& ANTOGNOLI, P.C.**

Kevin P. Green, #6299905
Richard S. Cornfeld, #0519391
Daniel S. Levy, #6315524
Thomas C. Horscroft, #06327049
2227 South State Route 157
Edwardsville, IL 62025
Telephone: (618) 656-5150
kevin@ghalaw.com
rick@ghalaw.com
daniel@ghalaw.com
thorscroft@ghalaw.com

***Attorneys for Plaintiff***

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 2

        A.      Plaintiff's Claims Against Sky Zone .................................................... 2

        B.      The Course of This Litigation ............................................................... 4

                1.      Procedural history .................................................................... 4

                2.      Discovery .................................................................................. 6

                3.      Mediation .................................................................................. 6

III.    THE SETTLEMENT AGREEMENT .................................................................. 7

        A.      The Settlement Class and Relief ............................................................ 7

        B.      Releases ................................................................................................. 9

        C.      The Notice Program .............................................................................. 9

        D.      Settlement Administration ................................................................... 10

        E.      Attorneys' Fees and Costs and Class Representative Service Awards ................ 10

IV.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED
        FOR PURPOSES OF SETTLEMENT ............................................................. 10

        A.      Objective Class Definition .................................................................. 11

        B.      Numerosity ........................................................................................... 11

        C.      Commonality and predominance ......................................................... 12

        D.      Typicality ............................................................................................. 13

        E.      Adequacy .............................................................................................. 14

        F.      Superiority ............................................................................................ 15

V.      COUNSEL FOR PLAINTIFF SHOULD BE APPOINTED AS CLASS
        COUNSEL ......................................................................................................... 16

VI.   THE   COURT   SHOULD   PRELIMINARILY   APPROVE   THE
SETTLEMENT ....................................................................................... 17

    A.   The Class Representative and Class Counsel have adequately represented
the Settlement Class .................................................................... 18

    B.   The Settlement was negotiated at arm's length under the supervision of an
experienced mediator ................................................................... 20

    C.   The relief provided to Settlement Class Members is adequate ............................ 22

        1.   The costs, risks, and delay of trial and appeal .......................................... 22

        2.   The effectiveness of any proposed method of distributing relief to
the class, including the method of processing class-member claims........ 26

        3.   The terms of any proposed award of attorney's fees, including
timing of payment .................................................................. 28

        4.   No agreements required to be identified under Rule 23(e)(3) ................. 29

    D.   The proposed Settlement treats class members equitably relative to each
other ................................................................................... 29

VII.   THE   COURT   SHOULD   APPROVE   THE   PROPOSED   FORM   AND
METHOD OF CLASS NOTIFICATION ....................................................... 31

VIII.   CONCLUSION ................................................................................... 33

# TABLE OF AUTHORITIES

**Cases**                                                                 Page(s)

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................... 12, 16

*Armstrong v. Bd. of Sch. Dirs.*,
  616 F.2d 305 (7th Cir. 1980) ............................................................................ 17

*Arwa Chiropractic, P.C. v. Med.-Care Diabetic & Med. Supplies, Inc.*,
  322 F.R.D. 458 (N.D. Ill. 2017) ................................................................... 13, 14

*Atlantic Mut. Ins. Co. v. C.I.R.*,
  523 U.S. 382 (1998) ........................................................................................ 25

*Bell v. PNC Bank, Nat'l Ass'n*,
  800 F.3d 360 (7th Cir. 2015) ............................................................................ 12

*Bernal v. NRA Grp., LLC*,
  318 F.R.D. 64 (N.D. Ill. 2016) .......................................................................... 16

*Bhattacharya v. Capgemini N. Am., Inc.*,
  324 F.R.D. 353 (N.D. Ill. 2018) ........................................................................ 15

*Boundas v. Abercrombie & Fitch Stores, Inc.*,
  280 F.R.D. 408 (N.D. Ill. 2012) ........................................................................ 11

*Breslow v. Prudential-Bache Props.*,
  1995 U.S. Dist. LEXIS 13617 (N.D. Ill. Sep. 13, 1995) ....................................... 31

*Bryant v. Compass Grp. USA, Inc.*,
  No. 19-cv-06622 (N.D. Ill.) .............................................................................. 22

*Butler v. Am. Cable & Tel., LLC*,
  2011 U.S. Dist. LEXIS 115506 (N.D. Ill. Oct. 6, 2011) ........................................ 17

*Chambers v. Together Credit Union*,
  2021 U.S. Dist. LEXIS 92150 (S.D. Ill. May 14, 2021) ........................... 18, 27, 28, 29

*Charvat v. Valente*,
  2019 U.S. Dist. LEXIS 187225  (N.D. Ill. Oct. 28, 2019) ...................................... 25

*Cothron v. White Castle Sys.*,
  2023 IL 128004 (Feb. 17, 2023) ........................................................................ 25

*Figueroa v. Kronos Inc.*,
No. 19-cv-01306 (N.D. Ill.) ................................................................. 23

*Fox v. Dakkota Integrated Systems, LLC*, 9
80 F.3d 1146 (7th Cir. 2020) .............................................................. 5

*George v. Kraft Foods Global, Inc.*,
2012 U.S. Dist. LEXIS 166816 (N.D. Ill. June 26, 2012) ...................... 28

*Genesys Cloud Services, Inc. v. Strahan*,
2022 U.S. Dist. LEXIS 241447, (S.D. Ind. Sep. 29, 2022) ................... 25

*Hale v. State Farm Mut. Auto. Ins. Co.*,
2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018),................... passim

*In re Tiktok, Inc., Consumer Privacy Litig.*,
565 F. Supp. 3d 1076 (N.D. Ill. 2021) .................................................. 11

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ............................................................. 18

*Keele v. Wexler*,
149 F.3d 589 (7th Cir. 1998) ............................................................. 13

*Kleen Prods. LLC v. Int'l Paper Co.*,
831 F.3d 919 (7th Cir. 2016) ............................................................. 12

*Kleen Prods. LLC v. Int'l Paper Co.*,
2017 U.S. Dist. LEXIS 183015 (N.D. Ill. Oct. 17, 2017) ...................... 27

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) ............................................................. 12

*Mullins v. Direct Dig., LLC*,
795 F.3d 654 (7th Cir. 2015) .......................................................... 11, 32

*Neals v. Partech, Inc.*
No. 1:19-cv-05660 (N.D. Ill.) ............................................................. 23

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999)........................................................................... 29

*Osada v. Experian Info. Sols., Inc.*,
290 F.R.D. 485 (N.D. Ill. 2012)........................................................... 14

*Prelipceanu v. Jumio*,
    No. 2018-CH-15883 (Cook County) ...................................................... 23

*Quiroz v. Revenue Prod. Mgmt., Inc.*,
    252 F.R.D. 438 (N.D. Ill. 2008) ............................................................ 14

*Retired Chi. Police Ass'n v. City of Chi.*,
    7 F.3d 584 (7th Cir. 1993) .................................................................... 14

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) .............................................................. 14

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ..................................................... 23

*Snyder v. Ocwen Loan Servicing, LLC*,
    2018 U.S. Dist. LEXIS 167471 (N.D. Ill. Sep. 28, 2018) ................................ 20, 22

*Stauffer v. Aim High Bloomington, LLC*,
    No. 1:22-mc-01004-JBM-JEH (C.D. Ill.) ..................................................... 6

*Stauffer v. Lombard ATP, LLC*,
    No. 1:22-cv-02436 (N.D. Ill.) ................................................................. 6

*Stauffer v. RAM Entertainment, LLC & RAM Entertainment Normal IL, LLC*,
    No. 3:22-mc-03007-SEM-KLM (C.D. Ill.) .................................................... 6

*Stauffer v. SBZ Adventures, LLC*,
    No. 1:22-cv-02183 (N.D. Ill.) ................................................................. 6

*Stauffer v. SZ Orland Park, LLC & Sky Zone, LLC*,
    No. 1:22-cv-03756 (N.D. Ill.) ................................................................. 6

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ................................................................ 12

*T.K. v. Bytedance Tech. Co., Ltd.*,
    2022 U.S. Dist. LEXIS 65322 (N.D. Ill. Mar. 25, 2022) ................................... 29, 30

*Van Lith v. iHeartMedia + Entm't, Inc.*,
    2017 U.S. Dist. LEXIS 162838 (E.D. Cal. Sept. 29, 2017) ................................... 25

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .......................................................................... 12

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ........................................................................ 1, 20, 21

*Wright v. Nationstar Mortg. LLC*,
    2016 U.S. Dist. LEXIS 115729 (N.D. Ill. Aug. 29, 2016) ........................................ 21

*Young v. Rolling in the Dough, Inc.*,
    2020 U.S. Dist. LEXIS 35941 (N.D. Ill. Feb. 26, 2020) .......................................... 21

**Rules and Statutes**

740 ILCS 14/1 ......................................................................................................... 2

740 ILCS 14/15(a) ........................................................................................... 2, 3, 4, 5

740 ILCS 14/15(b) ................................................................................................ passim

740 ILCS 14/15(b)(1) ....................................................................................... 2, 3, 13

740 ILCS 14/15(b)(2) ....................................................................................... 2, 3, 13

740 ILCS 14/15(b)(3) ....................................................................................... 2, 3, 13

Fed. R. Civ. P. 23 ..................................................................................................... 2

Fed. R. Civ. P. 23(a) ..................................................................................... 11, 12, 13

Fed. R. Civ. P. 23(a)(4) ............................................................................................ 13

Fed. R. Civ. P. 23(b)(3) ........................................................................... 11, 12, 15, 31

Fed. R. Civ. P. 23(b)(3)(D) ....................................................................................... 16

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................... 31

Fed. R. Civ. P. 23(e) ..................................................................................... 1, 17, 18, 19

Fed. R. Civ. P. 23(e)(1)(B) ....................................................................................... 31

Fed. R. Civ. P. 23(e)(1)(B)(i) .................................................................................... 17

Fed. R. Civ. P. 23(e)(1)(B)(ii) ............................................................................... 10, 18

Fed. R. Civ. P. 23(e)(2) ......................................................................................... 17, 18

Fed. R. Civ. P. 23(e)(2)(A) ................................................................................ 18, 19, 20

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................. 22

Fed. R. Civ. P. 23(e)(2)(C) ....................................................................... 22, 29

Fed. R. Civ. P. 23(e)(2)(C)(i) .......................................................................... 22

Fed. R. Civ. P. 23(e)(2)(C)(ii) ............................................................. 26, 27, 28

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................. 30

Fed. R. Civ. P. 23(g)(1) .................................................................................. 16

Fed. R. Civ. P. 23(g)(1)(A)(i) ......................................................................... 16

Fed. R. Civ. P. 23(g)(1)(A)(ii) ........................................................................ 16

Fed. R. Civ. P. 23(g)(1)(A)(iii) ....................................................................... 16

Fed. R. Civ. P. 23(g)(1)(A)(iv) ....................................................................... 16

**Other Authorities**

Fed. R. Civ. P. 23(e), Advisory Committee's Notes to 2018 amendment ................................... 19

Manual for Complex Litig. § 21.632 (4th ed. 2004) .................................... 17

Newberg on Class Actions § 22:91 ............................................................... 32

Newberg on Class Actions § 4:71 (5th ed.) .................................................. 15

## I.       <u>INTRODUCTION</u>

Plaintiff Madisyn Stauffer brought this action against Defendant Sky Zone Franchise Group, LLC ("Sky Zone") alleging that Sky Zone violated her rights under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. On behalf of herself and the proposed Settlement Class, Plaintiff respectfully submits this Unopposed Motion and Memorandum in Support for Preliminary Approval of Class Action Settlement. As set forth herein, the proposed class Settlement Agreement ("Settlement Agreement" or "Agreement") with Sky Zone, attached hereto as Exhibit 1, is fair, reasonable, and adequate, and preliminary approval is warranted.[1]

This Agreement is the result of extensive, contentious litigation and arm's length negotiations between counsel for Plaintiff ("Class Counsel") and Sky Zone's counsel, with the assistance of a respected third-party mediator, the Honorable James Epstein (Ret.), a former justice of the Illinois Appellate Court and former judge in the Chancery Division of the Circuit Court of Cook County, who has experience mediating numerous cases, including cases brought under BIPA. The Settlement, if approved, will provide substantial monetary relief to Settlement Class members, based on a common, non-reversionary, settlement fund in the amount of $1,050,000.00, while avoiding the inherent risks, delay, and expenses associated with continued litigation. It therefore satisfies all applicable criteria for preliminary approval. *See* Fed. R. Civ. P. 23(e); *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864-65 (7th Cir. 2014). The settlement provides for a no-claim, automatic payment to 511 known settlement class members (unless they opt-out), and payment to another 1,331 potential settlement class members who submit a simple claim form verifying they qualify as members of the settlement class. Further, the estimated per-person

---

[1] Sky Zone consents to the filing of this Motion and relief requested herein for settlement purposes only, and otherwise reserves all rights. Unless otherwise defined, capitalized terms used herein have the same meaning as in the Agreement.

recovery is an amount that is in-line with, and will potentially exceed, other BIPA cases involving fingerprint scanning by employers, and here, Sky Zone is the franchisor of Plaintiff's employer. Moreover, all requirements under Fed. R. Civ. P. 23 are met for this Court to provisionally certify the Settlement Class for purposes of this Settlement, as required for this Court to be able to grant preliminary approval.

Accordingly, this Settlement Agreement is well within the range of possible approval, and Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement, directs notice to the Class, and schedules a final Fairness Hearing to determine whether to grant final approval of the Settlement.

## II.   **BACKGROUND**

### A.   **Plaintiff's Claims Against Sky Zone**

Plaintiff brought this Action against Sky Zone based on its alleged violations of BIPA, an Illinois statute that regulates companies' collection, use, safeguarding, handling, storage, retention, and destruction of biometric data, including fingerprints. 740 ILCS 14/1 *et seq*.

Pursuant to BIPA § 15(a), each "private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a). Additionally, ". . . a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines." *Id.*

BIPA § 15(b) provides that a private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric

2

information" unless it first (1) informs that person in writing that such an identifier or information is being collected or stored; (2) informs that person in writing of the "specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used"; and (3) "receives a written release" executed by the person who is the subject of the biometric identifier or information. 740 ILCS 14/15(b)(1)-(3).

Plaintiff alleges that: (1) she was employed by Defendant Innovative Heights Fairview Heights, LLC ("Innovative Heights"), a franchisee of Sky Zone (Doc. No. 153, Third Am. Compl. ("TAC"), ¶¶ 2, 14, 39, 42, 46, 100); (2) Sky Zone required franchisees to use a computer system provided by Defendant Pathfinder Software, LLC d/b/a CenterEdge ("CenterEdge"), which included a fingerprint scanner (*id.* at ¶¶ 14-18, 100-110); and (3) to clock in and out of work during her employment with Innovative Heights, Plaintiff scanned her fingerprints into the CenterEdge computer system required by Sky Zone (*id.* at ¶¶ 66-72).

Plaintiff further alleges that, when a person scans a fingerprint using CenterEdge's computer system, a digital image of the fingerprint is captured and stored, along with additional data of unique characteristics (sometimes called "fingerprint minutiae data") used to identify the individual. Subsequent fingerprint scans repeat the process, then match the fingerprint data with the stored fingerprint data to identify the individual. Plaintiff alleges Sky Zone utilized uniform policies and form documents with its Illinois franchisees; required use of the CenterEdge system that was capable of capturing biometric data; retained complete control over and access to all information in the system (including biometric data); could delete the data; periodically inspected the data in the system; accessed the biometric data remotely and in-person; and owned all the data in the system, including the biometric data. *Id.* at ¶¶ 15-33, 100-140.

Plaintiff alleges Sky Zone violated BIPA § 15(b) by collecting, capturing, receiving

through trade, and/or otherwise obtaining the biometric data of her and the Sky Zone Class Members without: (1) informing her and the other Sky Zone Class Members that their biometric data was being collected or stored; (2) informing her and the other Sky Zone Class Members of the specific purpose and length of term for which the biometric data was being collected or stored; and (3) obtaining a written release from Plaintiff and the other Sky Zone Class Members. *Id.* at ¶¶ 34-37, 187-191; Doc. 187. Sky Zone denies liability, raised several affirmative defenses, and denies material allegations, including that it ever collected, possessed, utilized or saw Plaintiff's or other class members' biometric identifiers or biometric information.

### B.    The Course of This Litigation

#### 1.    Procedural history

Plaintiff initially filed this lawsuit in the Circuit Court for St. Clair County, Illinois, in April 2019 against Defendant Innovative Heights. She filed an amended state court complaint in November 2019, in which she added Defendant CenterEdge based on information learned during discovery. CenterEdge removed the amended complaint to this Court pursuant to the Class Action Fairness Act. Doc. No. 1. Plaintiff subsequently moved to remand on the ground that she did not allege injury in fact to support Article III standing because she only alleged procedural violations of BIPA. Doc. No. 27. In August 2020, this Court issued its Memorandum and Order, in which it retained jurisdiction over Plaintiff's § 15(b) claims but remanded her § 15(a) claims to state court. *See* Doc. No. 43, p. 14 ("Plaintiff has not included additional facts about how Defendant Pathfinder's alleged violation of Section 15(a) injured her. . . . Her allegations seem to mirror the sparse allegations in *Bryant*; therefore, Plaintiff has not articulated an additional injury, beyond a violation of the statute, to satisfy the requirements for Article III standing of her Section 15(a) claims."). In that same Order, the Court denied CenterEdge's motion to dismiss, which sought dismissal on several different grounds, including the statute of limitations and waiver. *Id.* at 17-

4

31. In October 2020, the state court denied CenterEdge's motion to dismiss the § 15(a) claim, in which CenterEdge argued that Plaintiff lacked standing. In June 2021, this Court denied CenterEdge's motion to strike class allegations. Doc. No. 75.

CenterEdge thereafter filed a second notice of removal, in which it argued that the previously remanded § 15(a) claims belong in federal court in light of *Fox v. Dakkota Integrated Systems, LLC*, 980 F.3d 1146 (7th Cir. 2020), which it argued supported the existence of Article III standing. Doc. No. 8 (Case No. 3:20-CV-01332). This Court disagreed and remanded the § 15(a) claims. Doc. No. 44 (Case No. 3:20-CV-01332). CenterEdge filed a Petition for Permission to Appeal in the United States Court of Appeals for the Seventh Circuit, Plaintiff filed an Answer to the Petition, and the Court of Appeals denied the Petition in August 2021. Doc. No. 48 (Case No. 3:20-CV-01332).

Plaintiff filed a second amended complaint in both state and federal court in September 2021, adding Defendant Sky Zone as a party. *See* Doc. No. 99. On December 22, 2021, Sky Zone moved to dismiss the claims against Sky Zone in both courts. On July 22, 2022, Judge William Stiehl of the Circuit Court of St. Clair County, Illinois entered an order granting Sky Zone's motion to dismiss Plaintiff's section 15(a) claim against Sky Zone (without prejudice). *See* Doc. 140-1. On August 5, 2022, this Court also granted Sky Zone's motion to dismiss Plaintiff's section 15(b) claim against Sky Zone (also without prejudice). Doc. 142. Prior to the deadline to file an amended pleading in the state court action, Plaintiff voluntarily dismissed her state court action in its entirety and filed a third amended complaint in federal court. Doc. 144. The Third Amended Complaint, which added allegations relating to Sky Zone, alleged Defendants violated BIPA § 15(b), and, for the first time, included allegations that Sky Zone and CenterEdge violated BIPA § 15(a) by failing to comply with a retention/destruction policy. Plaintiff contended that these new §15(a) allegations

conferred Article III standing that was previously lacking under Seventh Circuit precedent. Doc. No. 144.

On July 5, 2023, following Sky Zone's motion to dismiss the Third Amended Complaint, this Court dismissed Plaintiff's §15(a) claim against Sky Zone, this time with prejudice, for lack of subject matter jurisdiction. Doc. 187. This Court denied Sky Zone's motion to dismiss Plaintiff's §15(b) claim against Sky Zone in the Third Amended Complaint. *Id.*

### 2.    Discovery

In addition to the extensive motion practice set forth above, the parties have engaged in substantial discovery. Plaintiff propounded extensive written discovery to Innovative Heights, CenterEdge, and Sky Zone. Plaintiff's counsel and Sky Zone's counsel engaged in multiple meet and confer correspondence and conferences and produced/reviewed thousands of pages of documents. In addition, Plaintiff's counsel spent substantial time engaged in non-party discovery involving, *inter alia*, Sky Zone's Illinois franchisees to determine the existence, identities, and addresses of Sky Zone Class Members—including by serving subpoenas, numerous meet and confer conferences, and, when required, engaging in necessary enforcement mechanisms against Sky Zone franchisees in various federal courts.[2]

### 3.    Mediation

This Settlement is the result of a voluntary mediation between Plaintiff and Sky Zone that took place on December 14, 2023, before the Honorable James Epstein (Ret.) through JAMS. Judge Epstein is a former justice of the Illinois Appellate Court and former judge in the Chancery

---

[2] These enforcement actions included *Stauffer v. SBZ Adventures, LLC*, No. 1:22-cv-02183 (N.D. Ill.); *Stauffer v. SZ Orland Park, LLC & Sky Zone, LLC*, No. 1:22-cv-03756 (N.D. Ill.); *Stauffer v. Lombard ATP, LLC*, No. 1:22-cv-02436 (N.D. Ill.); *Stauffer v. RAM Entertainment, LLC & RAM Entertainment Normal IL, LLC*, No. 3:22-mc-03007-SEM-KLM (C.D. Ill.); *Stauffer v. Aim High Bloomington, LLC*, No. 1:22-mc-01004-JBM-JEH (C.D. Ill.).

Division of the Circuit Court of Cook County. He has more than 40 years of legal experience, including more than 15 years of judicial service, and has experience mediating numerous complex cases, including class action cases involving BIPA. After a full day of mediation, Plaintiff and Sky Zone reached an agreement, as set forth herein and in the formal settlement agreement that they thereafter drafted and executed.

## III.  THE SETTLEMENT AGREEMENT

Plaintiff attaches a true and accurate copy of the Settlement Agreement as Exhibit 1, and provides the following summary of the Settlement's material terms:

### A.  The Settlement Class and Relief

The Settlement Class consists of individuals who are either known to have, or certify to have, scanned a fingerprint into a computer system at a Sky Zone franchisee location in Illinois from April 29, 2014, through the Preliminary Approval Date. The 511 individuals who are known to have scanned a fingerprint will not be required to file any claim and will automatically receive a settlement payment, unless they opt out. Other individuals who have been identified as working at one of the three other Sky Zone franchisee locations in Illinois that used a fingerprint scanner during the Class Period who verify with a simple claim form that they in fact scanned their fingerprint into the system during the Class Period will also receive a settlement payment.

Specifically, the first group, who will not have to file claims, is labeled the "Sky Zone No-Claim Class," defined as "the 511 persons specifically identified in the Sky Zone No-Claim Class List who have been identified by name and contact information during discovery of Sky Zone franchisees and whose franchisee-employers identified as having scanned one or more fingers into a computer system at a Sky Zone franchisee location in Illinois at any time from April 29, 2014, through the Preliminary Approval Date." Agreement, § A.50. The second group, who will have to file claims, is labeled the "Claims-Made Class," defined as "all persons who are on the Claims-

Made Class List and who, at any time from April 29, 2014, through the Preliminary Approval Date, scanned one or more fingers into a computer system at any of the following Sky Zone franchisee locations in Illinois: Sky Zone in Aurora, IL; Sky Zone in Joliet, IL; Sky Zone in Elmhurst, IL." *Id.* at § A.7; § G (describing claim process). Excluded from the Sky Zone No-Claim Class and the Claims-Made Class are the Court and staff to whom this case is assigned, and any immediate family members of the Court or its staff. *Id.* at § A.7, A.50. The "Sky Zone Class" "means all persons in the Sky Zone No-Claim Class and the Claims-Made Class." *Id.* at § A.49. Every Sky Zone Class member has the right to opt-out of, or object to, the Agreement within 60 days after the Notice is sent. *Id.* at §§ A.31-32, H, I.[3] The "Settlement Class" is "all persons in the Sky Zone Class who do not timely and properly opt out of this Agreement pursuant to the procedures set forth herein." *Id.* at § A.43.

Each Sky Zone No-Claim Class member who does not opt-out and each Claims-Made Class member who submits a timely claim will be a "Sky Zone Award Recipient." *Id.* at § A.48. Sky Zone will pay the Settlement Amount of $1,050,000.00, into a non-reversionary common fund, which shall be used to pay the Awards to Sky Zone Award Recipients, any Fee Award to Class Counsel, any Service Award to the named Plaintiff, the Settlement Administration Expense, and taxes associated with the Settlement Escrow. *Id.* at §§ A.42, C, E. The Net Settlement Fund means the Settlement Amount less any Fee Award, Service Award, Settlement Administration Expenses, and taxes associated with the Settlement Escrow. *Id.* at § A.30. This specific amount should be known by the time of Final Approval. The Sky Zone Award Recipients will receive a *pro rata* amount of the Net Settlement Fund. *Id.* at § C.

---

[3] The 1,331 people on the Claims-Made Class list are the same 1,331 people on the Claims Made Class List for the CenterEdge settlement (Doc. 185), because they consist only of people who worked at three specific Sky Zone franchisee locations.

### B.   Releases

Settlement Class Members will release "the Released Parties from any and all claims for relief, liabilities, rights, demands, suits, petitions, demands in law or equity, matters, obligations, damages (including consequential damages), losses or costs, liquidated damages, statutory damages, attorneys' fees and costs, actions or causes of action, of every kind and description, or any allegations of liability whether liquidated or unliquidated, whether known or unknown, fixed or contingent, accrued or not accrued, matured or not yet matured, asserted or unasserted, whether based on direct, successor, agency, or respondeat superior liability, whether suspected or unsuspected, including without limitation those related to unknown or unsuspected injuries as well as unknown or unsuspected consequences of known or suspected injuries that the Releasing Parties now own or hold, or have owned or held at any time prior to the Effective Date of this Agreement, that were or could have been asserted in the Action or the State Action, or are based on or in any way related to Sky Zone's or its franchisees' or its contracting parties' alleged conduct in the Action or the State Action, and arising in any way from Sky Zone's or its franchisees' or its contracting parties' alleged collection, storage, possession, disclosure, or use of fingerprints or related Biometric Information (as defined in BIPA) between April 29, 2014 and the Preliminary Approval Date." *Id.* at § K. In this Settlement Agreement, Settlement Class Members are not releasing any claims against Innovative Heights, CenterEdge, or any other third-party using a CenterEdge product, though the Agreement does release Sky Zone as to any successor or derivative claim, or any other form of liability, based on claims against Innovative Heights, any other Sky Zone franchisee, and/or CenterEdge. *Id*.

### C.   The Notice Program

All Sky Zone Class Members will receive notice of the Settlement by mail. Notice will also be provided by email and/or text to those Sky Zone Class Members for whom emails and/or

phone numbers have been obtained. Claims-Made Class Members for whom the Settlement Administrator has email addresses and/or phone numbers will also receive a follow-up email and/or text message notice prior to the claims deadline. The notice provisions are found in Section F of the Settlement Agreement and described more fully below in Sections VI.C.2 and VII.

### D.      Settlement Administration

The parties propose that Atticus Administration, LLC ("Atticus") be appointed by the Court as the Settlement Administrator. A declaration of Christopher Longley, the Chief Executive Officer of Atticus, is attached hereto as Exhibit 2 and incorporated by reference. Pursuant to the Settlement Agreement, the Settlement Administrator will administer the Notice plan set forth in the Settlement; the Opt-Out and Objection process; the Claims Process; and the receipt and distribution of payments required by the Settlement Agreement. Agreement, § D.

### E.      Attorneys' Fees and Costs and Class Representative Service Awards

Plaintiff will file a separate Fee Application within sixty days after the Preliminary Approval Date, which is before the Opt-Out/Objection Deadline. Agreement, § J.3. The Settlement Agreement also provides that Class Counsel will seek a Service Award for the Class Representative, to be paid from the Settlement Amount. *Id.* at § J.4.  The Settlement Agreement leaves the amount of fees, costs, and Service Award to the Court and does not contain a "clear-sailing agreement" restricting Sky Zone's ability to challenge the amount requested. *Id.*

## IV.      THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR PURPOSES OF SETTLEMENT

For this Court to be able to preliminarily approve this proposed Settlement and direct notice of the Settlement to the Sky Zone Class Members, it must find that the Court "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii).

Accordingly, Plaintiff requests provisional certification of the Settlement Class, as defined in Section III.A above, for purposes of this Settlement.

Here, the Settlement Class is "defined clearly" with "objective criteria." *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 657 (7th Cir. 2015). The Settlement Class also satisfies the elements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a); *see also In re Tiktok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1084 (N.D. Ill. 2021). Furthermore, pursuant to Rule 23(b)(3), questions of law or fact common among class members predominate over questions affecting only individual members ("predominance"), and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ("superiority"). Fed. R. Civ. P. 23(a); *In re Tiktok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d at 1086. Thus, provisional certification is proper.

### A.    Objective Class Definition

Membership in the Settlement Class is defined clearly and based on objective, rather than subjective, criteria—namely, whether a person's fingerprints were scanned into a computer at a Sky Zone franchisee located in Illinois during a specific period of time. That is all that is required for a class definition. *See Mullins*, 795 F.3d at 657.  Moreover, a class definition that requires some members to identify themselves through affidavits or claim forms is not improper. *See Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 418 (N.D. Ill. 2012).

### B.    Numerosity

To satisfy the numerosity requirement, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)." *In re Tiktok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d at 1085 (quoting *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002)). Here, the Sky Zone No-Claim Class List alone contains 511 persons

and the Claims-Made Class List contains over 1,300 additional potential Sky Zone Award Recipients. *See* Agreement Exs. 3 & 4. Accordingly, the numerosity requirement is easily satisfied.

### C.    Commonality and predominance

Under Rule 23(a)'s commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a). Because the Class is seeking monetary relief, Rule 23(b)(3) also applies, which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The requirements of commonality and predominance may overlap, thus Plaintiff addresses them together herein. *See Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015).

As for commonality, although there need only be one "common question of law or fact[,]" the claims of the class "must depend upon a common contention that is capable of classwide resolution." *Bell*, 800 F.3d at 374. The "class-wide resolution means that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Id*. Furthermore, "[w]hat matters to class certification ... [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). The predominance inquiry of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 925 (7th Cir. 2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "Predominance is satisfied when 'common questions represent a significant aspect of a case and . . . can be resolved for all members of a class in a single adjudication.'" *Kleen Prods. LLC*, 831 F.3d at 925 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012)).

Common issues of law and fact undoubtedly predominate here. The core factual and legal questions at issue in this lawsuit—whether Sky Zone collected, captured, received through trade, or otherwise obtained Sky Zone Class Members' biometric data and whether it complied with the requirements of BIPA § 15(b)(1)-(3)—are common to the Sky Zone Class and predominate over any individual questions. As set forth above, Sky Zone is alleged to have, *inter alia*, utilized uniform policies and form documents with its Illinois franchisees, engaged in the same course of conduct with respect to all Sky Zone Class Members as to how such Class Members' fingerprints were captured, collected, stored, and retained, asserted ownership over all the data collected by its Illinois franchisees, including the fingerprint data, and not provided the disclosures or received the consents required by §15(b). The main question present in all the prior motions by Sky Zone, which would continue throughout the case, is whether Sky Zone "collected," "captured," "received through trade," and/ or "otherwise obtained" Sky Zone Class Members' biometric identifiers and biometric information within the meaning of BIPA such that it is liable for failing to provide disclosures and obtain consent under § 15(b). Answering that question involves an examination of Sky Zone's uniform conduct in light of a legal analysis regarding the meaning of the operative terms in the statute. And the resolution of this question will generate a common answer and resolve a central issue to the validity of the claims of each Sky Zone Class Member. Thus, there is a common contention capable of classwide resolution that predominates. Commonality and predominance are therefore satisfied here.

### D.    Typicality

The typicality requirement of Rule 23(a) "requires that the named plaintiffs' claims 'arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members' and 'are based on the same legal theory.'" *Arwa Chiropractic, P.C. v. Med.-Care Diabetic & Med. Supplies, Inc.*, 322 F.R.D. 458, 464 (N.D. Ill. 2017) (quoting *Keele v. Wexler*,

149 F.3d 589, 595 (7th Cir. 1998)). Typicality is therefore satisfied where "the named representatives' claims have the same essential characteristics as the claims of the class at large." *Id.* (quoting *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 597 (7th Cir. 1993)). That is certainly true here. Plaintiff's claims and the claims of all Sky Zone Class Members arise out of the same course of conduct—the scanning of fingerprints at Sky Zone franchisee locations in Illinois in the face of the alleged absence of BIPA disclosures. There is nothing that separates Plaintiff's claim from those of other Sky Zone Class Members, and typicality is satisfied.

### E.    Adequacy

The "adequacy" requirement of Rule 23(a)(4) looks to whether the Class Representative and Class Counsel will "fairly and adequately protect the interests of the class." It "comprises two parts: 'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members.'" *Arwa Chiropractic, P.C.*, 322 F.R.D. at 465 (quoting *Retired Chi. Police Ass'n*, 7 F.3d at 598). "[A] class is not . . . adequately represented if class members have antagonistic or conflicting claims." *Id.* (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Courts also look to whether the named plaintiff "has a sufficient interest in the outcome of the case to ensure vigorous advocacy" and that counsel is "competent, qualified, experienced and able to vigorously conduct the litigation." *Osada v. Experian Info. Sols., Inc.*, 290 F.R.D. 485, 490 (N.D. Ill. 2012) (quoting *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008)).

Here, Plaintiff and Class Counsel have and will fairly and adequately protect the interests of the Settlement Class. As set forth above, Plaintiff and all Settlement Class Members suffered the same alleged injury, thus there are no conflicting claims at issue. Accordingly, Plaintiff is an adequate representative of the Settlement Class Members.

Furthermore, Class Counsel have extensive experience representing plaintiffs in class action and complex litigation and are well qualified to represent the Settlement Class Members.[4] Accordingly, Class Counsel possess the ability, resources, commitment and experience necessary to adequately represent the Settlement Class Members.

F.      **Superiority**

Rule 23(b)(3)'s second prong is whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). It looks at: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id*.

These factors weigh in favor of certification here. There is no other known litigation pending against Sky Zone regarding the subject of this Lawsuit, thus there is not a "reason for concern about class members having an individual interest in controlling the prosecution or defense of these matters through a separate action." *Bhattacharya v. Capgemini N. Am., Inc.*, 324 F.R.D. 353, 366 (N.D. Ill. 2018). It is also desirable to concentrate the litigation of the claims in this forum, as the case concerns a proposed class of individuals who scanned their fingerprints throughout Illinois and the Court is familiar with the claims at issue. *See* Newberg on Class Actions § 4:71 (5th ed.) (a class action is particularly appropriate in a particular forum where that court has already issued preliminary rulings). Moreover, "[p]arallel litigation for each class member here would entail the same discovery and require multiple courts to weigh the same factual and legal

---

[4] A resume of Plaintiff's law firm is attached as Exhibit 3.

bases for recovery. That would make no sense." *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 76 (N.D. Ill. 2016). Finally, there should be no management issues here due to the predominance of common issues, "readily available identity" of class members, and "the relative ease of administering the claims process." *Id. See also Amchem Prods.,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

Accordingly, all of the requirements of Rule 23 are satisfied here, and the Court should certify the Sky Zone Class for settlement purposes.

## V.       COUNSEL FOR PLAINTIFF SHOULD BE APPOINTED AS CLASS COUNSEL

Pursuant to Rule 23, a court certifying a class "must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In doing so, the Court must consider the following factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Here, Class Counsel have thoroughly investigated and identified the claims at issue in the lawsuit and litigated this case over the past five years. As set forth above, Class Counsel have extensive experience handling class actions and complex litigation, including other matters under BIPA. Class Counsel also possess the requisite knowledge and resources to adequately represent the Sky Zone Class in connection with this Settlement. The Court should therefore appoint Kevin Green, Richard Cornfeld, Daniel Levy, and Thomas Horscroft of Goldenberg Heller & Antognoli, P.C., as Class Counsel.

## VI.        THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

Federal Rule of Civil Procedure 23(e) governs the Court's preliminary review of a class action settlement. Preliminary approval "is the first step in a two-step process to determine whether a proposed Rule 23 settlement is fair, adequate, reasonable, and not a product of collusion." *Butler v. Am. Cable & Tel., LLC*, 2011 U.S. Dist. LEXIS 115506, *28 (N.D. Ill. Oct. 6, 2011). The Seventh Circuit describes this preliminary approval process as follows:

> The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.' This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. If the district court finds a settlement proposal 'within the range of possible approval,' it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.

*Armstrong v. Bd. of Sch. Dirs.,* 616 F.2d 305, 314 (7th Cir. 1980); *see also* Manual for Complex Litig. § 21.632 (4th ed. 2004) (noting that at preliminary approval stage, the first task before the court is to make a preliminary determination as to the fairness, reasonableness, and adequacy of the settlement terms).

Rule 23(e) requires that a court make two findings before granting preliminary approval of a proposed class action settlement:

> (B) *Grounds for a Decision to Give Notice*. The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:
>
> (i) approve the proposal under Rule 23(e)(2); and
>
> (ii) certify the class for purposes of judgment on the proposal.

Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii).

In determining whether a proposed class action settlement may be approved under Rule 23(e)(2), the Court must consider whether: (A) the class representatives and class counsel have

adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

"In considering these factors, a court must bear in mind that '[f]ederal courts naturally favor the settlement of class action litigation.'" *Chambers v. Together Credit Union*, 2021 U.S. Dist. LEXIS 92150, *5 (S.D. Ill. May 14, 2021) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)).

Here, as set forth above, Plaintiff has shown that the Court will likely be able to certify the Class for purposes of judgment on the proposal. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). Moreover, because Plaintiff and Class Counsel have adequately represented the Settlement Class, and because the Settlement Agreement was negotiated at arm's-length with the guidance of an experienced mediator, provides substantial monetary relief and avoids the risks associated with continued litigation, and treats Settlement Class Members equitably relative to each other, the Rule 23(e)(2) factors are met. Accordingly, preliminary approval of the Settlement Agreement is warranted.

A.      **The Class Representative and Class Counsel have adequately represented the Settlement Class**

As set forth above, Plaintiff and Class Counsel have adequately represented the Settlement Class and thus satisfy Rule 23(e)(2)(A). The "focus at this point is on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. Courts "may consider a number of factors when evaluating the adequacy of representation, including the 'nature and amount of discovery,' which 'may indicate whether

counsel negotiating on behalf of the class had an adequate information base.'" Fed. R. Civ. P. 23(e)(2)(A) Advisory Committee's Notes to 2018 amendment. In *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018), the court found that adequacy of representation under Rule 23(e)(2)(A) favored approval, relying on the "significant time and resources in this litigation" that class counsel invested, that they "litigated this case intensively," and their extensive experience in class action litigation. *Id*. at *13.

Here, the performance of the Class Representative and Class Counsel have been more than adequate, and the extensive time and resources they have invested, including relating to discovery, has ensured that Class Counsel had an "adequate information base" in negotiating this Settlement. *See* Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. Plaintiff, as the Class Representative, has stayed involved in nearly every aspect of the case, including by helping her attorneys investigate the BIPA claims, searching for and providing documents, assisting in responding to written discovery, conferring with counsel throughout the litigation, participating in the mediation, and reviewing and approving the Settlement Agreement before signing it. At each step, Plaintiff has continued to act in the best interests of the Settlement Class and has adequately represented it.

Furthermore, as addressed above, Class Counsel has engaged in extensive motion practice with multiple defendants and in multiple forums, including several motions to dismiss filed in this Court by Sky Zone, as well as motion practice in the parallel state court and in the Seventh Circuit. Class Counsel has also engaged in substantial discovery as to Sky Zone, serving multiple sets of interrogatories and requests for production of documents. The parties exchanged multiple meet and confer correspondence and Class Counsel engaged in additional meet and confer conferences with Sky Zone's counsel, as well as received and analyzed thousands of pages of documents from

Sky Zone, which they relied upon in negotiating the Settlement. Additionally, Class Counsel expended significant time and resources serving multiple  subpoenas on Sky Zone's Illinois franchisees relating to the existence, identities, and contact information for potential Sky Zone Class members, and engaging in numerous meet and confer conferences and, when needed, enforcement actions in various federal courts to obtain information about the identities of and contact information for the Settlement Class to, *inter alia*, reduce the need for a claims process for the majority of Settlement Class members.

Class Counsel has also diligently followed emerging trends and new case law in the rapidly-evolving area of BIPA litigation. This allowed Class Counsel to respond to the multiple motions to dismiss by Sky Zone, as well as direct discovery in a focused way that led to an amended complaint that the Court found stated a plausible BIPA § 15(b) claim against Sky Zone.

Thus, Plaintiff and Class Counsel have worked diligently to obtain the required information base to negotiate this settlement. The significant work they put into discovery to obtain this information base, along with their extensive experience in class actions, supports a finding that adequacy of representation under Rule 23(e)(2)(A) is satisfied.

### B.   The Settlement was negotiated at arm's length under the supervision of an experienced mediator

Initially, the fact that the settlement was reached with the assistance of a respected and experienced third-party mediator, the Honorable James Epstein (Ret.), supports a finding that the settlement was negotiated at arm's length and that there was nothing improper in connection with the negotiations. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (relying on fact that "settlement was proposed by an experienced third-party mediator after an arm's-length negotiation"); *Snyder v. Ocwen Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 167471, *12 (N.D. Ill. Sep. 28, 2018) (relying on the parties' use of independent mediators and "no indication of any

side deals"). Here, the parties agreed in principle to settlement terms proposed by Judge Epstein that were subsequently memorialized in the written Settlement Agreement, with no side deals. After the mediation concluded, Class Counsel wrote first drafts of the Settlement Agreement, notices, and other exhibits and worked diligently with Sky Zone's counsel to reach final drafts.

Courts also look to whether the settlement came about after the parties have vigorously litigated the case, including through discovery and motion practice. *See Wong*, 773 F.3d at 864 ("the parties contentiously litigated a motion to dismiss"); *Wright v. Nationstar Mortg. LLC*, 2016 U.S. Dist. LEXIS 115729, *42 (N.D. Ill. Aug. 29, 2016) (parties "vigorously defended their positions throughout the litigation . . . and engaged in discovery"); *Young v. Rolling in the Dough, Inc.*, 2020 U.S. Dist. LEXIS 35941, *9 (N.D. Ill. Feb. 26, 2020) (settlement agreed to after extensive discovery). That is certainly the case here. As set forth above, the parties engaged in significant discovery and extensive motion practice that spanned several years and courthouses, including multiple motions to dismiss in both state and federal court. This discovery and motion practice culminated in the Third Amended Complaint, which asserted BIPA § 15(a) and 15(b) claims against Sky Zone. In ruling on Sky Zone's motion to dismiss the Third Amended Complaint, the Court dismissed the § 15(a) claim for lack of subject matter jurisdiction and denied the remainder of the motion, leaving the amended § 15(b) claim against Sky Zone.

Additionally, there is no evidence of (nor was there any) collusion or unfairness that would support a finding that this factor is not satisfied. *See Wright*, 2016 U.S. Dist. LEXIS 115729 at *42 (relying on the fact that nothing in the record showed any sort of unfairness or collusion). Furthermore, the Settlement does not provide for the reversion of unclaimed amounts. *See Snyder*, 2018 U.S. Dist. LEXIS 167471 at *12 (relying on the lack of any provision in which unclaimed amounts revert back to the defendant in finding this factor satisfied).

Accordingly, the Settlement was the result of arms-length negotiations between the parties, and Rule 23(e)(2)(B) supports granting preliminary approval.

### C.       The relief provided to Settlement Class Members is adequate

Each of the Rule 23(e)(2)(C) subfactors supports a finding that the relief provided to the Settlement Class is fair, reasonable, and adequate.

### 1.       The costs, risks, and delay of trial and appeal

The relief provided to the Settlement Class members, taking into account the costs, risks, and delay of trial and appeal, supports the granting of preliminary approval. *See* Rule 23(e)(2)(C)(i). Based on the Settlement Amount of $1,050,000.00, this Settlement provides significant immediate relief for the Settlement Class. Under this Settlement, even after deducting for expected fees, costs, and a Service Award, each Settlement Class Member is expected to receive a payment of at least $350, and could receive approximately $650 or more. This amount is in-line with, and will potentially exceed, other BIPA cases involving fingerprint scanning by employers, and here, Sky Zone is the franchisor of Plaintiff's employer. Furthermore, in contrast to many BIPA settlements, this one provides an automatic payment to many of the Settlement Class members rather than requiring a claims-process for all. *See, e.g.*, *Bryant v. Compass Grp. USA, Inc.*, No. 19-cv-06622 (N.D. Ill. 2020), ECF Dkt. No. 123 at 1, 9 ($6.8 million fund for 66,159 class members, amounting to approximately $69 per class member after deducting for fees, costs, and service award; actual payment of $413.75 after "impressive" 16.97% claims rate)[5]; *Neals v. Partech, Inc.* No. 1:19-cv-05660 (N.D. Ill. 2021), ECF Dkt. No. 136 at 1, 7, 8 ($790,000 fund for 3,560 class members, amounting to approximately $143 per class member after deducting

---

[5] Class Counsel estimates that a 16.97% claim rate by the Sky-Zone Claims Made Class here would result in a per-person payment of approximately $868.

for fees and service award; actual payment of $650 after receiving a "remarkable 20.5% claims rate")[6]; *Figueroa v. Kronos Inc.*, No. 19-cv-01306 (N.D. Ill.), ECF Dkt. No. 377 at 1, 7, 8 ($15,276,227 fund for 81,910 class members, amounting to approximately $124 per class member after deducting for fees and service award; actual payment of $445 after receiving "excellent" claims rate of 26.78%)[7]; *Prelipceanu v. Jumio*, No. 2018-CH-15883 (Cook County) (settlement fund of $7 million for 260,000 class members, amounting to approximately $27 per class member; actual payment of $275 per class member after claims process).[8] Here, there are 511 people who qualify for relief without the need to file a claim, and an additional 1,331 people who may qualify for relief by filing a simple claim. Compared to these other BIPA cases, it is as though the class here is starting with a 27.7% claims rate, which will only increase with every claim made.

Moreover, the Settlement "allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation," which would likely have included disputes over the conduct of Sky Zone and whether it collected or possessed biometric identifiers or biometric information within the meaning of BIPA, disputes over the applicable statute of limitations and its impact on the putative class, and disputes over a contested class certification proceeding "followed by an inevitable appeal" under Rule 23(f) and a motion for summary judgment. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). Furthermore, an appeal would likely have followed any trial in the case given the contentious nature of and multiple legal issues raised in the motions to dismiss.

---

[6] Class Counsel estimates that a 20.5% claim rate by the Sky-Zone Claims Made Class here would result in a per-person payment of approximately $817.

[7] Class Counsel estimates that a 26.78% claim rate by the Sky-Zone Claims Made Class here would result in a per-person payment of approximately $738.

[8] *See* https://topclassactions.com/lawsuit-settlements/closed-settlements/illinois-jumio-biometric-class-action-settlement/.

Although Plaintiff feels strongly about her ability to successfully litigate her case absent a settlement, as this Court is aware from having adjudicated this case for several years and its rulings on several substantive motions, there are several contested issues on which Plaintiff would have to prevail were litigation to continue. Throughout the pleadings and discovery Sky Zone has denied that it possessed, collected, captured, and/or otherwise obtained biometric identifiers or biometric information of any Sky Zone Class members, and has argued that any such data is obtained by others. Sky Zone prevailed on its motion to dismiss Plaintiff's §15(a) claims against it in both state court and in this Court, and it prevailed in its initial motion to dismiss Plaintiff's §15(b) claims against it. Sky Zone has also asserted sixteen affirmative defenses. *See* Doc. No. 188, pp. 41-46. Thus, as the court stated in *Hale* when addressing the vigorous defenses that the defendant had raised throughout the case, "[r]egardless of the outcome of these proceedings, there can be no question that they would have added significant costs and delay . . . . Moreover, absent this proposed resolution, and considering the strong likelihood of post-trial motions and appeals, the parties were unlikely to achieve a final disposition any time soon." 2018 U.S. Dist. LEXIS 210368 at *17. It therefore found that this factor "strongly favor[ed] final approval of the Settlement." *Id.*

Furthermore, were litigation to continue, it is expected that Sky Zone would oppose Plaintiff's motion for class certification. As expressed in its Answer to the Third Amended Complaint, Sky Zone maintains that this case is "inappropriate for class treatment." Doc. No. 188, p. 44. Although Plaintiff believes this case is well positioned for class certification based on the uniform conduct as to all Sky Zone Class members, proceeding with a contested motion for class certification is certainly not without its risks, and the Court's ruling would be subject to immediate appeal under Rule 23(f), adding further delay.

Moreover, the risks on the merits are made evident by the numerous legal and factual issues raised in Sky Zone's multiple motions to dismiss.  Although Plaintiff could potentially litigate the case for several more years and secure judgment following trial that potentially exceeds the per-person settlement recovery, given the novel issues involved in the claims against Sky Zone, it is also possible that a judgment could be entered for Sky Zone following trial or that an appellate court overturn any legal rulings that would result in a judgment for Sky Zone.  Thus, even though it is conceivable the Class could recover more in several years following trial and appeals, "[a]s the Supreme Court has recognized, the 'time value of money' is 'the fact that [a] dollar today is worth more than a dollar tomorrow.'" *Genesys Cloud Servs., Inc. v. Strahan*, No. 1:19-cv-00695-TWP-DML, 2022 U.S. Dist. LEXIS 241447, at *41-42 (S.D. Ind. Sep. 29, 2022) (quoting *Atlantic Mut. Ins. Co. v. C.I.R.*, 523 U.S. 382, 384 (1998) (internal citations and quotations omitted).

Nor must a settlement "provide the class with the maximum possible damages in order to be reasonable." *Charvat v. Valente*, 2019 U.S. Dist. LEXIS 187225, *19-21 (N.D. Ill. Oct. 28, 2019) (approving settlement despite payout to individual class members not being near the statutory maximum under the TCPA; "the inability to pay every injured plaintiff the absolute statutory maximum does not reflect a failure of the settlement itself"); *see also Hale*, 2018 U.S. Dist. LEXIS 210368 at *18-19 ("It is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.") (quoting *Van Lith v. iHeartMedia + Entm't, Inc.*, 2017 U.S. Dist. LEXIS 162838, *12 (E.D. Cal. Sept. 29, 2017)) (citations omitted). Thus, that the Settlement does not provide for a recovery in which each Sky Zone Class member can obtain the maximum statutory recovery certainly does not mean the Settlement is not adequate.[9]

---

[9] There also remains uncertainty about what the maximum statutory recovery means in light of the Illinois Supreme Court's decision in *Cothron v. White Castle Sys.*, 2023 IL 128004 (Feb. 17, 2023). There, the

Accordingly, based on the substantial and immediate relief available to Settlement Class members under this Settlement compared to the costs, risks, and delay of further litigation, preliminary approval is appropriate.

### 2.   The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims

The method of distributing relief to the class provided by the Settlement, including its method of processing class-member claims also supports granting preliminary approval. *See* Rule 23(e)(2)(C)(ii). As set forth above, the Settlement provides for both a "Sky Zone No-Claim Class" and a "Claims-Made Class." The Sky Zone No-Claim Class is a specific group of 511 people who have been identified by name and contact information during discovery as having scanned a fingerprint into a computer system at a Sky Zone franchisee location in Illinois during the relevant period. These individuals have no need to do extra work to identify themselves as entitled to the Settlement payment and, therefore, do not need to file a claim to receive their Award.

On the other hand, people who scanned their fingerprints into a computer at the Sky Zone franchisee locations in Aurora, Joliet, and Elmhurst, Illinois will need to self-identify because neither Sky Zone, CenterEdge, nor these Sky Zone franchisees could confirm which of these employees scanned a fingerprint and which did not. Thus, the notice will be provided to all the employees at these locations, who can verify membership in the Settlement Class by submitting a simple claim form that requests contact information and asks the person to certify that he/she scanned a finger during the relevant period at one of the specified locations. Agreement, §§ A.7, G.1, and Ex. 12. Claim forms will be sent with the mailed notice and also available to download

---

Court held that a party violates Section 15(b) of BIPA when it "collects, captures, or otherwise obtains a person's biometric information without prior informed consent" not only the "first time an entity scans a fingerprint or otherwise collects biometric information" but also "with each subsequent scan or collection." *Id.* ¶ 24. The Court also stated in *dicta*, however, that the statutory damages are not intended to "result in the financial destruction of a business." *Id.* ¶ 42.

or complete electronically on the Settlement Website. Claim forms may be delivered to the Settlement Administrator by mail or e-mail or completed and submitted electronically on the Settlement Website. *Id.* § G.1. Moreover, a follow-up notice will be sent by email and/or text message prior to the Claims Deadline to every person on the Claims-Made List who has not yet filed a claim for whom there is such contact information available. *Id.* § F.5(e). Additionally, because the 1,331 people on the Claims-Made Class List are identical to those who may also make a claim to receive payment from the settlement with Defendant CenterEdge, Class Counsel and Sky Zone's counsel have agreed that any person who files a valid and timely claim for the CenterEdge settlement will automatically be deemed to have filed a valid and timely claim in this Sky Zone Settlement (unless the person specifically opts-out of the Sky Zone Settlement).

Direct payment without the need to submit a claim, which is what over 500 Settlement Class members here will receive, has been deemed the "best and most effective method of ensuring Class members receive the funds they are due." *See Chambers*, 2021 U.S. Dist. LEXIS 92150 at *6-7 ("The method of distributing the Net Settlement Fund is by direct payment, which is the best and most effective method of ensuring Class members receive the funds they are due and requires no claims to be submitted. Fed. R. Civ. P. 23(e)(2)(C)(ii)."). Direct payment after a simple claim process for the remainder of the Settlement Class members is also proper and should be approved. *See Hale*, 2018 U.S. Dist. LEXIS 210368 at *19-20 ("Under the terms of the proposed Settlement, settlement funds will be distributed automatically, with no need for a claim form, to the approximately 1.43 million class members whose contact information is known to the parties. The remainder of the class has only to submit a relatively simple claim form with basic questions about class membership. This procedure is claimant-friendly, efficient, cost-effective, proportional and reasonable under the particular circumstances of this case."); *Kleen Prods. LLC v. Int'l Paper*

27

*Co.*, 2017 U.S. Dist. LEXIS 183015, *15-16 (N.D. Ill. Oct. 17, 2017) (approving claim forms that were "relatively simple for Class Members to complete" and enabled class members to provide proof of relevant purchase documentation or confirm pre-populated data).

Finally, the Settlement Administrator will mail Sky Zone Award Recipients prepaid plastic cards that can be used like a debit card. Agreement § J.1.(c). Upon receipt, the recipient need only dial the phone number on the card or visit a website provided on the card to activate it. *Id*. Unlike a check, the funds on the cards will not expire after 180 days and will benefit any recipients who do not use or have access to traditional financial services without any detriment to those who do. Accordingly, the method of distributing relief to the Sky Zone Class is as simple and effective as possible. This factor therefore also supports preliminary approval.

### 3.    The terms of any proposed award of attorney's fees, including timing of payment

This factor analyzes the adequacy of the relief taking into account "the terms of any proposed award of attorney's fees, including timing of payment." *See* Rule 23(e)(2)(C)(ii). If this Court grants preliminary approval of the Settlement, undersigned counsel intends to petition the Court for a reasonable award of attorney fees plus their litigation expenses. Agreement § J.3. While Plaintiff expects to request an amount of one-third of the Settlement Amount for attorney's fees, the amount is subject to Court approval. As will be set forth further in Plaintiff's petition for attorney's fees, one-third of a common fund as an attorney's fee award in a class settlement is reasonable and does not undermine the adequacy of the relief. *See Chambers*, 2021 U.S. Dist. LEXIS 92151 at *4 (finding attorney's fees of one-third of the settlement fund reasonable; "As numerous courts have recognized, '[t]he normal rate of compensation in the market [is] 33.33% of the common fund recovered' because the class action market commands contingency fee agreements and the class counsel accepts a substantial risk of nonpayment.'") (quoting *George v.*

*Kraft Foods Global, Inc.*, 2012 U.S. Dist. LEXIS 166816, *8 (N.D. Ill. June 26, 2012)). Moreover, "[t]his District is no exception and commonly awards a one-third fee in class action cases." *Chambers*, 2021 U.S. Dist. LEXIS 92151 at *4 (collecting cases). Thus, the attorney's fee award in the Settlement supports preliminary approval.

### 4. No agreements required to be identified under Rule 23(e)(3)

There are no agreements besides the Settlement Agreement made in connection with this proposed settlement. This factor is thus neutral. *See Hale*, 2018 U.S. Dist. LEXIS 210368 at *20.

Accordingly, the Rule 23(e)(2)(C) factors support a finding that the relief provided to the Settlement Class through this proposed Settlement is adequate.

### D. The proposed Settlement treats class members equitably relative to each other

The claims of the Sky Zone Class members are nearly identical, as Sky Zone allegedly violated BIPA in the same manner as to all such Class members. Under the Settlement Agreement, the Sky Zone Award Recipients will all "receive a distribution in the amount of a *pro rata* share of the Net Settlement Fund." Agreement § J.1.(a). In *T.K. v. Bytedance Tech. Co., Ltd.*, 2022 U.S. Dist. LEXIS 65322 (N.D. Ill. Mar. 25, 2022), the court stated that "[g]enerally, a settlement that provides for pro rata shares to each class member" will meet the standard of treating class members equitably relative to each other. *Id.* at *42. That is true here. *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "characteristically assured by straightforward pro rata distribution of the limited fund"). Further, each Class Member will release the same BIPA claims against Sky Zone, and all will retain their claims against the remaining Defendants and non-parties. *Id.* § K.[10]

While the Settlement requires some Settlement Class members to file a claim and others

---

[10] While settlements have been reached with all three Defendants, each settlement has yet to receive preliminary and final approval from the Court.

not to, that treatment is still equitable. The only Settlement Class members who are required to file claims are those people who are known to have worked at three Sky Zone franchisee locations in Illinois with fingerprint scanners during the relevant period, but neither Sky Zone, CenterEdge, nor the Sky Zone franchisees could confirm or deny which employees scanned a fingerprint. If a person did scan a fingerprint, he/she will simply have to verify this by "checking a box"—which is what is required in most BIPA settlements. *See supra,* pp. 21-22. It would be *inequitable* to make the 511 people, who through discovery are known to have scanned a fingerprint, file a claim to receive their Settlement payment just because there are others who are not yet known. Similarly, it would be *inequitable* to exclude from the Settlement those people who can easily self-verify that they scanned a fingerprint when it is known they worked at a Sky Zone location in Illinois with a fingerprint scanner during the relevant period. And ultimately, each Sky Zone Award Recipient will receive the same *pro rata* payment. *See also Hale,* 2018 U.S. Dist. LEXIS 210368 at *19-20 (approving settlement with mixed automatic payment for many and claims-process for some).

Finally, this subfactor may also involve a review of a service award to class representatives. In *Bytedance,* the court recognized that "[b]ecause class representatives do more work and take more risks than the average class member, service awards to named class members will generally not 'raise a red flag.'" 2022 U.S. Dist. LEXIS 65322 at *42 (internal quotation omitted). The court added "[w]ithout the involvement of the named Plaintiffs, the other class members would gain nothing," and thus the "gap between the proposed service awards and the average distribution" to class members did not "render treatment of class members inequitable." *Id.* at *43. Here, as set forth above, Plaintiff's active involvement in the case helped lead to the Settlement, and the provision of a service award to Plaintiff is consistent with equitable treatment of class members.

Accordingly, the Settlement treats each member of the Settlement Class equitably, and Rule 23(e)(2)(D) supports granting preliminary approval.

## VII.     THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTIFICATION

Under Rule 23, for any "class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule further provides that such "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*. Additionally, the notice must, in plain language, state the nature of the action; the class definition; the class claims, issues, or defenses; that class members may enter an appearance through an attorney; that the court will exclude class members who so request; the time and manner for requesting exclusion; and the binding effect of a class judgment on the class members. *Id*. Moreover, Rule 23(e)(1)(B) provides that the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." And "[d]ue process requires that the method of providing notice be reasonably calculated to reach interested parties" although it "does not require that each class member actually receive notice." *Breslow v. Prudential-Bache Props.*, 1995 U.S. Dist. LEXIS 13617, *1 (N.D. Ill. Sep. 13, 1995).

Here, the proposed notice is comprehensive, provides the best notice practicable under the circumstances, and complies with all requirements of Rule 23 and Due Process. Within twenty-one days after the Preliminary Approval Date, the Settlement Administrator will send notice by U.S. mail, postage prepaid, to every person on the Class List. *Id*. § F.5(b). Through information obtained from the parties and non-parties in discovery, the parties have obtained mailing addresses for every person on the Class List, plus email and/or telephone numbers for many people on the

Class List. Prior to mailing the notice, the Settlement Administrator will process the address of every person identified on the Class List through the U.S. Postal Service's National Change of Address database. *Id*. The notice will be mailed to the last known address as reflected in the Class List or to any updated address listed in this address database. *Id*. Additionally, the Settlement Administrator will re-mail notice via standard U.S. Mail, postage prepaid, for up to thirty-five days following the Settlement Notice date to any updated addresses to the extent it receives an address change notification from the U.S. Postal service, or pursuant to a request from a person on the Class List. *Id*. Such mailed notice satisfies Rule 23 and Due Process. *See Mullins*, 795 F.3d at 665.

In addition to mailed notice, the Settlement takes extra steps to notify Class members. Each person on the Class List for whom the parties have an email and/or phone number will also receive notice by email and/or text message. *Id*. § F.5(c), (d).

Accordingly, the notice is the best practicable notice under the circumstances. *See also* Newberg on Class Actions § 22:91 ("The notice of the Proposed Settlement . . . need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections. . . . Courts have consistently recognized that due process does not require that every class member receive actual notice so long as the court reasonably selected a means likely to apprize interested parties.").

The notice documents are also written in plain, easily-understood language that satisfies the requirements of Rule 23, though the Court may modify the language in its discretion.

Moreover, because members of the Claims-Made Class must file a claim to receive their Award and members of the Sky Zone No-Claim Class do not, the form of the notice to both groups will be substantially the same, but the notice to the Claims-Made Class will also include information and material that the Sky Zone No-Claim Class does not need, including a paper Claim

Form, a link to the Claim Form on the Settlement Website and a QR Code that will link to the Settlement Website, a description of the Claim Period and Claim Process, and an explanation that the failure to file a Claim Form will result in no Award. Agreement, § F.4. And, to help promote the filing of claims by qualifying Class members, each person on the Claims-Made Class List for whom the parties have an email address and/or phone number and who has not filed a claim after 45 days of the Settlement Notice Date will be sent a follow-up email and/or text message reminding them of the Claims Deadline, again with links to the Settlement Website. *Id*. § F.5(e).

Finally, to ensure comprehensive notice, each mailed, emailed, and texted notice will direct Class members to a Settlement Website containing links to the Settlement Notice, the Settlement Agreement, the Fee Application, the Claim Form, a page for completing and submitting the Claim Form online, contact information for Class Counsel and the Settlement Administrator, applicable deadlines, and orders of the Court pertaining to the settlement. *Id.* § F.5(a). The mailed notice also provides contact information for both Class Counsel and the Settlement Administrator from whom Class Members may send inquiries or receive additional information.

The proposed Notice Plan provides direct notice in the best practicable manner and fully apprises Class Members of their rights, thereby complying with Rule 23 and Due Process. Thus, the Court should approve the proposed Notice Plan.[11]

## VIII.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval and enter the proposed Preliminary Approval Order directing notice to Class Members and scheduling a final Fairness Hearing, and for further relief as the Court deems just and proper.

---

[11] Although three defendants have reached settlements at this time, the parties have opted for separate notices related to each settlement to avoid delays if one of the settlements does not receive preliminary approval and to make clear that a person who may be a part of two or three of the settlements can opt-out of, or object to, some but not all of the settlements.

Dated: March 12, 2024    Respectfully submitted,

            **GOLDENBERG HELLER**
            **& ANTOGNOLI, P.C.**

            By: */s/ Kevin P. Green*
              Kevin P. Green, #6299905
              Richard S. Cornfeld, #0519391
              Daniel S. Levy, #6315524
              Thomas C. Horscroft, #06327049
              2227 South State Route 157
              Edwardsville, IL 62025
              Telephone: (618) 656-5150
              kevin@ghalaw.com
              rick@ghalaw.com
              daniel@ghalaw.com
              thorscroft@ghalaw.com

            ***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 12, 2024, the foregoing document was filed electronically with the Clerk of Court and served upon all counsel of record via the Court's electronic notification system.

         By: */s/ Kevin P. Green*